# 08 CV 3316

## U.S. District Court
## Southern District of Indiana (New Albany)
## CIVIL DOCKET FOR CASE #: 4:07-cv-00016-SEB-WGH

CAUFIELD v. COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME PLAN
Assigned to: Judge Sarah Evans Barker
Referred to: Magistrate Judge William G. Hussmann Jr.
Demand: $
Lead Docket: None
Related Cases: 1:07-cv-01554-SEB-JMS
Case in other court: None
Cause: 29:1002 E.R.I.S.A.: Employee Retirement

Date Filed: 02/12/07
Jury Demand: None
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

**Plaintiff**
------------------------

**PAUL CAUFIELD, and all others
similarly situated**

represented by **Diane Moore Heitman**
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101
(314) 241-4844
Fax : (314) 241-3525
Email: dheitman@koreintillery.com
*ATTORNEY TO BE NOTICED*

**Douglas R. Sprong**
KOREIN TILLERY LLC
One US Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844
Fax : (314) 241-3525
Email: dsprong@koreintillery.com
*ATTORNEY TO BE NOTICED*

**T. J. Smith**
600 West Main Street
Suite 200
Louisville, KY 40202
(502) 589-2560
Fax : (502) 540-1200
Email: tjsmith@smithhelman.com
*ATTORNEY TO BE NOTICED*

**William K. Carr**
LAW OFFICE OF WILLIAM K.
CARR
2222 East Tennessee Avenue
Denver, CO 80209
(303) 296-6383
Fax : (303) 296-6652
Email: bill@pension-law.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**
-----------------------

**COLGATE-PALMOLIVE
COMPANY EMPLOYEES'
RETIREMENT INCOME PLAN**

represented by **Brandi T. Johnson**
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5805
Fax : (215) 963-5001
Email: btjohnson@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ellen E. Boshkoff**
BAKER & DANIELS
300 North Meridian Street
Suite 2700
Indianapolis, IN 46204
(317)237-1266
Fax : (317)237-1000
Email: ellen.boshkoff@bakerd.com
*ATTORNEY TO BE NOTICED*

**Jeremy P. Blumenfeld**
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5258
Fax : (215) 963-5001
Email:
jblumenfeld@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph J. Costello**
MORGAN LEWIS & BOCKIUS LLP

1701 Market St
Philadelphia, PA 19103
(215) 963-5000
Fax : 215-963-5001
Email: jcostello@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Philip John Gutwein, II**
BAKER & DANIELS
300 North Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-8271
Fax : (317) 237-1000
Email: philip.gutwein@bakerd.com
*ATTORNEY TO BE NOTICED*

**Theresa J. Chung**
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5584
Fax : (215) 963-5001
Email: tchung@morganlewis.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Filing Date | Num# | Docket Text |
|---|---|---|
| 02/12/2007 | 1 | COMPLAINT against COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN filed by PAUL CAUFIELD.(JLM) [Entry Date 02/12/2007] |
| 02/12/2007 | 2 | CIVIL COVER SHEET filed by Plaintiff PAUL CAUFIELD. (JLM) [Entry Date 02/12/2007] |
| 02/12/2007 | 3 | RECEIPT #NA000003 in the amount of $ 350.00 for filing fee. (JLM) [Entry Date 02/12/2007] |
| 02/12/2007 | 4 | Summons Issued as to COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (JLM) [Entry Date 02/12/2007] |

| 02/12/2007 | 5 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (JLM) [Entry Date 02/12/2007] |
|---|---|---|
| 02/12/2007 | 6 | INSTRUCTIONS FOR PREPARING CASE MANAGEMENT PLAN (JLM) [Entry Date 02/12/2007] |
| 03/02/2007 | 7 | NOTICE of Appearance by Ellen E. Boshkoff on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Boshkoff, Ellen) [Entry Date 03/02/2007] |
| 03/02/2007 | 8 | NOTICE of Appearance by Philip John Gutwein, II on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Gutwein, Philip) [Entry Date 03/02/2007] |
| 03/09/2007 | 9 | MOTION to Appear pro hac vice *(Brandi T. Johnson)*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # 1 Text of Proposed Order)(Gutwein, Philip) [Entry Date 03/09/2007] |
| 03/09/2007 | 10 | MOTION to Appear pro hac vice *(Joseph J. Costello)*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # 1 Text of Proposed Order)(Gutwein, Philip) [Entry Date 03/09/2007] |
| 03/09/2007 | 11 | MOTION to Appear pro hac vice *(Theresa J. Chung)*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # 1 Text of Proposed Order)(Gutwein, Philip) [Entry Date 03/09/2007] |
| 03/09/2007 | 12 | MOTION to Appear pro hac vice *(Jeremy P. Blumenfeld)*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # 1 Text of Proposed Order)(Gutwein, Philip) [Entry Date 03/09/2007] |
| 03/09/2007 | 13 | CORPORATE DISCLOSURE STATEMENT, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, identifying None as Corporate Parent. (Gutwein, Philip) [Entry Date 03/09/2007] |
| 03/12/2007 | 14 | RECEIPT #NA000032 in the amount of $ 120.00, PHV fee - Brandi T Johnson, Joseph J. Costello, Theresa L. Chung and Jeremy Blumenfeld (KTK) [Entry Date 03/12/2007] |

| | | |
|---|---|---|
| 03/13/2007 | 15 | ORDER granting 9 Motion to Appear pro hac vice. Attorney Brandi T. Johnson for COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN added. Signed by Judge Sarah Evans Barker on 3/13/07. (JLM) [Entry Date 03/13/2007] |
| 03/13/2007 | 16 | ORDER granting 10 Motion to Appear pro hac vice. Attorney Joseph J. Costello for COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN added. Signed by Judge Sarah Evans Barker on 3/13/07. (JLM) [Entry Date 03/13/2007] |
| 03/13/2007 | 17 | ORDER granting 11 Motion to Appear pro hac vice. Attorney Theresa J. Chung for COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN added. Signed by Judge Sarah Evans Barker on 3/13/07. (JLM) [Entry Date 03/13/2007] |
| 03/13/2007 | 18 | ORDER granting 12 Motion to Appear pro hac vice. Attorney Jeremy P. Blumenfeld for COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN added. Signed by Judge Sarah Evans Barker on 3/13/07. (JLM) [Entry Date 03/13/2007] |
| 03/16/2007 | 19 | WAIVER OF SERVICE Returned Executed, filed by PAUL CAUFIELD. COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN waiver sent on 2/13/2007. (JLM) [Entry Date 03/21/2007] |
| 03/21/2007 | 20 | NOTICE of Appearance by Brandi T. Johnson on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (KTK) [Entry Date 03/21/2007] |
| 03/21/2007 | 21 | NOTICE of Appearance by Jeremy P. Blumenfeld on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (KTK) [Entry Date 03/21/2007] |
| 03/21/2007 | 22 | NOTICE of Appearance by Theresa J. Chung on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (KTK) [Entry Date 03/21/2007] |
| 03/21/2007 | 23 | NOTICE of Appearance by Joseph J. Costello on behalf of Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (KTK) [Entry Date 03/21/2007] |
| 04/16/2007 | 24 | MOTION to Dismiss *Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN., (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Text of Proposed Order)(Gutwein, Philip) |

| | | |
|---|---|---|
| | | [Entry Date 04/16/2007] |
| 04/16/2007 | 25 | BRIEF/MEMORANDUM in Support re 24 MOTION to Dismiss *Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Gutwein, Philip) [Entry Date 04/16/2007] |
| 04/26/2007 | 26 | MOTION for Extension of Time to May 15, 2007 to file response to 24 MOTION to Dismiss *Plaintiff's Complaint*, filed by Plaintiff PAUL CAUFIELD, Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Smith, T.) [Entry Date 04/26/2007] |
| 04/26/2007 | 27 | MOTION for Extension of Time to to file response to 26 MOTION for Extension of Time to May 15, 2007 to file response to 24 MOTION to Dismiss *Plaintiff's Complaint*, filed by Plaintiff PAUL CAUFIELD, Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Smith, T.) [Entry Date 04/26/2007] |
| 04/26/2007 | 28 | MOTION to Appear pro hac vice *of Douglas R. Sprong*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # 1 Text of Proposed Order)(Sprong, Douglas) [Entry Date 04/26/2007] |
| 04/27/2007 | 29 | RECEIPT #NA000073 in the amount of $ 30.00, PHV fee, Douglas R. Sprong. (KTK) [Entry Date 04/27/2007] |
| 04/27/2007 | 30 | ORDER granting 28 Motion to Appear pro hac vice. Attorney Douglas R. Sprong for PAUL CAUFIELD added. Signed by Judge Sarah Evans Barker on 4/27/2007. (KTK) [Entry Date 04/27/2007] |
| 04/30/2007 | 31 | ORDER granting 26 Motion for Extension of Time re 24 MOTION to Dismiss *Plaintiff's Complaint* Plaintiff's Response due by 5/15/2007. Defendant's Reply is due 6/5/2007. Signed by Judge William G. Hussmann Jr. on 4/30/2007. (KTK) [Entry Date 04/30/2007] |
| 05/14/2007 | 32 | MOTION for William K. Carr to Appear pro hac vice, filed by Plaintiff PAUL CAUFIELD. (Attachments: # 1 Text of Proposed Order)(Sprong, Douglas) Modified on 5/15/2007 (KTK). |
| 05/15/2007 | 33 | RECEIPT #NA 000089 in the amount of $ 30.00, pro hac vice fee, William Carr. (KTK) [Entry Date 05/15/2007] |
| 05/15/2007 | 34 | RESPONSE in Opposition re 24 MOTION to Dismiss *Plaintiff's Complaint*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # 1 Exhibit 1 Entry Denying Defendant's Motion# 2 Exhibit 2 Affidavit of |

| | | Paul Caufield)(Sprong, Douglas) [Entry Date 05/15/2007] |
|---|---|---|
| 05/16/2007 | 35 | ORDER granting 32 Motion to Appear pro hac vice. Attorney William K. Carr for PAUL CAUFIELD added. Signed by Judge Sarah Evans Barker on 5/16/2007. (KTK) [Entry Date 05/17/2007] |
| 05/23/2007 | 36 | MOTION to Appear pro hac vice *Diane Moore Heitman*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # 1 Text of Proposed Order)(Sprong, Douglas) [Entry Date 05/23/2007] |
| 05/24/2007 | 37 | RECEIPT #NA000097 in the amount of $ 30.00 for PHV Fee for Diane Moore Heitman. (JLM) [Entry Date 05/24/2007] |
| 05/24/2007 | 38 | ORDER granting 36 Motion to Appear pro hac vice. Attorney Diane Moore Heitman for PAUL CAUFIELD added. Signed by Judge Sarah Evans Barker on 5/24/2007. (KTK) [Entry Date 05/25/2007] |
| 06/04/2007 | 39 | CASE MANAGEMENT PLAN TENDERED, filed by Plaintiff PAUL CAUFIELD, Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # 1 Magistrate Judge's Summary of Case Management Plan)(Chung, Theresa) [Entry Date 06/04/2007] |
| 06/05/2007 | 40 | MOTION to Stay, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN., (Attachments: # 1 Text of Proposed Order # 2 Defendant's Statement in Compliance with Local Rule 37.1)(Chung, Theresa) Modified on 6/6/2007 (JLM). |
| 06/05/2007 | 41 | BRIEF/MEMORANDUM in Support re 40 MOTION to Stay, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Chung, Theresa) [Entry Date 06/05/2007] |
| 06/05/2007 | 42 | REPLY in Support of Motion re 24 MOTION to Dismiss *Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Chung, Theresa) [Entry Date 06/05/2007] |
| 06/12/2007 | 43 | ORDER: CASE MANAGEMENT Plan NOT APPROVED as submitted. A scheduling order will issue in place at the TelephonicStatus Conference set for 7/16/2007 05:00 PM, New Albany time, before Magistrate Judge William G. Hussmann Jr. Signed by Judge William G. Hussmann Jr. on 6/12/2007. (KTK) [Entry Date 06/12/2007] |

| 06/25/2007 | 44 | RESPONSE in Opposition re 40 MOTION to Stay *of Proceedings Pending Disposition of Its Motion to Dismiss*, filed by Plaintiff PAUL CAUFIELD. (Sprong, Douglas) [Entry Date 06/25/2007] |
| --- | --- | --- |
| 07/06/2007 | 45 | ORDER granting in part 40 Motion to Stay. Parties to comply with FRCP 26(a)(1), and defendant shall respond to interrogatories or requests for production addressed to the identity of plan documents at issue over the six years prior to the filing of the Complaint. All other discovery is stayed, at least until the 7/16/2007 conference. Signed by Judge William G. Hussmann Jr. on 7/6/07. (JLM) [Entry Date 07/06/2007] |
| 07/20/2007 | 46 | Minute Entry for proceedings held before Judge William G. Hussmann Jr.: Status Conference held on 7/16/2007. See Entry for particulars. (KTK) [Entry Date 07/20/2007] |
| 07/20/2007 | | (continuation of # 46) SCHEDULING ORDER:Telephonic Status Conference set for 10/31/2007 09:15 AM, New Albany time, before Magistrate Judge William G. Hussmann Jr. Signed by Judge William G. Hussmann Jr. on 7/20/2007. (KTK) [Entry Date 07/20/2007] |
| 10/01/2007 | 47 | RESPONSE in Opposition re 24 MOTION to Dismiss *Plaintiff's Complaint Citation to Supplemental Authority*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # 1 Exhibit 1 Humphrey v. United Way)(Sprong, Douglas) [Entry Date 10/01/2007] |
| 10/11/2007 | 48 | MOTION to Stay re 24 MOTION to Dismiss *Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN., (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Text of Proposed Order)(Chung, Theresa) [Entry Date 10/11/2007] |
| 10/11/2007 | 49 | BRIEF/MEMORANDUM in Support re 48 MOTION to Stay re 24 MOTION to Dismiss *Plaintiff's Complaint* , filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Chung, Theresa) Modified on 10/12/2007 (JLM). |
| 10/26/2007 | 50 | RESPONSE in Opposition re 48 MOTION to Stay re 24 MOTION to Dismiss *Plaintiff's Complaint* MOTION to Stay re 24 MOTION to Dismiss *Plaintiff's Complaint*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # 1 Exhibit 1 - Abelman Motion for 60 Day Stay)(Sprong, Douglas) [Entry Date 10/26/2007] |
| 11/05/2007 | 51 | REPLY in Support of Motion re 48 MOTION to Stay re 24 MOTION |

| | | |
|---|---|---|
| | | to Dismiss *Plaintiff's Complaint* MOTION to Stay re 24 MOTION to Dismiss *Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Chung, Theresa) [Entry Date 11/05/2007] |
| 11/06/2007 | 52 | Minute Entry for proceedings held before Judge William G. Hussmann Jr.: Telephonic Status Conference held on 10/31/2007. See Entry for particulars. (KTK) [Entry Date 11/07/2007] |
| 11/06/2007 | | (continuation of # 52) SCHEDULING ORDER:Telephonic Status Conference set for 12/5/2007 10:00 AM, New Albany time, before Magistrate Judge William G. Hussmann Jr. Signed by Judge William G. Hussmann Jr. on 11/06/2007. (KTK) [Entry Date 11/07/2007] |
| 11/16/2007 | 53 | NOTICE *of Supplemental Authority in Support of 24 Defendant's Motion to Dismiss Plaintiff's Complaint*, filed by Defendant COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN (Attachments: # 1 Exhibit 1; # 2 Exhibit 2) (Chung, Theresa) Modified on 11/19/2007 (KTK). |
| 11/19/2007 | 54 | RESPONSE to Motion re 48 MOTION to Stay re 24 MOTION to Dismiss *Plaintiff's Complaint* MOTION to Stay re 24 MOTION to Dismiss *Plaintiff's Complaint*, filed by Plaintiff PAUL CAUFIELD. (Sprong, Douglas) [Entry Date 11/19/2007] |
| 11/21/2007 | 55 | ORDER granting 48 Motion to Stay Proceedings pending disposition of 24 Motion to Dismiss. Signed by Judge Sarah Evans Barker on 11/21/2007. (KTK) [Entry Date 11/21/2007] |
| 12/05/2007 | 56 | ORDER TO SHOW CAUSE - We stayed consideration of Defendant's Motion to Dismiss 24 pending a decision by the United States District Court for the Southern District of Ohio. The Ohio court has ruled. Accordingly, Defendant is ordered to show cause why the stay should not now be lifted. Defendant shall have through and including 12/14/2007, to comply with this order. Plaintiff's response, if any, shall be filed on or before 12/21/2007. Signed by Judge Sarah Evans Barker on 12/5/07.(JLM) [Entry Date 12/05/2007] |
| 12/06/2007 | 57 | RETURN TO ORDER TO SHOW CAUSE by COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN. (Gutwein, Philip) [Entry Date 12/06/2007] |
| 12/14/2007 | 58 | RESPONSE in Opposition re 24 MOTION to Dismiss *Plaintiff's* |

|  |  | *Complaint Response to Notice of Supplemental Authority*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # 1 Exhibit 1 Employees' Retirement Income Plan pages 22 & 45, # 2 Exhibit 2 Entry Denying Defendant's Motion - Williams v. Rohm & Haas, # 3 Exhibit 3 Richardson v. Fairchild Memorandum)(Sprong, Douglas) [Entry Date 12/14/2007] |
|---|---|---|
| 12/19/2007 | 59 | Minute Entry for proceedings held before Magistrate Judge William G. Hussmann, Jr: Status Conference held on 12/05/2007. The parties should proceed to complete briefing on the currently pending Motion to Dismiss. Any response to the supplemental briefing provided by the Defendant shall be concluded by the Plaintiff on or before 12/14/2007. Any final reply to the Plaintiffs' response shall be filed on or before 12/21/2007. (KTK) [Entry Date 12/19/2007] |
| 12/19/2007 |  | (continuation of # #59) SCHEDULING ORDER:Telephonic Status Conference set for 2/27/2008 09:15 AM, New Albany time, before Magistrate Judge William G. Hussmann Jr. By copy of this entry, Plaintiff's counsel in Cause No. 1:07-cv-1554-DFH-JMS is DIRECTED to participate in this conference call by calling the court's bridge line. Signed by Magistrate Judge William G. Hussmann, Jr on 12/19/2007.(KTK) [Entry Date 12/19/2007] |
| 12/21/2007 | 60 | RESPONSE re 56 Order to Show Cause *Why Stay Should Not Be Lifted*, filed by Plaintiff PAUL CAUFIELD. (Sprong, Douglas) [Entry Date 12/21/2007] |
| 02/13/2008 | 61 | RESPONSE re 56 Order to Show Cause *Why Stay Should Not Be Lifted - Supplemental*, filed by Plaintiff PAUL CAUFIELD. (Attachments: # 1 Exhibit 1 Abelman v. Colgate Motion to Transfer Venue and Stay Proceedings, # 2 Exhibit 2 Proesel v. Colgate Memorandum of Law in Support of Defendants' Motion for Transfer Venue, # 3 Exhibit 3 Abelman v. Colgate Memorandum of Law in Support of Defendants' Motion to Transfer Venue)(Sprong, Douglas) [Entry Date 02/13/2008] |
| 02/28/2008 | 62 | Minute Entry for proceedings held before Magistrate Judge William G. Hussmann, Jr: Telephonic Status Conference held on 2/27/2008. The court discussed several currently pending issues, but no formal orders were entered. Telephonic Status Conference set for 4/29/2008, at 9:15 AM, New Albany time (EDT), before Magistrate Judge William G. Hussmann Jr. (JLM) [Entry Date 02/28/2008] |
| 03/26/2008 | 63 | ORDER on Related case issues and, CLOSED TRANSFER to the Southern District of New York. Civil Cause No. 1:07-cv-1554 is reassigned to the Hon. Sarah Evans Barker as a related action. (S.O.). |

| | | Signed by Judge Sarah Evans Barker on 3/26/08.(MAC) [Entry Date 03/27/2008] |
|---|---|---|
| 03/28/2008 | 64 | Letter to Clerk of U.S. District Court Southern District of New York regarding Transfer of Documents - Record transmitted LAB (MAC) [Entry Date 03/28/2008] |

FILED
U.S. DISTRICT COURT
.... DIVISION

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

07 FEB 12 PM 12: 57

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

PAUL CAUFIELD, and all others similarly )
situated, )
)
Plaintiff, )
**4:07-CV- 0016 SEB - WGH**
v. ) Civil No: _____
)
COLGATE-PALMOLIVE COMPANY )
EMPLOYEES' RETIREMENT ) **CLASS ACTION**
INCOME PLAN, )
)
Defendant. )

## Complaint

Comes now Plaintiff, Paul Caufield, by his attorneys, and for his Complaint against

Defendant states as follows:

### The Parties, Jurisdiction and Venue

1. Plaintiff, Paul Caufield, is an individual residing in Memphis, Indiana.

2. Defendant, Colgate-Palmolive Company Employees' Retirement Income Plan,

sometimes referred to as the "Personal Retirement Account Plan" (the "Plan"), is a "defined

benefit plan" within the meaning of Section 3(35) of the Employee Retirement Income Security

Act of 1974, as amended ("ERISA"), 29 U.S.C. §1002(35).

3. Jurisdiction is proper in this Court under 28 U.S.C. §1331 and 29 U.S.C. §1132(e)(1).

4. Venue is proper in this Court under 28 U.S.C. §1391(b) and 29 U.S.C. §1132(e)(2)

and (f), in that the Plan is administered in this judicial district, it can also be found within this

judicial district, and the conduct complained of occurred in this judicial district.

## Background

5.  Mr. Caufield was employed by Colgate-Palmolive ("Colgate") from 1977 until February 1999.

6.  Mr. Caufield participated in the Plan and accrued benefits under the Plan at all relevant times while employed by Colgate until his employment terminated in 1999.

7.  Under the terms of the Plan, a notional cash balance account was established for Mr. Caufield to which the Plan credited monthly, certain pay-based credits (the "pay credits").

8.  Under the terms of the Plan, and in addition to the pay credits, Mr. Caufield's notional account was credited with monthly interest, at a rate, adjusted quarterly, equal to 1/12 of an effective annual calendar year rate equal to the sum of the average rate of a new six-month Treasury bill in effect during each quarter, plus 2% per annum (the "interest credit").

9.  After terminating employment in 1999, Mr. Caufield elected to receive his Plan benefits paid in the form of a lump sum distribution. The Plan paid Mr. Caufield a lump sum distribution in an amount equal to the balance of his notational account.

10.  The amount of Mr. Caufield's notational account balance at distribution, i.e., the amount of his lump sum distribution, was less than the present value of his normal retirement benefit.

11.  By failing to properly compute the amount of his lump sum distribution, the Plan failed to provide Mr. Caufield with a lump sum distribution in an amount equal to the present value of his normal retirement benefit as payable at normal retirement age as required by ERISA.

12.  Mr. Caufield did not exhaust the administrative remedies provided under the terms of the Plan prior to initiating this lawsuit because his claims are based solely on discrete and non-

2

fact intensive statutory violations of ERISA. Furthermore, exhaustion would be futile in that the requirements described above have been the subject of numerous, well-publicized court cases (including from the Seventh Circuit) and agency rulings; as a result, the requirement is well known to the Plan, its fiduciaries and advisors, yet the Plan failed to comply with the ERISA when it paid Mr. Caufield's lump-sum distribution and has also failed to correct his lump-sum distribution. Thus, the Plan and its fiduciaries have already determined that it either complies with the law and/or that it need not comply with the requirements described above.

### Class Action Allegations

13. Plaintiff seeks class action certification of the following class:

"All participants in the Colgate-Palmolive Company Employees' Retirement Income Plan who received a lump-sum distribution of their pension benefits from the Plan at any time after February 12, 1997."

14. Certification is appropriate under Rule 23(b)(1), Fed. R. Civ. P., because there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the administrator of the Plan.

15. Certification is also appropriate under Rule 23(b)(2), Fed. R. Civ. P., because the Plan computed the lump-sum distributions of the Class members in the same contested manner; therefore, the Plan has acted or refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

16. The Class is comprised of several thousand participants who received lump sum distributions from the Plan, and is so numerous that joinder of all Class members would be impracticable.

3

17. The computation of a participant's lump sum distribution and the amount of lump sum distributions is standardized in that the amount of the lump-sum distribution for each member of the Class was determined in the same manner as described above. Thus, there exist common questions of fact as to each member of the Class.

18. Each Class member's rights will be determined by resort to the same Plan documents and the same provisions of ERISA. Thus, there exist common questions of law as to each Class member, i.e., whether the method of calculating of lump-sum distributions violated the law.

19. Mr. Caufield's claims are typical of the claims of the Class members in that his lump-sum distribution was calculated in the same fashion as the rest of the Class, and his rights, as well as those of the Class as a whole, are similarly provided for under the Plan document and applicable provisions of ERISA.

20. Mr. Caufield will fairly and adequately represent the interests of the members of the Class. His interests are the same, and not in conflict with the other members of the Class. His attorneys are experienced and competent in the prosecution of ERISA class action litigation.

### Count I

21. Mr. Caufield incorporates by reference the allegations of all preceding paragraphs as if fully set forth in this Count.

22. ERISA §§203(e)and 205(g), 29 U.S.C. §§1053(e) and 1055(g), and Internal Revenue Code § 417(e), all as implemented by Treasury Regulation §1.417(e)-1(d), require that any optional form of benefit paid from a defined benefit plan, including a lump sum distribution, must have a value no less than the present value of the participant's normal retirement benefit as payable at normal retirement age (under the Plan, age 65).

4

23. The Plan paid Mr. Caufield a lump-sum benefit that was less than the present value of his normal retirement benefit in violation of ERISA §§ 203(e) and 205(g), and IRC § 417(e), as implemented by Treasury Regulation 1.417(e)-1(d).

24. Pursuant to ERISA § 502(a), Mr. Caufield brings this action against the Plan for all of the relief available thereunder.

## Count II

25. Mr. Caufield incorporates by reference the allegations of all preceding paragraphs as if fully set forth in this Count.

26. The Plan's conduct as described above resulted in an impermissible forfeiture of benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a), as implemented by Treasury Regulation 1.411(a)-4 and 4T.

27. Pursuant to ERISA § 502(a), Mr. Caufield brings this action against the Plan to redress violations of ERISA, to enforce such ERISA provisions, and for all of the relief available.

## Prayer for Relief

WHEREFORE, Plaintiff, Paul Caufield, prays for the following relief:

a) Certification of this case as a class action;

b) Judgment against the Plan and in favor of Plaintiff and the Class on all claims herein, including all relief available under ERISA;

c) A permanent injunction preventing the Plan from calculating future lump-sum distributions in violation of ERISA;

d) Pre- and post-judgment interest and costs;

5

e)    Reasonable attorneys' fees pursuant to the common fund doctrine or any other

applicable law; and

f)    Any other relief this Court deems just, proper and equitable.


Respectfully submitted,


_____
T.J. Smith
Law Offices of T.J. Smith
600 W. Main Street, Suite 200
Louisville, KY  40202
(502) 589-2560
(502) 540-1200 (facsimile)
tjsmith@smithhelman.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO  80209
(303) 296-6383
(303) 296-6652 (facsimile)
bill@pension-law.com

Douglas R. Sprong
Diane Moore Heitman
Korein Tillery LLC
505 N. Seventh St., Suite 3600
St. Louis, MO  63101
(314) 241-4844
(314) 588-7036 (facsimile)
dsprong@koreintillery.com

Attorneys for Plaintiff

6

* AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

District of _____

PAUL CAUFIELD, AND ALL OTHERS SIMILARLY
SITUATED

V.

COLGATE-PALMOLIVE COMPANY
EMPLOYEES" RETIREMENT INCOME PLAN

**SUMMONS IN A CIVIL CASE**

# 4:07 -CV- 0016 SEB - WGH

TO: (Name and address of Defendant)

COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME PLAN

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

T.J. SMITH, LLC
600 W. MAIN STREET STE 200
LOUISVILLE, KY 40202
DOUGLAS R. SPRONG, ESQ.,
KOREIN TILLERY LLC
505 N. SEVENTH STREET, STE 3600
ST. LOUIS, MO 63101

WILLIAM K. CARR, ESQ.,
LAW OFFICES OF WILLIAM K. CARR
2222 E. TENNESSEE AVENUE
DENVER, CO 80209

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court, 121 West Spring St, New Albany, IN 47150 within a reasonable period of time after service.

CLERK

(By) DEPUTY CLERK

FEB 12 2007

DATE

AO 85 (modified by USDC IN-SD 6/03)  Notice, Consent, and Order of Reference — Exercise of Jurisdiction by a United States Magistrate Judge

# UNITED STATES DISTRICT COURT

District of _____

|  |  |
|---|---|
| Plaintiff<br>V.<br><br>Defendant | NOTICE, CONSENT, AND ORDER OF REFERENCE —<br>EXERCISE OF JURISDICTION BY A UNITED STATES<br>MAGISTRATE JUDGE<br><br>Case Number:<br>**4:07-CV-0016 SEB - WGH** |

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE
## TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. §636(c), and Fed.R.Civ.P. 73, you are notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.

## CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

| Party Represented | Signatures | Date |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## ORDER OF REFERENCE

IT IS ORDERED that this case be referred to the assigned United States Magistrate Judge, to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 73.

| _____ | _____ |
|---|---|
| Date | United States District Judge |

NOTE: RETURN THIS FORM TO THE CLERK OF THE COURT <u>ONLY IF</u> ALL PARTIES HAVE CONSENTED <u>ON THIS FORM</u> TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.

4:07-CV-0016 SEB - WGH

## INSTRUCTIONS FOR PREPARING CASE MANAGEMENT PLAN

The following provisions apply to civil cases filed in the United States District Court for the Southern District of Indiana that are not exempt from filing a Case Management Plan ("CMP") under Local Rule 16.1.

### Special Instructions For *Pro Se* Parties

Any party who is not represented by counsel (known as a *pro se* party) and who is not incarcerated may participate fully in the preparation of the CMP. Alternatively, however, non-incarcerated *pro se* parties may simply mail a letter containing that party's complete name, address, telephone number, and a summary of the case that includes only the main or major facts. This letter must be mailed to all opposing counsel (or parties, if unrepresented) within 70 days from the date that the case was filed or removed to this Court. *Pro se* parties may obtain the names and addresses of counsel for opposing parties by calling the clerk's office at 317-229-3700 or conducting a case search on the Court's webpage at www.insd.uscourts.gov. Counsel for opposing parties shall then incorporate the information from the *pro se* party's letter, timely sign and submit the CMP to the Court, and serve a copy on the *pro se* party.

### General Instructions For All Cases

Unless the plaintiff is *pro se*, counsel for plaintiff shall be responsible for coordinating timely completion of the CMP. The deadline for filing the CMP is 90 days from the date the case was filed or removed. The deadline for filing the CMP shall not be extended without written motion which establishes good cause to extend the deadline. Regardless of the status of the CMP, the parties are free to engage in discovery in compliance with the Federal Rules of Civil Procedure and Local Rules of this Court.

The calculation of all deadlines for the CMP is based on the "Anchor Date," which means the date that the case was filed or removed to the Court. Because all CMP deadlines are linked to the Anchor Date, plaintiffs must promptly effectuate service on all defendants. The Court may entertain requests from defendants to modify/lengthen all CMP deadlines if service is not made promptly.

Depending on the type of case, the Anchor Date is used to calculate certain deadlines that will govern pretrial management. Please note, however, that the parties are encouraged to shorten these time frames in appropriate cases so that the case may be scheduled for trial more quickly than the outer deadlines otherwise applicable.

The use of the term "months" for calculating the dates (rather than counting days) is for ease of calculation. Thus, for example, if the Anchor Date is the 20th of the month, most of CMP deadlines will fall on the 20th of the respective months regardless of how many days comprise the intervening months.

District Judges and Magistrate Judges regularly receive documents filed by all parties. Therefore, parties shall not bring "courtesy copies" to any chambers unless specifically directed to do so by the Court. In accordance with Local Rule 26.2, discovery papers are not ordinarily filed with the Court.

CONTINUED ON REVERSE.

In addition to those conferences required by Local Rule 37.1, counsel are encouraged to hold informal conferences in person or by phone to resolve any disputes involving non-dispositive issues that may otherwise require submission of a motion to the Court. **This requirement does not apply to cases involving *pro se* parties.** Therefore, prior to filing any non-dispositive motion (including motions for extension of time), the moving party must contact opposing counsel to determine whether there is an objection to any non-dispositive motion (including motions for extension of time), and state in the motion whether opposing counsel objects to the motion. If an objection cannot be resolved by counsel, the opposing counsel's position shall be stated within the motion. The motion should also indicate whether opposing counsel plans to file a written objection to the motion and the date by which the Court can expect to receive the objection (within the time limits set in Local Rule 7.1). If after a reasonable effort, opposing counsel cannot be reached, the moving party shall recite in the motion the dates and times that messages were left for opposing counsel.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO.  4:07-cv-00016-SEB-WGH |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| Defendant. | ) | |

## APPEARANCE

Ellen E. Boshkoff, of the law firm of Baker & Daniels LLP, hereby enters her

Appearance for Defendant Colgate-Palmolive Company Employees' Retirement Income Plan.

Respectfully submitted,

BAKER & DANIELS LLP

By:___s/Ellen E. Boshkoff_____
        Ellen E. Boshkoff (#16365-49)
        300 North Meridian Street
        Suite 2700
        Indianapolis, Indiana  46204
        Telephone:  (317) 237-0300
        Facsimile:  (317) 237-1000

        *Attorneys for Defendant Colgate-Palmolive
        Company Employees' Retirement Income
        Plan*

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on the 2nd day of March, 2007, a copy of the foregoing was electronically filed.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
tjsmith@smithhelman.com

s/Ellen E. Boshkoff

The undersigned counsel hereby certifies that on the 2nd day of March, 2007, a copy of the foregoing was mailed, by first class mail, postage pre-paid and properly addressed, to the following:

Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

s/Ellen E. Boshkoff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO.  4:07-cv-00016-SEB-WGH |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| Defendant. | ) | |

## <u>APPEARANCE</u>

Philip J. Gutwein II, of the law firm of Baker & Daniels LLP, hereby enters his

Appearance for Defendant Colgate-Palmolive Company Employees' Retirement Income Plan.

Respectfully submitted,

BAKER & DANIELS LLP

By:    s/Philip J. Gutwein
      Philip J. Gutwein II (#22986-53)
      300 North Meridian Street
      Suite 2700
      Indianapolis, Indiana  46204
      Telephone:  (317) 237-0300
      Facsimile:  (317) 237-1000

*Attorneys for Defendant Colgate-Palmolive*
*Company Employees' Retirement Income*
*Plan*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on the 2nd day of March, 2007, a copy of the foregoing was electronically filed.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
tjsmith@smithhelman.com


s/Philip J. Gutwein

The undersigned counsel hereby certifies that on the 2nd day of March, 2007, a copy of the foregoing was mailed, by first class mail, postage pre-paid and properly addressed, to the following:

Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

s/Philip J. Gutwein

-2-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No.  4:07-cv-00016-SEB-WGH |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| Defendant. | ) | |

## <u>MOTION FOR LEAVE TO APPEAR PRO HAC VICE</u>

Pursuant to Local Rule 83.5(c) of the Rules of the United States District Court for the Southern District of Indiana, Defendant Colgate-Palmolive Company Employees' Retirement Income Plan respectfully moves the Court to grant Brandi T. Johnson leave to appear for Defendant Colgate-Palmolive Company Employees' Retirement Income Plan as co-counsel *pro hac vice* in this action, and in support of this motion states:

1.      Brandi T. Johnson is an attorney with the law firm of Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, telephone (215) 963-5805, facsimile (215) 963-5001.

2.      Ms. Johnson received her J.D. degree from the Howard University School of Law in 2006.

3.      Ms. Johnson is licensed to practice in the States of New Jersey and Pennsylvania.  Ms. Johnson is admitted to practice before the United States District Court for the District of New Jersey.  Ms. Johnson is not currently under suspension or subject to other disciplinary action with respect to the practice of law.

4.      Ms. Johnson certifies that she will abide by the Seventh Circuit Standards of Professional Conduct and that a check has been submitted in payment of the administrative fees required to process this motion for admission *pro hac vice*.

WHEREFORE, Defendant Colgate-Palmolive Company Employees' Retirement Income Plan respectfully requests that the Court grant Brandi T. Johnson leave to appear as co-counsel *pro hac vice* in this action on its behalf.

Respectfully submitted,

**BAKER & DANIELS LLP**

By:      /s/ Philip J. Gutwein II
Ellen E. Boshkoff (#16365-49)
Philip J. Gutwein II (#22986-53)
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000

*Attorneys for Defendant Colgate-Palmolive Company Employees' Retirement Income Plan*

-2-

## CERTIFICATE OF SERVICE

I, Philip J. Gutwein II, hereby certify that a copy of the foregoing motion was filed electronically and is available for viewing and downloading from the ECF system of the U.S. District Court for the Southern District of Indiana, and that I served the same via electronic filing on March 9, 2007 upon the following:

Douglas R. Sprong
Diane Moore Heitman
Korein Tillery LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101

T. J. Smith
Law Office of T.J. Smith
600 W. Main Street
Suite 200
Louisville, KY 40202

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Ave.
Denver, CO 80209

Attorneys for Plaintiff

/s/ Philip J. Gutwein II

-3-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No.  4:07-cv-00016-SEB-WGH |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| Defendant. | ) | |

<u>**MOTION FOR LEAVE TO APPEAR PRO HAC VICE**</u>

Pursuant to Local Rule 83.5(c) of the Rules of the United States District Court for the Southern District of Indiana, Defendant Colgate-Palmolive Company Employees' Retirement Income Plan respectfully moves the Court to grant Joseph J. Costello leave to appear for Defendant Colgate-Palmolive Company Employees' Retirement Income Plan as co-counsel *pro hac vice* in this action, and in support of this motion states:

1.       Joseph J. Costello is an attorney with the law firm of Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, telephone (215) 963-5295, facsimile (215) 963-5001.

2.       Mr. Costello received his J.D. degree from Stanford University in 1985.

3.       Mr. Costello is licensed to practice in the State of Pennsylvania.  In addition, Mr. Costello is admitted to practice before the United States Courts of Appeals for the Second, Third, Fifth, and Tenth Circuits, as well as the United States Supreme Court.  Mr. Costello is admitted to practice before the United States District Courts for the Eastern and Western Districts of Pennsylvania and the United States District Courts for the Eastern and

Western Districts of Michigan.  Mr. Costello is not currently under suspension or other

disciplinary action with respect to the practice of law.

4.     Mr. Costello certifies that he will abide by the Seventh Circuit Standards

of Professional Conduct and that a check has been submitted in payment of the administrative

fees required to process this motion for admission *pro hac vice*.

WHEREFORE, Defendant Colgate-Palmolive Company Employees' Retirement

Income Plan respectfully requests that the Court grant Joseph J. Costello leave to appear as co-

counsel *pro hac vice* in this action on its behalf.

Respectfully submitted,

**BAKER & DANIELS LLP**

By:     /s/ Philip J. Gutwein II
        Ellen E. Boshkoff (#16365-49)
        Philip J. Gutwein II (#22986-53)
        300 N. Meridian Street
        Suite 2700
        Indianapolis, IN  46204
        Telephone:  (317) 237-0300
        Facsimile:  (317) 237-1000

        *Attorneys for Defendant Colgate-Palmolive*
        *Company Employees' Retirement Income Plan*

-2-

### CERTIFICATE OF SERVICE

I, Philip J. Gutwein II, hereby certify that a copy of the foregoing motion was

filed electronically and is available for viewing and downloading from the ECF system of the

U.S. District Court for the Southern District of Indiana, and that I served the same via electronic

filing on March 9, 2007 upon the following:

> Douglas R. Sprong
> Diane Moore Heitman
> Korein Tillery LLC
> 505 N. Seventh Street
> Suite 3600
> St. Louis, MO 63101
>
> T. J. Smith
> Law Office of T.J. Smith
> 600 W. Main Street
> Suite 200
> Louisville, KY 40202
>
> William K. Carr
> Law Offices of William K. Carr
> 2222 E. Tennessee Ave.
> Denver, CO 80209
>
> Attorneys for Plaintiff

/s/ Philip J. Gutwein II

-3-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

PAUL CAUFIELD,                          )
                                        )
                 Plaintiff,             )
                                        )
        vs.                             )        Cause No.  4:07-cv-00016-SEB-WGH
                                        )
COLGATE-PALMOLIVE COMPANY               )
EMPLOYEES' RETIREMENT INCOME            )
PLAN,                                   )
                 Defendant.             )

## MOTION FOR LEAVE TO APPEAR PRO HAC VICE

Pursuant to Local Rule 83.5(c) of the Rules of the United States District Court for the Southern District of Indiana, Defendant Colgate-Palmolive Company Employees' Retirement Income Plan respectfully moves the Court to grant Theresa J. Chung leave to appear for Defendant Colgate-Palmolive Company Employees' Retirement Income Plan as co-counsel *pro hac vice* in this action, and in support of this motion states:

1.      Theresa J. Chung is an attorney with the law firm of Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, telephone (215) 963-5584, facsimile (215) 963-5001.

2.      Ms. Chung received her J.D. degree from Harvard Law School in 2002.

3.      Ms. Chung is licensed to practice in the States of New Jersey, Pennsylvania, California, and New York.  Ms. Chung also is admitted to practice before the United States District Courts for the District of New Jersey and the Eastern District of Pennsylvania.  Ms. Chung is not currently under suspension or other disciplinary action with respect to the practice of law.

4.      Ms. Chung certifies that she will abide by the Seventh Circuit Standards of Professional Conduct and that a check has been submitted in payment of the administrative fees required to process this motion for admission *pro hac vice*.

WHEREFORE, Defendant Colgate-Palmolive Company Employees' Retirement Income Plan respectfully requests that the Court grant Theresa J. Chung leave to appear as co-counsel *pro hac vice* in this action on its behalf.

Respectfully submitted,

**BAKER & DANIELS LLP**

By:    /s/ Philip J. Gutwein II
       Ellen E. Boshkoff (#16365-49)
       Philip J. Gutwein II (#22986-53)
       300 N. Meridian Street
       Suite 2700
       Indianapolis, IN  46204
       Telephone:  (317) 237-0300
       Facsimile:  (317) 237-1000

       *Attorneys for Defendant Colgate-Palmolive
       Company Employees' Retirement Income Plan*

-2-

## <u>CERTIFICATE OF SERVICE</u>

I, Philip J. Gutwein II, hereby certify that a copy of the foregoing motion was filed electronically and is available for viewing and downloading from the ECF system of the U.S. District Court for the Southern District of Indiana, and that I served the same via electronic filing on March 9, 2007 upon the following:

Douglas R. Sprong
Diane Moore Heitman
Korein Tillery LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101

T. J. Smith
Law Office of T.J. Smith
600 W. Main Street
Suite 200
Louisville, KY 40202

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Ave.
Denver, CO 80209

Attorneys for Plaintiff

/s/ Philip J. Gutwein II

-3-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

PAUL CAUFIELD,                          )
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )        Cause No.  4:07-cv-00016-SEB-WGH
                                        )
COLGATE-PALMOLIVE COMPANY               )
EMPLOYEES' RETIREMENT INCOME            )
PLAN,                                   )
                    Defendant.          )

### MOTION FOR LEAVE TO APPEAR PRO HAC VICE

      Pursuant to Local Rule 83.5(c) of the Rules of the United States District Court for the Southern District of Indiana, Defendant Colgate-Palmolive Company Employees' Retirement Income Plan respectfully moves the Court to grant Jeremy P. Blumenfeld leave to appear for Defendant Colgate-Palmolive Company Employees' Retirement Income Plan as co-counsel *pro hac vice* in this action, and in support of this motion states:

      1.      Jeremy P. Blumenfeld is an attorney with the law firm of Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103, telephone (215) 963-5258, facsimile (215) 963-5001.

      2.      Mr. Blumenfeld received his J.D. degree from University of Pennsylvania Law School in 1997.

      3.      Mr. Blumenfeld is licensed to practice in Ohio and Pennsylvania.  Mr. Blumenfeld is admitted to practice before the United States Courts of Appeals for the Third, Sixth and Seventh Circuits.  Mr. Blumenfeld is also admitted to practice before the United States District Courts for the Southern and Northern Districts of Ohio, the Eastern District of Michigan,

the Eastern District of Pennsylvania, the Northern District of Illinois, the District of New Jersey, and the District of Colorado. Mr. Blumenfeld is not currently under suspension or other disciplinary action with respect to the practice of law.

       4.     Mr. Blumenfeld certifies that he will abide by the Seventh Circuit Standards of Professional Conduct and that a check has been submitted in payment of the administrative fees required to process this motion for admission *pro hac vice*.

       WHEREFORE, Defendant Colgate-Palmolive Company Employees' Retirement Income Plan respectfully requests that the Court grant Jeremy P. Blumenfeld leave to appear as co-counsel *pro hac vice* in this action on its behalf.

       Respectfully submitted,

       **BAKER & DANIELS LLP**

By:    /s/ Philip J. Gutwein II
       Ellen E. Boshkoff (#16365-49)
       Philip J. Gutwein II (#22986-53)
       300 N. Meridian Street
       Suite 2700
       Indianapolis, IN 46204
       Telephone: (317) 237-0300
       Facsimile: (317) 237-1000

       *Attorneys for Defendant Colgate-Palmolive*
       *Company Employees' Retirement Income Plan*

BDDB01 4694476v1

## CERTIFICATE OF SERVICE

I, Philip J. Gutwein II, hereby certify that a copy of the foregoing motion was filed electronically and is available for viewing and downloading from the ECF system of the U.S. District Court for the Southern District of Indiana, and that I served the same via electronic filing on March 9, 2007 upon the following:

> Douglas R. Sprong
> Diane Moore Heitman
> Korein Tillery LLC
> 505 N. Seventh Street
> Suite 3600
> St. Louis, MO 63101
>
> T. J. Smith
> Law Office of T.J. Smith
> 600 W. Main Street
> Suite 200
> Louisville, KY 40202
>
> William K. Carr
> Law Offices of William K. Carr
> 2222 E. Tennessee Ave.
> Denver, CO 80209
>
> Attorneys for Plaintiff

/s/ Philip J. Gutwein II

BDDB01 4694476v1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No.  4:07-cv-00016-SEB-WGH |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| Defendant. | ) | |

**DEFENDANT'S CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Civil Procedure 7.1(a) and Local Rule 7.2, Defendant

Colgate-Palmolive Company Employees' Retirement Income Plan certifies that it has no parent

corporations and that no publicly-held company or investment fund holds a 10% or more

ownership interest in the Colgate-Palmolive Company Employees' Retirement Income Plan.

Dated:  March 9, 2007.

Respectfully submitted,

**BAKER & DANIELS LLP**

By:    /s/ Philip J. Gutwein II
             Ellen Boshkoff (# 16365-49)
             Philip J. Gutwein II (# 22986-53)
             300 N. Meridian Street
             Suite 2700
             Indianapolis, IN 46204
             Telephone:  (317) 237- 0300
             Fax:  (317) 237- 1000

Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5295/5258/5584
Fax:  (215) 963-5001

Attorneys for Defendant
Colgate-Palmolive Company Employees'
Retirement Income Plan
*Pro Hac Vice Admission Pending

-2-

## <u>CERTIFICATE OF SERVICE</u>

I, Philip J. Gutwein II, hereby certify that a copy of the foregoing Defendant's Corporate

Disclosure Statement was filed electronically and is available for viewing and downloading from

the ECF system of the U.S. District Court for the Southern District of Indiana, and that I served

same via electronic filing on March 9, 2007 upon the following:

> Douglas R. Sprong
> Diane Moore Heitman
> Korein Tillery LLC
> 505 N. Seventh Street
> Suite 3600
> St. Louis, MO 63101
>
> T. J. Smith
> Law Office of T.J. Smith
> 600 W. Main Street
> Suite 200
> Louisville, KY 40202
>
> William K. Carr
> Law Offices of William K. Carr
> 2222 E. Tennessee Ave.
> Denver, CO 80209
>
> Attorneys for Plaintiff

/s/ Philip J. Gutwein II

-3-

CORRECTED

Court Name: Southern District of Indiana
Division: 4
Receipt Number: NA000032
Cashier ID: mathews
Transaction Date: 03/12/2007
Payer Name: Morgan Lewis Bockius
------------------------------
PRO HAC VICE
 For: Morgan Lewis Bockius
 Case/Party: D-INS-1-07-LB-000001-001
 Amount:      $30.00
PRO HAC VICE
 For: Morgan Lewis Bockius
 Case/Party: D-INS-1-07-LB-000001-001
 Amount:      $30.00
PRO HAC VICE
 For: Morgan Lewis Bockius
 Case/Party: D-INS-1-07-LB-000001-001
 Amount:      $30.00
PRO HAC VICE
 For: Morgan Lewis Bockius
 Case/Party: D-INS-1-07-LB-000001-001
 Amount:      $30.00
------------------------------
CHECK
 Remitter: Morgan Lewis Bockius
 Check/Money Order Num: 12465
 Amt Tendered:  $120.00
------------------------------
Total Due:      $120.00
Total Tendered: $120.00
Change Amt:     $0.00

Morgan Lewis Bockius

1701 Market Street

Philadelphia, PA  19103

4:07-CV-000016-001

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

PAUL CAUFIELD,                              )
                                            )
                    Plaintiff,              )
                                            )
        vs.                                 )        Cause No.  4:07-cv-00016-SEB-WGH
                                            )
COLGATE-PALMOLIVE COMPANY                   )
EMPLOYEES' RETIREMENT INCOME                )
PLAN,                                       )
                    Defendant.              )

**ORDER GRANTING**
**MOTION FOR LEAVE TO APPEAR PRO HAC VICE**

      This matter came before the Court on the Motion for Leave to Appear *Pro Hac Vice* filed by the Defendant, Colgate-Palmolive Company Employees' Retirement Income Plan.

      The Court, being duly advised in the premises, hereby GRANTS the motion.

      IT IS HEREBY ORDERED that Brandi T. Johnson is granted leave to appear as additional co-counsel *pro hac vice* on behalf of Defendant Colgate-Palmolive Company Employees' Retirement Income Plan in this action.

Dated:_____3/13/07_____          _____s/ Sarah Evans Barker_____
                                    JUDGE SARAH EVANS BARKER
                                    United States District Court
                                    Southern District of Indiana

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Diane Moore Heitman
Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street
Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| PAUL CAUFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Cause No.  4:07-cv-00016-SEB-WGH |
| | ) |
| COLGATE-PALMOLIVE COMPANY | ) |
| EMPLOYEES' RETIREMENT INCOME | ) |
| PLAN, | ) |
| Defendant. | ) |

**ORDER GRANTING**
**MOTION FOR LEAVE TO APPEAR PRO HAC VICE**

This matter came before the Court on the Motion for Leave to Appear *Pro Hac Vice* filed by the Defendant, Colgate-Palmolive Company Employees' Retirement Income Plan.

The Court, being duly advised in the premises, hereby GRANTS the motion.

IT IS HEREBY ORDERED that Joseph J. Costello is granted leave to appear as additional co-counsel *pro hac vice* on behalf of Defendant Colgate-Palmolive Company Employees' Retirement Income Plan in this action.

Dated:___3/13/07_____          ___s/ Sarah Evans Barker_____
                                     JUDGE SARAH EVANS BARKER
                                     United States District Court
                                     Southern District of Indiana

BDDB01 4694469v1

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Diane Moore Heitman
Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street
Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

PAUL CAUFIELD,                              )
                                            )
              Plaintiff,                    )
                                            )
       vs.                                  )        Cause No.  4:07-cv-00016-SEB-WGH
                                            )
COLGATE-PALMOLIVE COMPANY                   )
EMPLOYEES' RETIREMENT INCOME                )
PLAN,                                       )
              Defendant.                    )
                                            )

**ORDER GRANTING**
**MOTION FOR LEAVE TO APPEAR PRO HAC VICE**

       This matter came before the Court on the Motion for Leave to Appear *Pro Hac*

*Vice* filed by the Defendant, Colgate-Palmolive Company Employees' Retirement Income Plan.

       The Court, being duly advised in the premises, hereby GRANTS the motion.

       IT IS HEREBY ORDERED that Theresa J. Chung is granted leave to appear as

additional co-counsel *pro hac vice* on behalf of Defendant Colgate-Palmolive Company

Employees' Retirement Income Plan in this action.


Dated:_____3/13/07_____          _____
                                            s/ Sarah Evans Barker
                                   _____
                                   JUDGE SARAH EVANS BARKER
                                   United States District Court
                                   Southern District of Indiana

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Diane Moore Heitman
Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street
Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

BDDB01 4694491v1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No.  4:07-cv-00016-SEB-WGH |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| Defendant. | ) | |

**ORDER GRANTING**
**MOTION FOR LEAVE TO APPEAR PRO HAC VICE**

This matter came before the Court on the Motion for Leave to Appear *Pro Hac Vice* filed by the Defendant, Colgate-Palmolive Company Employees' Retirement Income Plan.

The Court, being duly advised in the premises, hereby GRANTS the motion.

IT IS HEREBY ORDERED that Jeremy P. Blumenfeld is granted leave to appear as additional co-counsel *pro hac vice* on behalf of Defendant Colgate-Palmolive Company Employees' Retirement Income Plan in this action.

Dated:___3/13/07_____                    _____s/ Sarah Evans Barker_____
JUDGE SARAH EVANS BARKER
United States District Court
Southern District of Indiana

BDDB01 4694478v1

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Diane Moore Heitman
Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street
Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

FILED
U.S. DISTRICT COURT
DIVISION

07 MAR 16 PM 1:51

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

# WAIVER OF SERVICE OF SUMMONS

To: Martin Collins or current Plan Administrator

I acknowledge receipt of your request that I waive service of summons in the action of _Paul Caufield, and all others similarly situated v. Colgate-Palmolive Company Employees' Retirement Income Plan_, which is case number 07–CV-0016, in the United States District Court for the Southern District of Indiana. I have also received a copy of the complaint in this action, two copies of this instrument and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of the service of a summons and an additional copy of the complaint in this lawsuit by not requiring that the entity on whose behalf I am acting be served with judicial process in the manner provided by Rule 4.

The entity on whose behalf I am acting will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of summons.

I understand that a judgment may be entered against the party on whose behalf I am acting if an answer or motion under Rule 12 is not served upon you within sixty (60) days after the date of service.

2/26/07

Date

Signature

Jeremy P. Blumenfeld

Printed/typed name

[as  Counsel                    ]
[of  Defendant                  ]

Duty to avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such services unless good cause be shown for its failure to sign and return the waiver.

AO 458 (Rev. 5/85)  Appearance

# **United States District Court**

Southern _____  DISTRICT OF  Indiana _____

FILED
DISTRICT COL
NY DIVI
07 MAR 21  AM 8:
8:30
SOUTHERN DISTRI
OF INDIANA
LAURA A. BRIGG
CLERK

# **APPEARANCE**

Case Number:  4:07-cv-00016-SEB-WGH

To the Clerk of this court and all parties of record:

Enter my appearance as counsel in this case for

Colgate-Palmolive Company Employees' Retirement Income Plan.

I certify that I am admitted to practice in this court.

March 19, 2007 _____
Date

Signature

Brandi T. Johnson _____  PA #203352 ____
Print Name                       Bar Number

1701 Market Street _____
Address

Philadelphia, PA 19103-2921 _____
City          State          Zip Code

215.963.5805 _____  215.963.5001 ____
Phone Number                     Fax Number

AO 458 (Rev. 5/85)   Appearance

FILED
DISTRICT COURT
DIVISION

07 MAR 21  AM 8: 30

# United States District Court

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

Southern _____     DISTRICT OF     Indiana _____

# APPEARANCE

Case Number:   4:07-cv-00016-SEB-WGH

To the Clerk of this court and all parties of record:

Enter my appearance as counsel in this case for

Colgate-Palmolive Company Employees' Retirement Income Plan.

I certify that I am admitted to practice in this court.

March 19, 2007 _____

Date

_____
Signature

Jeremy P. Blumenfeld _____     PA #85955 _____
Print Name                       Bar Number

1701 Market Street _____
Address

Philadelphia, PA 19103-2921 _____
City          State          Zip Code

215.963.5258 _____     215.963.5001
Phone Number                     Fax Number

AO 458 (Rev. 5/85)    Appearance

FILED
DISTRICT COURT
DIVISION

07 MAR 21 AM 8: 30

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

# United States District Court

Southern _____        DISTRICT OF        Indiana _____

# APPEARANCE

Case Number:  4:07-cv-00016-SEB-WGH

To the Clerk of this court and all parties of record:

      Enter my appearance as counsel in this case for

      Colgate-Palmolive Company Employees' Retirement Income Plan.

      I certify that I am admitted to practice in this court.

March 19, 2007 _____
Date

Signature

Theresa J. Chung _____        PA # 94681 _____
Print Name        Bar Number

1701 Market Street _____
Address

Philadelphia, PA 19103-2921 \_\_\_\_\_
City        State        Zip Code

215.963.5584 _____        215.963.5001 \_\_\_\_\_
Phone Number        Fax Number

AO 458 (Rev. 5/85)   Appearance

FILED
DISTRICT COURT
DIVISION

# United States District Court

07 MAR 21 AM 8: 30

Southern _____    DISTRICT OF    Indiana _____

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

# APPEARANCE

Case Number:  4:07-cv-00016-SEB-WGH

To the Clerk of this court and all parties of record:

       Enter my appearance as counsel in this case for

       Colgate-Palmolive Company Employees' Retirement Income Plan.

       I certify that I am admitted to practice in this court.

March 19, 2007 _____
Date

Signature

Joseph J. Costello _____    PA #44327 _____
Print Name    Bar Number

1701 Market Street _____
Address

Philadelphia, PA 19103-2921 _____
City    State    Zip Code

215.963.5295 _____    215.963.5001 _____
Phone Number    Fax Number

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

PAUL CAUFIELD,

                     Plaintiff,

        vs.

COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME
PLAN,

                     Defendant.

Cause No. 4:07-cv-00016-SEB-WGH

**ORDER GRANTING DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

       This Court, having considered Defendant Colgate-Palmolive Company

Employees' Retirement Income Plan's Motion to Dismiss Plaintiff's Complaint for failure to

state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and being duly advised of its premises, now

finds that the motion should be and is hereby **GRANTED**.

       IT IS HEREBY ORDERED that Plaintiff's Complaint is hereby dismissed with

prejudice.


Dated:_____

                                 _____
                                   JUDGE SARAH EVANS BARKER
                                   United States District Court
                                   Southern District of Indiana
                                   New Albany Division

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

Douglas R. Sprong
Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street
Suite 200
Louisville, KY 40202

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

PAUL CAUFIELD,

                              Plaintiff,

            vs.

COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME
PLAN,

                              Defendant.

Cause No.  4:07-cv-00016-SEB-WGH

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT FACTUAL BACKGROUND ........................................................ 3

    A.    Overview Of Colgate-Palmolive And The Colgate-Palmolive Company
Employees' Retirement Income Plan ................................................ 3

    B.    Caufield Received A Lump Sum Benefit From The Plan In 1999 ...................... 3

III.  ARGUMENT ..................................................................................................... 4

    A.    Legal Standard Governing Motions To Dismiss Under Fed. R. Civ. P.
12(b)(6). .......................................................................................... 4

    B.    Caufield's Claims Are Time Barred Because He Waited More Than Seven
Years To File Suit. ......................................................................... 5

        1.    Caufield's Claims Are Subject To The Four-Year Catch-All
Statute Of Limitations In 28 U.S.C. § 1658 .............................. 5

        2.    Assuming Arguendo That Caufield's Claims Were Not Subject To
The Four-Year Federal Catch-All Limitations Period In Section
1658, His Claims Would Be Subject To New York's Six-Year
Statute Of Limitations. ......................................................... 11

        3.    Caufield's Claims Accrued, At The Latest, When He Received His
Lump Sum In 1999 And Consequently His Claims Are Time
Barred. ................................................................................ 14

IV.   CONCLUSION ................................................................................................. 15

## TABLE OF AUTHORITIES

Am. Nurses' Ass'n v. Illinois,
783 F.2d 716 (7th Cir. 1986) ............................................................5

Berger v. AXA Network LLC,
459 F.3d 804 (7th Cir. 2006) ...........................................2, 5, 8, 11, 12, 13

In re Brightpoint, Inc. Securities Litigation,
No. IP99-0870-C-H/G, 2001 WL 395752 (S.D. Ind. Mar. 29, 2001)............................3

Calobrace v. America Nat'l Can Co.,
No. 93C 999, 1995 WL 557410 (N.D. Ill. Sept. 19, 1995)............................5

Carey v. Int'l Bhd .of Elec. Workers Local 363 Pension Plan,
201 F.3d 44 (2d Cir. 1999)......................................................13, 14, 15

City of Rancho Palos Verdes v. Abrams,
544 U.S. 113 (2005)......................................................................7

Cooper v. IBM Pers. Pension Plan,
457 F.3d 636 (7th Cir. 2006), cert. denied, 127 S. Ct. 1143 (2007) ............................1

County of McHenry v. Ins. Co. of the West,
438 F.3d 813 (7th Cir. 2006) ..............................................................4

Daill v. Sheet Metal Workers' Local 73 Pension Fund,
100 F.3d 62 (7th Cir. 1996) ........................................................14, 15

Doherty v. City of Chicago,
75 F.3d 318 (7th Cir. 1996) ..............................................................3

Gaines v. Guidant Corp.,
1:03cv00892-SEB-WTL, 2004 WL 2538374 (S.D. Ind. Nov. 8, 2004)............................3

Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan,
713 F.2d 247 (7th Cir. 1983) ..............................................................5

Johnson v. Railway Express Agency, Inc.,
421 U.S. 454 (1975)......................................................................15

Jones v. R.R. Donnelley & Sons Co.,
541 U.S. 369 (2004).............................................................2, 5, 6, 8, 10, 11

Laurenzano v. Blue Cross and Blue Shield of Ma., Inc.,
134 F. Supp. 2d 189 (D. Mass. 2001) ........................................................................................15

Lekas v. Briley,
405 F.3d 602 (7th Cir. 2005) .......................................................................................................5

Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan,
196 F. Supp. 2d 1260 (N.D. Ga. 2002) ......................................................................................11

Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan,
221 F.3d 1235 (11th Cir. 2000), cert. denied, 532 U.S. 967 (2001) ............................................11

Miles v. NY State Teamsters Conf. Pension Ret. Fund Employee Pension Benefit Plan,
698 F.2d 593 (2d Cir. 1983), cert. denied, 464 U.S. 829 (1983) ..................................................13

Mohasco Corp. v. Silver,
447 U.S. 807 (1980).....................................................................................................................16

Nino v. Haynes Int'l,
No. 1:05-CV-0602-JDT-TAB, 2005 WL 4889258 (S.D. Ind. Aug. 19, 2005)..........................7, 11

Perry v. Sullivan,
207 F.3d 379 (7th Cir. 2000) .......................................................................................................4

Small v. Chao,
398 F.3d 894 (7th Cir. 2005) .......................................................................................................4

Tolle v. Carroll Touch, Inc.,
977 F.2d 1129 (7th Cir. 1992) ......................................................................................................8

United States v. Wood,
925 F.2d 1580 (7th Cir. 1991) ......................................................................................................3

Wilczynski v. Lumbermens Mut. Cas. Co.,
93 F.3d 397 (7th Cir. 1996) ........................................................................................................14

Wilson v. Garcia,
471 U.S. 261 (1985).....................................................................................................................15

Wroblewski v. City of Washburn,
965 F.2d 452 (7th Cir. 1992) .......................................................................................................5

## FEDERAL STATUTES

28 U.S.C. § 1658(a) ...........................................................................................1, 5, 8

29 U.S.C. §1055(b)(1) ..............................................................................................4

29 U.S.C. § 1053(e) .................................................................................................10

29 U.S.C. § 1055(g)(1) (1999) ..................................................................................4

29 U.S.C. § 1055(g)(2) ..............................................................................................4

29 U.S.C. § 1055(g)(3) .............................................................................................10

## MISCELLANEOUS AUTHORITY

Career Spotlight: Cashing Out Your Pension, U.S. NEWS & WORLD REPORT,
Oct. 24, 2005, http://www.usnews.com/usnews/biztech/articles/051024/24career.htm .................9

Valuation of Plan Benefits and Plan Assets Following Mass Withdrawal,
58 Fed. Reg. 5128 (Jan. 19, 1993) ...........................................................................10

Valuation of Plan Distributions,
60 Fed. Reg. 17216-01, 17217 (Apr. 5, 1995).............................................................9

## I.    **INTRODUCTION**

Plaintiff Paul Caufield ("Plaintiff" or "Caufield") is a former employee of the Colgate-Palmolive Company ("Colgate" or the "Company") and a former participant in the Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan").  (Compl. ¶¶ 5-6).  The Plan is a cash balance plan under ERISA.[1]  (Compl. ¶¶ 7-8).  In his Complaint, Caufield alleges that the manner in which his lump sum pension benefit was calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 22-23).  Specifically, Caufield alleges that when he retired in February 1999, the Plan paid him a lump sum benefit equal to his cash balance account balance.  (Compl. ¶¶ 9-11).  He claims, however, that the Plan was required to pay him a higher amount, based on the value of his normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 9-11, 22-23).  Caufield purports to bring this action on behalf of a class of former Plan participants who received lump sum distributions allegedly calculated in the same manner.  (Compl. ¶¶ 13, 17).

Putting aside the underlying merits of Caufield's claims,[2] his claims are time barred.

Although ERISA contains no specific statute of limitations for Caufield's claims, 28 U.S.C. § 1658(a) establishes a four-year "catch-all" statute of limitations for any federal claims "arising under an Act of Congress enacted after" December 1, 1990.  28 U.S.C. § 1658(a).  Section 1658(a) applies where an Act of Congress amended an existing statute after December 1, 1990, if the claim is based on the amended provisions of the statute.  See 28 U.S.C. § 1658(a);

---

[1]  For an explanation of what cash balance plans are and how they work, see Cooper v. IBM Personal Pension Plan, 457 F.3d 636 (7th Cir. 2006), cert. denied, 127 S. Ct. 1143 (2007).

[2]  The Plan disagrees with Caufield's characterization of the law and his entitlement to any additional benefits under the Plan or ERISA, but does not address the underlying merits of Caufield's claims herein.

Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-84 (2004).  In this case, the Retirement Protection Act of 1994 materially altered both 29 U.S.C. §§ 1053(e) and 1055(g) – the statutory provisions upon which Caufield relies in his Complaint – to change the method for calculating lump sum present values under ERISA.  Thus, Caufield's claims are subject to the federal four-year statute of limitations in 28 U.S.C. § 1658(a).  Caufield received his lump sum in 1999, and he did not pursue the Plan's internal appeal procedures because he knew that such appeal would be denied.  (Compl. ¶¶ 9, 12).  Yet Caufield waited more than *seven years* to file this Complaint, and thus, his claims are time barred.

Even if the four-year statute of limitations did not apply, Caufield's claims would still be time barred.  The Seventh Circuit in Berger v. AXA Network LLC, 459 F.3d 804 (7th Cir. 2006), held that where Section 1658(a) does not apply (because the relevant statutory section of ERISA was not amended after 1990), courts must apply the most analogous statute of limitations of the state "with *the most significant relationship to the parties and the transaction*."  Id. at 808, 813. The Court's analysis in AXA Network compels application of New York law in this case. Although Caufield lived in Indiana and was paid his benefit in Indiana, New York's statute of limitations applies because Colgate is based in New York, the Plan was administered in New York, and Caufield alleges that all former Plan participants who elected lump sums, regardless of where they lived or worked, were affected by the Plan's alleged ERISA violation.  The statute of limitations under New York law is six years, and his claim accrued when he received his lump sum in 1999.  Accordingly, Caufield's Complaint would still be time barred.

Respectfully, the Complaint should be dismissed.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Overview Of Colgate-Palmolive And The Colgate-Palmolive Company Employees' Retirement Income Plan.

Colgate is a leading consumer products company whose products are marketed in over 200 countries and territories throughout the world.  (See Excerpts from Colgate-Palmolive, SEC Form 10-K filed 2/23/2007, Motion, Ex. A at 1).[3]  The Company is headquartered in New York and has other facilities and employees located throughout the country.  (See Motion, Ex. A at 2, 6, 7).

Colgate sponsors the Plan, which is a defined benefit plan.  (Compl. ¶ 2).  The Plan is administered in New York.  (See Excerpt from Colgate-Palmolive Company Employees' Retirement Income Plan, Form 5500 filed Oct. 2005, Motion, Ex. B at 1; Letter from Plaintiff's counsel to the Plan Administrator in New York, Motion, Ex. C).

### B.    Caufield Received A Lump Sum Benefit From The Plan In 1999.

Caufield retired in February 1999 and elected to take his pension benefits in the form of a

---

[3]    SEC filings and other public disclosures are appropriately considered under Rule 12(b)(6) See Doherty v. City of Chicago, 75 F.3d 318, 325 n.4 (7th Cir. 1996) (courts can take judicial notice of matters of public record on motion to dismiss) (citation omitted); United States v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991) (courts may take into consideration documents incorporated by reference to the pleadings and matters of public record); Gaines v. Guidant Corp., No. 1:03CV00892-SEB-WTL, 2004 WL 2538374, at *9, n.20 (S.D. Ind. Nov. 8, 2004) (Barker, J.) (taking judicial notice on motion to dismiss under Rule 12(b)(6) of Medical Device Reports filed with the FDA); In re Brightpoint, Inc. Securities Litigation, No. IP99-0870-C-H/G, 2001 WL 395752, at *15 n.6 (S.D. Ind. Mar. 29, 2001) (courts may properly consider the content of public documents filed with the SEC without converting a motion to dismiss to a motion for summary judgment).

lump sum.[4]  (Compl. ¶ 9).  The lump sum payment to Caufield was equal to his cash balance account balance.  (Id.).  Caufield did not utilize the Plan's internal appeal process (after his initial benefit election) because:

> [H]is claims are based solely on discrete and non-fact intensive statutory violations of ERISA.  Furthermore, exhaustion would be futile in that the requirements described above [in his complaint] have been the subject of numerous, well-publicized court cases (including from the Seventh Circuit) and agency rulings; as a result, the requirement is well known to the Plan, its fiduciaries and advisors, yet the Plan failed to comply with the [sic] ERISA when it paid Mr. Caufield's lump sum distribution and has also failed to correct his lump sum distribution.  Thus, the Plan and its fiduciaries have already determined that it either complies with the law and/or that it need not comply with the requirements described above.

(Compl. ¶ 12).  Caufield does not allege any facts between the date he received his lump sum in 1999 and the filing of his Complaint on February 12, 2007.

## III.    ARGUMENT

### A.    Legal Standard Governing Motions To Dismiss Under Fed. R. Civ. P. 12(b)(6).

A dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate if, on the face of the complaint, a party's claims are barred by the statute of limitations.  Small v. Chao, 398 F.3d 894, 898 (7th Cir. 2005) (citing Perry v. Sullivan, 207 F.3d 379, 382 (7th Cir. 2000)).  In ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true.  See County of McHenry v. Ins. Co. of the West, 438 F.3d 813, 817 (7th Cir. 2006).  Importantly, however, a plaintiff "may plead himself out of court by including factual allegations which if true show his legal

---

[4]   This was a voluntary election by Caufield.  (Compl. ¶ 9).  Under ERISA, the default form of payment is an annuity or a joint and survivor annuity for married participants.  29 U.S.C. §§ 1055(b)(1)(C)(ii) and 1055(g)(1) (1999).  Participants must make a written election to receive their benefits in any other form, e.g., a lump sum.  Id. § 1055(g)(2).

-4-

rights were not invaded." <u>Lekas v. Briley</u>, 405 F.3d 602, 613-14 (7th Cir. 2005) (<u>quoting</u> <u>Am.</u> <u>Nurses' Ass'n v. Illinois</u>, 783 F.2d 716, 725 (7th Cir. 1986)); <u>see also</u> <u>Wroblewski v. City of</u> <u>Washburn</u>, 965 F.2d 452, 459 (7th Cir. 1992) ("We are not required to ignore facts alleged in the complaint that undermine the plaintiff's claim.") (citation omitted).

### B. Caufield's Claims Are Time Barred Because He Waited More Than Seven Years To File Suit.

#### 1. Caufield's Claims Are Subject To The Four-Year Catch-All Statute Of Limitations In 28 U.S.C. § 1658.

ERISA itself does not specify a statute of limitations for claims alleging statutory violations. <u>See</u> <u>Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan</u>, 713 F.2d 247, 251 (7th Cir. 1983) (ERISA "does not contain a statute of limitations for the bringing of civil actions"); <u>Calobrace v. Am. Nat'l Can Co.</u>, No. 93 C 999, 1995 WL 557410, at *8 (N.D. Ill. Sept. 19, 1995) ("Congress has not provided a statute of limitations for non-fiduciary breaches."). Accordingly, the Seventh Circuit has explained that the first step in any statute of limitations analysis under ERISA is to determine whether the federal four-year "catch-all limitations period" in 28 U.S.C. § 1658(a) applies. <u>AXA Network</u>, 459 F.3d at 808 (considering whether Section 1658 applies to ERISA claim; also noting that Section 1658 is a "catch-all limitations period for federal causes of action that do not have their own limitations periods").

28 U.S.C. § 1658(a) provides that:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues.

<u>Id.</u> The Supreme Court in <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369 (2004), held that Section 1658 is not limited to new statutes or new causes of action, but also includes

amendments that change the rights or obligations of the parties at issue.  Id. at 381 (internal

citation omitted).  The Court explained:

> The House Report accompanying the final bill [enacting Section
> 1658] confirms that Congress was keenly aware of the problems
> associated with the practice of borrowing state statutes of
> limitations, and that a central purpose of § 1658 was to minimize
> the occasions for that practice.
>
> *    *    *
>
> Congress routinely creates new rights of action by amending
> existing statutes, and *"[a]ltering statutory definitions, or adding
> new definitions of terms previously undefined*, is a common way of
> amending statutes."  Nothing in the text or history of § 1658
> supports an interpretation that would limit its reach to entirely new
> sections of the United States Code.  An amendment to an existing
> statute is no less an "Act of Congress" than a new, stand-alone
> statute.  What matters is the substantive effect of the enactment –
> the creation of new rights of action and corresponding liabilities –
> not the format in which it appears in the Code.

Id. at 380-81 (emphasis added) (citations omitted).  The Supreme Court further explained that

Section 1658 should be given expansive application "that fills more rather than less of the void"

caused by the prior absence of a federal residual statute of limitations.  Id. at 380.  Thus, the

Supreme Court explained, the central question in determining the applicability of Section 1658 is

whether "the plaintiff has alleged a violation of the relevant statute as it stood prior to December

1, 1990, or whether her claims necessarily depend on a subsequent amendment."  Id. at 384.

    In Jones, for example, the petitioners alleged harassment and wrongful termination

claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981.  Although the statute had been

codified since 1866, the petitioners' particular claims were based on statutory definitions that

were amended by Congress in 1991.  See id. at 372.  Therefore, the Supreme Court held that the

petitioners' claims were governed by the four-year limitations period in Section 1658.

Similarly, in <u>Nino v. Haynes Int'l</u>, No. 1:05-cv-0602-JDT-TAB, 2005 WL 4889258 (S.D. Ind. Aug. 19, 2005), this Court, per Judge Tinder, addressed the applicability of Section 1658 to a claim of employment discrimination based on military service.  Although the Selective Training and Service Act had been codified since 1940, and replaced by the Veterans' Reemployment Rights Act ("VRRA") in 1974, "Congress replaced the VRRA with USERRA[5] [in 1994] to clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions."  <u>Id.</u> at *2.  Judge Tinder held that the plaintiff's USERRA claim was subject to the four-year limitations period in Section 1658 because USERRA allowed plaintiffs to recover liquidated damages – damages not previously available under VRRA – thus changing the parties' potential rights and liabilities.  The Court explained:

> *USERRA materially changed the existing VRRA law by allowing liquidated damages, a relief that was not previously available to a plaintiff under VRRA.  This change increased the rights available to the plaintiff, and the possible liabilities of the defendant.  This important change requires the application of § 1658(a)'s four-year statute of limitations.*
>
> *   *   *
>
> Perhaps [plaintiff] would have had a claim against [defendant] under the VRRA if the Act was still current law.  However, the VRRA has been replaced by USERRA.

<u>Id.</u> at *2, *4 (emphasis added).  <u>See also City of Rancho Palos Verdes v. Abrams</u>, 544 U.S. 113, 124, n.5 (2005) ("Since the claim here rests upon violation of the post-1990 [Telecommunications Act of 1996, which amended pre-existing law], § 1658 would seem to

---

[5]    USERRA stands for the "Uniformed Services Employment and Reemployment Act of 1994."  <u>Nino</u>, 2005 WL 4889258, at *1.

apply" because the "4-year limitations period applies to all claims made possible by a post-1990 congressional enactment.") (internal quotations, citations and brackets omitted).

Consistent with the Supreme Court's holding in Jones and this Court's opinion in Nino, ERISA claims that are based on a statutory provision that was amended after 1990 are subject to the four-year limitations period in Section 1658 if the amendment altered the parties' rights and obligations at issue.  Thus, when the Seventh Circuit in AXA Network considered the applicability of Section 1658 to an ERISA claim, the court looked to whether the specific substantive provision at issue (29 U.S.C. § 1140) had been amended to alter the parties' rights and obligations.[6]  See AXA Network, 459 F.3d at 808 (Section 1658(a) does not apply to claim alleging violation of ERISA Section 510, 29 U.S.C. § 1140, because "§ 510 of ERISA has not been amended since its original enactment in 1974").

Jones, AXA Network, and Nino compel application of the federal four-year limitations period to Caufield's claims.  Caufield alleges a violation of ERISA Sections 203(e) and 205(g)(3), 29 U.S.C. §§ 1053(e) and 1055(g)(3).  Although these sections were originally codified before 1990, they both were substantially amended in 1994 by the Retirement Protection Act of 1994 ("RPA of 1994"), which is, of course, "an Act of Congress enacted after" 1990.  28 U.S.C. § 1658(a).  Moreover, the RPA of 1994 amendments changed the method of calculating

---

[6]  Claims alleging violations of 29 U.S.C. § 1140 (the provision at issue in AXA Network) – like the claims at issue in this case and all other ERISA claims – are enforced through ERISA's carefully crafted enforcement mechanism set forth in ERISA Section 502, 29 U.S.C. § 1132.  See Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1133 (7th Cir. 1992) ("A Section 510 claim is made enforceable through Section 502(a)(3) and (e) of ERISA.").  Of note, the Seventh Circuit in AXA Network looked to whether the substantive provision of ERISA at issue had been amended, not whether ERISA's enforcement provisions had been amended. AXA Network, 459 F.3d at 808.

lump sum present values under ERISA Sections 203(e) and 205(g)(3) – the very calculation that lies at the crux of Caufield's claims against the Plan.[7]

Specifically, Caufield alleges that the Plan violated 29 U.S.C. §§ 1053(e) and 1055(g)(3) because the lump sum in his account balance was "less than the present value of his normal retirement benefit in violation of ERISA §§ 203(e) and 205(g)."[8]  (Compl. ¶ 23).  Thus, the entire thrust of Caufield's claim relates to the calculation of the lump sum present value of his benefit.  In order to calculate a present value of an annuity benefit, one needs to know the governing mortality assumptions (set forth on a "mortality table") and discount rate.[9]  Before the RPA of 1994, 29 U.S.C. §§ 1053(e) and 1055(g)(3) did not prescribe any particular mortality table, but instead permitted plans to make their own mortality assumptions.  See Valuation of Plan Distributions, 60 Fed. Reg. 17216-01, 17217 (Apr. 5, 1995) ("Prior to amendments made by RPA '94, section 417(e)(3) restricted the interest rate to be used under a plan to calculate the present value of a participant's benefit, but did not impose any restrictions on the mortality table to be used for that purpose.").  In addition, before the RPA of 1994, the Pension Benefit Guarantee Corporation ("PBGC") had discretion to set the "applicable interest rate" for

---

[7]  To Defendant's knowledge, no court has previously considered whether or not the four-year residual statute of limitations in Section 1658 applies to alleged violations of 29 U.S.C. §§ 1053(e) and 1055(g)(3) as those statutes were amended by the RPA of 1994.

[8]  Caufield also asserts this claim under Internal Revenue ("IRC") Section 417(e), which is the tax provision that parallels ERISA Sections 203(e) and 205(g)(3).

[9]  See, e.g., Kim Clark, Career Spotlight: Cashing Out Your Pension, U.S. NEWS & WORLD REPORT, Oct. 24, 2005, http://www.usnews.com/usnews/biztech/articles/051024/24career.htm (lump sums are based on the average mortality for all men and women combined at each age, and are calculated by adding up all the payments that should be made to a person based on his or her expected life span, then calculating the present value of that stream of income).

discounting to present value and calculating lump sums.[10]  29 U.S.C. § 1053(e) (1993 Ed.); 29

U.S.C. § 1055(g)(3) (1993 Ed.).  The RPA of 1994 changed both of these statutory requirements.

First, the RPA of 1994 defined for the first time an "applicable mortality table" and mandated

that plans use that table.  29 U.S.C. § 1053(e) (1995 Ed.);[11] 29 U.S.C. § 1055(g)(3) (1995 Ed.).

Thus, pursuant to the RPA of 1994, plans no longer had the right to make their own mortality

assumptions.  Second, the RPA of 1994 changed the statutory definition of the "applicable

interest rate" to mean the "annual rate of interest on 30-year Treasury securities."  29 U.S.C. §

1053(e) (1995 Ed.); 29 U.S. § 1055(g)(3) (1995 Ed.).  As such, PBGC no longer had the

discretion to set the discount rate for calculating lump sums, but instead the rate was set by the

financial markets.

    As reflected above, the substantive effect of the RPA of 1994 was to create new rights

and corresponding liabilities with regard to the calculation of lump sum benefits by "altering

statutory definitions [and] adding new definitions of terms previously undefined."  <u>Jones</u>, 541

---

[10]  The PBGC apparently set its interest rates for valuation purposes by examining a survey of
private sector annuity prices, using those prices as a starting point, and selecting a valuation
interest rate (or rates) that when combined with the PBGC mortality table would accurately
replicate the price structure of certain private annuity products.  <u>See</u> Valuation of Plan
Benefits in Single-Employer Plans; Valuation of Plan Benefits and Plan Assets Following
Mass Withdrawal, 58 Fed. Reg. 5128 (Jan. 19, 1993).

[11]  29 U.S.C. § 1053(e) was amended to eliminate any substantive provisions regarding rates or
mortality assumptions, but instead merely requires that any present value calculations be
performed in accordance with the amended provisions of 29 U.S.C. § 1055(g)(3).

U.S. at 381.[12]  Accordingly, and because Caufield's claims are based on "an Act of Congress

enacted" after 1990, Caufield's claims are subject to the four-year residual statute of limitations

in 28 U.S.C. § 1658(a).[13]  See Jones, 541 U.S. at 381; AXA Network, 459 F.3d at 813; Nino,

2005 WL 4889258, at *2, *4.

      **2.**        **Assuming *Arguendo* That Caufield's Claims Were Not Subject To The Four-Year Federal Catch-All Limitations Period in Section 1658, His Claims Would Be Subject To New York's Six-Year Statute Of Limitations.**

     As explained above, Caufield's claims are based on statutes that were materially

amended by the RPA of 1994, and, therefore, his claims are subject to the federal four-year

limitations period in 28 U.S.C. § 1658.  Nevertheless, the Plan anticipates that Caufield will

attempt to avoid application of the four-year limitations period to try to save his claims.  Even

assuming *arguendo* that Caufield's claims were not subject to the four-year limitations period in

---

[12]  See also Lyons v. Georgia-Pacific Corp. Salaried Employees Retirement Plan, 196 F. Supp. 2d 1260, 1271 (N.D. Ga. 2002); ("Congress passed the Retirement Protection Act in 1994, which *substantially altered* the language of § 203(e) [29 U.S.C. § 1053(e)].") (emphasis added).  In fact, the Eleventh Circuit in Lyons v. Georgia-Pacific Corp. Salaried Employees Retirement Plan, 221 F.3d 1235 (11th Cir. 2000), cert. denied, 532 U.S. 967 (2001) held that a plaintiff who received his lump sum distribution from a cash balance plan before the RPA of 1994 could not represent plan participants who received their lump sum benefits after the RPA of 1994, because the law regarding the calculation of lump sum present values – and the rights and obligations of plans and plan participants with respect to lump sum calculations – had been materially altered by the RPA of 1994.  Id. at 1253.

[13]  Although Caufield alleges his claim in two separate counts, both are premised on the same statutory provisions, 29 U.S.C. §§ 1053(e) and 1055(g)(3).  Count II alleges that the Plan's conduct "resulted in an impermissible forfeiture of benefits" that is prohibited by ERISA Section 203(a) (29 U.S.C § 1053(a)) and Internal Revenue Code ("IRC") Section 411(a), as implemented by Treasury Regulation 1.411(a)-4 and 4T.  In fact, Count II incorporates by reference all prior paragraphs of the Complaint.  (Compl. ¶ 25).  Count II then alleges that because 29 U.S.C. §§ 1053(e) and 1055(g)(3) entitled Caufield to certain benefits, the failure to pay those benefits also constituted an impermissible forfeiture under 29 U.S.C. § 1053(a).  Thus, Count II necessarily depends on the same statutory provisions (29 U.S.C. §§ 1053(e) and 1055(g)(3)) that were amended by the RPA of 1994 and also is subject to the four-year residual statute of limitations in 28 U.S.C. § 1658(a).

Section 1658, however, his claims would be subject to New York's six-year statute of limitations and would be time barred.

The Seventh Circuit's decision in <u>AXA Network</u> addressed this very issue.  <u>AXA Network</u> involved plaintiffs who worked and resided in Illinois who alleged that they were denied certain benefits in Illinois because of a companywide change in benefit policy, in violation of ERISA Section 510, 29 U.S.C. § 1140.  The court ruled that the plaintiffs' claims were not subject to the residual four-year limitations period in 28 U.S.C. § 1658 because "§ 510 of ERISA has not been amended since its original enactment in 1974."  <u>AXA Network</u>, 459 F.3d at 808.  Accordingly, the Seventh Circuit held that the plaintiffs' claims were subject to the most analogous statute of limitations of the "state *with the most significant relationship to the parties and to the transaction*."  <u>Id.</u> at 813 (emphasis added).  In determining that New York law – and not Illinois law – controlled, the court held:

> In our view, New York is the state with the most significant relationship to the parties and to the transaction.  The occurrence at issue here was the corporate decision on the part of [defendant] to alter the criterion for determining whether an employee ought to be considered a full-time insurance salesman.  That change was made by [defendant's] management in New York and documented by evidence and by witnesses in New York.  Moreover, the decision was applicable to all [defendant]'s salesmen, not simply to those in Illinois.  Although the named plaintiffs reside in Illinois, other members of the class reside in states other than Illinois.  Thus, Illinois is simply a spoke rather than the hub of this lawsuit.

<u>Id.</u> at 813.  The Seventh Circuit also recognized that were it to reach any other conclusion "this class action would be governed by a 'crazy quilt' of limitations periods and the federal interest in uniformity would be rendered nugatory."  <u>AXA Network</u>, 459 F.3d at 814.  The Court concluded that applying New York law better served the federal policies at issue in furthering uniformity of treatment.  <u>Id.</u>

-12-

Likewise, in this situation, New York has the "most significant relationship" to the claims alleged.  As in AXA Network, Colgate is headquartered in New York, the Plan Administrator is in New York, and the Plan is administered in New York.  (Motion, Ex. A, at 6; Motion, Ex. B, at 1; Motion, Ex. C).  Caufield also alleges that the same plan terms and plan administration uniformly affected Plan participants throughout the country:

- "The computation of a participant's lump sum distribution and the amount of lump sum distributions is standardized in that the amount of the lump sum distribution for each member of the Class was determined in the same manner as described above."  (Compl. ¶ 17).

- "Mr. Caufield's claims are typical of the claims of the Class members in that his lump sum distribution was calculated in the same fashion as the rest of the Class, and his rights, as well as those of the Class as a whole, are similarly provided for under the Plan document and applicable provisions of ERISA."  (Compl. ¶ 19).

In these circumstances, as in AXA Network, Indiana is "simply a spoke rather than the hub of [the] lawsuit," and New York's statute of limitations controls.  Id. at 813.  Indeed, New York is the only jurisdiction with which (for purposes of this litigation) all the putative class members have any meaningful contact.

Under New York law, the statute of limitations for ERISA claims seeking benefits (whether based on statute or the terms of a plan) is six years.  See, e.g., Miles v. New York State Teamsters Conference Pension Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983) (New York's six-year limitations period applies to ERISA claims) (citing N.Y.C.P.L.R. § 213), cert. denied, 464 U.S. 829 (1983); Carey v. Int'l Bhd. of Electrical Workers Local 363 Pension Plan, 201 F.3d 44, 46-47 (2d Cir. 1999) (same).

### 3.    Caufield's Claims Accrued, At The Latest, When He Received His Lump Sum In 1999 And Consequently His Claims Are Time Barred.

Caufield applied for and received his lump sum pension in 1999 and, at that point, he knew that his benefit was equal to his account balance.  (Compl. ¶ 12).  Although the limitations period under ERISA sometimes does not start running until a plaintiff has exhausted his or her internal administrative remedies, that is only where a plaintiff actually *utilizes* those procedures, either formally or informally.  See Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62, 66 (7th Cir. 1996) (participant's cause of action accrued when fund denied the participant's informal letters requesting benefits, and *not* when he later filed a formal application for benefits); Carey, 201 F.3d at 49 (cause of action under ERISA accrued when Plan denied the participant's request for benefits, and not when his formal application for benefits was later denied).  Here, Caufield specifically alleges that he refused to utilize the Plan's internal appeal procedures (after his initial request for his pension benefits) *because he knew that to do so "would be futile*."  (Compl. ¶ 12) (emphasis added).  As the Seventh Circuit has explained, "[i]n order to come within the futility exception to the exhaustion requirement, a plaintiff must show that it is certain that [his] claim will be denied on appeal, not merely that [he] doubts that an appeal will result in a different decision."  Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 404 (7th Cir. 1996) (internal quotations and citations omitted).  Thus, by alleging futility, Caufield necessarily admits that he knew for "certain" that any appeal he could have filed under the Plan would have been denied.  Accordingly, his claim accrued when he received his lump

sum in 1999.[14]  As one court explained in similar circumstances:

> *The lump sum distribution represents the actual injury to each class member and marks the time after which delay in seeking redress would be unreasonable.* . . .  If a class member did not seek internal remedies, whether intentionally or not, this Court will *not* extend the statute of limitations by assuming that the class member exhausted his internal remedies some arbitrary number of days after the lump sum distribution.  Thus, *each class member's cause of action accrued when he received his lump sum distribution unless he sought internal remedies.*

<u>Laurenzano v. Blue Cross and Blue Shield of Massachusetts, Inc.</u>, 134 F. Supp. 2d 189, 210 (D. Mass. 2001) (emphasis added).

Caufield waited more than seven years after receiving his lump sum to bring this lawsuit. In the interim, he did nothing to pursue any of the Plan's internal appeal procedures because he knew such claim was "certain" to be denied.  His claims are untimely and they should be dismissed.

## IV.    <u>CONCLUSION</u>

Statutes of limitations "inevitably reflect[] a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones."  <u>Johnson v. Railway Express Agency, Inc.</u>, 421 U.S. 454, 463-64 (1975); <u>Wilson v. Garcia</u>, 471 U.S. 261, 271 (1985).  As such, strict adherence to

---

[14]  Indeed, this is the only accrual date that gives any meaning to statutes of limitations, particularly because Caufield refused to appeal the calculation of his lump sum distribution, and he does not allege a single event that occurred between the date he received his lump sum and the date he filed his Complaint in 2007.  <u>See</u> <u>Daill</u>, 100 F.3d at 67 (rejecting plaintiff's argument that would render the "limitations period . . . meaningless").  <u>See also</u> <u>Carey</u>, 201 F.3d at 49 (rejecting argument that claim accrued only upon the denial of his formal application for benefits where such a rule would render the "limitation period meaningless" where a plaintiff could sue "long after he initially pursued his claims with the plan" merely by "delaying his formal application for benefits").

limitations periods "is the best guarantee of evenhanded administration of the law." <u>Mohasco</u>

<u>Corp. v. Silver</u>, 447 U.S. 807, 826 (1980).

      For each of the foregoing reasons, Plaintiff's Complaint should be dismissed.


Dated:  April 16, 2007

                        Respectfully submitted,

                        Baker & Daniels LLP


                        By:  ___s/Philip J. Gutwein II_____
                        Ellen E. Boshkoff (#16365-49)
                        Philip J. Gutwein II (#22986-53)
                        300 N. Meridian Street
                        Suite 2700
                        Indianapolis, IN  46204
                        Telephone:  (317) 237-0300
                        Facsimile:  (317) 237-1000
                        ellen.boshkoff@bakerd.com
                        philip.gutwein@bakerd.com

                        Joseph J. Costello*
                        Jeremy P. Blumenfeld*
                        Theresa J. Chung*
                        MORGAN, LEWIS & BOCKIUS LLP
                        1701 Market Street
                        Philadelphia, PA 19103
                        Telephone:  (215) 963-5295/5258/5584
                        Fax:  (215) 963-5001
                        jcostello@morganlewis.com
                        jblumenfeld@morganlewis.com
                        tchung@morganlewis.com

                        Attorneys for Defendant
                        Colgate-Palmolive Company Employees'
                        Retirement Income Plan

                        *Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2007, a copy of the foregoing Defendant's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

> Douglas R. Sprong
> KOREIN TILLERY LLC
> 505 N. Seventh Street
> Suite 3600
> St. Louis, MO 63101
> Email: dsprong@koreintillery.com

> T. J. Smith
> Law Offices of T. J. Smith
> 600 W. Main Street
> Suite 200
> Louisville, KY 40202
> Email: tjsmith@smithhelman.com

I hereby certify that on April 16, 2007, a copy of the foregoing Defendant's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint was mailed, by first class U. S. mail, postage prepaid, and properly addressed to the following:

> Diane Moore Heitman
> KOREIN TILLERY LLC
> 505 N. Seventh Street
> Suite 3600
> St. Louis, MO 63101

> William K. Carr
> Law Offices of William K. Carr
> 2222 E. Tennessee Avenue
> Denver, CO 80209

> _____
>          s/Philip J. Gutwein II

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

PAUL CAUFIELD,                 )
                                        )
             Plaintiff,      )
                                          )     CAUSE NO.  4:07-cv-00016-SEB-WGH
       vs.                    )
                                        )
COLGATE-PALMOLIVE COMPANY   )
EMPLOYEES' RETIREMENT INCOME  )
PLAN,                            )
                                        )
            Defendant.     )

**JOINT REQUEST FOR EXTENSION OF TIME**

Plaintiff Paul Caufield and Defendant Colgate-Palmolive Company Employees'

Retirement Income Plan, by and through their respective counsel, move this Court for the

following:

1.     Plaintiff hereby requests an extension of time, to and including May 15, 2007, to

respond to Defendant's Motion to Dismiss Plaintiff's Complaint.   Plaintiff's Response is

currently due on May 1, 2007.  Defendant consents.

2.     Defendant hereby requests an extension of time, to and including June 5, 2007, to

reply to Plaintiff's Response.   Plaintiff consents.

WHEREFORE, Plaintiff Paul Caufield and Defendant Colgate-Palmolive Company

Employees' Retirement Income Plan request that the Court extend the deadlines within which to

file their respective responses to May 15, 2007 and June 5, 2007.

1

Respectfully submitted,


/s/ T.J. Smith
T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

Douglas R. Sprong
Steven A. Katz
Korein Tillery, LLC
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile
dsprong@koreintillery.com
skatz@koreintillery.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

*Attorneys for Plaintiff*

/s/ Theresa J. Chung
Theresa J. Chung
Joseph J. Costello
Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5295/5258/5584 - Telephone
(215) 963-5001 - Facsimile
tchung@morganlewis.com
jcostello@morganlewis.com
jblumenfeld@morganlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

A copy of the foregoing was e-mailed on April 25, 2007, per the Court's electronic filing system, to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

/s/ T.J. Smith

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

PAUL CAUFIELD,                          )
                                        )
                    Plaintiff,          )
                                        )       CAUSE NO.  4:07-cv-00016-SEB-WGH
          vs.                           )
                                        )
COLGATE-PALMOLIVE COMPANY               )
EMPLOYEES' RETIREMENT INCOME            )
PLAN,                                   )
                                        )
                    Defendant.          )


## ORDER

      This cause is before the Court on the parties' Joint Request for Extension of Time in this

case.  Having reviewed the motion, the Court now GRANTS the request.  Plaintiff's Response to

Defendant's Motion to Dismiss is due May 15, 2007.  Defendant's Reply is due June 5, 2007.

      SO ORDERED.

Dated: _____


_____
Judge, United States District Court
Southern District of Indiana


1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO.  4:07-cv-00016-SEB-WGH |
| vs. | ) | |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO APPEAR PRO HAC VICE

COMES NOW Counsel, **Douglas R. Sprong**, pursuant to Local Rule and in support of his Motion to Appear *Pro Hac Vice* on behalf of Plaintiffs in this matter alone, states as follows:

1.    I am an attorney at law duly licensed to practice for all the courts of the States of Missouri and Illinois and am a Partner with the law firm KOREIN TILLERY, LLC, 505 N. 7th Street, Suite 3600, St. Louis, Missouri 63101.

2.    I am not under suspension or disbarment in any jurisdiction, nor is any member of my firm.

3.    By this motion, I seek to be associated in as counsel for Plaintiffs, in this case only, with T. J. Smith, Law Offices of T.J. Smith, LLC, 500 West Jefferson Street, PNC Plaza, Suite 2000, Louisville, KY 40202.

4.    Upon entry of my appearance in this matter, I agree to comply with any applicable Rules of Professional Conduct.  I understand that in so doing I will become subject to discipline by this Court.

1

Respectfully submitted,

Douglas R. Sprong
KOREIN TILLERY, LLC
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Telephone:    (314) 241-4844
Fax:            (314) 241-3525


STATE OF MISSOURI            )
                             )  SS
COUNTY OF ST. LOUIS          )


On this 26th day of April, 2007, before me, a Notary Public in and for said state, personally appeared Douglas R. Sprong, known to me to be the person who executed the within Motion To Appear *Pro Hac Vice*, and acknowledged to me that he executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public

My Commission Expires:

NOTARY SEAL
STATE OF MISSOURI

LISA L. LUCAS
My Commission Expires
May 5, 2009
St. Louis City
Commission #05706964

2

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

A copy of the foregoing was e-mailed on April 26, 2007, per the Court's electronic filing system, to:

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
 philip.gutwein@bakerd.com

*Attorneys for Defendant*

Court Name: Southern District of Indiana
Division: 4
Receipt Number: NA000073
Cashier ID: kochert
Transaction Date: 04/27/2007
Payer Name: Korein Tillery
--------------------------------
PRO HAC VICE
  For: Korein Tillery
  Case/Party: D-INS-4-07-CV-000016-001
  Amount:      $30.00
--------------------------------
CHECK
  Remitter: Korein Tillery
  Check/Money Order Num: 13985
  Amt Tendered: $30.00
--------------------------------
Total Due:       $30.00
Total Tendered:  $30.00
Change Amt:      $0.00

Korein Tillery Attorneys at Law

#10 Executive Woods Court

Belleville IL 62226
4:07-cv-0016

"Only when bank clears the check,
money order, or verfies credit of
funds is the fee or debt officially
paid or discharged.  A $45 fee will
be charged for a returned check."

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

PAUL CAUFIELD,                          )
                                        )
            Plaintiff,                   )
                                        )        CAUSE NO.  4:07-cv-00016-SEB-WGH
        vs.                             )
                                        )
COLGATE-PALMOLIVE COMPANY               )
EMPLOYEES' RETIREMENT INCOME            )
PLAN,                                   )
                                        )
            Defendant.                   )

## **ORDER**

Upon consideration of Motion to Appear Pro Hac Vice by counsel, **Douglas R. Sprong**;

IT IS HEREBY ORDERED that, upon payment of the required fee, Douglas R. Sprong

be allowed to enter his appearance in this case only, *instanter*.

Date:    April 27, 2007                    _____s/ Sarah Evans Barker_____
         _____                  U.S. District Court Judge

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

PAUL CAUFIELD,                          )
                                        )
                        Plaintiff,      )
                                        )     CAUSE NO.  4:07-cv-00016-SEB-WGH
            vs.                         )
                                        )
COLGATE-PALMOLIVE COMPANY               )
EMPLOYEES' RETIREMENT INCOME            )
PLAN,                                   )
                                        )
                        Defendant.      )


**<u>ORDER</u>**

     This cause is before the Court on the parties' Joint Request for Extension of Time in this case.  Having reviewed the motion, the Court now GRANTS the request.  Plaintiff's Response to Defendant's Motion to Dismiss is due May 15, 2007.  Defendant's Reply is due June 5, 2007.

     SO ORDERED.

Dated: _____


[Distribution to all parties of record.]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO.  4:07-cv-00016-SEB-WGH |
| vs. | ) | |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO APPEAR *PRO HAC VICE*

COMES NOW Counsel, **William K. Carr**, pursuant to Local Rule and in support of his Motion to Appear *Pro Hac Vice* on behalf of Plaintiffs in this matter alone, states as follows:

1.      I am an attorney at law duly licensed to practice for all the Courts of the State of Colorado, with my office located at 2222 E. Tennessee Avenue, Denver, CO  80209.

2.      I am not under suspension or disbarment in any jurisdiction.

3.      By this motion, I seek to be associated in as counsel for Plaintiffs, in this case only, with T. J. Smith, Law Offices of T.J. Smith, LLC, 500 West Jefferson Street, PNC Plaza, Suite 2000, Louisville, KY  40202.

4.      Upon entry of my appearance in this matter, I agree to comply with any applicable Rules of Professional Conduct.  I understand that, in so doing, I will become subject to discipline by this Court.

Respectfully submitted,

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO  80209
Telephone:  (303) 296-6383
Fax:     (303) 296-6652

STATE OF COLORADO                    )
                                     ) SS
CITY AND COUNTY OF DENVER            )

On this _11th_ day of May, 2007, before me, a Notary Public in and for said state, personally appeared William K. Carr, known to me to be the person who executed the within Motion to Appear *Pro Hac Vice*, and acknowledged to me that he executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public

My Commission Expires:

11/23/2009

NOTARY PUBLIC
MARILYN
FRUSTACI
STATE OF COLORADO

2

Court Name: Southern District of Indiana
Division: 4
Receipt Number: NA000089
Cashier ID: mathews
Transaction Date: 05/15/2007
Payer Name: William Carr
----------------------------------------
PRO HAC VICE
 For: William Carr
 Case/Party: D-INS-4-07-CV-000016-001
 Amount:      $30.00
----------------------------------------
CHECK
 Remitter: William Carr
 Check/Money Order Num: 4473
 Amt Tendered: $30.00
----------------------------------------
Total Due:      $30.00
Total Tendered: $30.00
Change Amt:     $0.00

William Carr

2222 E. Tennessee Ave.

Denver, CO  80209-4637

4:07-cv-000016-001

"Only when bank clears the check,
money order, or verfies credit of
funds is the fee or debt officially
paid or discharged. A $45 fee will
be charged for a returned check."

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

PAUL CAUFIELD,                                )
                                             )
                    Plaintiff,               )
                                             )        Cause No.  4:07-cv-00016-SEB-WGH
        vs.                                  )
                                             )
COLGATE-PALMOLIVE COMPANY                     )
EMPLOYEES' RETIREMENT INCOME                  )
PLAN,                                        )
                                             )
                    Defendant.               )

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### I.  Introduction

This is a "whipsaw" case.  ERISA requires that optional forms of distributions from

defined benefit plans, like the lump sum paid to Plaintiff here, be no less than the actuarial

equivalent of the normal retirement benefit, *i.e.*, a single-life annuity payable at normal

retirement age.  For a cash balance plan like the Colgate-Palmolive Company Employees'

Retirement Income Plan ("the Plan"), the "whipsaw" calculation requires that the balance of the

participant's notational cash balance account be projected forward to normal retirement age at the

plan's interest crediting rate and then discounted back to present value at a statutorily-prescribed

interest rate.  If the projection rate is greater than the discount rate, the actuarial equivalent of the

normal retirement benefit will be more than the notational account balance.  Every Circuit Court

of Appeals to consider the issue, including the Seventh Circuit, has held that unless this higher

amount is paid out, an illegal forfeiture has occurred in violation of ERISA § 203(a), 29 U.S.C. §

1

1053(a), a provision that has been in ERISA since its 1974 enactment, and the corresponding

provision of the Internal Revenue Code, § 411(a)(2), 26 U.S.C. § 411(a)(2). *See* <u>Esden v. Bank</u>

<u>of Boston</u>, 229 F.3d 154 (2nd Cir. 2000), <u>Berger v. Xerox Corp. Ret. Income Guarantee Plan</u>, 338

F.3d 755 (7th Cir. 2003), <u>West v. AK Steel Corp.</u>, – F.3d –, 2007 WL 1159951 (6th Cir. 2007) and

<u>Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan</u>, 221 F.3d 1235 (11th Cir. 2000).

Those courts also concluded that the failure to pay the higher lump sum results in a violation of

the requirement that lump sums be no less than the actuarial equivalent of the normal retirement

annuity found in ERISA § 205, 29 U.S.C. § 1055. This requirement has been in ERISA since at

least 1984. *E.g.*, <u>Esden</u>, 229 F.3d at 164-66; P.L. 98-397, 1984 H.R. 4280 (Aug. 23, 1984).

As in <u>Esden</u>, <u>Berger v. Xerox</u>, <u>West</u> and <u>Lyons</u>, the Plan here failed to perform the

whipsaw calculation and simply made a lump sum distribution to Plaintiff and the members of

the putative class equal to their notational account balance. Knowing it has violated the law and

cannot win on the merits, the Plan attempts to avoid paying vested pension benefits to Plaintiff

and the putative class by making a specious argument that Plaintiff's claims are time-barred.

Plaintiff's claims cannot be time-barred under any statute of limitations. In ERISA cases

involving claims for benefits *received* but miscalculated, rather than denied, the limitations

period does not start to run until the claimant inquires and is informed that his benefits were

correctly calculated. <u>Miele v. Pension Plan of New York State Teamsters Conf. Pension and Ret.</u>

<u>Fund</u>, 72 F. Supp. 2d 88, 99 (E.D. N.Y. 1999); <u>Kiefer v. Ceridian Corp.</u>, 976 F.Supp. 829, 843

(D. Minn. 1997). That never occurred in this case, so the statute of limitations has yet to run.

<u>Novella v. Westchester County</u>, 443 F. Supp. 2d 540, 545 (S.D. N.Y. 2006); <u>Smith v. United</u>

<u>Healthcare Serv., Inc.</u>, 2003 WL 22047861, *13 (D. Minn. 2003).

2

Even if Plaintiff's cause of action accrued on the date he received his lump sum, as the Plan incorrectly argues, Plaintiff's Complaint is timely. Courts in this Circuit and elsewhere have consistently applied the breach of contract limitations period of the forum state in cases involving claims for vested pension benefits like this one. *E.g.*, <u>Daill v. Sheet Metal Workers' Local 73 Pension Fund</u>, 100 F.3d 62, 65 (7th Cir. 1996); <u>Lumpkin v. Envirodyne Indus., Inc.</u>, 933 F.2d 449, 465-66 (7th Cir. 1991). This Court sits in Indiana and should apply Indiana's 10-year statute of limitations for breach of contract actions, Ind. Code § 34-11-2. Plaintiff's Complaint was filed within the 10-year period.

28 U.S.C. § 1658 does not apply. ERISA was enacted in 1974, and § 1658 applies only to causes of action arising under federal statutes enacted after § 1658's effective date – December 1, 1990. *E.g.*, <u>Syed v. Hercules Inc.</u>, 214 F.3d 155, 159 n.3 (3rd Cir. 2000); <u>Laurenzano v. Blue Cross and Blue Shield of Mass., Inc. Ret. Income Trust</u>, 134 F.Supp.2d 189, 205 (D. Mass. 2001). As argued below, the Retirement Protection Act of 1994 ("the RPA") amendments to ERISA § 203 and 205 did not "give rise to" Plaintiff's claim as required by <u>Jones v. R.R. Donnelly & Sons, Co.</u>, 541 U.S. 369, 382 (2004) in order for § 1658 to apply to a post-1990 amendment to an older statute.

Nor is this case governed by New York law. The Plan's argument to the contrary is based on <u>Berger v. AXA Network, LLC</u>, 459 F.3d 804 (7th Cir. 2006) – a case involving a claim for interference with non-vested benefits under ERISA § 510, *not* a claim for vested pension benefits as here. The <u>AXA</u> court itself recognized a distinction between § 510 cases and ones arising out of the plan itself. <u>Id.</u> at 805, n.15. As this Court held in <u>Williams v. Rohm & Haas Pension Plan</u>, claims based on illegal plan provisions arise out of the plan itself, as here, because "the plan,

which is governed by ERISA, incorporates provisions implied by law." *See* Entry Denying Defendant's Motion for Summary Judgment and Granting Plaintiffs' Motion for Summary Judgment, p. 13.[1]

Even if <u>AXA</u> were relevant, its reasoning results in the application of Indiana's statute of limitations for contract actions. Indiana is the state with the most significant connection to the dispute, <u>and</u> application of New York's shorter limitations period would "fly in the face" of the overriding federal policy underlying ERISA – the protection of vested pension benefits. <u>Lumpkin</u>, 933 F.3d at 466; <u>Arena v. ABB Power T & D Co., Inc.</u>, 2003 WL 21766560 (S.D. Ind. 2003). The Plan's Motion should be denied.

## II.  Discussion

A.    <u>Plaintiff's Claim Is Not Barred Under *Any* Statute of Limitations</u>.

Critical to the question of whether Plaintiff's claim is time-barred is when his cause of action accrued. Courts look to federal common law when determining when a cause of action accrues under federal statutes like ERISA. <u>Daill</u>, 100 F.3d at 65. The vast majority of courts have held that a cause of action does *not* accrue simply upon receipt of benefits. *E.g.*, <u>Cotter v. Eastern Conf. of Teamsters Ret. Plan</u>, 898 F.2d 424, 428 (4th Cir. 1990); <u>Kiefer</u>, 976 F. Supp. at 842.[2] Instead, the general rule is that an ERISA claimant's cause of action accrues when a claim

---

[1]  A copy of the Court's Order is attached as Exhibit 1.

[2]  Applying a receipt of benefits accrual rule in this case in particular would be inequitable. It would require Plaintiff not only to have known simply by looking at his check that the whipsaw calculations would have resulted in a higher lump sum, but also to have predicted the holdings of <u>Esden</u>, <u>Lyons</u> and <u>Berger v. Xerox</u> and <u>West</u> that cash balance plans violate ERISA when they fail to perform the whipsaw calculation. *See* <u>Romero v. The Allstate Corp.</u>, 404 F.3d 212, 224 (3rd Cir. 2005) (rejecting rule that date of accrual is tied to date of plan amendment, when it would "impose an unfair duty of clairvoyance on employees, such as those

for benefits has been made and formally denied. *E.g.,* Daill, 100 F.3d at 66-67; White v. Sun

Life Assur. Co. of Canada, – F.3d –, 2007 WL 1218209, *5 (4th Cir. 2007) (collecting cases).

Under the general rule, even when no *formal* denial of benefits has occurred, the limitations

period begins to run "upon a clear and unequivocal repudiation of rights under the pension plan

which has been made known to the beneficiary." Daill, 100 F.3d at 66. To hold otherwise would

require lay participants and beneficiaries to constantly be alert for "errors or abuses that might

give rise to a claim and start the statute of limitations running." Cotter, 898 F.2d at 429, *quoting*

Rodriguez v. MEBA Pension Trust, 872 F.2d 69, 72 (4th Cir.1989).

Courts have modified this general rule in cases, like this one, involving receipt of benefits

(allegedly in the wrong amount), rather than a denial of a claim for benefits. In such cases, it is

difficult to pinpoint a date when an unequivocal repudiation of benefits under the plan is clearly

communicated to the plaintiff. Smith, 2003 WL 22047861 at *13. Judge Michael Mukasey of

the Southern District of New York confronted this exact situation in Novella. There, a class of

pensioners challenged the calculation of their disability benefits under ERISA. The defendant

argued that some of the class members' claims were barred by the statute of limitations – an

argument that turned on when the claims accrued. 443 F.Supp.2d at 544. The court determined

the general "clear repudiation" rule was inapplicable because class members had not been denied

benefits, but rather had received benefits they later determined were miscalculated. Id. at 545.

_____

in this case, who allege that an amendment's detrimental effect on them was triggered not at the
time of its adoption, but rather at some later time by a subsequent event."). For this exact reason,
Laurenzano, which wrongly decided that absent class members' claims accrued when they
received their lump sums unless they exhausted administrative remedies, is not persuasive. 134
F.Supp.2d at 210. Further, the "rule" announced by the Laurenzano court is dicta, because the
named plaintiff in Laurenzano did exhaust his administrative remedies. Id. at 211.

Judge Mukasey held:

> The relevant date for fixing the accrual of such a claim is when a plaintiff was put on notice that the defendant believed the method used to calculate his [pension] was correct. Thus, the claim does not begin to run until a prospective class member inquires about the calculation of his benefits, and the Plan rejects his claim that the benefits were miscalculated.

Id.

In Novella, the named plaintiff *had* questioned the calculation of his benefits and received a letter from the defendant that his benefits were correctly calculated, so his claim accrued on that date. However, the court went on to state that **the defendant presented no evidence that other class members had been informed that their benefits were calculated correctly, "and until such a repudiation of benefits was made the statute of limitations could not begin to run on their claims."** Id. (emphasis added); *see also* Miele, 72 F.Supp.2d at 99 (rejecting bright line rule that miscalculation claim accrues on the date the plaintiff is informed of his benefit, and instead adopting rule that such claims accrue when the plaintiff inquires about his benefit and is told the benefit is correctly computed); Kiefer, 976 F. Supp. at 843 (same).[3]

_____

[3] Miller v. Fortis Benefits Ins. Co., 475 F.3d 516 (3rd Cir. 2007), is not to the contrary. Miller reiterates the viability of the "clear and unequivocal repudiation" rule, and simply holds in that case that the plaintiff's receipt of a monthly benefit check "should have alerted him he was being underpaid." Id. at 522. In Miller, the claimant had changed jobs with the employer and was receiving a higher salary at the time he became disabled. Id. at 518. Despite this fact, the plan erroneously calculated his disability benefits on the basis of his prior job's lower salary. Id. Because calculating plaintiff's disability benefits was simple math (60% of his "current" salary), the court held that the plan's error in Miller should have been obvious to the plaintiff simply by looking at his check. Id. at 522.

Here, Plaintiff could not have been alerted to the fact that the plan terms violate ERISA by the mere receipt of his lump sum distribution. This case involves the complexities and interplay between cash balance plans and the requirements of ERISA and the IRC. The Plan did not inform Plaintiff there was an alternative method for calculating his lump sum (the whipsaw calculation), nor could Plaintiff have known the Plan was violating the law in failing to utilize this alternative method. It would be unfair to hold that Plaintiff's receipt of his lump sum started

Cash balance plans, like the plan at issue here, involve complex ERISA issues. The Plan did not inform Plaintiff there was an alternative way to calculate his lump sum that would have resulted in a larger lump sum. Plaintiff could not have known by the amount of his check that the Plan's failure to perform the whipsaw calculation violated ERISA. He therefore did not inquire about the calculation of his benefits. Under the circumstances, no clear and unequivocal repudiation occurred, so the statute of limitations has not run on Plaintiff's claim.[4] Plaintiff's claim is thus not barred under any statute of limitations.

The Court should not be troubled by the fact that in the absence of an event constituting a repudiation of rights clearly communicated to the participant, the statute of limitations may never begin to run on claims for vested pension benefits like those presented by Plaintiff here. Vested pension benefits cannot be forfeited. ERISA provides that "each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." ERISA § 203(a), 29 U.S.C. § 1053(a). "The concepts of vested rights and nonforfeitable rights are critical to the ERISA scheme." Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 510 (1981).

---

the running of the statute of limitations on the facts of this case. As the Third Circuit observed in a similar case, such a rule "would have the undesirable effect of requiring plan participants and beneficiaries 'likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential [p]lan errors and abuses.'" Romero, 404 F.3d at 224, quoting Devito v. Pension Plan of Local 819 I.B.T. Pension Fund, 975 F. Supp. 258, 265 (S.D. N.Y. 1997).

[4] This is entirely consistent with Plaintiff's allegation that resort to the administrative process would have been futile. The Plan arguably did not violate the express terms of the plan document in calculating Plaintiff's benefit; rather, the terms of the Plan violate ERISA. Therefore, "no amount of administrative review would alter the calculation of benefits under the current terms of the plan." West, 2007 WL 1159951 at *7.

Further, vested pension benefits cannot become forfeitable due to the passage of time. In order to retain their tax-favored status under I.R.C. § 401, 28 U.S.C. § 401, defined benefit plans, like the Plan here, are required to include language stating that vested pension benefits will be paid regardless of when a claim is made for them. *See* 26 U.S.C. § 411(a) ("A trust shall not constitute a qualified trust under § 401(a) unless the plan of which such trust is a part provides that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age."). A Treasury Regulation is directly on point. 26 C.F.R. § 1.411(a)-4(b)(6) states:

> A right is not treated as forfeitable... in the case of a benefit which is payable, merely because the benefit is forfeitable on account of the inability to find the participant or beneficiary to whom payment is due, ***provided that the plan provides for reinstatement of the benefit if a claim is made by the participant or beneficiary for the forfeited benefit...***").

Courts have similarly held that plans cannot make *eligibility* for vested pension benefits contingent upon the timely filing of an application or claim and that doing so runs afoul of ERISA's nonforfeiture rule. Cotter, 898 F.2d at 428 (defendant's interpretation of plan document as requiring timely application for benefits "might lead to a forfeiture of vested rights to retirement benefits where, as here, a participant does not immediately file a claim. Such a forfeiture plainly violates 29 U.S.C. § 1053(a)..."); Estate of Baird v. Teamsters Affiliates Pension Plan, 317 F.Supp.2d 588, 597 (W.D. Pa. 2004) (finding defendant's interpretation of plan as requiring participant to submit timely application in order to be eligible for benefits "troubling because it conflicts with ERISA's statutorily-prescribed policy against forfeiture of vested retirement benefits."). Here, just as in Cotter and Baird, holding that Plaintiff's claim for vested pension benefits could be time-barred in the absence of a clear repudiation by the Plan

8

runs afoul of ERISA § 203(a).

B.    In the Alternative, Even If Plaintiff's Claim Accrued When He Received His Lump Sum, His Complaint Was Timely Filed.

    1.    Indiana's 10-year Breach of Contract Limitations Period Applies.

Even if receipt of his lump sum triggered Plaintiff's cause of action (it did not), Plaintiff filed his Complaint on time, because this case is governed by Indiana's 10-year limitations period for contract actions.  In cases involving claims for pension benefits under ERISA, like the instant case, there is a strong preference to apply the law of the forum state.  Frank C. Gaides, Inc. v. Provident Life & Accident Ins. Co., 1996 WL 497085, *5 (E.D. N.Y. 1996); McLaughlin v. Unum Life Ins. Co. of America, 224 F.Supp. 283, 287, n.5 (D. Maine 2002); Nazario Martinez v. Johnson & Johnson Baby Prod., Inc., 184 F.Supp.2d 157, 159 (D. P.R. 2002).  Indeed, courts across the country have consistently applied the law of the forum state without fuss in cases involving claims for pension benefits under ERISA.  Blue Cross & Blue Shield of Alabama v. Sanders, 138 F.3d 1347, 1356 (11th Cir. 1998), quoting Byrd v. McPapers, 961 F.2d 157, 159 (11th Cir. 1992) ("In an ERISA action with no congressionally mandated limitations period, the district court 'must define the essential nature of the ERISA action and apply the forum state's statute of limitations for the most closely analogous action.'"); Lincoln General Ins. Co. v. State Farm Mutual Automobile Ins. Co., 425 F.Supp.2d 738, 743 (E.D. Va. 2006) ("To be sure, Lincoln General is correct that federal courts must look to the law of the forum state to supply the most closely analogous limitations period for a typical ERISA claim"); Smith, 2003 WL 22047861 at *13 ("Because ERISA does not provide a limitations period for § 502(a)(1)(B) actions, courts have looked to the most analogous forum-state limitations statute for these

9

claims); <u>Hoover v. Bank of America Corp.</u>, 286 F.Supp.2d 1326, 1333 (M.D. Fla. 2003)

("...ERISA is silent as to any statute of limitations for suits brought under section 502(a) to

recover benefits.  *See* 29 U.S.C. § 1132.  Thus, courts borrow the forum state's statute of

limitations...").

Further, it is undisputed that claims for vested pension benefits are most closely

analogous to breach of contract claims.[5]  Accordingly, courts apply the forum state breach of

contract statute of limitations in such cases.  *See, e.g.*, <u>Daill</u>, 100 F.3d at 65; <u>Lumpkin</u>, 933 F.2d

at 465-66.  This Court sits in Indiana, so Indiana's 10-year statute of limitations for breach of

contract actions applies.  *See* Ind. Code § 34-11-2.  Under the Indiana statute, there is no dispute

that Plaintiff's claim is timely.

<u>Arena</u> is on all fours.  In that case, the plaintiff alleged that plan amendments eliminated

early retirement benefits (vested pension benefits) in violation of ERISA's anti-cutback

provision, ERISA § 204(g), 29 U.S.C. § 1054(g).  <u>Arena</u>, 2003 WL 21766560 at *4.  Defendant

argued plaintiff's claims were barred by the statute of limitations.  In his discussion of the

applicable limitations period, Judge McKinney first observed, "[i]n the absence of a governing

federal provision, 'the settled practice has been to adopt a local time limitation as federal law if it

is not inconsistent with federal law or policy to do so.'"  <u>Id.</u>, *quoting* <u>Central States, Southeast</u>

<u>and Southwest Areas Pension Fund v. Jordan</u>, 873 F.2d 149, 152 (7th Cir. 1989).  He then

rejected application of a shorter Indiana limitations period in favor of Indiana's 10-year period

for actions on written contracts, citing ERISA's policy of ensuring "that employees would

receive promised pension benefits upon retirement."  <u>Id.</u> at *8.  Judge McKinney concluded that

---

[5]  The Plan also argues for a breach of contract limitations period.  *See* Def's Memo at 13.

applying the shorter period would "fly in the face of ERISA." Id., *quoting* Lumpkin, 933 F.2d at 465. As did Judge McKinney in Arena, this Court should apply Indiana's 10-year breach of contract limitations period to Plaintiff's claim for vested pension benefits.

    2.    <u>New York Law Does Not Govern this Case.</u>

    a.    <u>AXA is Inapplicable.</u>

The Plan cites a case under a completely different section of ERISA in support of its claim that New York law applies. *See* AXA, *supra*. In AXA, the plaintiffs asserted a claim that AXA intentionally deprived them of non-vested benefits under ERISA § 510. 459 F.3d at 805. There is no indication in the AXA opinion that its holding was intended to apply to anything other than ERISA § 510 claims, nor that it was overruling prior precedent.[6]

In contrast, Plaintiff's claim here is for vested pension benefits under ERISA § 203 and 205. Courts have acknowledged the fundamental difference in the nature of § 510 claims, which are more analogous to the torts of wrongful termination or retaliatory discharge, and claims for vested pension benefits, which are more in the nature of contract claims. *See, e.g.*, Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1137-38 (7th Cir. 1992).[7] Indeed, the AXA Court distinguished the facts of its case from a case involving a "contractual" claim for benefits:

_____

    [6] Under Rule 40(e) of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit, if a proposed opinion approved by a panel of the court will overrule a prior decision of the court, the opinion cannot be published until it is circulated to all active members of the court and a majority of them do not vote for rehearing en banc. After compliance with the procedure, the published opinion is required to contain a footnote indicating that no judge or a majority of the judges did not favor en banc review of the case. No such footnote appears in AXA.

    [7] The Tolle court also elaborated on the differing accrual rules for claims for plan benefits and ERISA § 510 claims. 977 F.2d at 1139-40.

...the plaintiffs' claim does not arise out of the plan itself. Rather, it is an action for interference with the employment status of the salesmen that in turn ends up denying them benefits under the plan. The plan's contractual choice-of-law provision cannot control a claim under § 510 that is by definition extra-contractual.

Id. at 814, n.15.  As noted, this Court in Williams held that claims challenging illegal plan provisions, as here, are efforts to recover benefits due under the terms of the plan because those benefits are implied by ERISA.  Williams Order, p. 12-13, *citing* May Dept. Stores Co. v. Federal Ins. Co., 305 F.3d 597 (7th Cir. 2002).

Moreover, § 510 claims involve wrongful conduct – a decision was made to take an adverse employment action with respect to the claimant.  Witnesses and documentary evidence central to the dispute are located where the decision was made.  Thus, in AXA, New York had a significant connection to the parties and transaction in part because it was the place where the corporate decision was made.  AXA, 459 F.3d at 813.  It therefore made sense in AXA to apply the law of the state where the "tort" occurred.  Here, no adverse employment decision was made. Far more significant to this dispute is the location where the pension benefits were earned, where the contract was performed, and where the breach occurred, and all of these things occurred in Indiana.  *See* Affidavit of Paul Caufield, attached as Exhibit 2.  It would make no sense in this case to subject an Indiana worker who earned his pension benefits in Indiana and who received his lump sum distribution in Indiana to the law of a state with which he has had no contact.

      b.     Even under the Reasoning of *AXA*, Indiana's Breach of Contract Statute of Limitations Applies.

Even if AXA is erroneously extended to cases not involving ERISA § 510, applying its reasoning here still requires this Court to apply Indiana law to Plaintiff's claims.  In AXA, the

12

Seventh Circuit held that it is preferable to refer to the forum's limitations period as a starting point, and that another state's law will be employed <u>only</u> if that state has a significant connection to the parties and to the transaction and if its limitations period is more compatible with the federal policies underlying the cause of action.  459 F.3d at 813.

<u>AXA</u> was guided by § 142 of the Restatement, which provides that the law of the state of the forum will apply unless "the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence."  Restatement (Second) Conflict of Laws § 142(2)(b).  Courts have compared ERISA claims for vested pension benefits to contract actions, and another section of the Restatement provides a framework for determining when a state's contacts are significant in contract cases – Restatement (Second) Conflict of Laws § 188.  Section 188 provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> > (a) the place of contracting,
> > (b) the place of negotiation of the contract,
> > (c) the place of performance,
> > (d) the location of the subject matter of the contract, and
> > (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as

otherwise provided in §§ 189-199 and 203.[8]

Under the Seventh's Circuit's holding in AXA, Indiana law is the "starting place" for the

Court's consideration.  It should also be the ending place.  Indiana is the state with the most

significant connection to the controversy under § 188 of the Restatement, and application of

Indiana's longer limitations period is more compatible with the policies underlying a claim for

vested pension benefits.  This is exactly the analysis and outcome the AXA decision dictates.

459 F.3d at 813 ("In our view, it is preferable to refer to the forum's limitations period instead as

a starting point.  If another state with a significant connection to the parties and to the transaction

has a limitations period that is more compatible with the federal policies underlying the federal

cause of action, that state's limitations law ought to be employed because it furthers, more than

any other option, the intent of Congress when it created the underlying right").

Section 188(3) recognizes a preference for applying the law of the place where the

contract is to be *performed*.[9]  Paul Caufield resides in Indiana.  *See* Caufield Aff.  He was hired

to work in Colgate-Palmolive's plant in Indiana in 1977.  Id.  He worked his entire 22-year career

at the Indiana plant.  Id.  He earned pension benefits in Indiana.  Id.  He received his lump sum

pension benefit in Indiana.  Id.  Indiana is therefore the place of performance of the contract.  *See,*

_____

[8] Restatement §§ 189-97 provide rules for specific types contracts, such as insurance contracts, loan documents and contracts for the sale of real property or chattels, none of which apply here.  Restatement §§ 198 and 199 provide rules for situations regarding a party's capacity to contract and the formalities required of a contract.  Restatement § 203 concerns usurious contracts.

[9] There is no place of "negotiating" the contract in this situation.  The plan document was not negotiated at all.  Hurd v. Illinois Bell Tel. Co., 234 F.2d 942, 946 (7th Cir. 1956) ("The pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years.").

*e.g.,* Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan, 517 F.Supp. 627, 636-37 (S.D. W.

Va. 1981) (under ERISA, venue is proper where the "breach occurred," and breach occurs where

contract is to be performed; contract is performed where pension benefits are received, *i.e.,*

plaintiff's residence); Cross v. Fleet Reserve Ass'n Pension Plan, 383 F.Supp.2d 852, 856 (D.

Md. 2005) (same); Palka v. Theodore M. Hylwa, M.D., Inc., 1986 WL 22380 (D. Kan. 1986)

(same).

Further, unlike in AXA, the location at which Plaintiff worked was not merely one of a

number of "satellite offices" in various states employing a few regional salespersons. AXA, 459

F.3d at 806. Colgate-Palmolive had a very substantial presence in Indiana since 1924 when it

opened the southern Indiana plant at which Plaintiff worked.[10] The Indiana plant was

responsible for 95% of Colgate Palmolive's toothpaste production and employed over 500

workers.[11] All of these workers, like Plaintiff, earned their earned pension benefits in Indiana

and likely received their lump sums there as well. The Plan cannot claim surprise at being

subject to Indiana's limitations period. Further, Plaintiff had no virtually no contact with

Colgate-Palmolive's corporate offices in New York during his twenty-two year tenure with the

company. *See* Caufield Aff. On these facts, Indiana clearly has an interest in applying its own

_____

[10] *See* Brent Adams, Colgate May Consider Rebuilding in Southern Indiana, Business First of Louisville (Oct. 26, 2005), available at http://www.bizjournals.com/louisville/stories/ 2005/10/24/daily19.html ("Colgate...announced Oct. 11 that it plans to close the 81-year old Clark County production plant by 2008..."); *see also* http://www.colgate.ie/about/history.shtml ("The original Colgate clock, which became a fixture on the New Jersey waterfront, was moved to a new Colgate factory in Jeffersonville, Indiana in 1924...").

[11] *See* Jeffersonville Colgate Plant Avoids Nationwide Cuts, Indiana Economic Digest (Dec. 8, 2004), available at http://indianaeconomicdigest.net/main.asp?SectionID=31& SubSectionID=164&ArticleID=15896.

law to the claims of its residents and cannot simply be written off as a "spoke rather than the hub of this lawsuit." AXA, 459 F.3d at 813.

Finally, federal policy in this case mandates application of Indiana's longer period of limitations. Plaintiff's claims are for *vested pension benefits*. Congress enacted ERISA for the express and primary purpose of protecting employees' interests in their pension benefits. *See* ERISA § 2, 29 U.S.C. § 1001. As the Seventh Circuit observed, "federal policy favors the protection of pension benefits, and it would surely yield a result anomalous with the legislative history and purpose of ERISA to nip claims for vested pension benefits in the bud through application of the shorter statute of limitations." Lumpkin, 933 F.3d at 466.[12] Because Indiana's limitations period is longer than New York's, applying Indiana's statute better promotes the Congressional intent of protecting vested pension benefits. *See also* Arena, 2003 WL 21766560 at *8-9.

3.    28 U.S.C. § 1658 Is Inapplicable.

Lastly, the Court should reject the Plan's argument that 28 U.S.C. § 1658 has any bearing on this case. Congress passed § 1658 as a catch-all statute of limitations for causes of action based on federal statutes enacted after its effective date that do not contain one of their own. Section 1658 provides in relevant part:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a). Congress enacted § 1658 effective December 1, 1990. Although ERISA

---

[12] This particular federal policy was not at issue in AXA, which did not involve a claim for vested pension benefits.

16

does not contain a specific statute of limitations for non-fiduciary claims like those asserted by

Plaintiff here, it was enacted in 1974 – well before Congress passed § 1658.

Laurenzano is directly on point.  In that case, the plaintiff alleged claims very similar to

those asserted by Plaintiff here.  He sought a recalculation of his pension benefits because the

lump sum benefit he received failed to account for a cost of living adjustment.  In its analysis of

the statute of limitations issue, the court observed:

> ERISA provides a statute of limitations of up to six years for breach of fiduciary
> duty, ERISA § 413, and federal law provides a default statute of limitations of
> four years for all federal statutes enacted after 1990, 29 U.S.C. § 1658, but neither
> of these statutes of limitations applies to Laurenzano's claim.  His claim is not for
> breach of fiduciary duty, but rather to enforce ERISA which was enacted in 1974.

Laurenzano, 134 F.Supp.2d at 205.  The court therefore concluded that the plaintiff's claim fell

outside the scope of both ERISA § 413 and § 1658.  Id.  As in Laurenzano, this Court should

hold that § 1658 is plainly inapplicable to actions seeking to enforce ERISA.  See also Syed, 214

F.3d at 159 n.3 (rejecting application of § 1658 in a case to recover benefits, because § 1658

"applies only to claims arising under acts of Congress enacted after December 1, 1990. ERISA

was enacted much earlier.").

Ignoring the obvious, the Plan argues that § 1658 applies in this case because the claims

Plaintiff alleges are based on two ERISA sections that were amended after the enactment of §

1658 – ERISA §§ 203 and 205.  For purposes of § 1658, a civil action "arises under" an Act of

Congress enacted after December 1, 1990, even an amendment to a previously existing statute,

"if the plaintiff's claim against the defendant was made possible by a post-1990 enactment."

Jones, 541 U.S. at 382.  In other words, § 1658 applies "whenever a post-1990 enactment *creates*

*a new right to maintain an action*."  Id. (emphasis added).

17

Two cases the Plan cites in its brief – <u>Jones</u> and <u>Nino v. Haynes Intl.</u>, 2005 WL 4889258 (S.D. Ind. 2005) – demonstrate the circumstances under which courts will hold that an amendment to a pre-1990 statute creates a new right to maintain an action.  In <u>Jones</u>, the plaintiff's hostile work environment, wrongful termination and failure to transfer claims were *not actionable* under 42 U.S.C. § 1981 until it was amended by the Civil Rights Act of 1991, so the Court held they arose under a post-1990 enactment.  <u>Jones</u>, 541 U.S. at 383.  Likewise in <u>Nino</u>, plaintiff's claim for *damages* was made possible by the enactment of the Uniformed Services Employment and Reemployment Act of 1994, 38 U.S.C. § 4301-4333, because damages were not available under the previous version of the act, the Veteran's Reemployment Rights Act, 38 U.S.C. § 2021, et seq.  <u>Nino</u>, 2005 WL 4889258 at *4.

In contrast, the RPA did not make it possible for Plaintiff to maintain this action.  The RPA amended ERISA §§ 203 and 205 by changing the assumptions to be used in calculating the actuarial equivalent (*i.e.*, present value) of an accrued benefit expressed as an annuity payable at normal retirement age, but they did not introduce the forfeiture rules or the actuarial equivalent requirements.  Nor did the amendments initiate or alter the whipsaw calculation requirement.  The RPA merely increased the "applicable interest rate" used to discount the accrued benefit back to present value.[13]  Retirement Protection Act of 1994, Pub. L. No. 103-465, § 767(c)(2), 108 Stat. 4809, 5039 (defining "applicable interest rate" as the annual rate of interest on 30-year Treasury securities for the month before the date of distribution...").  Before the RPA, the "applicable interest rate" was defined as the discount rate that would have been used by the

---

[13]  Ironically, this change actually might reduce Mr. Caufield's damages (a higher discount rate means a lower lump sum), but it has no bearing on his claim.

18

Pension Benefit Guaranty Corporation for purposes of determining lump sum distributions on plan termination. Esden, 229 F.3d at 164. Second, the RPA added a new requirement that the Secretary of the Treasury provide for an "applicable mortality table" to be used in converting annuities into lump sums. Retirement Protection Act of 1994, Pub. L. No. 103-465, § 767(c)(2), 101 Stat. 4809, 5039. Before the RPA, the statute simply required the mortality table to be reasonable. Esden, 229 F.3d at 165, n.14. Thus, there is no question that the RPA "amended" ERISA § § 203 and 205 as the Plan argues, but it did not amend them in any way to create a new right to maintain an action.

Plaintiff's Complaint is that the Plan failed to perform the required whipsaw calculation. It is immaterial to Plaintiff's claim whether the Plan was required to use the interest rate in effect prior to the RPA or the one after, because the whipsaw calculation was required both before and after the RPA. Thus, Plaintiff's claim is in no way dependent on the RPA amendments to ERISA §§ 203 and 205. That the RPA did not "create a new right to maintain an action" within the meaning of Jones is evident from the fact that litigants were asserting claims identical to those asserted by Plaintiff here prior to the enactment of the RPA. See Esden, supra (plaintiff received her lump sum benefit, the balance of her cash balance account, in 1991); Berger v. Xerox, 338 F.3d at 759 (plaintiff class received their lump sum benefits between 1990 and 2000). The Courts in both cases reference ERISA §§ 203 and 205 as they stood prior to the RPA. See Esden, 229 F.3d 164-65; Berger v. Xerox, 338 F.3d at 759-60.[14] Accordingly, Plaintiff's action did not "arise under" a post-1990 enactment of Congress and under the clear holding of Jones, §

_____

[14]    Section 203's forfeiture bar has been in ERISA since 1974. Section 205's requirement that a lump sum be no less than the actuarial equivalent of the normal retirement benefit has existed since 1984.

1658 does not apply.

Lyons also does not support the Plan's argument that the RPA created a new right to maintain an action. In fact the opposite is true. The issue in Lyons was whether the named plaintiff, who received his lump sum distribution prior to the effective date of the RPA, was an adequate representative of those class members whose lump sum distributions were made after that date. Lyons, 221 F.3d at 1253. The Court simply held that Mr. Lyons had no interest in arguing *whether or not* the RPA "altered the legal landscape," because his claim was governed by pre-1994 law. Id. Holding that someone has no interest in arguing whether the RPA altered the legal landscape is not the same as holding that the RPA created a new right of action. In fact, Lyons, like Esden and Berger v. Xerox, demonstrates that the RPA did not create a cause of action. Mr. Lyons asserted the exact same cause of action as Plaintiff does here, but for a lump sum that was paid in 1993. 221 F.3d at 1239. As in Berger v. Xerox and Esden, it is obvious that Mr. Lyons would have had no claim involving a lump sum distribution received in 1993 if the Plan were correct that the RPA created the cause of action asserted by Plaintiff here. In sum, § 1658 does not apply.

### III. Conclusion

The Plan is well aware of the fact that when the Court considers the merits of Plaintiff's claim, the Plan is sure to lose given the unanimity of the Courts of Appeals on the whipsaw issue, including the Seventh Circuit. It attempts to ensure that never happens by arguing Plaintiff's claims are time-barred. The Plan is wrong.

Plaintiff's Complaint was timely filed regardless of what statute of limitations applies, because the limitations period never began to run as there was no clear and unequivocal

repudiation of benefits communicated to the Plaintiff. Even if Plaintiff's claim accrued on the date he received his lump sum distribution, his Complaint was still timely filed on February 12, 2007, because this case is governed by Indiana's 10-year statute of limitations. The Court should therefore deny the Plan's Motion.

Respectfully submitted,


/s/ Douglas R. Sprong
Douglas R. Sprong
Steven A. Katz
Korein Tillery, LLC
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile
dsprong@koreintillery.com
skatz@koreintillery.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*

21

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was e-mailed on May 15, 2007, per the Court's electronic filing system, to:

Theresa J. Chung
Joseph J. Costello
Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5295/5258/5584 - Telephone
(215) 963-5001 - Facsimile
tchung@morganlewis.com
jcostello@morganlewis.com
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

/s/ Douglas R. Sprong

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| Paul Caufield, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO.  4:07-cv-00016-SEB-WGH |
| vs. | ) | |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Upon consideration of Motion to Appear *Pro Hac Vice* by counsel, William K. Carr;

IT IS HEREBY ORDERED that, upon payment of the required fee, William K. Carr be

allowed to enter his appearance in this case only, *instanter*.

Date:  ___May 16, 2007___          ___s/ Sarah Evans Barker___
                                        U.S. District Court Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

PAUL CAUFIELD,                              )
                                            )
                    Plaintiff,              )
                                            )        CAUSE NO.  4:07-cv-00016-SEB-WGH
        vs.                                 )
                                            )
COLGATE-PALMOLIVE COMPANY                   )
EMPLOYEES' RETIREMENT INCOME                )
PLAN,                                       )
                                            )
                    Defendant.              )

**MOTION TO APPEAR PRO HAC VICE**

COMES NOW Counsel, **Diane Moore Heitman**, pursuant to Local Rule and in support
of her Motion to Appear *Pro Hac Vice* on behalf of Plaintiff in this matter alone, states as
follows:

1.      I am an attorney at law duly licensed to practice for all the courts of the States of
Missouri, Illinois and California and am with the law firm KOREIN TILLERY, LLC, 505 N. 7th
Street, Suite 3600, St. Louis, Missouri 63101.

2.      I am not under suspension or disbarment in any jurisdiction, nor is any member of
my firm.

3.      By this motion, I seek to be associated in as counsel for Plaintiffs, in this case
only, with T. J. Smith, Law Offices of T.J. Smith, LLC, 500 West Jefferson Street, PNC Plaza,
Suite 2000, Louisville, KY 40202.

4.      Upon entry of my appearance in this matter, I agree to comply with any applicable
Rules of Professional Conduct.  I understand that in so doing I will become subject to discipline
by this Court.

1

Respectfully submitted,

Diane Moore Heitman
KOREIN TILLERY, LLC
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Telephone:    (314) 241-4844
Fax:              (314) 241-3525


STATE OF MISSOURI           )
                                            )  SS
COUNTY OF ST. LOUIS     )


On this 17th day of May, 2007, before me, a Notary Public in and for said state, personally appeared Diane Moore Heitman, known to me to be the person who executed the within Motion To Appear *Pro Hac Vice*, and acknowledged to me that she executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and  State aforesaid, the day and year first above written.

Notary Public:

My Commission Expires:

LISA L. LUCAS
My Commission Expires
May 5, 2009
St. Louis City
Commission #05706964

Lisa  L.  Lucas

2

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*

3

## CERTIFICATE OF SERVICE

A copy of the foregoing was e-mailed on May _33_ , 2007, per the Court's electronic filing system, to:

Theresa J. Chung
Joseph J. Costello
Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5295/5258/5584 - Telephone
(215) 963-5001 - Facsimile
tchung@morganlewis.com
jcostello@morganlewis.com
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

4

```
CourtuNameyuSouthern District of Indiana
Division: 4
Receipt Number: NA000097
Cashier ID: mathews
Transaction Date: 05/24/2007
Payer Name: Korein Tillery
-----------------------------------
PRO HAC VICE
 For: Korein Tillery
 Case/Party: D-INS-1-07-LB-000001-001
 Amount:     $30.00
-----------------------------------
CHECK
 Remitter: Korein Tillery
 Check/Money Order Num: 14100
 Amt Tendered: $30.00
-----------------------------------
Total Due:      $30.00
Total Tendered: $30.00
Change Amt:     $0.00

Korein Tillery

#10 Execdtive Woods Court

Belleville, IL  62226

PHV Fee for Diane Moore Heitman

4:07-cv-000016-001


"Only when bank clears the check,
money order, or verfies credit of
funds is the fee or debt officially
paid or discharged.  A $45 fee will
be charged for a returned check."
```

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

PAUL CAUFIELD,                )
                                     )
               Plaintiff,     )
                                     )     CAUSE NO.  4:07-cv-00016-SEB-WGH
     vs.                      )
                                     )
COLGATE-PALMOLIVE COMPANY   )
EMPLOYEES' RETIREMENT INCOME   )
PLAN,                      )
                                     )
              Defendant.     )

## ORDER

Upon consideration of Motion to Appear Pro Hac Vice by counsel, **Diane Moore Heitman**;

IT IS HEREBY ORDERED that, upon payment of the required fee, Diane Moore Heitman be allowed to enter her appearance in this case only, *instanter*.

Date:         _May 24, 2007_               _s/ Sarah Evans Barker_
                                             U.S. District Court Judge

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| PAUL CAUFIELD,                    ) | |

PAUL CAUFIELD,                              )
                                           )
                    Plaintiff,             )
                                           )          Cause No.  4:07-cv-00016-SEB-WGH
          vs.                              )
                                           )
COLGATE-PALMOLIVE COMPANY                  )
EMPLOYEES' RETIREMENT INCOME               )
PLAN,                                      )
                                           )
                    Defendant.             )

**CASE MANAGEMENT PLAN**

**I.**      **Parties and Representatives**

    A.    Plaintiff:    Paul Caufield, individually and on behalf of all others similarly situated

          Defendant:    Colgate-Palmolive Company Employees' Retirement Income Plan

    B.    Plaintiff's Counsel:    T.J. Smith
                             T.J. Smith, LLC
                             600 West Main Street, Suite 200
                             Louisville, KY 40202
                             Telephone:    (502) 589-2560
                             Fax:          (502) 568-3600
                             tjsmith@smithhelman.com

                             Douglas R. Sprong
                             Diane Moore Heitman
                             Korein Tillery, LLC
                             505 North 7th Street, Suite 3600
                             St. Louis, MO  63101
                             Telephone:    (314) 241-4844
                             Fax:          (314) 241-3525
                             dsprong@koreintillery.com
                             dheitman@koreintillery.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
Telephone:     (303) 296-6383
Fax:              (303) 296-6652
bill@pension-law.com

Defense Counsel:     Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
Telephone:     (317) 237-0300
Fax:              (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:     (215) 963-5295/5258/5584
Fax:              (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

## II.    Synopsis of Case

A.    Plaintiff claims the defendant pension plan paid him a lump sum distribution that
was less than the minimum distribution required by ERISA.   ERISA requires that
lump sums like the one received by Plaintiff be the actuarial equivalent of the
normal retirement benefit – a single life annuity payable at normal retirement age.
For cash balance plans, that means the participant's notational case balance
account must be projected forward to normal retirement age at the plan's interest
crediting rate and then discounted back to present value at a statutorily prescribed
interest rate.  Defendant failed to perform these calculations and instead paid
Plaintiff a lump sum equal to his notational cash balance account.  Plaintiff
alleges this resulted in an illegal forfeiture of vested pension benefits in violation

2

of ERISA §203(a) and violated ERISA § § 203(e), 205(g)(3) and Internal Revenue Code § 417(e), all as implemented by Treasury Regulation §1.417(e)-1(d), in that Plaintiff's lump sum was not equal to the present value of his normal retirement benefit. *See* Esden v. Bank of Boston, 229 F.3d 154 (2nd Cir. 2000); West v. AK Steel Corp., – F.3d – , 2007 WL 1159951 (6th Cir. 2007); Berger v. Xerox Corp. Ret. Income Guarantee Plan, 338 F.3d 755 (7th Cir. 2003); Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235 (11th Cir. 2000).

B.      Defendant denies Plaintiff's allegations. In addition, Defendant has moved to dismiss Plaintiff's Complaint because Plaintiff's claims are barred by the applicable statute of limitations. Specifically, Plaintiff's claims are subject to the four year "catch-all" limitations period set forth in 28 U.S.C. § 1658(a), because the statutory sections upon which his claims are based were amended in 1994 to change the relevant statutory definitions. See Berger v. AXA Network LLC, 459 F.3d 804, 808 (7th Cir. 2006); Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-84 (2004). However, even if the four-year statute of limitations did not apply, Caufield's claims still would be time barred under the New York six-year limitations period, because Plaintiff challenges plan administration that affected Plan participants throughout the country, the Plan was administered in New York, and Indiana is "is simply a spoke rather than the hub of this lawsuit." Berger, 459 F.3d at 813.

Lastly, Defendant denies that this case is appropriate for class treatment.

## III.    Pretrial Pleadings and Disclosures

### Defendant's Preliminary Statement:

Defendant respectfully requests that the setting of all deadlines for discovery, dispositive motions, and other proceedings be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007. Defendant submits that the Court should determine the legal sufficiency of the Plaintiff's claims before permitting the parties to engage in costly factual and expert witness discovery. As the Supreme Court emphasized in its recent decision, Bell Atlantic Corp. v. Twombly, --- S. Ct. ---, Civ. No. 05-1126, 2007 WL 1461066 (May 21, 2007), "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Id., 2007 WL 1461066, at *9 (citations omitted). In addition, Defendant submits that the Court's ruling on its Motion to Dismiss will impact the potential scope of discovery. Further, Defendant anticipates that it will need to conduct extensive expert discovery in order to prepare its dispositive motion and to respond to any class certification motion. Defendant submits that its filing of its Motion to Dismiss warrants a stay of such discovery and other proceedings, as set forth in the Defendant's Motion to Stay Proceedings, filed contemporaneously herewith.

3

**Plaintiff's Preliminary Statement:**

**Plaintiff opposes the stay of discovery pending the Court's ruling on the Motion to Dismiss and further contests the assertion that this case will involve either costly factual or expert witness discovery.**

A.   Plaintiff proposes that the parties shall serve their Fed. R. Civ. P. 26 initial disclosures on or before June 12, 2007, and shall at that time file a notice with the Court that such disclosures have been served.

Defendant proposes that this deadline be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007.

B.   Plaintiff proposes that the Plaintiff(s) shall file preliminary witness and exhibit lists on or before July 12, 2007.

Defendant proposes that this deadline be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007.

C.   Plaintiff proposes that the Defendant(s) shall file preliminary witness and exhibit lists on or before August 13, 2007.

Defendant proposes that this deadline be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007.

D.   Plaintiff proposes that all motions for leave to amend the pleadings and/or to join additional parties shall be filed on or before July 12, 2007.

Defendant proposes that this deadline be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007.

E.   Plaintiff proposes that the Plaintiff(s) shall serve Defendant(s) (but not file with the Court) a statement of special damages, if any, and make a settlement demand, on or before July 12, 2007.  In addition, Plaintiff proposes that Defendant(s) shall serve on the Plaintiff(s) (but not file with the Court) a response thereto within 30 days after receipt of the demand.

Defendant proposes that this deadline be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007.

F.   Plaintiff proposes that the Plaintiff(s) shall disclose the name, address, and vita of all expert witnesses, and shall serve the report required by Fed.R.Civ.P. 26 (a)(2)(B) on or before January 14, 2008.  Any deposition of the Plaintiff's expert witness(es) by the Defendant shall be conducted on or before February 12, 2008.

Defendant proposes that this deadline be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007.

G.     Plaintiff proposes that the Defendant(s) shall disclose the name, address, and vita of all expert witnesses, and shall serve the report required by Fed.R.Civ.P. 26(a)(2)(B) no later than February 12, 2008. Any deposition of the Defendant's expert witness(es) by the Plaintiff shall be conducted on or before March 12, 2008.

Defendant proposes that this deadline be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007.

H.     Plaintiff proposes that any party who wishes to preclude expert testimony at trial shall file any such objections by June 12, 2008. Plaintiff proposes that any party who wishes to preclude expert witness testimony at the summary judgment stage shall file any such objections with their respective brief within the briefing schedule established by Local Rule 56.1.

Defendant proposes that this deadline be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007.

I.     Plaintiff proposes that all parties shall file and serve their final witness and exhibit lists on or before April 14, 2008.

Defendant proposes that this deadline be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007.

J.     The parties agree that any party who believes that bifurcation of discovery and/or trial is appropriate with respect to any issue or claim shall notify the Court as soon as practicable.

In addition, Defendant proposes that the setting of all deadlines for discovery, dispositive motions, and all proceedings be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007. Defendant proposes that the Court should determine the legal sufficiency of the Plaintiff's claims before permitting the parties to engage in costly factual and expert discovery.

## IV.     **Discovery and Dispositive Motions**

A.     Does any party believe that this case may be appropriate for summary judgment or other dispositive motion? If yes, the party(ies) that expect to file such a motion must provide a brief statement of the factual and/or legal basis for such a motion.

[Note: A statement such as "Defendant will seek summary judgment because no material facts are in dispute," is insufficient. Such a statement does not indicate to the Court that the parties used the CMP as an opportunity to seriously explore whether this case is appropriate for summary judgment or other dispositive motion. However, the failure to set forth a basis for a dispositive motion in the CMP will not bar a party from raising this argument at the motions stage.]

Plaintiff's Position:

Plaintiff believes that the case can be resolved on cross motions for summary judgment to be filed at or before the close of discovery. Plaintiff believes resolution by summary judgment is appropriate because he does not anticipate factual disputes about the manner in which the class members' lump sum distributions were computed, only a dispute as to whether such computations complied with ERISA and/or the Internal Revenue Code. Plaintiff contests the need for expert witnesses at either the liability stage or class certificate phase in light of the Seventh Circuit's decision in Berger v. Xerox Ret. Income Guarantee Plan, 338 F.3d 755 (7th Cir. 2003), which mandates both a liability ruling in plaintiff's favor and class certification under Rule 23(b)(2).

Defendant's Position:

Defendant believes that there may be certain issues that can be resolved at summary judgment, including the manner in which Plaintiff's lump sum distribution was computed and whether that methodology complied with ERISA, the scope of relief, if any, available to Plaintiff, the timeliness of Plaintiff's claims, and whether the Pension Protection Act of 2006 affected Plaintiff's entitlement to any further distribution from the Plan. Defendant further believes that, based on the Plaintiff's arguments in opposition to Defendant's motion to dismiss, the timeliness of individual putative class members' claims may depend on where the class member worked and lived and for how long, and each putative class members' knowledge about his or her claim. Such issues cannot be resolved on a classwide basis.

In addition, Defendant respectfully requests that the setting of the deadline for dispositive motions be deferred until after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007. Defendant anticipates that it will need to conduct expert discovery in order to prepare its dispositive motion and to respond to any class certification motion. Defendant submits that its filing of its Motion to Dismiss warrants a stay of such discovery and other proceedings, as set forth in the Defendant's Motion to Stay Proceedings, filed contemporaneously herewith.

A.        Select the track that bests suits this case:



_____        Track 1: No dispositive motions are anticipated. All discovery

shall be completed[1] by _____ [16 months from Anchor Date]. [Note: Given that no dispositive motions are anticipated, the parties should consider accelerating discovery and other pretrial deadlines to the extent practicable and suggest a trial date (Section VI) substantially earlier than the presumptive trial date of 18 months from the Anchor Date.  The Court encourages a track faster than the standard track in all cases in which dispositive motions are not anticipated].

_____  Track 2: Dispositive motions are expected and shall be filed by_____; non-expert witness discovery and discovery relating to liability issues shall be completed by _____[2]; expert witness discovery and discovery relating to damages shall be completed by  _____.

_____  Track 3: Dispositive motions are expected and shall be filed no later than _____ [13 months from Anchor Date]; expert witness discovery that may be necessary at the dispositive motions stage shall be completed by _____ [8-12 months from Anchor Date]; all remaining discovery shall be completed by _____ [12-16 months from Anchor Date].  [Note: The Court expects that this will not be the typical track when dispositive motions are anticipated.]

__X____  Track 4: Dispositive motions shall be filed by March 12, 2008 [not later than 13 months from Anchor Date]; non-expert discovery shall be completed by December 12, 2007; Plaintiff's expert witness disclosures and expert report shall be completed and served by January 14, 2008, and any deposition of the Plaintiff's expert witness(es) by the Defendant shall be conducted on or before February 12, 2008.

_____

[1]The term "completed", as used in Section III.B, means that counsel must serve their discovery requests in sufficient time to receive responses before this deadline.  Counsel may not serve discovery requests within the 30-day period before this deadline unless they seek leave of Court to serve a belated request and show good cause for the same.  In such event, the proposed belated discovery request shall be filed with the motion, and the opposing party will receive it with service of the motion but need not respond to the same until such time as the Court grants the motion.

[2]The parties shall pick specific dates within each four-month range.  The parties shall set these dates in a manner that will most likely leave sufficient time to complete discovery, if necessary, after any dispositive motion ruling.

Defendant's expert witness disclosures and report shall be completed and served by February 12, 2008, and any deposition of the Defendant's expert witness(es) by the Plaintiff shall be conducted on or before March 12, 2008.

[Note: The Court provides Track 4 as an open option because it recognizes that there may be unusual cases for which special circumstances necessitate additional flexibility.  However, the Court has found that Tracks 1-3 are appropriate in the large majority of cases, and therefore the parties must briefly state below the special circumstances justifying a departure from Tracks 1-3.]

The parties believe that the deadlines set forth in Track 4 are appropriate because the parties anticipate that non-expert witness discovery can be completed before the submission of any dispositive motions.  However, the parties anticipate that expert witness discovery disclosures and reports will be completed after the deadline for non-expert witness discovery.  The parties further expect to use expert witness testimony at the summary judgment phase.

## V.    Pre-trial/Settlement Conferences

Plaintiff's Position:

Plaintiff believes that an initial conference with the magistrate or judge would be appropriate before the Court's ruling on Defendant's pending Motion to Dismiss.

Defendant's Position:

Defendant believes that it would be helpful to hold an initial conference with the magistrate or judge, but only after the Court's ruling on Defendant's pending Motion to Dismiss, in the event the Court denies the Motion to Dismiss.

## VI.    Trial Date

Plaintiff believes that this case will not need to be tried.  However, Plaintiff proposes a presumptive trial date of August 12, 2008.  The trial, if any, is by Court and is anticipated to take 2 days.

Defendant respectfully requests that the trial deadline and the anticipated length of the trial be determined after the Court's ruling on Defendant's Motion to Dismiss, filed on April 16, 2007, and after the Court's ruling on any motion for class certification.  Both of these issues will have a direct bearing on the length of any trial.

## VII.    Referral to Magistrate Judge

At this time, all parties do not consent to refer this matter to the Magistrate Judge pursuant to 28 U.S.C. §636(b) and Federal Rule of Civil Procedure 73 for all further proceedings including trial.

## VIII.   Required Pre-Trial Preparation

A.    **TWO WEEKS BEFORE THE FINAL PRETRIAL CONFERENCE**, the parties shall:

1.    File a list of witnesses who are expected to be called to testify at trial.

2.    Number in sequential order all exhibits, including graphs, charts and the like, that will be used during the trial.  Provide the Court with a list of these exhibits, including a description of each exhibit and the identifying designation.  Make the original exhibits available for inspection by opposing counsel.  Stipulations as to the authenticity and admissibility of exhibits are encouraged to the greatest extent possible.

3.    Submit all stipulations of facts in writing to the Court.  Stipulations are always encouraged so that at trial, counsel can concentrate on relevant contested facts.

4.    A party who intends to offer any depositions into evidence during the party's case in chief shall prepare and file with the Court and copy to all opposing parties either:

a.    brief written summaries of the relevant facts in the depositions that will be offered.  (Because such a summary will be used in lieu of the actual deposition testimony to eliminate time reading depositions in a question and answer format, this is strongly encouraged.); or

b.    if a summary is inappropriate, a document which lists the portions of the deposition(s), including the specific page and line numbers, that will be read, or, in the event of a video-taped deposition, the portions of the deposition that will be played, designated specifically by counter-numbers.

5.    Provide all other parties and the Court with any trial briefs and motions in limine, along with all proposed jury instructions, voir dire questions, and areas of inquiry for voir dire (or, if the trial is to the Court, with proposed

findings of fact and conclusions of law).

6.  Notify the Court and opposing counsel of the anticipated use of any evidence presentation equipment.

B.  **ONE WEEK BEFORE THE FINAL PRETRIAL CONFERENCE**, the parties shall:

1.  Notify opposing counsel in writing of any objections to the proposed exhibits.  If the parties desire a ruling on the objection prior to trial, a motion should be filed noting the objection and a description and designation of the exhibit, the basis of the objection, and the legal authorities supporting the objection.

2.  If a party has an objection to the deposition summary or to a designated portion of a deposition that will be offered at trial, or if a party intends to offer additional portions at trial in response to the opponent's designation, and the parties desire a ruling on the objection prior to trial, the party shall submit the objections and counter summaries or designations to the Court in writing.  Any objections shall be made in the same manner as for proposed exhibits.  However, in the case of objections to video-taped depositions, the objections shall be brought to the Court's immediate attention to allow adequate time for editing of the deposition prior to trial.

3.  File objections to any motions in limine, proposed instructions, and voir dire questions submitted by the opposing parties.

4.  Notify the Court and opposing counsel of requests for separation of witnesses at trial.

IX.  <u>**Other Matters**</u>

None at this time.

Respectfully submitted,

/s/ Douglas R. Sprong
Douglas R. Sprong
Diane Moore Heitman
Korein Tillery, LLC
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101

10

Telephone:     (314) 241-4844
Fax:               (314) 241-3525
dsprong@koreintillery.com
dheitman@koreintillery.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
Telephone:     (303) 296-6383
Fax:               (303) 296-6652
bill@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
Telephone:     (502) 589-2560
Fax:               (502) 568-3600
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*


/s/ Theresa J. Chung
Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:     (215) 963-5295/5258/5584
Fax:               (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

*\* admitted pro hac vice*

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700

11

Indianapolis, IN 46204
Telephone:      (317) 237-0300
Fax:               (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

_____ APPROVED AS SUBMITTED.

_____ APPROVED AS AMENDED PER SEPARATE ORDER.

_____ APPROVED, BUT ALL OF THE FOREGOING DEADLINES ARE
SHORTENED/LENGTHENED BY _____ MONTHS.

_____ APPROVED, BUT THE DEADLINES SET IN SECTION(S) _____
OF THE PLAN IS/ARE SHORTENED/LENGTHENED BY _____
MONTHS.

_____ THIS MATTER IS SET FOR TRIAL BY _____ ON
_____.  FINAL PRETRIAL CONFERENCE IS
SCHEDULED FOR _____ AT _____ __.M., ROOM
_____.

_____ A SETTLEMENT/STATUS CONFERENCE IS SET IN THIS CASE FOR
_____ AT _____ __.M.  COUNSEL SHALL
APPEAR:

_____ IN PERSON IN ROOM _____; OR
_____ BY TELEPHONE, WITH COUNSEL FOR _____
INITIATING THE CALL TO ALL OTHER PARTIES AND
ADDING THE MAGISTRATE AT (_____) _____.

_____

_____

_____

_____            _____
Date                                   District/Magistrate Judge
                                       Southern District of Indiana

13

## MAGISTRATE JUDGE'S SUMMARY OF CASE MANAGEMENT PLAN

**Date Approved**:    (for court's use)    **Cause No.**: 4:07-cv-00016-SEB-WGH

**Caption**:    Paul Caufield, et al. v. Colgate-Palmolive Company Employees'
Retirement Income Plan

**Pltf's Counsel**:    Douglas R. Sprong (314) 241-4844

**Deft's Counsel**:    Ellen E. Boshkoff (317) 237-0300

**Nature of Case**:    Plaintiff claims that his lump sum pension benefit was not equal to the
present value of his normal retirement benefit in violation of ERISA
§§ 203(e), 205(g)(3).  Class allegations.

**Defenses**:    Defendant denies Plaintiff's allegations and denies that this case should be
certified as a class action.  Defendant also has asserted a statute of
limitations defense.

**Discovery**:    Plaintiff proposes a (non-expert witness) discovery deadline of December
12, 2007, a deadline of January 14, 2008 for Plaintiff(s)'s expert disclosures
and expert report, and a deadline of February 12, 2008 for Defendant's
expert disclosures and expert report.  Plaintiff proposes that any deposition
of the Plaintiff's expert witness(es) by the Defendant shall be conducted on
or before February 12, 2008, and any deposition of the Defendant's expert
witness(es) by the Plaintiff shall be conducted on or before March 12, 2008.
Defendant proposes a stay of discovery deadlines until after the Court's
ruling on its Motion to Dismiss.

**Readiness**:    Plaintiff proposes a trial date of August 12, 2008.  Defendant proposes that
the trial date be determined after the Court's ruling on its Motion to
Dismiss.

**Trial Time**:    Plaintiff proposes a trial lasting 2 days.  Defendant proposes that the trial
time be determined after the Court's ruling on its Motion to Dismiss and
class certification.

**Motions Pending**:    Defendant's Motion to Dismiss Plaintiff's Complaint, filed on 4/16/07

**Motions Future**:    Defendant's Motion to Stay Proceedings; Motions for Summary Judgment

**Pltf's Demand**:    Plaintiff proposes to make a settlement demand on or before July 12, 2007.

**Defense Offer**:    To be determined after Court's ruling on Defendant's Motion to Dismiss
and ruling on class certification.

**Settlement**:    Plaintiff requests a settlement conference at the Court's convenience.
Defendant requests a settlement conference after the Court's ruling on
Defendant's Motion to Dismiss and ruling on class certification..

**Remarks**:    (for court's use)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| PAUL CAUFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Cause No.  4:07-cv-00016-SEB-WGH |
| | ) |
| COLGATE-PALMOLIVE COMPANY | ) |
| EMPLOYEES' RETIREMENT INCOME | ) |
| PLAN, | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR STAY OF PROCEEDINGS**
**PENDING DISPOSITION OF ITS MOTION TO DISMISS**

Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan"

or "Defendant"), by and through its attorneys, respectfully moves to stay proceedings and

discovery pending this Court's adjudication of Defendant's Motion to Dismiss Plaintiff's

Complaint for the reasons set forth more fully in Defendant's brief, filed contemporaneously

herewith.

Respectfully submitted,

Dated:  June 5, 2007                MORGAN, LEWIS & BOCKIUS LLP


By:     /s/ Theresa J. Chung
Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung*
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5295/5258/5584
Fax:  (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

Baker & Daniels LLP
Ellen E. Boshkoff (#16365-49)
Philip J. Gutwein II (#22986-53)
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Attorneys for Defendant
Colgate-Palmolive Company Employees'
Retirement Income Plan

*Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| PAUL CAUFIELD,<br><br>                              Plaintiff,<br><br>             vs.<br><br>COLGATE-PALMOLIVE COMPANY<br>EMPLOYEES' RETIREMENT INCOME<br>PLAN,<br><br>                              Defendant. | Cause No.  4:07-cv-00016-SEB-WGH |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR STAY OF PROCEEDINGS**
**PENDING DISPOSITION OF ITS MOTION TO DISMISS**

## I.     INTRODUCTION

Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan"
or "Defendant") seeks a stay of discovery and other proceedings in this action until the Court has
ruled on the Plan's Motion to Dismiss Plaintiff Paul Caufield's ("Plaintiff" or "Caufield")
Complaint, which was filed on April 16, 2007.  (Docket No. 24).  The Plan's Motion to Dismiss
involves the discrete, legal issue of whether Caufield's ERISA claims are time barred under the
applicable statute of limitations.  As the Supreme Court emphasized in its recent decision, Bell
Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), "when the allegations in a complaint,
however true, could not raise a claim of entitlement to relief, *this basic deficiency should … be
exposed at the point of minimum expenditure of time and money by the parties and the court.*"
Id. at 1966 (emphasis added, citations and quotations omitted; ellipsis in original).  Here,
permitting discovery and other proceedings to go forward in this putative class action before a
ruling on the legal sufficiency of Caufield's Complaint would impose an unnecessary burden and
expense on the parties and the Court.  Accordingly, Defendant respectfully submits that a stay of
discovery and other proceedings is warranted pending a ruling on the Motion to Dismiss.

## II.    PROCEDURAL BACKGROUND

Plaintiff Paul Caufield ("Plaintiff" or "Caufield") filed his Complaint on February 12, 2007.  (Docket No. 1).  In his Complaint, Caufield alleges that the manner in which his lump sum pension benefit was calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 22-23).  Specifically, Caufield alleges that when he retired in February 1999, the Plan paid him a lump sum benefit equal to his cash balance account balance.  (Compl. ¶¶ 9-11).  He claims, however, that the Plan was required to pay him a higher amount, based on the value of his normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 9-11, 22-23).  Caufield purports to bring this action on behalf of a class of former Plan participants who received lump sum distributions from the Plan from 1997 to the present, all allegedly calculated in the same manner.  (Compl. ¶¶ 13, 17).

On April 16, 2007, the Plan moved to dismiss the Plaintiff's Complaint for failure to state a claim because Plaintiff's claims are time barred under the relevant statutes of limitations.  (Docket No. 24).  On May 15, 2007, Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint ("Plaintiff's Opposition"), in which he asserted various legal arguments in response to Defendant's Motion to Dismiss.  (Docket No. 34).  Pursuant to the Court's Order on the parties' Joint Request for Extension of Time, Defendant's Reply is due on June 5, 2007.  (Docket No. 31).  Upon completion of the briefing, the Motion to Dismiss will be ripe for the Court's consideration.

### III.    ARGUMENT

**A.    Applicable Legal Standards: The Court's Broad Authority To Stay Discovery And Other Proceedings.**

In a recent opinion, Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court announced a more rigorous standard that plaintiffs must satisfy to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Specifically, the Supreme Court held that a plaintiff must allege sufficient specific facts to state a claim "*that is plausible on its face*," not just one that is "conceivable."  Id. at 1974 (emphasis added).  In addition, the Supreme Court cautioned courts against permitting discovery where the allegations in a complaint fail to raise a claim of entitlement to relief under Fed. R. Civ. P. 12(b)(6).  In so doing, the Supreme Court explained that "a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed."  Id. at 1967 (internal quotations and citation omitted).  Moreover, the Supreme Court noted that "it is only by taking care to require allegations that reach the level suggesting [a plausible claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence" to support the claim.  Id. at 1967 (quotations omitted).  The Supreme Court held that:

> It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through "careful case management," given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.  And it is self-evident that the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage, much less lucid instructions to juries; the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings.

Id. at 1967 (internal citations and quotations omitted).

Although the substantive claims at issue in <u>Twombly</u> (antitrust and conspiracy) are different than the claims at issue in this case, the same Rule 12(b)(6) standard, and the same expensive discovery concerns, apply here.  As in <u>Twombly</u>, Plaintiffs' failure to state a claim should be "exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Twombly</u>, 127 S. Ct. at 1966.[1]

**B.    Good Cause Exists To Stay Discovery And Other Proceedings Pending Resolution Of The Plan's Motion To Dismiss.**

In this case, a stay of discovery and other proceedings is appropriate because (i) the Plan has raised compelling questions regarding the adequacy of the Plaintiff's Complaint, (ii) a stay is necessary to preserve judicial resources and to spare the litigants the significant burden, expense and inconvenience of engaging in discovery and other proceedings, and (iii) such stay would result in no real prejudice to the Plaintiff.

First, the Plan's Motion to Dismiss raises substantial doubt as to the legal sufficiency of the Complaint.  The Motion to Dismiss seeks dismissal of the entire Complaint for failure to state a claim because the Plaintiff's claims are all time barred under the applicable statute of limitations periods.  (<u>See</u> Memorandum of Law in Support of Defendant's Motion to Dismiss, at 5-15).  Although the specific grounds for the Motion to Dismiss will not be repeated herein, it bears note that Defendant's motion is unrelated to the substantive merits of Plaintiff's claims, and Plaintiff does not claim any need for discovery to oppose Defendant's motion.

---

[1]   <u>See also</u> <u>Azar v. Merck & Co., Inc.</u>, No. 3:06-cv-0579 AS, 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006) (Federal courts have authority to stay proceedings and to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (internal citation omitted); <u>In re Sulfuric Acid Antitrust Litig.</u>, 231 F.R.D. 331, 336 (N.D. Ill. 2005) (emphasis added) (noting that stays of discovery pending a ruling on a motion to dismiss "are granted with substantial frequency") (collecting cases); <u>Landstrom v. Illinois Dep't of Children and Family Servs.</u>, 892 F. 2d 670, 674 (7th Cir. 1990) (affirming grant of stay pending resolution of motion to dismiss).

Second, commencing discovery and other proceedings before the Plan's Motion to
Dismiss is decided would impose an unnecessary burden and expense on the parties and the
Court. This is a putative class action on behalf of all participants in the Plan throughout the
entire county who took lump sums from the Plan from 1997 to the present. Plaintiff no doubt
will seek discovery regarding the benefits calculated for all members of the putative class, as
well as documents regarding the Plan and its administration for at least the last ten years, <u>i.e.</u>, the
proposed class period. The parties also would have to engage expert witnesses, both regarding
the merits of Plaintiff's claims and for purposes of any motion for class certification that Plaintiff
might file. Such undertakings will be mooted if the Motion to Dismiss is granted, so any
discovery is unreasonable and premature pending the adjudication of the Motion to Dismiss.

Finally, Plaintiff will not suffer any real prejudice should the Court stay discovery and
other proceedings pending a resolution of the Defendant's Motion to Dismiss. Importantly, the
Defendant is not requesting that the Plaintiff be denied discovery, but merely that discovery be
delayed a reasonable amount of time pending a decision on the Motion to Dismiss. Nor does
Plaintiff claim that he needs any discovery to oppose the Motion to Dismiss.

Under these circumstances, the interest in judicial economy would not be served by
requiring the parties and this Court to expend resources on proceedings and discovery that are
potentially unnecessary, and that can be easily stayed for a limited period of time by this Court's
Order. As the Supreme Court explained in <u>Twombly</u>, "when the allegations in a complaint,
however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be
exposed at the point of minimum expenditure of time and money by the parties and the court."
<u>Twombly</u>, 127 S. Ct. at 1966 (internal citations and quotations omitted; ellipsis in original). <u>See
also</u> <u>Sprague v. Brook</u>, 149 F.R.D. 575, 577 (N.D. Ill. 1983) ("A plaintiff's right to discovery

before ruling on a motion to dismiss may be stayed when the requested discovery is unlikely to produce facts necessary to defeat the motion."); Novelty, Inc. v. Tandy, No. 104CV1502DFHTAB, 2005 WL 2253599, at *4 (S.D. Ind. Sept. 1, 2005) (granting motion to stay discovery pending dispositive motion where the defendant's argument had merit, thus "tip[ping] the balance in favor of staying discovery pending resolution of the pending dispositive motion."); Cataldo v. City of Chicago, No. 01 C 6665, 2002 WL 91903, at *2 (N.D. Ill. Jan. 24, 2002) (granting motion to stay discovery until after motion to dismiss was decided where, among other reasons, plaintiff would not be harmed by any delay in discovery until after the motion to dismiss was decided).

## IV.    CONCLUSION

For the reasons set forth herein and in its Motion For Stay Of Proceedings Pending Disposition Of Its Motion To Dismiss, Defendant respectfully requests that the Court issue an order staying discovery and other proceedings in this action until such time as the Court rules on its Motion to Dismiss.

Respectfully submitted,

Dated:  June 5, 2007                    MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ Theresa J. Chung
Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung*
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5295/5258/5584
Fax:  (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

Baker & Daniels LLP
Ellen E. Boshkoff (#16365-49)
Philip J. Gutwein II (#22986-53)

-6-

300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Attorneys for Defendant
Colgate-Palmolive Company Employees'
Retirement Income Plan

*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2007, a copy of the foregoing Defendant's Motion For Stay Of Proceedings Pending Disposition Of Its Motion To Dismiss, and papers in support thereof, was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street, Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

I hereby certify that on June 5, 2007, a copy of the foregoing Defendant's Motion For Stay Of Proceedings Pending Disposition Of Its Motion To Dismiss, and papers in support thereof, was mailed, by first class U.S. mail, postage prepaid, and properly addressed to the following:

Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

/s/Theresa J. Chung
Theresa J. Chung*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5584
Fax: (215) 963-5001
tchung@morganlewis.com

*Admitted Pro Hac Vice*

# EXHIBIT A

Excerpt from Summary Plan Description
Dated November 1994

## RETIREMENT

Monthly pension payments are determined by the value of your account balance, interest rates and life expectancy assumptions.

## Payment Options

You can elect an optional payment method instead of the automatic form by notifying your local Human Resources representative prior to your retirement date. If you are married and elect an option that does not provide continuing pension payments to your spouse after your death, the law requires that your spouse provide written consent that is notarized or witnessed by a Plan representative. Written consent must be provided to your local Human Resources representative no earlier than 90 days before payment from the Plan and no later than the benefit commencement date.

***Lump-sum Option*** — An option available to both married and unmarried employees is a lump-sum payment of the total value of your PRA balance. Keep in mind, if you are married, your spouse must consent in writing to this form of payment.

***Joint Annuitant Option*** — Both married and unmarried employees can have their benefits paid according to a joint annuitant option. This option is similar to the qualified joint and survivor annuity for married employees, except that you can choose the percentage (for example, 25%) of your benefit you want to continue to your spouse or other beneficiary after your death. It is important to note that, if you are married and want to name someone other than your spouse as joint annuitant, you must have your spouse's written consent.

Remember, this written consent must be notarized or witnessed by a Plan representative.

The following rules apply to electing the joint annuitant option:

- If you or your beneficiary die before you retire, the option is canceled.
- If this option would provide a monthly benefit of less than $50, the Company must consent to your election.
- You must be scheduled to receive at least 50% of your earned benefit if you select this option.
- Your beneficiary cannot receive more than 100% of your normal retirement benefit.

If you select this option, you must furnish proof of your joint annuitant's age. The amount by which your pension is reduced is determined by the percentage of your benefit you continue to your joint annuitant, and the difference in age between you and your joint annuitant.

***Life Annuity Option*** — An option available to both married and unmarried employees is a life annuity option. Under this benefit you will receive monthly pension payments for life. After your death, all payments stop. Again, if you are married, your spouse must consent in writing to this form of payment.

In addition, other payment options are available under this Plan. For more information about these options, contact your local Human Resources representative.

## Changing Your Election

In general, you have the right to change the method of payment you elect up until the time your benefit begins, although you may be

# EXHIBIT B

Excerpt from Colgate-Palmolive Company Employees'
Retirement Income Plan, Form 5500 Filed October 2005



**Quicklinks**

Back to Company Detail page | New Search
Form 5500 | Schedule A (1) | Schedule A (2) | Schedule B | Schedule C | Schedule D | Schedule H
| Schedule P | Schedule R | Schedule T | Other Documents | SHOW ALL

| Form **5500** | **Annual Return/Report of Employee Benefit Plan** | Official Use Only |
|---|---|---|

Department of the Treasury
Internal Revenue Service

Department of Labor
Pension and Welfare Benefits
Administration

Pension Benefit Guaranty Corporation

This form is required to be filed under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6039D, 6047(e), 6057(b), and 6058(a) of the Internal Revenue Code (the Code). Complete all entries in accordance with the instructions to the Form 5500.

Official Use Only
OMB Nos. 1210-0110
1210-0089

**2004**

This Form is Open to Public Inspection

**Part I    Annual Report Identification Information**

For the calendar plan year 2004 or fiscal plan year beginning January 01, 2004, and ending December 31, 2004

**A** This return/report is for:
(1) ☐ a multiemployer plan;
(2) ☒ a single-employer plan (other than a multiple-employer plan);
(3) ☐ a multiple-employer plan;
(4) ☐ a DFE (specify)

**B** This return/report is:
(1) ☐ the first return/report filed for the plan;
(2) ☐ the amended return/report;
(3) ☐ the final return/report filed for the plan;
(4) ☐ a short plan year return/report (less than 12 months).

**C** If the plan is a collectively-bargained plan, check here ☐

**D** If you filed for an extension of time to file, check the box and attach a copy of the extension application ☒

**Part II    Basic Plan Information** -- enter all requested information.

**1a** Name of plan

COLGATE-PALMOLIVE COMPANY EMPLOYEES RETIREMENT INCOME PLAN

**1b** Three-digit plan number (PN)    001

**1c** Effective date of plan (mo., day, yr.)
December 31, 1943

**2a** Plan sponsor's name and address (employer, if for a single-employer plan)
(Address should include room or suite no.)

COLGATE-PALMOLIVE COMPANY
300 PARK AVE
NEW YORK, NY 10022-7402

**2b** Employer Identification Number (EIN)
13-1815595

**2c** Sponsor's telephone number
212-310-2000

**2d** Business code (see instructions)
325600

**Caution:** A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.
Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, and to the best of my knowledge and belief, it is true, correct, and complete.

| | 10/13/2005 | MARTIN COLLINS |
|---|---|---|
| Signature of plan administrator | Date | Typed or printed name of individual signing as plan administrator |

| | 10/14/2005 | HECTOR EREZUMA |
|---|---|---|
| Signature of employer/plan sponsor/DFE | Date | Typed or printed name of individual signing as employer, plan sponsor or DFE as applicable |

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.    v2.3    Form **5500** (2004)

**3a** Plan administrator's name and address (if same as plan sponsor, enter "Same")

EMPLOYEE RELATIONS COMMITTEE
300 PARK AVE
NEW YORK, NY 10022-7402

**3b** Administrator's EIN
13-2854931

**3c** Administrator's telephone number
212-310-2000

**4** If the name and/or EIN of the plan sponsor has changed since the last return/report filed for this plan, enter the name, EIN and the plan number from the last return/report below:

**b** EIN

**a** Sponsor's name

**c** PN

**5** Preparer information (optional)    **a** Name (including firm name, if applicable) and address    **b** EIN

    **c** Telephone no.

**6** Total number of participants at the beginning of the plan year    **6**    9,816

**7** Number of participants as of the end of the plan year (welfare plans complete only lines **7a, 7b, 7c,** and **7d**)

**a** Active participants    **a**    4,335

**b** Retired or separated participants receiving benefits    **b**    3,107

**c** Other retired or separated participants entitled to future benefits    **c**    1,290

**d** Subtotal. Add lines **7a, 7b,** and **7c**    **d**    8,732

**e** Deceased participants whose beneficiaries are receiving or are entitled to receive benefits    **e**    981

**f** Total. Add lines **7d** and **7e**    **f**    9,713

**g** Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item)    **g**

**h** Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested    **h**    23

**i** If any participant(s) separated from service with a deferred vested benefit, enter the number of separated participants required to be reported on a Schedule SSA (Form 5500)    **i**    216

**8** Benefits provided under the plan (complete 8a through 8c, as applicable)

**a** ☒ Pension benefits (check this box if the plan provides pension benefits and enter the applicable pension feature codes from the List of Plan Characteristics Codes (printed in the instructions)):

    1A    1C    1G    1B    1H

**b** ☐ Welfare benefits (check this box if the plan provides welfare benefits and enter the applicable welfare feature codes from the List of Plan Characteristics Codes (printed in the instructions)):

**9a** Plan funding arrangement (check all that apply)          **9b** Plan benefit arrangement (check all that apply)
    **(1)** ☒ Insurance                                           **(1)** ☒ Insurance
    **(2)** ☐ Section 412(i) insurance contracts                  **(2)** ☐ Section 412(i) insurance contracts
    **(3)** ☒ Trust                                               **(3)** ☒ Trust
    **(4)** ☐ General assets of the sponsor                       **(4)** ☐ General assets of the sponsor

**10** Schedules attached (Check all applicable boxes and, where indicated, enter the number attached. See instructions.)

**a** **Pension Benefit Schedules**                          **b** **Financial Schedules**
    **(1)** ☒ **R**    (Retirement Plan Information)              **(1)** ☒ **H** (Financial Information)
    **(2)** ☒ ¹ **T**    (Qualified Pension Plan Coverage Information)    **(2)** ☐ **I** (Financial Information -- Small Plan)
        If a Schedule T is not attached because the plan is       **(3)** ☒ ² **A** (Insurance Information)
        relying on coverage testing information for a prior year,  **(4)** ☒ **C** (Service Provider Information)
        enter the year                                            **(5)** ☒ **D** (DFE/Participating Plan Information)
    **(3)** ☒ **B**    (Actuarial Information)                    **(6)** ☐ **G** (Financial Transaction Schedules)
    **(4)** ☐ **E**    (ESOP Annual Information)                  **(7)** ☒ ¹ **P** (Trust Fiduciary Information)
    **(5)** ☐ **SSA** (Separated Vested participant Information)

**Back to Top**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. 4:07-cv-0016-SEB-WGH |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER ON CASE MANAGEMENT PLAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

_Wott_____    NOTAPPROVED AS SUBMITTED.  <u>A SCHEDULING ORDER WILL ISSUE IN PLACE OF THIS CASE MANAGEMENT PLAN AT THE CONFERENCE SET BELOW</u>.

_____    APPROVED AS MODIFIED AT SECTION(S) _____.
PURSUANT TO FED.R.CIV.P. 26(f), DISCOVERY MAY NOW COMMENCE.

_____    THE CONFERENCE SET FOR _____, 200__, IS VACATED/WAS HELD.

\*\*\*\*\*\*\*\*\*\*\*\*

_____    THIS MATTER IS SET FOR TRIAL BY COURT DURING THE MONTH OF _____, 200__, BEFORE THE HONORABLE SARAH EVANS BARKER. THE COURT WILL ALLOT _____ DAYS FOR THIS TRIAL.

_____    THE DEADLINE FOR FILING DISPOSITIVE MOTIONS IS _____, 200__.

_Wott_____    A STATUS CONFERENCE IS SET IN THIS CASE FOR JULY 16, 2007, AT 5:00 P.M., NEW ALBANY TIME (EDT), BEFORE THE MAGISTRATE JUDGE. COUNSEL SHALL APPEAR:

       _____    IN PERSON IN ROOM 228, U.S. COURTHOUSE, NEW ALBANY, INDIANA.  CLIENT(S) OR CLIENT REPRESENTATIVE(S) WITH FULL AUTHORITY TO SETTLE THIS CASE ARE TO BE AVAILABLE:

       _____ IN PERSON.      _____ BY TELEPHONE.

_Wott_____    BY TELEPHONE.  EACH COUNSEL WISHING TO PARTICIPATE IN THIS CONFERENCE SHALL INDIVIDUALLY PLACE A CALL TO (812) 434-6403.[1]

**(See attachment for particulars, including description of which client(s) must attend.)**

OTHER: _____.

DATED:  06/12/2007

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

_____

[1]This is the court's bridge line.  The first person to call the number will hear a tone and then dead air.  As each additional person calls the number, they will hear a tone and then will be able to talk to all other persons who have previously connected to the conference call.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No.  4:07-cv-00016-SEB-WGH |
| vs. | ) | |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR STAY OF PROCEEDINGS
PENDING DISPOSITION OF ITS MOTION TO DISMISS**

I.  Introduction

Defendant Colgate Palmolive Company Employees' Retirement Income Plan ("the Plan")

contends this case should be stayed because it has filed a Motion to Dismiss.  Courts do not stay

cases as a matter of course simply because a dispositive motion is pending.  Rather, the Plan is

required to establish "good cause" for why the case should be stayed.  It has failed to do so.  The

Plan will suffer minimal burden in responding to the simple discovery Plaintiff contemplates at

this time.  Its dismissal motion is weak and, even if granted, would not dispose of the entire case.

Thus, staying this matter would simply delay the inevitable.  The Plan's Motion to Stay should

therefore be denied.

II.  Discussion

A.    Under Fed. R. Civ. P. 26(c), the Plan Must Demonstrate Good Cause for Granting the
      Stay, and the Mere Filing of a Motion to Dismiss Does Not Constitute "Good Cause."

The Court has broad discretion under Fed. R. Civ. P. 26 to control the scope and timing

of discovery.  Builders Ass'n of Greater Chicago v. City of Chicago, 170 F.R.D. 435, 437 (N.D.

Ill.1996).[1]  Protective orders, including orders staying discovery, may be granted only upon a

showing of "good cause" and that justice requires the order "to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense..." Fed. R. Civ. P. 26(c).  In

potential class actions, like most litigation, courts frown upon motions to stay and deny them in

the absence of "compelling reasons." Evans v. Yum Brands, Inc., 326 F.Supp.2d 214, 226 (D.

N.H. 2004).  The moving party is required to make a strong showing of a "particular and specific

need for the protective order, as opposed to making stereotyped or conclusory statements."

Skellerup Industries, Ltd. v. City of Los Angeles, 163 F.R.D. 598, 600 (C.D. Cal. 1995).  The

Plan makes no such strong showing, arguing that discovery should be stayed simply because it

has filed a motion to dismiss.  However, the mere filing of a motion to dismiss does not mandate

a stay of discovery. Niederhoffer Intermarket Fund v. Chicago Mercantile Exchange, 1999 WL

731773, *1 (N.D. Ill. 1999) ("a motion to stay discovery will not be granted every time a

dispositive issue is placed before the court.").  "Had the Federal Rules contemplated that a

motion to dismiss... would stay discovery, the Rules would contain a provision for that effect."

Skellerup, 163 F.R.D. at 600.  They do not, and the Plan has provided this Court with no other

"good cause" to stay this case.

B.    The Plan has Otherwise Failed to Demonstrate "Good Cause."

       Courts consider the following factors in analyzing whether to grant a stay pending

resolution of a dismissal motion: 1) the burden of responding to the contemplated discovery, 2)

---

   [1]  Because this is a discretionary matter for the court, the cases the Plan cites in its brief in
which courts have granted stays pending a ruling on a dispositive motion are of little aid to the
analysis.  An equal number of cases can be cited in which courts have denied stays.  Each case
must be evaluated on its own facts and circumstances to determine if a stay is appropriate.

the strength of the dispositive motion forming the basis for the stay request and 3) prejudice that

will result to the non-moving party if the stay is granted.  OMG Fidelity, Inc. v. Sirius

Technologies, Inc., 239 F.R.D. 300, 304-05 (N.D. N.Y. 2006).  The Plan has failed to meet its

burden of showing these factors weigh in favor of granting a stay in this case.  In fact, they do

not.

      1)      The Discovery Contemplated at this Time Will Impose Minimal Burden and Cost
             on the Plan.

      The Plan heavily relies on a recent case from the U.S. Supreme Court - Bell Atlantic

Corp. v. Twombly, 127 S. Ct. 1955 (2007) – in support of its argument that discovery will be

burdensome.[2]  Twombly is inapposite.  Twombly involved an antitrust claim under the Sherman

Act.  As the Supreme Court observes, the scope of discovery in antitrust cases is "extensive" and

its cost is "unusually high."  Id. at 1967.  The case at bar is not an antitrust case.  The Plan makes

no attempt to show that discovery in this case will be extensive or that the cost of discovery in

this case will be "unusually high."

      On the contrary, Plaintiff anticipates that discovery in this case will be simple and will

involve minimal cost or burden to the Plan.  The Court should be aware that Plaintiff has not

served the Plan with any discovery, so the Plan's claim that discovery will be burdensome is

speculative.  Plaintiff anticipates the need for only limited discovery at this time, including the

Plan documents, a Summary Plan Description (both of which Plaintiff is entitled to as a matter of

law irrespective of this lawsuit), electronic data indicating the identity of class members,

---

    [2]  Twombly does not even address the issue of the circumstances under which a court
should stay proceedings pending a motion to dismiss.  Rather, the issue addressed in that case
was whether a motion to dismiss should be granted in advance of discovery.  127 S.Ct. at 1967.

Plaintiff's calculation worksheet and the calculation worksheets of the other putative class

members if they can be easily produced.  Plaintiff believes the Plan should have all of this

information in electronic format and that it will be no burden for the Plan to produce it.  Plaintiff

is willing to agree that no depositions be taken until after the Court resolves the Plan's Motion to

Dismiss.  Further, Plaintiff does not believe experts will be necessary in this case as the sole

issue raised herein (whether the Plan's lump sum calculation violates ERISA) is a question of

law for the Court.  Further, Plaintiff believes that the parties can stipulate as to damages, i.e., the

amount each putative class member's lump sum would have been had the Plan performed the

whipsaw calculation, without the need for experts.

     2.    <u>The Plan's Motion to Dismiss is Weak and Will Not Dispose of the Entire Case</u>.

    A defendant's confidence that it will prevail on a dispositive motion does not justify

delaying discovery pending a decision on the motion.  <u>Evans</u>, 326 F.Supp.2d at 226.  Courts have

denied stays where the likelihood of success of the motion to dismiss is speculative.  <u>Cohn v.</u>

<u>Taco Bell Corp.</u>, 147 F.R.D. 154, 162 (N.D. Ill. 1993).  The Plan has failed to make a strong

showing that it will succeed on its Motion to Dismiss.  As the Court will recall, the only

argument raised in the Plan's Motion to Dismiss is that Paul Caufield's claim is barred by the

statute of limitations.  This argument is devoid of merit.  The flaw in the Plan's argument, as

Plaintiff observed in its Memorandum in Opposition to the Motion to Dismiss, is that neither of

the two statutes of limitation (and/or the accrual date) the Plan urges the Court to adopt have any

application in this case.  If the Court applies the correct statute – Indiana's ten-year period of

limitations for contract actions – Paul Caufield's claim is not barred.[3]

Moreover, motions to stay are rarely appropriate if resolution of the defendant's motion will not dispose of the entire case. <u>Cohn</u>, 147 F.R.D. at 162; <u>Baron Financial Corp. v. Natanzon</u>, 240 F.R.D. 200, 203 (D. Md. 2006). This case is a putative class action. Even if the Court finds Mr. Caufield's claim untimely, Plaintiff will seek leave of Court to substitute a named plaintiff whose claim is not time-barred (or refile with said plaintiff) ensuring survival of the class claims. Thus, the Plan's motion to dismiss will not dispose of the whole case.

3.    <u>Plaintiff Will be Prejudiced if the Case is Stayed</u>.

Plaintiff does not claim that he will suffer any extraordinary prejudice if discovery is delayed in this case. This is not the type of case where critical witnesses may become unavailable or where crucial documents may be lost. However, given the lack of merit in the Plan's Motion to Dismiss and the fact that it will not dispose of this case in its entirety even if granted, it seems obvious the Plan will have to respond to discovery in this case at some point. "It has been said that justice delayed is justice denied." <u>OMG Fidelity</u>, 239 F.R.D. at 306. Accordingly, courts have the responsibility to "expedite discovery and minimize delay." <u>Baron Financial</u>, 240 F.R.D. at 203. Granting the Plan's request will do nothing more than delay this case and thereby deny speedy justice to Plaintiff and the putative class.

III.  Conclusion

The Plan's Motion to Dismiss is weak on the merits. It will not dispose of the case entirely in any event. Accordingly, it is inevitable that the Plan will have to respond to Plaintiff's

---

[3] Plaintiff incorporates by reference his Memorandum In Opposition to the Motion To Dismiss as if fully set forth herein rather than wasting paper by repeating those same arguments in this memorandum.

discovery requests.  Balancing the burden to the Plan in complying with Plaintiff's contemplated

discovery at this juncture, which is minimal, against the needless delay that will result from

granting the stay, it is obvious that the case should be permitted to go forward.  The Court should

deny the Plan's Motion for Stay.

Respectfully submitted,


/s/ Douglas R. Sprong_____
Douglas R. Sprong
Diane Moore Heitman
Korein Tillery, LLC
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile
dsprong@koreintillery.com
dheitman@koreintillery.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was e-mailed on June 25, 2007, per the Court's electronic filing system, to:

Theresa J. Chung
Joseph J. Costello
Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5295/5258/5584 - Telephone
(215) 963-5001 - Facsimile
tchung@morganlewis.com
jcostello@morganlewis.com
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

/s/ Douglas R. Sprong

Motion GRANTED, in part. Parties to comply with FRCP 26(a)(1), and defendant shall respond to interrogatories or requests for production addressed to the identity of plan documents at issue over the six years prior to the filing of the Complaint. All other discovery is stayed, at least until the July 16, 2007 conference.

Wm G Hussmann

WILLIAM G. HUSSMANN, JR.
Magistrate Judge

Dated:  07/06/2007

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No.  4:07-cv-00016-SEB-WGH |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR STAY OF PROCEEDINGS**
**PENDING DISPOSITION OF ITS MOTION TO DISMISS**

Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan" or "Defendant"), by and through its attorneys, respectfully moves to stay proceedings and discovery pending this Court's adjudication of Defendant's Motion to Dismiss Plaintiff's Complaint for the reasons set forth more fully in Defendant's brief, filed contemporaneously herewith.

Respectfully submitted,

Dated:  June 5, 2007            MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ Theresa J. Chung
Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung*
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5295/5258/5584
Fax:  (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

PAUL CAUFIELD, and all others similarly )
situated, )
 )
                    Plaintiff, )
 )
               v. )        4:07-cv-16-SEB-WGH
 )
COLGATE-PALMOLIVE COMPANY )
EMPLOYEES' RETIREMENT )
INCOME PLAN, )
 )
              Defendant. )

## MAGISTRATE JUDGE'S ORDER ON
## TELEPHONIC STATUS CONFERENCE

This matter came before the Honorable William G. Hussmann, Jr., United

States Magistrate Judge, by telephone, at 5:00 p.m., on July 16, 2007, for a

conference under Rule 16, Federal Rules of Civil Procedure. The parties were

represented by counsel.

Thereupon the following **ORDERS** are entered:

1. Discovery at this time will be limited to the production of information

related to the following topics:

    (a)    the plan documents which are applicable to claims for the
           period of time ten years prior to the filing of this lawsuit;

    (b)    the interest rates which the defendant contends are applicable
           to the appropriate calculation of damages in this case for the
           period of time four years prior to the filing of this lawsuit; and

    (c)    any other lists of witnesses or documents which a party would
           ordinarily provide in a FED.R.CIV.P. 26(a)(1) disclosure.

2.  Because the Magistrate Judge concludes that District Judge Sarah Evans Barker's ruling on the currently pending Motion to Dismiss, which will establish an appropriate limitations period for these claims, is of significance, all other deadlines in this case will be established at a **TELEPHONIC STATUS CONFERENCE** set at a time in which it is anticipated that Judge Barker will have ruled on the currently pending Motion to Dismiss.  That conference is set for **WEDNESDAY, OCTOBER 31, 2007,** at 9:15 a.m., New Albany time (EDT), before the Magistrate Judge.  Each counsel wishing to participate in this conference shall individually place a call to (812) 434-6403 at the time of the conference.[1]

This order has been formulated after a conference at which the respective parties have appeared.  Any party shall file any corrections or additions within ten (10) days after receipt of this order.

**SO ORDERED.**

**Dated:**  July 20, 2007

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Jeremy P. Blumenfeld
MORGAN LEWIS & BOCKIUS LLP
jblumenfeld@morganlewis.com

---

[1]This is the court's bridge line.  The first person to call the number will hear a tone and then dead air.  As each additional person calls the number, they will hear a tone and then will be able to talk to all other persons who have previously connected to the conference call.

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
tchung@morganlewis.com

Joseph J. Costello
MORGAN LEWIS & BOCKIUS LLP
jcostello@morganlewis.com

Philip John Gutwein II
BAKER & DANIELS
philip.gutwein@bakerd.com

Diane Moore Heitman
KOREIN TILLERY LLC
dheitman@koreintillery.com

Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
btjohnson@morganlewis.com

T. J. Smith
tjsmith@smithhelman.com

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com


**Mail copy to:**

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO  80209

Westlaw.

Slip Copy                                                                                                    Page 1

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

**H**
Humphrey v. United Way of Texas Gulf Coast
S.D.Tex.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. Texas,Houston
Division.
Ann W. HUMPHREY, individually and on behalf
of all others similarly situated, Plaintiff,
v.
UNITED WAY OF the TEXAS GULF COAST, a
Texas non-profit corporation, and United Way of
the Texas Gulf Coast Cash Balance Plan,
Defendants.
**Civil Action No. H-05-0758.**

Aug. 14, 2007.

Eva T. Cantarella, Bradley J. Schram, Robert P.
Geller, Hertz Schram PC, Bloomfield Hills, MI,
William H. Bruckner, Bruckner Burch PLLC,
Houston, TX, for Plaintiff.
John E. Neslage, MaryAnne Lyons, Baker Botts
LLP, Houston, TX, for Defendants.

MELINDA HARMON, United States District
Judge.
**\*1** Pending before the court in this ERISA [FN1]
case is Plaintiff Ann W. Humphrey's ("Humphrey's"
) motion for class certification (Doc. 44).
Defendants have filed a response in opposition
(Doc. 62), and Humphrey has replied (Doc. 64).
Defendants also filed a sur-reply (Doc. 67). The
court held a hearing on April 26, 2007, and,
subsequently, Humphrey filed a supplemental
memorandum in support of certification (Doc. 84),
to which Defendants responded (Doc. 86). Because
the proposed class is a sufficiently numerous,
cohesive group that is adequately represented by
Plaintiff and her counsel and because the class is
predominately seeking declaratory relief that the
Defendants misinterpreted the plain language of the
plan, the court ORDERS that Humphrey's motion

for class certification is GRANTED.

> FN1. Employee Retirement Income
> Security Act of 1974 ("ERISA"), as
> amended, 29 U.S.C. § 1001 *et seq.*

**I. BACKGROUND & RELEVANT FACTS**[FN2]

> FN2. These facts are drawn from Plaintiff's
> and Defendants' cross motions for
> summary judgement and the exhibits
> attached thereto. The court is not,
> however, deciding the merits of these
> motions. *See Langbecker v. Elec. Data
> Sys. Corp.,* 476 F.3d 299, 306 (5th
> Cir.2007) (stating that a district court must
> rigorously evaluate the facts and
> substantive law in resolving class
> certification issues, but must not "assess
> the merits of the case").

(A) *The United Way of the Texas Gulf Coast Cash
Balance Plan*

Until 1996, Defendant United Way of the Texas
Gulf Coast ("United Way") sponsored Defendant
United Way of the Texas Gulf Coast Cash Balance
Plan ("the plan") as a traditional defined benefits
pension plan ("89 Plan" or "prior plan"). A defined
benefits pension plan calculates its participant's
pension by multiplying a percentage of the
participant's pay by his years of service. One
valuable benefit participants received under the 89
Plan was the Early Retirement Pension ("ERP"). [FN3]
This provision allowed qualified participants
age 55 or older to collect their pensions free of
actuarial reduction. A participant could, in other
words, retire up to ten years early and still receive
full benefits.

> FN3. Section 5.3 of the 89 Plan provides,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                    Page 2

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

in relevant part, as follows:

*Early Retirement Pension:* Any Participant who retires after satisfying the requirements for early retirement set forth in Section 4.3 shall be entitled to receive an Early Retirement Pension commencing on his Annuity Starting Date in a monthly amount equal to one-twelfth (1/12) of the sum of (a) plus (b), where (a) is an amount equal to one and twenty-five hundredths percent (1.25%) of his Pension Compensation Base multiplied by the years of Credited Service actually earned by the Participant at his Early Retirement Date and (b) is fifty-four hundredths of one percent (.54%) of his Pension Compensation Base in excess of the Maximum Social Security Wage Based, multiplied by the Participant's total years of Credited Service which would have been earned at Normal Retirement Date, not to exceed thirty-five (35) years. The amount computed under Section 5.3(b) is multiplied by the Accrued Benefit Fraction and then reduced by one-one hundred eightieth (1/180) thereof for each of the first sixty (60) months and one-three hundred and sixtieth (1/360) thereof for each of the next sixty (60) months by which the commencement of his pension precedes his Normal Retirement Date. If the starting date of the pension precedes his Normal Retirement Date by more than one hundred twenty (120) months, the amount of the pension will be an amount which is the Actuarial Equivalent of the pension payable one hundred twenty (120) months preceding his Normal Retirement Date.

(89 Plan § 5.3, Pl.'s Ex. 1, Doc. 42.)

During the mid 1990's, United Way grew concerned about its ability to fund its pension obligations. Based on the recommendation of its actuaries, it chose to switch to a Cash Balance Plan ("96 Plan" or "new plan"). The 96 Plan differed substantially from the 89 Plan. Under the new plan, participants were given a hypothetical account to which United Way could contribute credits. Two types of credits

were available: contribution credits, which are a percentage of a participant's salary, and interest credits, which are the interest earned on the participant's account balance. For participants in the prior plan, the 96 Plan provided that their accrued benefits would become the opening balances in their accounts.

Like the 89 Plan, the 96 Plan allowed qualified participants to take early retirement. The original version of the 96 Plan, executed December 15, 1995, provides that participants electing early retirement will collect an Early Retirement Pension consisting of what they would have been entitled to under the 89 Plan *plus* what they are entitled to under the 96 Plan.[FN4]

> FN4. Section 6.5 of the 96 Plan provides, in its entirety, as follows:
>
> *Early Retirement Pension:* Any participant who retires after satisfying the requirements for early retirement set forth in Section 5.3 shall be entitled to receive an Early Retirement Pension commencing on his Annuity Starting Date. The Early Retirement Pension shall be equal to (1) *plus* (2), where (1) is equal to (a) reduced by (b), and (a) is the Normal Retirement Pension based on the Participant's Prior Plan Account earned under the Prior Plan, and (b) is one-one hundred eightieth (1/180) thereof for each of the first sixty (60) months and one-three hundred sixtieth (1/360) thereof for each of the next sixty (60) months by which the commencement of his pension precedes his Normal Retirement Date; and (2) is the Actuarial Equivalent of the Normal Retirement Pension based on the Participants Accrued benefit earned under this plan from and after January 1, 1996, increased until his Normal Retirement Age by an amount equal to (i) the actual Interest Credit in effect for the period between his termination of Service and his Annuity Starting Date and (ii) the Interest Credit in effect at his Annuity Starting Date and his attainment of Normal Retirement Age (the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 3

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

"Estimated Pension"). If the starting date of the pension precedes his Normal Retirement Date by more than one hundred twenty (120) months, the amount of Early Retirement Pension will be an amount which is the Actuarial Equivalent of the Estimated Pension payable one hundred twenty (120) months preceding his Normal Retirement Date.

Notwithstanding any provision of the Plan to the contrary, any Participant who retires on or after the Effective Date [defined as 1/1/96] shall be entitled to an Early Retirement Pension equal to at least the Pension amount derived from the formula in effect under the Prior Plan on December 31, 1995[sic] for all years of Credited Service (as defined in the Prior Plan) prior thereto **plus** the pension earned under this Plan.

The Early Retirement Pension is payable on a five-year certain and for life annuity basis, except as may be provided in Section 6.8.

(96 Plan § 6.5, Pl.'s Ex. 2, Doc. 42 (emphasis added).)

On April 2, 1997, this language was amended in part to provide as follows:

*Early Retirement Pension:* Any Participant [who] retires after satisfying the requirements for early retirement set forth in Section 5.3 shall be entitled to receive an Early Retirement Pension commencing on his Annuity Starting Date. The Early Retirement Pension shall be equal to the **greatest of** (a), (b), or (c), where (a) is equal to the value of the Participant's Account Balance, (b) is equal to the value of the Participant's Prior Plan Account converted to an annuity on the basis of the actuarial factors specified in the Prior Plan, and (c) is equal to the Actuarial Equivalent of the Participant's Accrued Benefit under this Plan, increased until his Normal Retirement Age by an amount equal to (i) the actual Interest Credit, for the period between his termination of Service and his Annuity Starting Date; and (ii) the Interest Credit in effect at the time of his Annuity Starting Date, for the period between his Annuity Starting Date and his attainment of Normal Retirement Age.

**\*2** (1st Am. to 96 Plan, Pl.'s Ex. 7, Doc. 45 (emphasis added).) The industry describes this as a " wear-away" provision, which prevents a participant from acquiring new benefits for a period of years after the plan is changed.[FN5]

> FN5. In other words, a participant will not accrue any new benefits until he has "worn away" his benefits under the old plan.

Despite the change in this first paragraph, the second paragraph of the plan remained the same, continuing to guarantee every plan participant who elected to receive an Early Retirement Pension "at least the Pension amount derived from the formula in effect under the Prior Plan on December 31, 1995 for all years of Credited Service (as defined in the Prior Plan) prior thereto **plus** the pension earned under this Plan."[FN6] The "plus" language in the second paragraph remained in effect until 2002, when the 96 Plan was amended for the last time. The Plan now provides:

> FN6. Section 6.5 of the 96 Plan, including the April 2nd amendment, provides in its entirety as follows:
>
> *Early Retirement Pension:* Any Participant [who] retires after satisfying the requirements for early retirement set form in Section 5.3 shall be entitled to receive an Early Retirement Pension commencing on his Annuity Starting Date. The Early Retirement Pension shall be equal to the **greatest of** (a), (b), or (c), where (a) is equal to the value of the Participant's Account Balance, (b) is equal to the value of the Participant's Prior Plan Account converted to an annuity on the basis of the actuarial factors specified in the Prior Plan, and (c) is equal to the Actuarial Equivalent of the Participant's Accrued Benefit under this Plan, increased until his Normal Retirement Age by an amount equal to (i) the actual Interest Credit, for the period between his termination of Service and his Annuity Starting Date; and (ii) the Interest Credit in effect at the time of his Annuity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                             Page 4

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

Starting Date, for the period between his Annuity Starting Date and his attainment of Normal Retirement Age.

*Notwithstanding any provision of the Plan to the contrary,* any Participant who retires on or after the Effective Date shall be entitled to an Early Retirement Pension equal to at least the Pension amount derived from the formula in effect under the Prior Plan on December 31, 1995[sic] for all years of Credited Service (as defined in the Prior Plan) prior thereto *plus* the pension earned under this Plan.

The Early Retirement Pension is payable on a five-year certain and for life annuity basis, except as may be provided in Section 6.8.

(96 Plan Incorporating 1st Am. to 96 Plan, Pl.'s Ex. 12, Doc. 46 (emphasis added).)

*Early Retirement Pension:* Any Participant who retires after satisfying the requirements for early retirement set forth in Section 5.3 shall be entitled to receive an Early Retirement Pension commencing on his Annuity Starting Date. The Early Retirement Pension shall be equal to the *greater of* (a) or (b), where (a) is equal to the Actuarial Equivalent of the Participant's Account Balance, and (b) is equal to the Prior Plan Accrued Benefit with reduction for early commencement in accordance with the provisions of the Prior Plan. Notwithstanding any provision to the contrary, any participant who retires on or after the Effective Date and elects to receive his benefit as a single lump sum, such lump sum shall not be less than the Actuarial Equivalent of the Prior Plan Accrued Benefit.

(02 Plan § 6.5, Pl.'s Ex. 4, Doc. 43(emphasis added).)

United Way did not provide notice to the plan beneficiaries of the 2002 amendments, which stripped them of the benefits due under the 96 Plan.

(B) *Ann W. Humphrey*

Plaintiff Ann W. Humphrey ("Humphrey") is the beneficiary of the pension benefits of Fredrick B. Blackmer ("Blackmer"), deceased. Before his retirement, Blackmer worked at the Center for the Retarded, Inc. ("CRI"), a participant in United Way's Cash Balance Plan. After more than 25 years of service, Blackmer elected early retirement at age 63. In January 2004, he received a lump sum distribution of $40,700.25 directly into his IRA account.

Before his retirement, Blackmer had already disputed the amount of his pension and exhausted his administrative remedies. (*See* Blackmer Letters, Pl.'s Exs. 33, 35-38, Doc. 49.) At the administrative level, the dispute centered on two issues. First, how to calculate Blackmer's opening balance based on his participation in the 89 Plan; and second, whether interest earned on his opening balance should be included. The dispute did not, in the beginning, involve whether the benefits under the 89 Plan should be added to the benefits under the 96 Plan; the plan never disputed that Blackmer's ERP should be calculated by adding the amount of his pension under the prior plan to the amount of his pension under the new plan. The plan found that under the 89 Plan, Blackmer's opening balance should be calculated as the present value, on December 31, 1995, of a $302.82 per month, lifetime annuity payable at normal retirement age, sixty-five. (*See* Pl.'s Ex. 35, Doc. 49.) It also found that interest earned on this sum should be counted towards pension earned under the prior plan and not the 96 Plan. (*Id.*) Blackmer disagreed with both of these conclusions. He claimed that under the new plan his opening balance should be calculated as the present value, on December 31, 1995, of a $302.82 lifetime annuity payable immediately, and that interest paid on that sum should be credited towards his pension under the new plan. The plan affirmed its decision despite Blackmer's arguments.

**\*3** On appeal, the plan asserted for the first time that the "greater of" methodology, rather than the "plus" methodology, was the proper calculation. It claimed, further, that the benefits already distributed represented this "greater of" amount. Lee James ("James"), the actuary who participated in the administrative decision on Blackmer's claim, and Debra King ("King"), United Way's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

Vice-President of Finance, both testified that the plan had always calculated the ERP as the "greater of" the pension earned under the 89Plan or the 96Plan, not the "sum of" these two pensions. (James Dep. 37-39, Dec. 7, 2005, and King Dep. 29-30, Dec. 20, 2005, Pl.'s Exs. 58 & 60, Docs. 51 & 52.)

Indeed, United Way maintains that the "plus" language in the 96 Plan was a "scrivener's error," and that the "greater of" methodology had always been the intended and correct calculation under the 96 Plan.

(C) *The Motion for Class Certification*

Humphrey filed suit on March 9, 2005, seeking an order enforcing the "plus" methodology, granting the appropriate payment of benefits under the 96 Plan, and finding that Defendants violated ERISA § 204 when they amended the 96 Plan in 2002 without sending notice to the plan's beneficiaries. She also moves to certify a class of similarly situated participants and beneficiaries. Plaintiff proposes that the class be defined as follows:
All Participants or Former Participants (as those terms are defined in the Plan), and beneficiaries of such Participants or Former Participants, who (1) as of 12/31/95, had accrued a pension under the Prior Plan (as defined in the Plan), (2) were or hereafter are eligible for an Early Retirement Pension under the Plan ("ERP"), and (3) either received an ERP or are eligible to receive an ERP or hereafter become eligible to receive an ERP.

(Pl.'s Mot. Class Cert. 2, Doc. 44.) The class would, therefore, generally include participants, or beneficiaries thereof, whose pension benefits vested when United Way switched to the 96 Plan. Defendants oppose class certification.

**II. LEGAL STANDARD**

Under Federal Rule of Civil Procedure 23(c)(1)(A) and (B), the court must "determine by order whether to certify the action as a class action" and, if it determines that it should do so, "define the

class and the class claims, issues, or defenses" in the order certifying the class. The court has wide discretion in determining whether to certify a class, but that discretion must be exercised within the bounds of Rule 23. *Henry v. Cash Today, Inc.,* 199 F.R.D. 566, 570 (S.D.Tex.2000), *citing Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996). The district court's decision to certify a class will only be reversed for abuse of discretion or application of incorrect legal standards. *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir.1999).

In the process of determining whether a class should be certified, the court is required to conduct a rigorous analysis of Federal Rule of Civil Procedure 23's prerequisites. *General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Castano,* 84 F.3d at 740. While class certification hearings should not be mini-trials on the merits, the court must go beyond the pleadings and examine the evidence to understand the claims, defenses, and relevant facts to make a meaningful certification decision.*Unger v. Amedisys Inc.,* 401 F.3d 316, 321 (5th Cir.2005) ("The plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification."), *citing Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In addition, the court, though not reaching the merits, must consider how plaintiffs' claims will be tried, individually or on a class basis. *Castano,* 84 F.3d at 744.

**\*4** The text of Rule 23 provides the guidelines for class certification.Rule 23(a), setting forth part of the "Prerequisites to a Class Action," provides,
One or more members of a class may sue or be sued as class representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). If the prerequisites are met, the next issue is whether certification is appropriate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 6

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

under Rule 23(b).Rule 23(b) authorizes certification,if the prerequisites of subdivision (a) are satisfied, and in addition

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct of the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests ....

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunction relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As the movant for class certification here, Humphrey bears the burden of demonstrating that a class action is appropriate and that all requirements of Rule 23 are satisfied. *See Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir.2001), *clarified,*279 F.3d 313 (5th Cir.2002). For the reasons that follow, the court finds that Plaintiff has satisfied all the requirements of Rule 23 and that class certification is appropriate.

### III. ANALYSIS

(A) *Rule 23(a) Factors Analysis*

1. Numerosity

A finding of numerosity turns not on mechanical rules but on whether joining all class members individually is practical. *Watson v. Shell Oil, Co.,* 979 F.2d 1014, 1022 (5th Cir.1992). Generally, a class size of more than forty members satisfies the numerosity requirement. *See* 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.5 (4th ed.2002). In establishing class size, a plaintiff may reasonably estimate the number of people in the purported class. *James v. City of Dallas,* 254 F.3d 551, 570 (5th Cir.2001). Here, the court finds that Humphrey has satisfied her burden of showing that numerosity exists. The class size, estimated conservatively at 60 members, makes joinder impractical. Humphrey bases her estimate on United Way's tax forms showing, *inter alia,* the number of active participants, the average annual earnings, ERP-eligible participants, and retirement rates. (*See* Pl.'s Exs. 66-69 and 71-72, Docs. 53-55, 59.) She also considered United Way's admission that it had always used the "greater of" calculation for ERP benefits. Applying the lowest average retirement rate to the number of ERP-eligible participants with earnings commiserate with Blackmer's, Humphrey estimates that an average of six participants a year would qualify as class members. Because the 96 Plan has been in effect for over ten years, the number of potential class members would be approximately 60. The court finds that Plaintiff's methodology for estimating the class size is reasonable and that putative class is sufficiently numerous to satisfy the first prong of the Rule 23(a) analysis.

2. Commonality

**\*5** Commonality and typicality are not demanding tests. *Henry,* 199 F.R.D. at 569 (citing *Lightbourn v. County of El Paso, Texas,* 118 F.3d 421, 426 (5th Cir.1997)). Commonality requires that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 7

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

resolution of at least one issue will affect all or substantially all of the class. *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993). This test is easily satisfied here because the central legal issue affecting all members is whether the "plus" or "greater of" language in the 96 Plan controls. Thus, Plaintiff has satisfied her burden on the issue of commonality by demonstrating that there is a question of law common to the class. *See* Fed.R.Civ.P. 23(a)(2).

### 3. Typicality

Typicality requires similarity between plaintiffs' legal and remedial theories and those of the class members they want to represent. *Mullen,* 186 F.3d at 625. Typicality does not, however, "require a complete identity of claims."*James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir.2001). The critical inquiry is whether the claims arise from a similar course of conduct and share the same essential characteristics of the class. *Id.*

In this case, each of the claims arises from the same event or course of conduct and each is based on the same legal theory, i.e., that the "plus" methodology of the 96 Plan controls the calculation of early retirement pension benefits. The plan's interpretation of 96 Plan is a standard course of conduct. It has always interpreted the 96 Plan as using the "greater of" methodology. It has never provided notice of the amendments to the 96 Plan. Instead, it maintains that the "plus" language was a mistake and that no change in benefits resulted in rectifying that mistake. Humphrey's request for relief, in the form of a declaration that the plan miscalculates the ERP benefits when it uses the "greater of" methodology, is characteristic of and fully aligned with the goals of the class. With respect to monetary relief, the actual dollar amounts may vary, but the calculation to determine benefits owed would be identical. Thus, Humphrey's legal claim regarding the "plus" methodology not only typifies the class but is also the linchpin of the entire case. For these reasons, the court finds that Humphrey satisfies the requirements of typicality under Rule 23(a)(3).

### 4. Adequacy

To be an "adequate" representative of the class, Humphrey must show that she, her counsel, and the relationship between the two are adequate to protect the interests of the absent class members. *See* Fed.R.Civ.P. 23(a)(4); *see also Unger,* 401 F.3d at 321. Stated differently, an adequacy determination requires an inquiry into (1) the willingness and ability of the representative to take an active role in and control of the litigation and to protect the interests of the putative class members and (2) the zeal and competence of the representative's counsel. *See Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125, 129-30 (5th Cir.2005). The determination also seeks to uncover potential conflicts of interest between the representative and the individual class members. *Id.* at 130.The court finds that Humphrey has met her burden in proving that both she and her counsel will be adequate representatives of the class.

**\*6** Humphrey is willing and able to take an active role in and appropriate control of the litigation and to protect the interests of the class. First, she has actively participated in the case. Although encouraged by Blackmer and his family, Humphrey independently decided to file suit after Blackmer died:
Q. Okay. When he [Beatty [FN7]] asked you to file it, what did he say?

> FN7. George Beatty ("Beatty") is Blackmer's brother-in-law and also an attorney. Blackmer requested Beatty's help in arguing his (Blackmer's) administrative claim for the ERP benefits calculated under the "plus" methodology. Beatty is not representing Humphrey in the present suit.

A. He actually told me-he asked me to do it. And he goes, "It's up to you if you do it or not."He says, " You don't have to." That's what he told me.
Q. Okay.
A. And I had decided to do it.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 8

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

* * *

Q. Okay. And I think that earlier you testified that the only reason you filed this lawsuit was because either [Blackmer's] family or [Beatty] had asked you to continue?
A. Yes.
Q. And was there any other reason why you wanted to file this lawsuit?
A. Because I felt that the other employees that were in the plan did not get their money. So, I felt that I should do-try to help them get their money, as well.
Q. And were you partly motivated by the fact that there's maybe some money in it for you, as well?
A. Yes.

(Humphrey Dep. 98:1-13, 104:10-23, March 9, 2006, Doc. 44 Ex. A.) Since filing suit, she has actively monitored the action by having the litigation documents read to her because of her poor vision from Cerebral Palsy. She has also helped answer interrogatories and provided pertinent deposition testimony. These facts demonstrate that Humphrey is sufficiently participating in the litigation of her case.

Second, she has exhibited appropriate control of the litigation. While clearly not a legal scholar, Humphrey has a good faith knowledge and understanding of the issues in this case. *See Berger,* 257 F.3d at 783 (noting that class representatives " need not be legal scholars and are entitled to rely on counsel," but they do "need to know more than that they were 'involved in a bad business deal' ") (quoting *Kelley v. Mid-America Stables Racing, Inc.,* 139 F.R.D. 405, 410 (W.D.Okla.1990)). She understood who she was suing and why:
Q. Why are you suing the United Way of the Texas Gulf Coast?
A. Because in-because in 1996 the United Way changed their pension plan or-pension plan.
Q. Is this the only reason why you're suing the United Way of the Texas Gulf Coast, because they changed their pension plan in 1996?
A. Yes.
Q. What was wrong with their changing their pension plan in 1996?
A. There was nothing wrong-there was nothing wrong with them changing their plan. It's just that they did not pay the older employees their-they

were promised the old plan with the new plan; and they only was paid the old plan instead of the new plan, too.

* * *

Q. Why are you suing the United Way of the Texas Gulf Coast Cash Balance Plan?
A. Because they did not pay [Blackmer] and the other employees the Cash Balance Plan.
*7 Q. Who are these other employees that you're talking about?
A. The class.
Q. The class?
A. Uh-huh.
Q. And when you say "the class", what do you mean by "the class"?
A. The class of people that did not receive all of their pension.

(Humphrey Dep. 21:2-16, 21:23-22:10, Doc. 44 Ex. A.) More importantly, Humphrey's understanding of the facts underlying her case derived primarily from her relationship with Blackmer, not from derivative knowledge acquired solely from counsel. *See Berger,* 257 F.3d at 483 n. 18. As such, the court finds that Humphrey has sufficient knowledge and understanding to appropriately control the litigation efforts.

Finally, Humphrey is more than capable of protecting the interests of the absent class members. As the typicality analysis above reflects, Humphrey's incentive to fully litigate her claims aligns directly with the goals and claims of the putative class. *See Stirman v. Exxon Corp.,* 280 F.3d 554, 563 (5th Cir.2002) (noting that the typicality requirement overlaps with the adequacy requirement when assessing whether a class representative's interests conflict with those of the putative class). When asked what she wanted to accomplish in this lawsuit, Humphrey responded: "I want to accomplish that [sic] everyone that's involved in the lawsuit, all the people, you know, in the-in the claim of this lawsuit, that they get the other half of their pension ... I want them to get the B side of this pension."(*Id.* at 99:8-18.[FN8]) She also understood her role as the class representative:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

FN8. She and Blackmer had been friends for decades. He discussed the case with her and nominated her his beneficiary before he died of cancer. He described to her that the 89 Plan was the "A side" and the 96 Plan was the "B side" and that he was entitled to "A plus B."

Q. And earlier Ms. Lyons asked you if you thought you had any duty as a class representative, and you said no. So, I want to make sure that you understood what you were being asked. Let me ask you this: If Ms. Lyons or her clients, the United Way of the Texas Gulf Coast, United Way of Texas Gulf Coast Cash Balance Plan, if they offered you-to pay you the $16,401 and some odd cents that you're asking for, if they offered to pay you that money today to end this lawsuit, would you take it?
A. No.
Q. And why not?
A. Because I want all the people that are in this class action suit to get their money, too.
Q. Okay. And do you feel you have a duty to do that for them?
A. Yes, I do.
Q. As the class representative?
A. Yes, I do.

(*Id.* at 103:16-104:9.)The court finds, therefore, that Humphrey will adequately and appropriately protect the interests of the absent class members.

The court also finds that Humphrey's counsel is a zealous and competent representative. Plaintiff's counsel in charge, Eva Cantarella ("Cantarella"), and her law firm, Hertz, Schram & Saretsky, P.C. ("HS & S"), are very experienced ERISA class action litigators. *See Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper, Inc.,* 212 F.R.D. 350, 353-54 (W.D.Mich.2002) (noting that HS & S is "nationally recognized for its plaintiff representation in ERISA and employee benefit cases" and finding its lawyers "to be a very experienced and capable advocates for the class"), *rev'd on other grounds,* 382 F.3d 587 (6th Cir.2004), *cert. denied,*544 U.S. 976, 125 S.Ct. 1844, 161 L.Ed.2d 726 (2005). Cantarella, a partner at HS & S, has participated in ten pension plan class actions and has also

successfully prosecuted non-class claims for ERISA benefits, including pension benefits. (*See* Cantarella Aff. ¶¶ 10-14, Doc. 44 Ex. D.) The other attorneys working on Humphrey's behalf are equally experienced and capable. (*See* Bradley Schram Aff., Doc. 44 Ex. B; Robert Geller Aff., Doc. 44, Ex. C.) Together they have relentlessly advocated on behalf of Humphrey and the putative class members. This effort is typified by the extensive and detailed briefing provided not only in this motion for class certification but also on Plaintiff's cross motion for summary judgment. (*See generally* Docs. 41-55, 59, 64, 68, & 84.) Moreover, Cantarella presented her case at the hearing on class certification in a cogent and prepared manner. For these reasons, the court finds that Plaintiff's counsel and her firm are more than adequate to represent the class action.

**\*8** In conclusion, the court holds that all four of the Rule 23 prerequisites are satisfied in this case. There are numerous 96 Plan participants that are all equally affected by one central legal issue, whether the "plus" methodology should have been used to calculate these pensions. Humphrey understands and appropriately controls the litigation, and her attorneys work tirelessly on her behalf. Having determined that the prerequisites of Rule 23 are met, the next inquiry is whether certification is appropriate under Rule 23(b).

(B) *Certification under Rule 23(b)*

Plaintiff moves for certification under Rule 23(b)(1)(A), (b) (2), and (b)(3). The Fifth Circuit has observed that "[u]nder Rule 23, the different categories of class actions, with their different requirements, represent a balance struck in each case between the need and efficiency of a class action and the interests of class members to pursue their claims separately or not at all."*Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 412 (5th Cir.1998). The panel in *Allison* summarized,
The (b)(1) class action encompasses cases in which the defendant is obliged to treat class members alike or where class members are making claims against a fund insufficient to satisfy all of the claims.... The (b)(2) class action, on the other hand, was intended

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                  Page 10

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

to focus on cases where broad, class-wide injunctive or declaratory relief is necessary.... Finally, the (b)(3) class action was intended to dispose of all other classes in which a class action would be " convenient and desirable," including those involving large-scale, complex litigation for money damages.

*Id.* The procedural safeguards provided under (b)(3), i.e., the absolute right to notice and right to opt out of the class, are not automatically available to class members of a(b)(1) or (b)(2) class action. The lack of automatic procedural protections reflects that the (b)(1) and (b)(2) classes are more cohesive and homogenous, while the remedies sought by a(b)(3) class are often related to disparate merits of individual claims of members with divergent interests. *See id.* at 413.Humphrey need only satisfy one subdivision to succeed on her motion for class certification. *See Langbecker,* 476 F.3d at 306-07 (citing *Stirman,* 280 F.3d at 558-59).

> 1. The court finds that class certification is most
> appropriate under Rule 23(b)(2).

A class can be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."Fed.R.Civ.P. 23(b)(2). Monetary relief is available in a Rule 23(b)(2) class action, but such relief must not "predominate" the injunction or declaratory relief requested. Monetary relief predominates in Rule 23(b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. *Allison,* 151 F.3d at 415. Incidental relief encompasses "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief."*Id.* Such incidental damages should ideally be "only those in which class members automatically would be entitled once liability to the class (or subclass) as a whole is established" and "should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class

member's circumstances."*Id.* Additional hearings to resolve the disparate merits of each individual's case should not be required. *Id.* Nor should liability for incidental damages "introduce new and substantial legal or factual issues ... [or] entail complex individualized determinations."*Id.* Incidental damages are, therefore, more "in the nature of a group remedy."*Id.* The determination of whether a given monetary remedy qualifies as incidental damages is not always precise, so the district court has the discretion to decide "whether a monetary remedy is sufficiently incidental to a claim of injunctive or declaratory relief to be appropriate in a(b)(2) class action."*Id.* at 416.

**\*9** Here, the court finds that the plan has acted on grounds applicable to the whole class and that monetary damages are incidental to the declaratory relief sought. Humphrey requests a group remedy, the calculation of benefits according to the "plus" methodology. Assuming liability is established, this remedy does not require individualized determinations of disparate claims, but can be calculated using objective criteria like length of service and age. These objective criteria can be inputted into an actuarial calculation to determine the benefits owed. As such, the amount automatically flows from a finding of liability to the class "as a whole" and is "not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *Allison,* 151 F.3d at 415;*see also Bratcher v. Nat'l Standard Life Ins. Co. (In re Monumental Life Ins. Co.),* 365 F.3d 408, 419-20) (finding that insurance policy variables were "identifiable on a classwide basis and, when sorted, [were] capable of determining damages for individual policyowners"). Like the variables in *Monumental Life,* the variables for the "plus" calculation are identical classwide and "[t]he prevalence of variables common to the class makes damage computation 'virtually a mechanical task.' " *See Monumental Life,* 365 F.3d at 420 (citing *Alabama v. Blue Bird Body Co.,* 573 F.2d 309, 326-27 (5th Cir.1978) (quoting *Windham v. Am. Brands, Inc.,* 565 F.2d 59, 68 (4th Cir.1977) )). Nor would money damages, as calculated using an objective formula, destroy the homogeneity or cohesiveness of this putative class. All putative class members are harmed by the use of a "greater of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 11

**Slip Copy, 2007 WL 2330933 (S.D.Tex.)**
**(Cite as: Slip Copy)**

" rather than a "plus" calculation of the minimum ERP benefit, as the sum of two pensions will always exceed the "greater of" either of such pensions, so all stand to benefit from a determination that the " plus" calculation is the legally correct interpretation of the 96 Plan. Thus, none of the concerns expressed by the *Allison* panel are present in this case.

Defendants argue that Humphrey seeks neither injunctive nor declaratory relief because she brings suit "to recover benefits" under 29 U.S.C. 1132(a)(1)(B). It is true that the monetary relief Humphrey seeks is not "equitable" in the context of 29 U.S.C. 1132(a)(3), which permits suit by ERISA fiduciaries only for traditional equitable relief. *See Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 209-10, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). The relief is, however, declaratory. Humphrey seeks a declaration that the plan's method of computing the early retirement benefits is unlawful. *See Berger v. Xerox Corp. Ret. Income Guar. Plan,* 338 F.3d 755, 763 (7th Cir.2003) (holding that a class was properly certified under Rule 23(b)(2) where the employees challenged the computation of their lump-sum pension benefits)." That is a ground common to all the members of the class."*Id.* Damages flow mechanically from the potential declaration that the "greater of" computation was in error. The court finds that the monetary relief is incidental to a finding of liability and that certification under Rule 23(b)(2) is appropriate.

**\*10** In Rule 23(b)(2) class certifications, a court also has the discretion to order that notice of the action be sent to the class and that the class members be afforded the opportunity to opt-out. *See* Fed.R.Civ.P. 23(d)(2); *Monumental Life,* 365 F.3d at 416. When an action seeks monetary damages under Rule 23(b)(2), due process requires that at a minimum notice be provided to the class. *Monumental Life,* 365 F.3d at 416-17. The notice need not, however, "be 'equivalent to that required in (b)(3) actions.' " *Id.* at 417 (quoting *Johnson v. Gen. Motors Corp.,* 598 F.2d 432, 438 (5th Cir.1979). Moreover, mandatory opt-out rights are not required. *Id.* Although incidental to the declaratory relief sought, monetary relief is present

in the current class action. As such, the court concludes that notice to the class of the pending action is required. This notice satisfies any lingering concerns about the due process rights of the individual class members.

2. Alternatively, the court would certify the class
under Rule 23(b)(1)(A).

A matter can be certified as a class action if "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class."Fed.R.Civ.P. 23(b)(1)(A). Here, the court finds that certification of the Humphrey class would prevent incompatible standards of conduct. Individual suits might lead to conflicting orders on the interpretation of the 96 Plan and the resulting calculation of the ERP benefits. Under this scenario, the plan would be administering the ERP benefits using the "greater of " calculation for some beneficiaries and the "plus" calculation for others. This is precisely the type of incompatible conduct that Rule 23(b)(1)(A) aims to prevent. *See In re Citigroup Pension ERISA Litig.,* 241 F.R.D. 172, 179-80 (S.D.N.Y.2006) (noting that Rule 23(b)(1) "speaks directly to ERISA suits" because of the statutory obligations under ERISA to treat all class members alike).

Defendants argue that no one other than Humphrey's counsel has even noticed a mistake in the Plan document and, consequently, individual suits are unlikely. (*See* Defs.' Resp. 32, Doc. 62.) In light of Defendants failure to send out notice regarding the various amendments of the 96 Plan, it is not surprising that Humphrey is the only beneficiary to have made such a challenge. Indeed, the fact that no other plaintiff has come forward only favors class certification. *See In re Citigroup,* 241 F.R.D. at 180 (S.D.N.Y.2006) (noting in the context of 23(b)(1)(A) "the fact that only a limited number of plaintiffs have come forward can weigh significantly in favor of class certification").

Defendants also argue that certification under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 12

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

(b)(1)(A) is not appropriate if the relief sought is primarily monetary. *See Langbecker,* 476 F.3d at 299, 318 (advising a district court to "consider the extent to which the due process concerns inherent in *Allison* apply to a(b)(1)(A) class and whether a(b)(1)(A) class can be maintained if damages are the primary remedy sought;" acknowledging that " the resolution of these issues is still uncertain in the Fifth Circuit"); *see also Doiron v. Conseco Health Ins. Co.,* 240 F.R.D. 247, 254-55 (M.D.La.2007). Assuming *arguendo* that the relief sought is primarily monetary,[FN9] the court remains persuaded that certification of this action under (b) (1)(A) is appropriate. To hold that "broad declaratory or injunctive relief must be primarily sought before Rule 23(b)(1)(A) applies to avoid the risk of inconsistent adjudications," a court would be implementing "guidelines [that] coincide with those expressly called for in Rule 23(b)(2) class actions, thus rendering Rule 23(b)(1)(A) superfluous or redundant."2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 4:5 (4th ed.2002). The more consistent interpretation of (b)(1)(A), therefore, is that it permits certification when monetary damages are sought. In this case, the court finds that the risk of incompatible standards of conduct is sufficient to satisfy the requirements of this subdivision. Moreover, the court finds the due process concerns expressed in *Allison,* should they apply, do not pose a bar to certification. Where, as here, the interests of the class are perfectly aligned with the interest of the class representative, the procedural protections of (b)(3) actions, such as mandatory notice and the opt-out procedures, become less critical.

FN9.*But see* Part 1, *supra.*

**\*11** A final issue raised by Defendants is whether the court can certify a class under (b)(1)(A) over the opposing party's objection. Some courts have found that Section (b)(1)(A) is for the benefit of the party opposing the certification, such that the party can waive its protections and effectively veto the class certification. *See, e.g., Corley v. Entergy Corp.,* 222 F.R.D. 316, 320 (E.D.Tex.2004). Neither the text of Section 23(b)(1)(A) nor the accompanying Advisory Committee's Notes supports the creation

of an express right to waive certification under this subdivision. This section does not exist only to benefit the non-class party: "clearly all litigants as well as the courts benefit from consistency in the adjudication of claims of individual class members." *Ingles v. City of New York,* No. 01 Civ. 8279, 2003 U.S. Dist. LEXIS 2453, at *21 (S.D.N.Y. Feb. 20, 2003). The court also finds persuasive Professor Newberg's arguments on the topic:

[T]he Advisory Committee Notes to Rule 23 contain no support for the view that the party opposing the class is the exclusive beneficiary of subdivision (b)(1)(A). Certainly the needs of the judicial system to avoid inconsistent adjudications of a single controversy must be respected, despite the willingness of a litigant to assume this risk.

Newberg, *supra,* § 4:7.

Thus, should it hereafter be determined that certification under Rule 23(b)(2) is inappropriate, the court would still certify the class pursuant to Rule 23(b)(1)(A).[FN10]

> FN10. The court would also consider certifying the class under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."*See*Fed.R.Civ.P. 23(b)(3). In a situation where the class fits the requirements under Rule 23(b)(1), (b)(2), and (b)(3), however, the court notes that it is proper to certify the action under (b)(1) or (b)(2) rather than (b)(3), which "is designed for situations where class action treatment is not so clearly called for as in subdivisions (b)(1) and (b)(2) of Rule 23 ." *Van Gemert v.Boeing Co.,* 259 F.Supp. 125, 131 (S.D.N.Y.1966); *see also* Newberg, *supra,* § 4:20.

(C) *Scrivener's Error, Exhaustion of Remedies and the Statute of Limitations*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

Three positions underlie a myriad of Defendants' arguments in opposition to certification: (1) that the doctrine of scrivener's error is an applicable defense, making reliance on the "plus" language a necessary element of Humphrey's claim; (2) that Humphrey must show that the unnamed class members have exhausted their administrative remedies; and (3) that some of the putative class members may be barred by the statute of limitations. Addressing each argument in turn, the court finds none meritorious.

1. Scrivener's error is not an applicable defense.

United Way consistently maintains that the "plus" language in the 96 Plan is merely a mistake, a scrivener's error, and that the court should reform the ERISA plan accordingly. Scrivener's error, however, is a defense of mutual mistake. *See Chase Manhattan Bank v. First Marion Bank,* 437 F.2d 1040, 1049-50 (5th Cir.1971). While the parties dispute whether the "plus" language is a mistake at all,[FN11] neither dispute that such a mistake would be deemed unilateral, not mutual. Therefore, a traditional scrivener's error defense is not applicable in this case.

> FN11. There is credible evidence that the plus methodology was not mistakenly included in the 96 Plan. (*See, e.g.,* Letney Dep., dated Feb. 12, 2006, 106:21-108:25, Pl.'s Ex. 61, Doc. 52 (testifying that she, as the primary drafter, thought that the 96 Plan conformed to United Way's intentions regarding the Early Retirement Pension).) Moreover, the many drafts preceding the final version of the 96 Plan all contained either "plus" terminology or the conceptual equivalent.

Defendants reluctantly concede that scrivener's error is a defense of mutual mistake, but argue that the doctrine should be extended for policy reasons because it would be unduly harsh to uphold this " mistaken" language. The court disagrees. Reforming the plain language of an ERISA plan because of a unilateral mistake by the drafters

undermines several core ERISA principles: first, ERISA contains strict requirements for maintaining and administering the *written* plan documents. *See* 29 U.S.C. § 1102(a)(1) (requiring that employee benefit plans be maintained pursuant to a written instrument); 29 U.S.C. § 1104 (requiring that an ERISA plan be administered in accordance with the written documents and instruments governing the plan); *see also Degan v. Ford Motor Co.,* 869 F.2d 889, 895) (noting that the writing requirements were a clear part of Congressional intent to fashion a comprehensive system of federal law designed to strengthen and protect the interests of employees in their expected retirement benefits). When, as here, the written plan document is unambiguous,[FN12] the court is bound by the plain meaning of its terms, and reformation based on the unilateral mistake of one party is not appropriate. A second fundamental principle in the ERISA context is that drafting errors are strictly construed against the drafter of the plan document. *See Hansen v. Continental Ins. Co.,* 940 F.2d 971, 982 (5th Cir.1991). In *Hansen,* the Fifth Circuit explained:

> FN12. From 1996 to 2002, Section 6.5 of the 96 Plan stated that *"[n]otwithstanding any provision of the Plan to the contrary,* any Participant who retires on or after the Effective Date shall be entitled to an Early Retirement Pension equal to at least the Pension amount derived from the formula in effect under the Prior Plan on December 31, 1995[sic] for all years of Credited Service (as defined in the Prior Plan) prior thereto *plus* the pension earned under this Plan."(96 Plan Incorporating 1st Am. to 96 Plan, Pl.'s Ex. 12, Doc. 46 (emphasis added).)

**\*12** Any burden of uncertainty created by careless or inaccurate drafting ... must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of ... the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document.
*Id.* (contruing drafting errors in a summary plan

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 14

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

description against the drafter and in favor of the employee). Considering these policies, an extension of the scrivener's error doctrine to allow a plan drafter to reform an unambiguous ERISA plan because of its own unilateral mistake is not appropriate. Without the application of scrivener's error, Humphrey's and the other putative class members' reliance on the unambiguous terms of the 96 Plan is legally irrelevant.[FN13]

> FN13. In *Langbecker,* the court cited with approval the following quotation from *Nelson v. IPALCO Enters., Inc.,* 2003 U.S. Dist. LEXIS 26392, at *11 (S.D.Ind. Sept. 30, 2003) (unpubl.):
> Relief will depend on individualized calculations for each account. As noted, individual claimants may present issues of causation and reliance, so that a classwide determination that Defendants violated ERISA's requirements would not necessarily lead to an award in favor of a particular claimant.
> 476 F.3d at 317. Here there are no individual issues of reliance or causation and, as indicated in the Rule 23(b)(2) analysis above, monetary damages can be calculated by objective criteria. Thus, the decision in *Langbecker* to reverse certification under Rule 23(b)(2) is distinguishable. So too is this court's decision not to certify a class action under Rule 23(b) (2) for the plaintiffs' claim for breach of fiduciary duty on behalf of the Plan under ERISA. *See In re Enron Corp. Securities, Derivative and "ERISA" Litig. (Tittle),* 2006 U.S. Dist. LEXIS 43145 (S.D. Tex. June 7, 2006). In *Tittle,* the court found that the relief sought was " wholly monetary ... and not incidental to any other remedy."*Id.* at *71.In the instant case, which does not deal with breach of fiduciary duty and restoration of money to the plan as a whole, the court concludes that the monetary relief is incidental to the legal interpretation of the 96 Plan.

2. Exhaustion of remedies is not required.

The Fifth Circuit has not directly addressed whether unnamed class members must exhaust their administrative remedies in an ERISA class action. The Seventh Circuit, however, recently confronted this exact issue and held that unnamed class members in an ERISA class action need not always exhaust their plan remedies to be included in the class. *See In re Household Int'l Tax Reduction Plan,* 441 F.3d 500, 501 (7th Cir.2006). As Judge Posner explained:

Even in a Title VII case, where the plaintiff, including the named plaintiff in a class action, must exhaust his administrative remedies before suing, the class members need not also do so if, as will usually be the case (for otherwise class treatment would be inappropriate), their claims are very similar to those of the named plaintiff. Such exhaustion *is* required in social security class action cases, but that is because of the wording of the exhaustion provision in the social security statute. That wording has no counterpart in Title VII's exhaustion provision-and ERISA does not mention exhaustion at all.

Exhaustion of nonjudicial remedies, whether administrative or, in an ERISA case, of the arbitral-like internal remedies prescribed by the ERISA plan, furthers the goals of minimizing the number of frivolous lawsuits, promoting non-adversarial dispute resolution, and decreasing the cost and time necessary for claim settlement ... and enables the compilation of a complete record. These purposes determine how much exhaustion to require in a class action. If the complaint or subsequent filings adequately identify the class members' claims and demonstrate that they are indeed very similar to those of the named plaintiff, the defendant knows what he is facing and can make efforts to settle the full array of claims. In such a case, requiring exhaustion by the individual class members would merely produce an avalanche of duplicative proceedings and accidental forfeitures, and so is not required.

This is emphatically the case when dealing with class actions under ERISA, where, there being no statutory requirement of exhaustion, the district court has discretion to require no exhaustion by anyone.

**\*13** *Id.* (internal citations and quotations omitted).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 15

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

The court finds this reasoning persuasive and applicable to the present case. Humphrey herself, through Blackmer, has exhausted her administrative remedies, and her claim that the "plus" language controls is identical to the claim of the unnamed class members. Requiring exhaustion by these unnamed members would not promote any of the goals articulated by Judge Posner: it would not minimize the number of frivolous suits because the class's claim for the enforcement of the plain language of the 96 Plan is not frivolous; it would not promote non-adversarial resolution because the plan has always used the "greater of" methodology and is unlikely to change course because of administrative challenges; and it would not decrease the cost and amount of time necessary to decide these claims. Indeed, requiring exhaustion would only increase these costs and likely create "an avalanche of duplicative proceedings and accidental forfeitures."*See id.*Finally, further compilation of the record is unnecessary because this case turns solely on the legal interpretation of the plan document. For these reasons, Humphrey is not required to show that the unnamed class members have exhausted their administrative remedies.

3. The statute of limitations has not run on the putative class members.

Because ERISA does not set forth statute of limitations to govern actions to clarify rights to benefits under 29 U.S.C. § 1132(a)(1) (B), courts look to the state statute of limitations most analogous to the claim being advanced.*Harris Methodist Fort Worth v. Sales Support Servs.,* 426 F.3d 330, 337 (5th Cir.2005) (citing *Hogan v. Kraft Foods,* 969 F.2d 142, 145 (5th Cir.1992)); *see also Hall v. Nat'l Gypsum Co.,* 105 F.3d 225, 230 (5th Cir.1997). The parties agree that the most analogous claim is a breach of contract claim with a four-year statute of limitations. To determine the accrual date, the Fifth Circuit instructs that an ERISA cause of action accrues after a claim for benefits has been made and formally denied. *Harris,* 426 F.3d at 337. Here, the court has held that the unnamed class members need not make a formal demand because such demand would be futile. The plan has always interpreted the 96 Plan as using a "

greater of" calculation and will continue doing so unless otherwise ordered. Thus, the putative class members' claims for the "plus" calculation have yet to accrue. Alternatively, the putative class members' claims accrued when the Defendants denied their claims in the current suit. Under either scenario, the four-year statute of limitations has not run for the unnamed class members. Defendants do not, therefore, have individual statute of limitations defenses applicable to the putative class members. The statute of limitations does not bar class certification in this case.

To the extent Defendants use scrivener's error, exhaustion of remedies, and the statute of limitations as arguments against a finding of class certification, the court finds these arguments to be without merit.

### IV. CONCLUSION

*14 Accordingly, for the reasons indicated above, it is hereby

**ORDERED** that Plaintiff's motion for class certification (Doc. 44) is **GRANTED.**The following class is certified pursuant to Fed.R.Civ.P. 23(a) and (b)(2):
All Participants or Former Participants (as those terms are defined in the Plan), and beneficiaries of such Participants or Former Participants, who (1) as of 12/31/95, had accrued a pension under the Prior Plan (as defined in the Plan), (2) were or hereafter are eligible for an Early Retirement Pension under the Plan ("ERP"), and (3) either received an ERP or are eligible to receive an ERP or hereafter become eligible to receive an ERP.

It is further

**ORDERED** that Plaintiff Ann W. Humphrey is appointed and shall serve as the representative of the class certified above. It is further

**ORDERED** that Hertz, Schram & Saretsky, P.C. is appointed and shall serve as legal counsel for the class certified above. It is further

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 16

Slip Copy, 2007 WL 2330933 (S.D.Tex.)
**(Cite as: Slip Copy)**

**ORDERED** that Plaintiff shall submit a proposed notice that concisely and clearly states in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified, (3) the class claims, issues, and defenses, and (4) the binding effect of a class judgment on class members in Rule 23(c) (3). This notice shall be submitted to the court within twenty (20) days of entry of this order.

S.D.Tex.,2007.
Humphrey v. United Way of Texas Gulf Coast
Slip Copy, 2007 WL 2330933 (S.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

PAUL CAUFIELD,                              )
                                            )
                        Plaintiff,          )
                                            )    Cause No.  4:07-cv-00016-SEB-WGH
            vs.                             )
                                            )
COLGATE-PALMOLIVE COMPANY                   )
EMPLOYEES' RETIREMENT INCOME                )
PLAN,                                       )
                                            )
                        Defendant.          )

**PLAINTIFF'S CITATION TO SUPPLEMENTAL AUTHORITY IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Attached as Exhibit 1 is the recent case of <u>Humphrey v. United Way of Texas Gulf Coast</u>,

2007 WL 2330933 (S.D. Tex. Aug. 14, 2007).  As the <u>Humphrey</u> court holds:

> To determine the accrual date, the Fifth Circuit instructs that an ERISA cause of
> action accrues after a claim for benefits has been made and formally denied.
> Here, the court has held that the unnamed class members need not make a formal
> demand because such demand would be futile.  The plan has always interpreted
> the 96 Plan as using a "greater of" calculation and will continue doing so unless
> otherwise ordered.  Thus, the putative class members' claims for the "plus"
> calculation have yet to accrue.  Alternatively, the putative class members' claims
> accrued when the Defendants denied their claims in the current suit.  Under either
> scenario, the [] statute of limitations has not run for the unnamed class members.

<u>Id.</u>, 2007 WL 2330933 at *13 (internal citation omitted).  The <u>Humphrey</u> opinion supports

Plaintiff's argument that his claim cannot be barred by any statute of limitations, because it either

has yet to accrue or accrued when Defendant denied Plaintiff's claim in this lawsuit.  *See* Section

II.A of Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's

Complaint, pages 4-8.

1

Respectfully submitted,


/s/ Douglas R. Sprong_____
Douglas R. Sprong
Diane Moore Heitman
Korein Tillery, LLC
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile
dsprong@koreintillery.com
dheitman@koreintillery.com


William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

A copy of the foregoing was e-mailed on October 1, 2007, per the Court's electronic filing system, to:

Theresa J. Chung
Joseph J. Costello
Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5295/5258/5584 - Telephone
(215) 963-5001 - Facsimile
tchung@morganlewis.com
jcostello@morganlewis.com
jblumenfeld@morganlewis.com


Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

/s/ Douglas R. Sprong

3

# EXHIBIT A

Abelman Complaint

William H. Blessing (#0006848)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

PAUL ABELMAN, and                    :

VALERIE R. NUTTER                    :

On behalf of themselves and on       :
behalf of all others similarly situated,  :

                        Plaintiffs,  :

                                     :        No. _____ 2:07 CV 793

                                     :        J. WATSON
                                     :        - M.J. KING
              v.                     :
                                     :        CLASS ACTION COMPLAINT
COLGATE-PALMOLIVE COMPANY,           :
and                                  :

                                     :
COLGATE-PALMOLIVE COMPANY            :
EMPLOYEES' RETIREMENT                :
INCOME PLAN                          :

                        Defendants.  :

---

### Nature of Action

1.      This is a class action under the Employee Retirement Income Security Act

of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

### Subject Matter Jurisdiction

2.      This Court has subject matter jurisdiction over this action by virtue of 28

U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

Specifically, this action is brought under ERISA § 502(a), 29 U.S.C. § 1132(a).

**Personal Jurisdiction and Venue**

3.      This Court has personal jurisdiction over Defendants (defined below) because they transact business in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process. *See* ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

4.      Under ERISA § 502(e), 29 U.S.C. § 1132(e), an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." Venue here is proper for both Defendants on three of the four bases provided by the statute.

5.      First, this is the District where the alleged breaches occurred. Where a participant claims that a violation of ERISA resulted in a failure to pay a benefit due under an ERISA plan, the alleged breach is deemed to have occurred in the place where the participant received or should have received his or her plan benefits. It was in this District, where Plaintiffs currently reside and resided at the relevant time, that the Plan benefits at issue here should have been paid to them.

6.      Second, the Plan and the Company "may be found" in this District in either a general or specific personal jurisdiction sense.

7.      There is general personal jurisdiction over the Plan because many hundreds of residents of this District, as employees of the Company, are currently accruing benefits under the Plan in this District, or, as former employees of the Company, are currently receiving benefits from the Plan in the District. In addition, the Plan comes into this District on a continuous basis to communicate with these District residents regarding their benefits, including through a highly-interactive Plan internet website.

2

8.     There is general personal jurisdiction over the Company because it has continuous and systematic contacts with this District through its employment of many hundreds of District residents, ownership of property in the District, operation of a manufacturing plant in this District and operation of numerous offices in this District.

9.     There is specific personal jurisdiction over both Defendants insofar as this action arises out of the failures to pay Plaintiffs and other proposed Class members residing in this District pension benefits that should have been paid in this District.

10.     Third, each Defendant "resides" here within the meaning of ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

**The Parties**

11.     Plaintiff Paul Abelman, a resident of New Albany, Ohio, is a former employee of the Company or one or more of its affiliates or former affiliates participated in the Plan during his period of employment with the Company. Mr. Abelman remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the Plan because although he received benefits from the Plan, the Plan owes him additional benefits that it has not yet paid him, as set forth herein.

12.     Plaintiff Valerie R. Nutter, a resident of Zanesville, Ohio, is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during her period of employment with the Company. Ms. Nutter remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the Plan because although she received benefits from the Plan, the Plan owes her additional benefits that it has not yet paid her, as set forth herein.

13.     Defendant Colgate-Palmolive Company ("Colgate" or the "Company"), a

domestic corporation, is the sponsor of the Plan, the Plan's administrator and a named fiduciary of the Plan, within the meaning of ERISA §§ 3(16)(A)-(B), 402(a), 29 U.S.C. §§ 1002(16)(A)-(B), 1102(a).

14.    Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (EIN: 13-2854931 - Plan No.: 001) (the "Plan") is and was at all relevant times an "employee pension benefit plan," and more specifically a "defined benefit plan," within the meaning of ERISA §§ 3(2)(A) and 3(35), 29 U.S.C. §§ 1002(2)(A) and 1002(35).

**Facts**

15.    Plaintiff Abelman was employed by the Company or one of its affiliates from 1992 until 2005.

16.    Plaintiff Nutter was employed by the Company or one of its affiliates for approximately 12 years, from 1988 until 2000.

17.    Throughout that time, Plaintiffs accrued pension benefits under the Plan, a defined benefit plan of the "cash balance" variety, in which a hypothetical account, known as a "Personal Retirement Account" (or "PRA"), was established for each of them.

18.    Under the terms of the Plan, Plaintiffs accrued "pay credits" based on a percentage of their pensionable compensation and monthly "interest credits" in an amount, determined quarterly, equal to 1/12 of an effective annual calendar year rate equal to the sum of the average rate of a new 6-month Treasury bill in effect during the quarter, plus 2%.

19.    Under the Plan, participants' right to receive future interest credits on their account balances through normal retirement age (age 65) accrued at the same time as the

corresponding pay credits to which the interest credits relate. In technical terms, the Plan was, as a result, a "frontloaded" interest crediting plan within the meaning of the law. *See, e.g.,* IRS Notice 96-8, 1996-1 C.B. 359-61.

20.    After terminating employment, Plaintiffs Abelman and Nutter elected to receive their fully-vested Plan benefits in the form of a lump sum distribution in 2000 and 2006, respectively. Plaintiff Abelman was 43 at the time and Plaintiff Nutter was 36 at the time.

21.    The Plan calculated and paid Plaintiff Nutter a benefit according to the terms of the Plan in October 2000 which the Plan forwarded to her at her home in Zanesville in the form of a check in the amount of $27,258.64. The Plan calculated and paid Plaintiff Abelman a benefit according to the terms of the Plan on or about April 2006 which the Plan forwarded to his home in New Albany in the form of a check in the amount of $60,654.37.

22.    However, these amounts were underpayments and not actuarially equivalent to their accrued benefits because the Plan failed to perform the required "whipsaw" calculation. Had Plaintiffs' hypothetical account balances been projected to normal retirement age at a rate that did not understate the value of the interest credits they had the right to receive through normal retirement age, Plaintiffs' benefits expressed in the form of a lump sum would have exceeded the lump sum amounts that they actually received.

5

## Exhaustion of the Plan's Claims Process Was Not Required

23.    Plaintiffs did not exhaust the administrative remedies provided under the terms of the Plan prior to initiating this lawsuit because exhaustion of the Plan's internal claims process was not required and/or should be excused in this case, even assuming the Plan had or has an ERISA-compliant claims process.

24.    First, the exhaustion requirement does not apply because the claims Plaintiffs raise are statutory claims involving the interpretation of ERISA, not purely plan-based benefit claims involving an interpretation of the Plan.  Congress intended that statutory questions of this nature be adjudicated by Article III judges, not employers acting as plan administrators.

25.    Second, even if the exhaustion requirement is not categorically inapplicable here, it should be excused as futile.  Here, as in *West v. AK Steel Corp.*, 484 F.3d 395 (6th Cir. 2007), "a lump-sum distribution is described [under the plan] as a payment equal to the participant's account balance.   Had [the plaintiff] submitted a timely claim for the recalculation of his lump-sum benefit, the [plan sponsor] would simply have responded, as it has argued in this appeal, that [the plaintiff] has already received an amount equal to his account balances, which is all that he is entitled to under [the plan sponsor's] interpretation of its Plan." *Id.* at 405.

26.    Futility is also demonstrated by the fact that the legal standard Defendants violated is clear and was well-established long ago – and was confirmed by the IRS as long ago as 1991, *see* "Nondiscrimination Requirements for Qualified Plans," 56 Fed.Reg. 47524, 47528 (1991), years before the Plan's illegal methodology for computing lump sums was adopted and put into effect (in 1994).  In the intervening 15

years, numerous Courts of Appeals and District Courts have confirmed these requirements. *See, e.g., West, supra; Lyons v. Georgia-Pacific Corp.,* 221 F.3d 1235, 1237-38 (11th Cir. 2000); *Esden v. Bank of Boston,* 229 F.3d 154, 164-173 (2d Cir. 2000); *Berger v. Xerox Corp. Ret. Income Guar. Plan,* 338 F.3d 755, 758 (7th Cir. 2003). Yet Defendants have failed to conform the Plan or their conduct under it to the requirements of the law, evidencing their belief that the law does not apply to them.

27.    Third, exhaustion was not required for the separate but related reason that the Plan's internal claims process is not designed to address and is not capable of addressing alleged statutory violations.

28.    Finally, exhaustion should be excused because it would serve few if any of the recognized purposes of the exhaustion requirement, as Plaintiffs will demonstrate should Defendants nevertheless seek to compel exhaustion.

### Claim for Relief

29.    Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

30.    ERISA §§ 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g), and Internal Revenue Code § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d), requires any optional form of benefit paid from a defined benefit plan, including a lump sum distribution, to be no less than the present value of the participant's accrued benefit expressed as an annuity commencing at normal retirement age (under the Plan, age 65).

31.    The Plan paid Plaintiffs lump sum benefits that was less than the present value of their respective accrued benefits in violation of ERISA §§ 203(e) and 205(g), and IRC § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d).

32.    The Plan's conduct as described above also resulted in an impermissible

forfeiture of benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a),

as implemented by Treasury Regulation § 1.411(a)-4 and 4T, in that the Plan conditioned

the right to receive future interest credits on Plaintiffs not taking a distribution prior to

normal retirement age.

### Class Action Allegations

33.    Plaintiffs bring suit on behalf of themselves and on behalf of all other

participants and beneficiaries similarly situated under the provisions of Rule 23 of the

Federal Rules of Civil Procedure with respect to violations alleged herein.

34.    The proposed Class is defined as follows:

All persons who were vested participants in the Colgate-Palmolive Company
Employees' Retirement Income Plan who received a distribution in the form of a
lump sum prior to August 17, 2006 that equaled the amount of their hypothetical
account balance when, at time their lump sums were calculated, the Plan's
interest crediting rate exceeded the applicable discount rate; and the beneficiaries
and estates of such persons and alternate payees under a Qualified Domestic
Relations Order.

35.    The requirements for maintaining this action as a class action under Fed.

R. Civ. P. 23(a)(1) are satisfied in that there are too many Class members for joinder of

all of them to be practicable.  There are at least hundreds of members of the proposed

Class dispersed among many states.

36.    The claims of the Class members raise numerous common questions of

fact and law, thereby satisfying the requirements of Fed. R. Civ. P. 23(a)(2).  All issues

concerning liability are common to all Class members because such issues concern their

entitlement to benefits calculated in a manner other than that calculated thus far and their

entitlement to relief from harm caused by the violations of law, rather than any action

taken by Plaintiffs or any Class member. In addition, all issues concerning relief are also common to the Class.

37.     The computation of a participant's lump sum distribution and the amount of lump sum distributions is standardized in that the amount of the lump sum distribution for each member of the Class was calculated in the same manner as described above. Thus, there exist common questions of fact as to each member of the Class. Each Class member's rights will be determined by reference to the same Plan documents and the same provisions of ERISA. Thus, there exist common questions of law as to each Class member, *i.e.,* whether the method of calculating of lump sum distributions violated the law.

38.     Plaintiffs' claims are typical of the claims of Class members, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(3). They do not assert any claims relating to the Plan in addition to or different than those of the Class. Plaintiffs' claims are typical of the claims of the Class members in that their respective lump sum distributions were calculated in the same fashion as the rest of the Class, and their rights, as well as those of the Class as a whole, are similarly provided for under the plan document and applicable provisions of ERISA.

39.     Plaintiffs are adequate representatives of the proposed Class, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests are identical to those of the proposed Class. The Plan has no unique defenses against them that would interfere with their representation of the class. Plaintiffs have engaged competent counsel with both ERISA and class action litigation experience.

40.     Additionally, all of the requirements of Fed. R. Civ. P. 23(b)(1) are

satisfied in that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants and individual adjudications present a risk of adjudications which, as a practical matter, would be dispositive of the interests of other members who are not parties.

41.     All of the requirements of Fed. R. Civ. P. 23(b)(2) also are satisfied in that the Plan's actions affected all Class members in the same manner making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

### Prayer for Relief

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants and that the Court award the following relief:

A.     Certification of this action as a class action for all purposes of liability and relief and appointment of undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23.

B.     Judgment for Plaintiffs and the Class against Defendants on all claims expressly asserted and/or within the ambit of this Complaint.

C.     An order awarding, declaring or otherwise providing Plaintiffs and the Class all other such relief to which Plaintiffs and the Class are or may be entitled whether or not specified herein.

D.     An order awarding pre- and post-judgment interest.

E.     An order awarding attorney's fees on the basis of the common fund doctrine (and/or other applicable law, at Plaintiffs' election), along with the reimbursement of the expenses incurred in connection with this action.

F.    An order awarding, declaring or otherwise providing Plaintiffs all relief

under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that Plaintiffs

may subsequently specify and/or that the Court may deem appropriate.

Dated:  August 13, 2007                    Respectfully submitted,

                                          *William H. Blessing*

                                          William H. Blessing (#0006848)
                                          The Blessing Law Firm
                                          119 East Court Street, Suite 500
                                          Cincinnati, Ohio 45202
                                          Telephone:  (513) 621-9191
                                          Telecopier:  (513) 621-7086

Of Counsel:

Eli Gottesdiener
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
(718) 788-1500

                              *Counsel for Plaintiffs and the proposed Class*

# EXHIBIT B

<u>Abelman</u> Memorandum Of Law In Support Of The
Motion To Dismiss (without exhibits)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

PAUL ABELMAN, and
VALERIE R. NUTTER,

Plaintiffs,

vs.

Case No.  2:07-cv-793

COLGATE-PALMOLIVE COMPANY, and
COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME
PLAN,

Judge Michael H. Watson
Magistrate Judge Norah McCann King

Defendants.


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    RELEVANT FACTUAL BACKGROUND .......................................................... 4

    A.     Overview Of Colgate-Palmolive And The Colgate-Palmolive Company
         Employees' Retirement Income Plan ........................................................ 4

    B.     Nutter Received A Lump Sum Benefit From The Plan In 2000 ............. 4

    C.     Abelman Signed A Release Of Claims In 2005 ...................................... 5

III.   ARGUMENT ...................................................................................................... 8

    A.     Legal Standard Governing Motions To Dismiss Under Fed. R. Civ. P.
         12(b)(6). ................................................................................................... 8

    B.     Nutter's Claims Are Time Barred .......................................................... 9

         1.     Nutter's Claims Are Subject To The Four-Year Catch-All Statute
              Of Limitations In 28 U.S.C. § 1658 ............................................. 9

         2.     Assuming *Arguendo* That Nutter's Claims Were Not Subject To
              The Four-Year Federal Catch-All Limitations Period in Section
              1658, Her Claims Would Be Subject To New York's Six-Year
              Statute Of Limitations. ................................................................. 15

         3.     Nutter's Claims Accrued, At The Latest, When She Received Her
              Lump Sum In 2000 And Consequently Her Claims Are Time
              Barred. ........................................................................................ 18

    C.     Abelman's Claims Are Barred By The Release Of His Claims ........... 21

IV.    CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

Bell Atlantic Corp. v. Twombly,
127 S. Ct. 1955 (2007)................................................................8, 9

Berger v. AXA Network LLC,
459 F.3d 804 (7th Cir. 2006) .................................................2, 9, 12, 15, 16

Cardinal Health, Inc. ERISA Litig.,
424 F. Supp. 2d 1002, 1016 (S.D. Ohio 2006) ...............................................7

Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan,
201 F.3d 44 (2d Cir. 1999)...........................................17, 18, 19, 20

City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,
399 F.3d 651, cert. denied, 546 U.S. 936 (2005)................................4, 8

City of Rancho Palos Verdes v. Abrams,
544 U.S. 113 (2005)................................................................12

Constantino v. TRW, Inc.,
13 F.3d 969 (6th Cir. 1994) .........................................................20

Cooey v. Strickland,
479 F.3d 412 (6th Cir. 2007) ........................................................18

Daill v. Sheet Metal Workers' Local 73 Pension Fund,
100 F.3d 62 (7th Cir. 1996) .................................................18, 19, 20

Drutis, et al. v Rand McNally & Co., et al.,
--- F.3d ---, No. 06-6380, 2007 WL 2409762, (6th Cir. Aug. 27, 2007) .........................1

Fallick v. Nationwide Mutual Ins. Co.,
162 F.3d 410 (6th Cir. 1998) ........................................................20

Graham County Soil & Water Conservation Dist. v. U.S.,
545 U.S. 409 (2005)..............................................................18, 20

Halvorson v. Boyscouts of Am.,
NO. 99-5021, 2000 WL 571933 (6th Cir. May 31, 2000 .............................................22

Hogan v. Petitpren, Inc.,
92 F. Supp. 2d 612 (E.D. Mich. 2000).......................................................22

Homenick v. Nat'l Steel Corp.,
No. 95-CV-75310-DT, 1996 WL 426549 (E.D. Mich. Feb. 22, 1996) ..........................................6

Jackson v. City of Columbus,
194 F.3d 737 (6th Cir. 1999) ..........................................4

Jones v. R.R. Donnelley & Sons Co.,
541 U.S. 369 (2004)..........................................2, 10, 15

Laurenzano v. Blue Cross and Blue Shield of Mass., Inc.,
134 F. Supp. 2d 189 (D. Mass. 2001) ..........................................21

Ledbetter v. Goodyear Tire & Rubber Co., Inc.,
127 S. Ct. 2162 (2007)..........................................20

Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan,
221 F.3d 1235 (11th Cir. 2000) ..........................................14

Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan,
196 F. Supp. 2d 1260 (N.D. Ga. 2002) ..........................................15

Meade v. Pension Appeals and Review Comm.,
966 F.2d 190 (6th Cir. 1992) ..........................................3, 9, 10

Meador v. Cabinet for Human Res.,
902 F.2d 474 (6th Cir. 1990) ..........................................9

Michigan Bell Tel. Co. v. Strand,
26 F. Supp. 2d 993 (W.D. Mich. 1998) ..........................................6

Miles v. New York State Teamsters Conf. Pension
Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593,
cert. denied, 464 U.S. 829 (1983) ..........................................17

Morgan v. Church's Fried Chicken,
829 F.2d 10 (6th Cir. 1987) ..........................................9

Morrison v. Marsh & McLennan Co., Inc.,
439 F.3d 295 (6th Cir. 2006) ..........................................19

New England Health Care Employees Pension Fund v. Ernst & Young, LLP,
336 F.3d 495 (6th Cir. 2003), cert. denied, 540 U.S. 1183 (2004) ..........................................4, 8

Nietzke v. Williams,
490 U.S. 319 (1989)..........................................8

[HH023354 1 ]                          -iii-

Nino v. Haynes Int'l Inc.,
No. 1:05-CV-0602-JDT-TAB, 2005 WL 4889258 (S.D. Ind. Aug. 19, 2005).................11, 12, 15

Ruggles v. Bulkmatic Transport Co.,
No. C2-03-617, 2004 WL 5376213 (S.D. Ohio June 23, 2004) ....................................10

Scheid v. Fanny Farmer Candy Shops, Inc.,
859 F.2d 434 (6th Cir. 1988) ............................................................................9

In re Sofamor Danek Group, Inc.,
123 F.3d 394 (6th Cir. 1997) ...........................................................................9

Swierkiewicz v. Sorema N.A.,
534 U.S. 506 (2002).......................................................................................4

Sykes v. First South Utility Construction, Inc.,
No. 3:05-0658, 2006 WL 2792195 (M.D. Tenn. Sept. 25, 2006) .........................10

Taylor v. Aramark Serv. Corp.,
No. 1:03-CV-337, 2004 WL 1854177 (E.D. Tenn. Mar. 4, 2004) ........................9

Taylor v. Visteon Corp.,
149 F. App'x 422 (6th Cir. 2005).................................................................6, 21

Torello v. UNUM Life Ins. Co. of Am.,
No. 98-4338, 1999 WL 1204755 (6th Cir. Dec. 3, 1999).............................22, 23

Wallace v. Kato,
127 S. Ct. 1091 (2007)..............................................................................18, 20

West v. AK Steel Corp.,
484 F.3d 395 (6th Cir. 2007) .........................................................................20

Weiner, D.P.M. v. Klais and Co., Inc.,
108 F.3d 86 (6th Cir. 1997) .............................................................................7

White v. Sun Life Assurance Co. of Canada,
488 F.3d 240 (4th Cir. 2007) ....................................................................18, 19

Wright v. Heyne,
349 F.3d 321 (6th Cir. 2003) ....................................................................21, 23

## STATUTES

28 U.S.C. § 1658 ................................................................................2, 9, 12, 13, 15, 16

29 U.S.C. § 621, et seq. .............................................................................................6

29 U.S.C. § 1053(a) ..................................................................................................15

29 U.S.C. § 1053(e) ..................................................................1, 2, 13, 14, 15

29 U.S.C. § 1055 .............................................................1, 2, 5, 13, 14, 15

29 U.S.C. § 1140 ................................................................................13, 15, 16

42 U.S.C. § 1981 ...............................................................................6, 11

## RULES AND REGULATIONS

58 Fed. Reg. 5128 (Jan. 19, 1993) .........................................................................14

60 Fed. Reg. 17216-01, 17217 (Apr. 5, 1995) ......................................................13

## MISCELLANEOUS

Kim Clark, Career Spotlight: Cashing Out Your Pension,
U.S. NEWS & WORLD REPORT, Oct. 24, 2005,
http://www.usnews.com/usnews/biztech/articles/051024/24career.htm .......................................13

## I.    INTRODUCTION[1]

Plaintiff Paul Abelman ("Abelman") and Valerie R. Nutter ("Nutter") (collectively "Plaintiffs") are former employees of the Colgate-Palmolive Company ("Colgate" or the "Company"). (Compl. ¶¶ 11-12). Plaintiffs participated in the Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan") during their employment with Colgate. (Id.). The Plan is a cash balance plan under ERISA.[2] (Compl. ¶ 17). In their Complaint, Plaintiffs allege that the manner in which their lump sum pension benefits were calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). (Compl. ¶¶ 30-31). Specifically, Plaintiffs allege that when they terminated their employment, the Plan paid each of them a lump sum benefit equal to their individual cash balance account balance. (Compl. ¶¶ 21-22, 34). They claim, however, that the Plan was required to pay them a higher amount, based on the value of their normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g). (Compl. ¶¶ 22, 30-31). Plaintiffs purport to bring this action on behalf of a class of Plan participants who received lump sum distributions allegedly calculated in the same manner. (Compl. ¶¶ 33-34, 37). Abelman received his lump sum benefit in April 2006, and Nutter received her lump benefit in October 2000. (Compl. ¶ 21).

---

[1]  On September 18, 2007, Defendants moved to transfer this case to the Southern District of Indiana, where a nearly identical class action is pending. (See Docket Nos. 11, 12).

[2]  For an explanation of what cash balance plans are and how they work, see Drutis, et al. v Rand McNally & Co., et al., --- F.3d ---, No. 06-6380, 2007 WL 2409762, (6th Cir. Aug. 27, 2007)(Ex. F).

Putting aside the underlying merits of the Plaintiffs' claims,[3] their claims are barred. Plaintiff Nutter's claims are time barred, and Abelman's claims are barred by a release that he signed, waiving claims arising under ERISA.

Although ERISA contains no specific statute of limitations for Plaintiffs' claims, 28 U.S.C. § 1658(a) establishes a four-year "catch-all" statute of limitations for any federal claims "arising under an Act of Congress enacted after" December 1, 1990. 28 U.S.C. § 1658(a). The Supreme Court held that Section 1658(a) applies where an Act of Congress amended an existing statute after December 1, 1990, if the claim is based on the amended provisions of the statute. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-84 (2004). In this case, the Retirement Protection Act of 1994 materially altered both 29 U.S.C. §§ 1053(e) and 1055(g) – the statutory provisions upon which Plaintiffs rely in their Complaint – to change the method for calculating lump sum present values under ERISA. Thus, Plaintiffs' claims are subject to the federal four-year statute of limitations in 28 U.S.C. § 1658(a). Nutter received her lump sum benefits in 2000, and she did not pursue the Plan's internal appeal procedures because she knew that such appeal would be futile. (Compl. ¶¶ 21, 23, 25-26). Yet Nutter waited almost *seven years* to file this Complaint, and thus, her claims are time barred.

Even if the four-year statute of limitations did not apply, Nutter's claims would still be time barred. The Court of Appeals in Berger v. AXA Network LLC, 459 F.3d 804 (7th Cir. 2006), held that where Section 1658(a) does not apply (because the relevant statutory section of ERISA was not amended after 1990), courts must apply the most analogous statute of limitations of the state "with *the most significant relationship to the parties and the transaction.*" Id. at 808,

---

[3]    The Defendants disagree with the Plaintiffs' characterization of the law and their entitlement to any additional benefits under the Plan or ERISA, but do not address the underlying merits of their claims herein.

813; Meade v. Pension Appeals and Review Comm., 966 F.2d 190, 194-95 (6th Cir. 1992) ("[I]n the absence of a federally mandated statute of limitations, [courts] should apply the most analogous state law statute of limitations."). The court's analysis in AXA Network compels application of New York law in this case. Although Nutter lived in Ohio and was paid her benefit in Ohio, New York's statute of limitations applies because Colgate is based in New York, the Plan was administered in New York, and Nutter alleges that all former Plan participants who elected lump sums, regardless of where they lived or worked, were affected by the Plan's alleged ERISA violation. The statute of limitations under New York law is six years, and her claim accrued when she received her lump sum in 2000. Accordingly, Nutter's claims would still be time barred.

    In addition, Abelman's claims are barred for separate reasons. In April 2005, Abelman signed a general release, in which he agreed to release Colgate and any of its affiliates from any claims relating to his employment with Colgate, including any claims – whether "known or unknown" – arising under ERISA. (See Letter of Agreement and General Release, dated March 8, 2005 and signed by Abelman on April 18, 2005 (hereafter "the Release"), attached hereto as Exhibit 1 to Exhibit A). Although Abelman alleges that he received his lump sum benefit *after* he signed the Release, he knew precisely how his benefit would be calculated before he signed the Release. As early as 1994, the Plan informed him that if he elected a lump sum benefit, he would receive a lump sum equal to his account balance. Accordingly, Abelman had ample opportunity to learn of his claims, and he could have sued under ERISA before he signed the Release. Moreover, Abelman alleges that his claims involve "statutory violations" and "not purely plan-based benefit claims." (Compl. ¶ 24). Insofar as his ERISA claims involve

"statutory questions" rather than "interpretation of the Plan" (Compl. ¶ 24), his claims are not within the scope of the exclusions set forth in the Release, and are consequently barred.

Respectfully, the Complaint should be dismissed.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Overview Of Colgate-Palmolive And The Colgate-Palmolive Company Employees' Retirement Income Plan.

Colgate is a leading consumer products company whose products are marketed in over 200 countries and territories throughout the world. (See Excerpts from Colgate-Palmolive, SEC Form 10-K filed 2/23/2007, Ex. B at 1).[4] The Company is headquartered in New York and has other facilities and employees located throughout the country. (See Ex. B at 2, 6, 7).

Colgate sponsors the Plan, which is a defined benefit plan. (Compl. ¶ 14). The Plan is administered in New York. (See Excerpt from Colgate-Palmolive Company Employees' Retirement Income Plan, Form 5500 filed Oct. 2005, Ex. C at 1).

### B.   Nutter Received A Lump Sum Benefit From The Plan In 2000.

Nutter was employed by Colgate from 1988 until 2000, and she elected to take her pension benefits in the form of a lump sum.[5] (Compl. ¶¶ 16, 20-21).[6] The lump sum payment to

---

[4]    SEC filings and other public disclosures are appropriately considered under Rule 12(b)(6). See New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003) (courts can take judicial notice of matters of public record on motion to dismiss) (citations omitted), cert. denied, 540 U.S. 1183 (2004); Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (courts may take into consideration public records, matters of which a court may take judicial notice, and letter decisions of government agencies); City of Monroe Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 655, n.1, 2 (taking judicial notice on motion to dismiss under Rule 12(b)(6) of information from the National Association of Securities Dealers website and a publication on international securities), cert. denied, 546 U.S. 936 (2005).

[5]    This was a voluntary election by Nutter. (Compl. ¶ 20). Under ERISA, the default form of payment is an annuity or a joint and survivor annuity for married participants. 29 U.S.C. §§ 1055(b)(1)(C)(ii) and 1055(g)(1) (1999). Participants must make a written election to receive their benefits in any other form, e.g., a lump sum. Id. § 1055(g)(2).

[6]    Paragraph 20 of the Plaintiffs' Complaint mistakenly transposes the years in which Abelman and Nutter elected to receive their lump sum benefits. (Compl. ¶ 20). The rest of the Complaint makes clear that Abelman elected to receive his lump sum in 2006 and Nutter received her lump sum in 2000. (Compl. ¶¶ 15, 16, 21).

Nutter was equal to her cash balance account balance. (Compl. ¶¶ 22, 34). Nutter did not utilize the Plan's internal appeal process (after her initial benefit election) because:

> "....the claims Plaintiffs raise are statutory claims involving the interpretation of ERISA, not purely plan-based benefit claims involving an interpretation of the Plan .... [E]ven if the exhaustion requirement is not categorically inapplicable here, it should be excused as futile.... Futility is also demonstrated by the fact that the *legal standard* Defendants violated is clear and was well-*established long ago* – and was confirmed by the IRS *as long ago as* 1991, *years before the Plan's illegal methodology for computing lump sums was adopted and put into effect (in 1994). In the intervening 15 years, numerous Courts of Appeals and District Courts have confirmed these requirements.* Yet Defendants have failed to conform the Plan or their conduct under it to requirements of the law, evidencing their belief that the law does not apply to them.

(Compl. ¶¶ 24-26) (citations omitted, emphasis added). Nutter does not allege any facts between the date she received her lump sum in 2000 and the filing of the Complaint on August 13, 2007.

## C.    Abelman Signed A Release Of Claims In 2005.

Abelman was employed by Colgate from 1992 until 2005. (Compl. ¶ 15). In April 2005, he signed a general release, in which he agreed to release Colgate and any of its affiliates from any claims, "known or unknown," relating to his employment with Colgate, including any claims arising under ERISA.[7] (See Letter of Agreement and General Release, dated March 8, 2005 and signed by Abelman on April 18, 2005 (hereafter "the Release"), attached hereto as Exhibit 1 to Exhibit A, Section 3(a)). Specifically, the Release stated:

---

[7] This Court is permitted to consider facts "which are indisputable because they are capable of ready determination from resources whose accuracy cannot be reasonably questioned." Michigan Bell Tel. Co. v. Strand, 26 F. Supp. 2d 993, 996 (W.D. Mich. 1998) (citations omitted)(Ex. G). Courts have considered whether releases bar ERISA claims on motions to dismiss under Rule 12(b)(6). See generally Homenick v. Nat'l Steel Corp., No. 95-CV-75310-DT, 1996 WL 426549 (E.D. Mich. Feb. 22, 1996) (granting motion to dismiss under 12(b)(6) where release barred ERISA claims)(Ex. H); Taylor v. Visteon Corp., 149 F. App'x 422 (6th Cir. 2005) (affirming granting of motion to dismiss under 12(b)(6) where release barred ERISA claims).

In consideration of the Severance set forth in Paragraph 2 hereof and the Summary, you waive, release and forever discharge Colgate and each of its past and current parents, subsidiaries, affiliates and each of its and their respective past and current directors, officers, trustees, employees, representatives and agents, and each of its and their respective successors and assigns (the "Colgate Releasees") from *any and all claims, grievances, agency or administrative charges, injuries, controversies, agreements, covenants, promises, debts, accounts, actions, causes of action, suits, sums of money, attorneys' fees, costs, damages, arbitrations, or demands, whatsoever, known or unknown, in law or in equity, by contract, tort or pursuant to federal, state or local statute, regulation, ordinance or common law, which you now have, ever have had, or may hereafter have, based upon or arising from any fact or set of facts, whether known or unknown to you, from the beginning of time until the effective date of this Agreement*, arising out of or relating in any way to your employment relationship with Colgate or the Colgate Releasees or other associations with Colgate or the Colgate Releasees or any termination thereof. Without limiting the generality of the foregoing, this waiver, release, and discharge includes any claim or right based upon any contract, express or implied, any breach of duty, or arising under federal, state or local fair employment practices, equal opportunity, or wage and hour laws, including, but not limited to, the Age Discrimination in Employment Act (29 U.S.C. Section 621, et seq.) ("ADEA"), the Older Workers' Benefit Protection Act, the Rehabilitation Act of 1973, the Worker Adjustment and Retraining Notification Act, 42 U.S.C. Section 1981, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, *the Employee Retirement Income Security Act,* the Americans with Disabilities Act and the Family and Medical Leave Act, including all amendments thereto.

Exhibit 1, Section 3(a) (emphasis added). The Release does not include any "claim or right …

under any qualified pension or retirement plan." (See Exhibit 1, Section 3(c)). In exchange for

this release of claims, Abelman received severance benefits, including severance pay, stock

options, a lump sum payment, and other benefits, from the Company. (See Exhibit 1, Section 2).

Abelman "freely, voluntarily and knowingly entered into this Agreement after due

consideration." (See Exhibit 1, Section 14).

Although Abelman alleges that he received his lump sum benefit *after* he signed the

Release, his claims under ERISA accrued *before* he signed the release. As early as 1994, the

Summary Plan Description for the Plan (in effect from 1994 until December 31, 2004) told

{H1023354 1 }                                                    -6-

Abelman that if he elected a lump sum benefit, he would receive a lump sum equal to his account balance.[8] See Summary Plan Description dated November 1994 (hereafter "1994 SPD" or "1994 Summary Plan Description"), p. 9.12 ("***Lump-Sum Option*** – An option available to both married and unmarried employees is a lump-sum payment of the total value of your PRA [Personal Retirement Account] balance.") (emphasis in original), attached hereto as Exhibit D. In addition, the more recent Summary Plan Description for the Plan (in effect as of January 1, 2005 to the present) also informed Abelman of the same fact. See Summary Plan Description, effective January 1, 2005 (hereafter "2005 SPD" or "2005 Summary Plan Description"), p. 11 ("**Lump-Sum Option** – This option pays the total value of your PRA balance in a single cash payment.") (emphasis in original), attached hereto as Exhibit E. Accordingly, Abelman had ample opportunity to learn of his claims – and sue to clarify his rights under ERISA – long before he signed the Release in 2005. Moreover, because Abelman's claim involves "statutory questions" rather than "interpretation of the Plan" (Compl. ¶ 24), his claims are not within the scope of the exclusions set forth in the Release, and are consequently barred. Like Nutter, Abelman alleges that he did not utilize the Plan's internal appeal process (after his initial benefit election) because his claims are "statutory claims involving the interpretation of ERISA, not purely plan-based benefit claims involving an interpretation of the Plan." (Compl. ¶ 24). In addition, Abelman alleges that exhaustion would have been futile. (Compl. ¶¶ 25-26). He also alleges that although the Plan's "illegal methodology for computing lump sums was adopted and put into effect (in

---

[8]  Plaintiffs reference the Plan documents throughout their Complaint. (Compl. ¶¶ 18, 19, 37). Accordingly, the Plan documents are appropriately considered under Rule 12(b)(6). See Weiner, D.P.M. v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997) (referencing plan documents and SPDs attached to motion to dismiss under 12(b)(6)); Cardinal Health, Inc. ERISA Litig., 424 F. Supp. 2d 1002, 1016 (S.D. Ohio 2006) ("Courts may consider ERISA plan documents not attached to a complaint where a plaintiff's claims are 'based on rights under the plans which are controlled by the plans' provisions as described in the plan documents' and where the documents are 'incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims.'") (citations omitted).

1994) ... the legal standards Defendants violated is clear and well-established long ago – and was confirmed by the IRS as long ago as 1991." (Compl. ¶ 26).

Accordingly, Abelman's claims are barred by the Release and must be dismissed.

## III.   ARGUMENT

### A.   Legal Standard Governing Motions To Dismiss Under Fed. R. Civ. P. 12(b)(6).

Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted "when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." New England Health Care Employees Pension Fund v. Ernest & Young, LLP, 336 F.3d 495. 501 (6th Cir. 2003) (citations omitted), cert. denied, 540 U.S. 1183 (2004). In a recent opinion, Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court held that, in order to survive a motion to dismiss pursuant to Fed. Civ. P. 12(b)(6), a plaintiff must allege sufficient specific facts to state a claim "*that is plausible on its face*," not just one that is "conceivable." Id. at 1974 (emphasis added). Dismissal of a complaint for failure to state a claim streamlines litigation by "dispensing with needless discovery and factfinding." Nietzke v. Williams, 490 U.S. 319, 326-27 (1989). As the Supreme Court emphasized, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, *this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.*" Twombly, 127 S. Ct. at 1966 (emphasis added, citations and quotations omitted; ellipsis in original).

In ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. See Meador v. Cabinet for Human Res., 902 F.2d 474, 475 (6th Cir. 1990), cert. denied, 498 U.S. 867 (1990). However, although a court reviewing a Rule 12(b)(6) motion to dismiss should construe the plaintiff's complaint liberally, "more than bare assertions of legal

conclusions is ordinarily required to satisfy federal notice pleading requirements." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Rather, a plaintiff's complaint will not survive a motion to dismiss under Rule 12(b)(6) unless it contains "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (citations and internal quotations omitted). Accordingly, a district court need not accept as true "the bare assertion of legal conclusions" or "unwarranted factual inferences." In re Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir. 1997) (citations omitted); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

### B.    Nutter's Claims Are Time Barred.

#### 1.    Nutter's Claims Are Subject To The Four-Year Catch-All Statute Of Limitations In 28 U.S.C. § 1658.

ERISA itself does not specify a statute of limitations for claims alleging statutory violations. See Meade, 966 F.2d at 194 ("ERISA provides no statute of limitations for section 1132(a)(1)(B) actions"); Taylor v. Aramark Serv. Corp., No. 1:03-CV-337, 2004 WL 1854177, at *3 (E.D. Tenn. Mar. 4, 2004) (same)(Ex. I). Accordingly, courts have explained that the first step in any statute of limitations analysis under ERISA is to determine whether the federal four-year "catch-all limitations period" in 28 U.S.C. § 1658(a) applies. AXA Network, 459 F.3d at 808 (considering whether Section 1658 applies to ERISA claim; also noting that Section 1658 is a "catch-all limitations period for federal causes of action that do not have their own limitations periods"). See also Meade, 966 F.2d at 194-95 ("[I]n the absence of a federally mandated statute of limitations, the court should apply the most analogous state law statute of limitations."); Ruggles v. Bulkmatic Transport Co., No. C2-03-617, 2004 WL 5376213, at **3-4 (S.D. Ohio June 23, 2004) (applying the four year limitations period in 28 U.S.C. § 1658(a) to a claim arising under the Interstate Commerce Commission Termination Act)(Ex. J); Sykes v. First

{H1023354.1}                                    -9-

South Utility Construction, Inc., No. 3:05-0658, 2006 WL 2792195, at *6 (M.D. Tenn. Sept. 25, 2006) (applying four-year federal statute of limitations to Section 1981 claims that were "made possible by the Civil Rights Act of 1991")(Ex. K).

28 U.S.C. § 1658(a) provides that:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues.

Id. Although ERISA was originally enacted in 1974, the Supreme Court in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004) held that Section 1658 is not limited to new statutes or new causes of action, but also includes amendments that change the rights or obligations of the parties at issue. Id. at 381 (internal citation omitted). The Supreme Court explained:

> The House Report accompanying the final bill [enacting Section 1658] confirms that Congress was keenly aware of the problems associated with the practice of borrowing state statutes of limitations, and that a central purpose of § 1658 was to minimize the occasions for that practice.
>
> * * *
>
> Congress routinely creates new rights of action by amending existing statutes, and "[a]ltering statutory definitions, or adding new definitions of terms previously undefined, is a common way of amending statutes." Nothing in the text or history of § 1658 supports an interpretation that would limit its reach to entirely new sections of the United States Code. An amendment to an existing statute is no less an "Act of Congress" than a new, stand-alone statute. What matters is the substantive effect of the enactment – the creation of new rights of action and corresponding liabilities – not the format in which it appears in the Code.

Id. at 380-81 (emphasis added) (citations omitted). The Supreme Court further explained that Section 1658 should be given expansive application "that fills more rather than less of the void" caused by the prior absence of a federal residual statute of limitations. Id. at 380. Thus, the

{H1023354.1 }                    -10-

Supreme Court explained, the central question in determining the applicability of Section 1658 is whether "the plaintiff has alleged a violation of the relevant statute as it stood prior to December 1, 1990, or whether her claims necessarily depend on a subsequent amendment." Id. at 384.

In Jones, for example, the petitioners alleged harassment and wrongful termination claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981. Although the statute had been codified since 1866, the petitioners' particular claims were based on statutory definitions that were amended by Congress in 1991. See Id. at 372. Therefore, the Supreme Court held that the petitioners' claims were governed by the four-year limitations period in Section 1658.

Similarly, in Nino v. Haynes Int'l Inc., No. 1:05-CV-0602-JDT-TAB, 2005 WL 4889258 (S.D. Ind. Aug. 19, 2005)(Ex. L), the court addressed the applicability of Section 1658 to a claim of employment discrimination based on military service. Although the Selective Training and Service Act had been codified since 1940, and replaced by the Veterans' Reemployment Rights Act ("VRRA") in 1974, "Congress replaced the VRRA with USERRA[9] [in 1994] to clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." Id. at *2. The court held that the plaintiff's USERRA claim was subject to the four-year limitations period in Section 1658 because USERRA allowed plaintiffs to recover liquidated damages – damages not previously available under VRRA – thus changing the parties' potential rights and liabilities. The court explained:

---

[9]    USERRA stands for the "Uniformed Services Employment and Reemployment Act of 1994." Nino, 2005 WL 4889258, at *1 (Ex. L).

> *USERRA materially changed the existing VRRA law by allowing liquidated damages, a relief that was not previously available to a plaintiff under VRRA. This change increased the rights available to the plaintiff, and the possible liabilities of the defendant. This important change requires the application of § 1658(a)'s four-year statute of limitations.*
>
> \* \* \*
>
> Perhaps [plaintiff] would have had a claim against [defendant] under the VRRA if the Act was still current law. However, the VRRA has been replaced by USERRA.

<u>Id.</u> at \*2, \*4 (emphasis added). <u>See also</u> <u>City of Rancho Palos Verdes v. Abrams</u>, 544 U.S. 113, 124, n.5 (2005) ("Since the claim here rests upon violation of the post-1990 [Telecommunications Act of 1996, which amended pre-existing law], § 1658 would seem to apply" because the "4-year limitations period applies to all claims made possible by a post-1990 congressional enactment.") (internal quotations, citations and brackets omitted).

Consistent with the Supreme Court's holding in <u>Jones</u> and the court's opinion in <u>Nino</u>, ERISA claims that are based on a statutory provision that was amended after 1990 are subject to the four-year limitations period in Section 1658 if the amendment altered the parties' rights and obligations at issue. Thus, when the Seventh Circuit in <u>AXA Network</u> considered the applicability of Section 1658 to an ERISA claim, the court looked to whether the specific substantive provision at issue (29 U.S.C. § 1140) had been amended to alter the parties' rights and obligations. [10] <u>See</u> <u>AXA Network</u>, 459 F.3d at 808 (Section 1658(a) does not apply to claim alleging violation of ERISA Section 510, 29 U.S.C. § 1140, because "§ 510 of ERISA has not been amended since its original enactment in 1974").

---

[10] To Defendants' knowledge, the Sixth Circuit has not addressed this issue.

Here, Jones, AXA Network, and Nino compel application of the federal four-year limitations period to Nutter's claims. Nutter alleges that the lump sum in her account balance was "less than the present value of [her] respective accrued benefits *in violation of ERISA §§ 203(e) and 205(g)*." (Compl. ¶ 31) (emphasis added). Although these sections were originally codified before 1990, they both were substantially amended in 1994 by the Retirement Protection Act of 1994 ("RPA of 1994"), which is, of course, "an Act of Congress enacted after" 1990. 28 U.S.C. § 1658(a). Moreover, the RPA of 1994 amendments changed the method of calculating lump sum present values under ERISA Sections 203(e) and 205(g)(3) – the very calculation that lies at the crux of Nutter's claims against the Plan.[11]

Specifically, in order to calculate a present value of an annuity benefit, one needs to know the governing mortality assumptions (set forth on a "mortality table") and discount rate.[12] Before the RPA of 1994, 29 U.S.C. §§ 1053(e) and 1055(g)(3) did not prescribe any particular mortality table, but instead permitted plans to make their own mortality assumptions. See Valuation of Plan Distributions, 60 Fed. Reg. 17216-01, 17217 (Apr. 5, 1995) ("Prior to amendments made by RPA '94, section 417(e)(3) restricted the interest rate to be used under a plan to calculate the present value of a participant's benefit, but did not impose any restrictions on the mortality table to be used for that purpose."). In addition, before the RPA of 1994, the Pension Benefit Guarantee Corporation ("PBGC") had discretion to set the "applicable interest

---

[11]  To Defendants' knowledge, no court has previously considered whether or not the four-year residual statute of limitations in Section 1658 applies to alleged violations of 29 U.S.C. §§ 1053(e) and 1055(g)(3) as those statutes were amended by the RPA of 1994. This issue is being considered by the court in Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan, No. 4:07-CV-0016-SEB-WGH, and Defendants have moved to transfer this case to the district where Caufield is pending.

[12]  See, e.g., Kim Clark, Career Spotlight: Cashing Out Your Pension, U.S. NEWS & WORLD REPORT, Oct. 24, 2005, http://www.usnews.com/usnews/biztech/articles/051024/24career.htm (lump sums are based on the average mortality for all men and women combined at each age, and are calculated by adding up all the payments that should be made to a person based on his or her expected life span, then calculating the present value of that stream of income)(Ex. M).

rate" for discounting to present value and calculating lump sums.[13]  29 U.S.C. § 1053(e) (1993 Ed.); 29 U.S.C. § 1055(g)(3) (1993 Ed.).  The RPA of 1994 changed both of these statutory requirements.  First, the RPA of 1994 defined for the first time an "applicable mortality table" and mandated that plans use that table.  29 U.S.C. § 1053(e) (1995 Ed.);[14] 29 U.S.C. § 1055(g)(3) (1995 Ed.).  Thus, pursuant to the RPA of 1994, plans no longer had the right to make their own mortality assumptions.  Second, the RPA of 1994 changed the statutory definition of the "applicable interest rate" to mean the "annual rate of interest on 30-year Treasury securities." 29 U.S.C. § 1053(e) (1995 Ed.); 29 U.S. § 1055(g)(3) (1995 Ed.).  As such, the PBGC no longer had the discretion to set the discount rate for calculating lump sums, but instead the rate was set by the financial markets.

As reflected above, the substantive effect of the RPA of 1994 was to create new rights and corresponding liabilities with regard to the calculation of lump sum benefits by "altering statutory definitions [and] adding new definitions of terms previously undefined." Jones, 541 U.S. at 381.  See also Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 196 F. Supp. 2d 1260, 1271 (N.D. Ga. 2002) ("Congress passed the Retirement Protection Act in 1994, which *substantially altered* the language of § 203(e) [29 U.S.C. § 1053(e)].") (emphasisadded).[15]

---

[13]  The PBGC apparently set its interest rates for valuation purposes by examining a survey of private sector annuity prices, using those prices as a starting point, and selecting a valuation interest rate (or rates) that when combined with the PBGC mortality table would accurately replicate the price structure of certain private annuity products. See Valuation of Plan Benefits in Single-Employer Plans; Valuation of Plan Benefits and Plan Assets Following Mass Withdrawal, 58 Fed. Reg. 5128 (Jan. 19, 1993).

[14]  29 U.S.C. § 1053(e) was amended to eliminate any substantive provisions regarding rates or mortality assumptions, but instead merely requires that any present value calculations be performed in accordance with the amended provisions of 29 U.S.C. § 1055(g)(3).

[15]  In fact, the Eleventh Circuit in Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235 (11th Cir. 2000), cert. denied, 532 U.S. 967 (2001) held that a plaintiff who received his lump sum distribution from a cash balance plan before the RPA of 1994 could not represent plan participants who received their lump sum benefits after the RPA of 1994, because the law regarding the calculation of lump sum present values – and the rights and obligations of plans and plan participants with respect to lump sum calculations – had been materially altered by the RPA of 1994. Id. at 1253.

Accordingly, and because Nutter's claims are based on "an Act of Congress enacted" after 1990, Nutter's claims are subject to the four-year residual statute of limitations in 28 U.S.C. § 1658(a).[16]  See Jones, 541 U.S. at 381; AXA Network, 459 F.3d at 813; Nino, 2005 WL 4889258, at *2, *4.

> **2.    Assuming *Arguendo* That Nutter's Claims Were Not Subject To The Four-Year Federal Catch-All Limitations Period in Section 1658, Her Claims Would Be Subject To New York's Six-Year Statute Of Limitations.**

As explained above, Nutter's claims are based on statutes that were materially amended by the RPA of 1994, and, therefore, her claims are subject to the federal four-year limitations period in 28 U.S.C. § 1658.  Nevertheless, the Plan anticipates that Nutter will attempt to avoid application of the four-year limitations period to try to save her claims.  Even assuming *arguendo* that Nutter's claims were not subject to the four-year limitations period in Section 1658, however, her claims would be subject to New York's six-year statute of limitations and would be time barred.

The Seventh Circuit's decision in AXA Network addressed this very issue.[17]  AXA Network involved plaintiffs who worked and resided in Illinois who alleged that they were denied certain benefits in Illinois because of a companywide change in benefit policy, in

---

[16]    Although Nutter further alleges the Plan violated ERISA § 203(a), this allegation is premised on the same statutory provisions, 29 U.S.C. §§ 1053(e) and 1055(g)(3). Nutter alleges that the Plan's conduct "resulted in an impermissible forfeiture of benefits" that is prohibited by ERISA Section 203(a) (29 U.S.C § 1053(a)) and Internal Revenue Code ("IRC") Section 411(a), as implemented by Treasury Regulation 1.411(a)-4 and 4T. In fact, this allegation incorporates by reference all prior paragraphs of the Complaint. (Compl. ¶ 32). Nutter alleges that because 29 U.S.C. §§ 1053(e) and 1055(g)(3) entitled her to certain benefits, the failure to pay those benefits also constituted an impermissible forfeiture under 29 U.S.C. § 1053(a). Thus, her claim under ERISA § 203(a) necessarily depends on the same statutory provisions (29 U.S.C. §§ 1053(e) and 1055(g)(3)) that were amended by the RPA of 1994, and also is subject to the four-year residual statute of limitations in 28 U.S.C. § 1658(a).

[17]    The Sixth Circuit has not squarely addressed the issue of which state's statute of limitations, if any, should apply to a putative ERISA class action that involves participants who worked, lived, and received their benefits in multiple states.

{H1023354.1}                                        -15-

violation of ERISA Section 510, 29 U.S.C. § 1140. The court ruled that the plaintiffs' claims were not subject to the residual four-year limitations period in 28 U.S.C. § 1658 because "§ 510 of ERISA has not been amended since its original enactment in 1974." AXA Network, 459 F.3d at 808. Accordingly, the Seventh Circuit held that the plaintiffs' claims were subject to the most analogous statute of limitations of the "state *with the most significant relationship to the parties and to the transaction.*" Id. at 813 (emphasis added). In determining that New York law – and not Illinois law – controlled, the court held:

> In our view, New York is the state with the most significant relationship to the parties and to the transaction. The occurrence at issue here was the corporate decision on the part of [defendant] to alter the criterion for determining whether an employee ought to be considered a full-time insurance salesman. That change was made by [defendant's] management in New York and documented by evidence and by witnesses in New York. Moreover, the decision was applicable to all [defendant]'s salesmen, not simply to those in Illinois. Although the named plaintiffs reside in Illinois, other members of the class reside in states other than Illinois. Thus, Illinois is simply a spoke rather than the hub of this lawsuit.

Id. at 813. The Seventh Circuit also recognized that were it to reach any other conclusion "this class action would be governed by a 'crazy quilt' of limitations periods and the federal interest in uniformity would be rendered nugatory." AXA Network, 459 F.3d at 814. The court concluded that applying New York law better served the federal policies at issue in furthering uniformity of treatment. Id.

Likewise, in this situation, New York has the "most significant relationship" to the claims alleged. As in AXA Network, Colgate is headquartered in New York, the Plan Administrator is in New York, and the Plan is administered in New York. (Ex. B, at 6; Ex. C, at 1). Nutter also alleges that the same plan terms and plan administration uniformly affected Plan participants throughout the country:

- "The computation of a participant's lump sum distribution and the amount of lump sum distributions is standardized in that the amount of the lump sum distribution for each member of the Class was calculated in the same manner as described above." (Compl. ¶ 37).

- "Plaintiffs' claims are typical of the claims of the Class members in that their respective lump sum distributions were calculated in the same fashion as the rest of the Class, and their rights, as well as those of the Class as a whole, are similarly provided for under the plan document and applicable provisions of ERISA." (Compl. ¶ 38).

In these circumstances, as in AXA Network, Ohio is "simply a spoke rather than the hub of [the] lawsuit," and New York's statute of limitations controls. Id. at 813. Indeed, New York is the only jurisdiction with which (for purposes of this litigation) all the putative class members have any meaningful contact.

Under New York law, the statute of limitations for ERISA claims seeking benefits (whether based on statute or the terms of a plan) is six years. See, e.g., Miles v. New York State Teamsters Conf. Pension Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983) (New York's six-year limitations period applies to ERISA claims) (citing N.Y.C.P.L.R. § 213), cert. denied, 464 U.S. 829 (1983); Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 46-47 (2d Cir. 1999) (same).

### 3. Nutter's Claims Accrued, At The Latest, When She Received Her Lump Sum In 2000 And Consequently Her Claims Are Time Barred.

Nutter's claims had accrued at the latest in 2000 when she received her lump sum benefit. Accordingly, her ERISA claims are time barred under the applicable statute of limitations, and must be dismissed.

ERISA does not specifically articulate when a cause of action accrues for statute of limitations purposes. Rather, the accrual of ERISA claims is governed by "federal common law." Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62, 65 (7th Cir. 1996)

[H1023354.1]                                          -17-

("[W]e look to federal common law for purposes of determining the accrual date of a cause of action under a federal statute such as ERISA."); White v. Sun Life Assurance Co. of Canada, 488 F.3d 240, 245 (4th Cir. 2007) (the accrual of ERISA claims is governed by "a uniform federal rule rather than the law of the states."). As the Supreme Court has explained, under federal common law, "[i]t is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007) (internal quotations and citations omitted); Cooey v. Strickland, 479 F.3d 412, 416 (6th Cir. 2007) ("Cooey II) (citing Wallace). See also Graham County Soil & Water Conservation Dist. v. U.S., 545 U.S. 409, 418 (2005) (recognizing the standard federal rule "that the limitations period commences when the plaintiff has a complete and present cause of action.") (internal quotations omitted).

Application of this principle to ERISA claims generally is straightforward. Participants *generally* cannot file a court complaint under ERISA, i.e., they do not have a "complete and present cause of action," until they have exhausted their administrative remedies, either formally or informally. In such circumstances, because participants cannot file a court complaint until they have exhausted administrative remedies, the limitations period generally does not start running until the participants have exhausted. See Morrison v. Marsh & McLennan Co., Inc., 439 F.3d 295, 301-303 (6th Cir. 2006) (cause of action challenging denial of benefits accrued when plan fiduciary sent letter informing individual that application for coverage was denied, and *not* when putative beneficiary later filed a formal claim for benefits); Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62, 66 (7th Cir. 1996) (participant's cause of action accrued when fund denied the participant's informal letters requesting benefits, and *not* when he later filed a formal application for benefits) (cited in Morrison, 439 F.3d at 303); Carey v. Int'l

Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 49 (2d Cir. 1999) (cause of action under ERISA accrued when Plan denied the participant's request for benefits, and not when his formal application for benefits was later denied). The Fourth Circuit succinctly explained the principle as follows: "[t]his means that the statute of limitations begins to run *at the moment when the plaintiff may seek judicial review, because ERISA plaintiffs must generally exhaust administrative remedies before seeking judicial relief.*" White v. Sun Life Assurance Co. of Canada, 488 F.3d 240, 246 (4th Cir. 2007) (emphasis added).

In this case, Nutter applied for and received her lump sum pension in 2000, and, at that point, she knew that her benefit was equal to her account balance. (Compl. ¶¶ 21-28). The Summary Plan Descriptions even told Nutter that if she elected a lump sum benefit, she would receive a lump sum equal to her account balance. See Exhibit D, p. 9.12; Exhibit E, p. 11. Nutter specifically alleges that she was not required to exhaust her internal administrative remedies under the Plan before seeking relief from this Court *because she knew that to do so would be "futile."* (Compl. ¶¶ 25-26, emphasis added). As the Sixth Circuit has explained:

> [t]he standard for adjudging the futility of resorting to the [Plan's] administrative remedies ... is whether a clear and positive indication of futility can be made. A plaintiff must show that it is certain that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision.

Fallick v. Nationwide Mutual Ins. Co., 162 F.3d 410, 419 (6th Cir. 1998) (internal quotations and citations omitted). Thus, by alleging futility, Nutter necessarily admits that she knew for "certain" that any appeal she could have filed under the Plan would have been denied. Nutter's futility allegation entitles her to immediately file a court action *without exhausting her administrative remedies.* See Constantino v. TRW, Inc., 13 F.3d 969, 974-75 (6th Cir. 1994) (holding that the participants who were challenging the calculation of their retirement benefits

could immediately file a court action without exhausting their administrative remedies where exhaustion would be futile).[18]  This means that Nutter had a "complete and present cause of action" in 2000, even without exhausting her administrative remedies.  Accepting her own allegations as true, therefore, Nutter's claim accrued at the latest when she received her lump sum in 2000, because that is the moment she had a complete and present cause of action and was entitled to file a complaint in court.[19]  See Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007); Graham County Soil & Water, 545 U.S. at 418; Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S.Ct. 2162, 2171, n.3 (2007) (plaintiff's "cause of action was fully formed and present at the time that the discriminatory employment actions were taken against her, at which point she could have, and should have sued").[20]  As one court explained in similar circumstances:

> *The lump sum distribution represents the actual injury to each class member and marks the time after which delay in seeking redress would be unreasonable. . . . If a class member did not seek internal remedies, whether intentionally or not, this Court will not extend the statute of limitations by assuming that the class member exhausted his internal remedies some arbitrary number of days after the lump sum distribution. Thus, each class member's cause of action accrued when he received his lump sum distribution unless he sought internal remedies.*

---

[18]  That is particularly true here.  Because Nutter alleges statutory violations (see Compl. ¶ 24), many of the policy reasons favoring exhaustion are lacking.  Constantino, 13 F.3d at 975 (determining that the purposes of administrative exhaustion were not met where the plaintiffs challenged the "*legality*" of [the Plan], not ... a mere *interpretation* of it.... [I]f Plaintiffs were to resort to the administrative process, [the defendant] would merely recalculate their benefits and reach the same result.") (emphasis in original); West v. AK Steel Corp., 484 F.3d 395, 405 (6th Cir. 2007) (holding that the plaintiff was not required to file claims for benefits where he would have been told that he "already received an amount equal to his account balances, which is all he is entitled to under [the Plan's] interpretation of its Plan.").

[19]  Indeed, this is the only accrual date that gives any meaning to statutes of limitations, particularly because Nutter refused to appeal the calculation of her lump sum distribution, and she does not allege a single event that occurred between the date she received her lump sum and the date she filed her Complaint in 2007.  See Daill, 100 F.3d at 67 (rejecting plaintiff's argument that would render the "limitations period . . . meaningless"); Carey, 201 F.3d at 49 (rejecting argument that claim accrued only upon the denial of his formal application for benefits where such a rule would render the "limitation period meaningless" where a plaintiff could sue "long after he initially pursued his claims with the plan" merely by "delaying his formal application for benefits").

[20]  The Supreme Court in Ledbetter held that the plaintiff's cause of action accrued even though she did not know until much later that her male colleagues had received higher raises than she had received.  127 S.Ct. at 2174-77.

Laurenzano v. Blue Cross and Blue Shield of Mass., Inc., 134 F. Supp. 2d 189, 210 (D. Mass. 2001) (emphasis added).[21]

In sum, Nutter waited more than six years after receiving her lump sum to bring this lawsuit. In the interim, she did nothing to pursue any of the Plan's internal appeal procedures because she knew such claim was certain to be denied. If Nutter was not required to exhaust her administrative remedies before filing suit – as she herself alleges – she had a complete and present cause of action when she received her lump sum in 2000 (at the latest), and her claim had accrued as of that time. Her claims are untimely and they should be dismissed.

## C.    Abelman's Claims Are Barred By The Release Of His Claims.

Abelman's claims against the Plan and Colgate similarly fail to state a claim as matter of law.[22] Abelman was employed by Colgate from 1992 until 2005. (Compl. ¶ 15). In April 2005, Abelman signed a general release, in which he agreed to release Colgate and any of its affiliates from any claims, "known or unknown," relating to his employment with Colgate, including any claims arising under ERISA. (See Exhibit 1, Section 3(a)).[23]

---

[21]  That Nutter may claim that she did not know what the law required is irrelevant to the accrual of her claim for limitations purposes. See Wright v. Heyne, 349 F.3d 321, 330-31 (6th Cir. 2003) ("[T]he relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute..... If the requisite 'actual knowledge of the breach or violation' could only be obtained, as the Plaintiffs suggest, when they learned that they had a claim for violation of ERISA after consulting with an attorney even though they had actual knowledge years earlier of all of the facts and alleged misdeeds constituting their claim, [the policies underlying statutes of limitations] would be frustrated.").

[22]  To the extent that Abelman's claims accrued as early as 1994, when he was informed that he would receive a lump sum equal to his account balance, his claims are similarly time barred by the applicable statutes of limitations. See supra Sections III.B.1 and III.B.2.

[23]  Courts in the Sixth Circuit have affirmed employee waivers of ERISA claims. See, e.g., Taylor v. Visteon Corp., 149 F. App'x 422, 426 (6th Cir. 2005) ("Like most legal claims, ERISA claims (including breach-of-fiduciary claims) may be settled."); Halvorson v. Boyscouts of Am., No. 99-5021, 2000 WL 571933, at *3 (6th Cir. May 31, 2000) (release barred ERISA claims)(Ex. N); and Hogan v. Petitpren, Inc., et al., 92 F. Supp. 2d 612, 615 (E.D. Mich. 2000) (same).

It is indisputable that the plain language of the Release bars Abelman's claims. Moreover, courts in the Sixth Circuit have affirmed that Plan documents – such as an SPD – provide Plan participants "with ample opportunity to learn of [their] claim[s]." See Torello v. UNUM Life Ins. Co. of Am., No. 98-4338, 1999 WL 1204755, at *9 (6th Cir. Dec. 3, 1999)(Ex. O). In Torello, the plaintiff suffered a work-related injury, but failed to apply for long-term disability insurance benefits, and was discharged. Id. at *1. The plaintiff and his employer entered into a settlement agreement, by which the plaintiff would be temporarily reinstated, thus allowing him to file for long-term disability benefits. Id. at *2. In exchange, the plaintiff released all claims he had against the Company at the time of the agreement. Id. Upon his reinstatement, he filed an application for benefits (with UNUM), and the claim was denied as untimely because he had failed to provide notice and proof of his claim within the required time periods. Id.

The Sixth Circuit concluded that the plaintiff's ERISA claims (for breach of fiduciary duty and discriminatory discharge) against his former employer were barred by the release because the plaintiff had "full opportunity to learn the fundamental facts underlying his claim before he signed the settlement agreement." Id. at *9. Specifically, the plaintiff "had been given a summary plan description outlining the eligibility requirements for [the benefits in question] …. This information provided the former employee with ample opportunity to learn of his claims against [his former employer]." Id. at *9. Moreover, the Court determined that, although his benefits were not denied until *after* he signed the release, his claims arose *before* he signed the settlement agreement, that is, "on the date when he could no longer file a timely claim for benefits." Id. at *10. The Court rejected the plaintiff's argument that "he may not have realized his claim for benefits was untimely until it was actually denied," noting that the

employee "could have learned his claim was untimely by simply reading the summary plan description in his possession." Id. at *10.

In this case, the SPD gave Abelman "ample opportunity to learn of [his] claims;" it notified Abelman as early as 1994 that if he elected a lump sum benefit, he would receive a lump sum equal to his account balance. See Exhibit D, p. 9.12 ("*Lump-Sum Option* – An option available to both married and unmarried employees is a lump-sum payment of the total value of your PRA [Personal Retirement Account] balance.") (emphasis in original). Accordingly, Abelman had ample opportunity to learn of his claims long before he signed the Release in 2005, and thus, his claims are barred by the Release.[24]

## IV.    CONCLUSION

For each of the foregoing reasons, Plaintiffs' Complaint should be dismissed.


Respectfully submitted,

/s/ Felix Wade
Felix Wade (0024462)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email: fwade@szd.com

Trial Attorney for Defendants Colgate-Palmolive Company and Colgate-Palmolive Company Employees' Retirement Income Plan

---

[24] That Abelman may claim that he did not know what the law required with respect to the calculation of his lump sum benefit is irrelevant to whether his claim is covered by the Release. See Wright, 349 F.3d at 330-31 ("Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims .... If the statute [of limitations] were tolled until an attorney informs the plaintiff that he or she has an ERISA claim, a plaintiff could delay accrual of a claim simply by waiting before consulting an attorney.").

OF COUNSEL:

Eve Ellinger
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello * (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:    215-963-5295/5258/5584
Fax:    877-432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com

*Admitted *Pro Hac Vice*

Attorneys for Defendants Colgate-Palmolive Company and
Colgate-Palmolive Company Employees' Retirement Income Plan

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 24, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs

/s/ Eve Ellinger
EVE ELLINGER

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| PAUL CAUFIELD,<br><br>                              Plaintiff,<br><br>            vs.<br><br>COLGATE-PALMOLIVE COMPANY<br>EMPLOYEES' RETIREMENT INCOME<br>PLAN,<br><br>                              Defendant. | Cause No.  4:07-cv-00016-SEB-WGH |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
STAY OF CONSIDERATION OF ITS MOTION TO DISMISS PENDING DISPOSITION
OF THE MOTION TO TRANSFER**

## I.        INTRODUCTION

Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan"
or "Defendant") seeks a stay of consideration on the Plan's Motion to Dismiss Plaintiff Paul
Caufield's ("Plaintiff" or "Caufield") Complaint pending disposition of a Motion to Transfer
filed in a related case pending in the United States District Court for the Southern District of
Ohio.  The Motion to Transfer in Paul Abelman and Valerie R. Nutter v. Colgate-Palmolive
Company and Colgate-Palmolive Company Employees' Retirement Income Plan, Case No. 2:07-
cv-793, seeks to transfer a virtually identical putative class action from the Southern District of
Ohio to this district.  A stay of consideration of the Plan's Motion to Dismiss pending the ruling
on the Motion to Transfer would promote judicial efficiency, and will avoid duplication, wasted
resources, and the risk of inconsistent decisions and unnecessary expense.

Accordingly, Defendant respectfully requests that the Court stay consideration on the
Motion to Dismiss pending a ruling on the Motion to Transfer.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    On February 12, 2007, Caufield Filed Suit Against The Plan, Seeking To Represent A Nationwide Class Of Plan Participants In ERISA Claims.

On February 12, 2007, Caufield filed a Complaint against the Plan, alleging that the manner in which his lump sum pension benefit was calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 22-23).  Specifically, Caufield alleges that when he retired in February 1999, the Plan paid him a lump sum benefit equal to his cash balance account balance.  (Compl. ¶¶ 9-11).  He claims, however, that the Plan was required to pay him a higher amount, based on the value of his normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 9-11, 22-23).  Caufield purports to bring this action on behalf of a class of former Plan participants who received lump sum distributions from the Plan, all allegedly calculated in the same manner.  (Compl. ¶¶ 13, 17).  Specifically, he seeks to bring a class action on behalf of:

> All participants in the Colgate-Palmolive Company Employees' Retirement Income Plan who received a lump-sum distribution of their pension benefits from the Plan at any time after February 12, 1997.

(Compl. ¶ 13).  Caufield alleges that class certification is appropriate "because the Plan computed the lump-sum distributions of the Class members in the same contested manner" and "*there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the administrator of the Plan.*"  (Compl. ¶¶ 14, 15) (emphasis added).

On April 16, 2007, the Plan moved to dismiss Caufield's entire Complaint for failure to state a claim because Plaintiff's claims are time barred under the relevant statutes of limitations.  (Docket No. 24).  On May 15, 2007, Caufield filed a Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, in which he asserted various legal arguments in

response to Defendant's Motion to Dismiss. (Docket No. 34). The Plan submitted a Reply brief on June 5, 2007. (Docket No. 42). As explained below, this Court should stay consideration of that Motion pending a ruling on the Motion to Transfer.

**B.    On August 13, 2007, Plaintiffs Paul Abelman And Valerie R. Nutter Filed A Nearly Identical Case Against Colgate And The Plan In The Southern District Of Ohio.**

On August 13, 2007, six months after <u>Caufield</u> was first filed in the Southern District of Indiana, Plaintiffs Paul Abelman ("Abelman") and Valerie R. Nutter ("Nutter") filed suit against Colgate-Palmolive Company ("Colgate") and the Plan in the United States District Court of the Southern District of Ohio, alleging that the manner in which their lump sum pension benefits were calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). (<u>Abelman</u> Compl. ¶¶ 30-31).[1] Specifically, as in this case, Abelman and Nutter allege that the Plan paid them lump sum distributions equal to their account balances. (<u>Abelman</u> Compl. ¶¶ 15-16, 20-22). Also as in this case, Plaintiffs claim that the Plan was required to pay them a higher amount, based on the value of their normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g). (<u>Abelman</u> Compl. ¶¶ 22, 30-31, 34). Abelman and Nutter purport to bring their action on behalf of a class of former Plan participants who received lump sum distributions from the Plan. (<u>Abelman</u> Compl. ¶ 34). Mr. Caufield is a putative class member in this <u>Abelman</u>. Likewise, both of the named plaintiffs in <u>Abelman</u> – Abelman and Nutter – are members of the putative class in this case.

Abelman and Nutter allege that certification is appropriate because there are "numerous common questions of fact and law" and "the prosecution of separate actions … *would create a*

---

[1]    The Complaint in <u>Abelman</u> is attached to the Motion as Exhibit A.

*risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants ...."* (<u>Abelman</u> Compl. ¶¶ 36, 40) (emphasis added).

On September 24, 2007, Colgate and the Plan moved to dismiss Abelman and Nutter's entire Complaint because: (1) Plaintiff Nutter's claims are barred by the applicable statute of limitations based on the same arguments at issue in <u>Caufield</u>; and (2) Plaintiff Abelman's claims are barred by a release that he signed, waiving claims arising under ERISA. (<u>Abelman</u> Docket Nos. 14 and 15).[2] As of October 11, 2007, Plaintiffs have not submitted any brief in opposition to this Motion.

### C.    On September 18, 2007, Colgate And The Plan Moved To Transfer *Abelman* To The Southern District Of Indiana.

On September 18, 2007, Defendants Colgate-Palmolive Company ("Colgate") and the Plan filed a Motion to Transfer <u>Abelman</u> to this district. (The Memorandum Of Law In Support Of The Motion To Transfer, without exhibits, in <u>Abelman</u> is attached to the Motion as Exhibit C). Defendants moved to transfer <u>Abelman</u> because both the <u>Abelman</u> and <u>Caufield</u> lawsuits allege that the Plan improperly calculated lump sum benefits under a "whipsaw" theory. (<u>Abelman</u> Compl. ¶¶ 22, 30-31; Compl. ¶¶ 9-11, 22-23). Likewise, both lawsuits purport to bring such claims on behalf of a putative nation-wide class of individuals who received lump sum distributions from the Plan. Indeed, the plaintiffs in <u>Abelman</u> are members of the putative class in <u>Caufield</u>, and Mr. Caufield is a member of the putative class in <u>Abelman</u>. Defendants moved to transfer to promote judicial efficiency, and to avoid duplication, wasted resources, the risk of inconsistent decisions and unnecessary expense, and pursuant to the "first-to-file" rule. In addition, Defendants moved to transfer <u>Abelman</u> pursuant to 28 U.S.C. § 1404(a) because such a

---

[2]    The Memorandum of Law In Support Of The Motion To Dismiss, without exhibits, in <u>Abelman</u> is attached to the Motion as Exhibit B. Defendant is happy to provide the Court with copies of the exhibits to the <u>Abelman</u> Motion to Dismiss and the Motion to Transfer upon request.

transfer would promote the interests of justice and judicial economy, and would eliminate the problems associated with simultaneously adjudicating two identical class actions.[3]

For reasons of judicial economy, this Court should stay consideration of the Caufield Motion to Dismiss pending a ruling on the Motion to Transfer.

### III.    ARGUMENT

#### A.    Good Cause Exists To Stay Discovery And Other Proceedings Pending Resolution Of The Plan's Motion To Dismiss.

Federal courts have authority to stay proceedings and to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Azar v. Merck & Co., No. 3:06-cv-0579 AS, 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006) (internal citation omitted).  In this case, a stay of consideration of the Motion to Dismiss pending a ruling on the Motion to Transfer is necessary to preserve judicial resources and to promote judicial efficiency.  Such stay would result in no real prejudice to the Plaintiff.

There is no question that the parties in this action substantially overlap with the parties in Abelman.  Although the named plaintiffs are different individuals, both class actions seek certification of essentially the same class of participants who received lump sum benefits from the Plan.  Caufield is a member of the proposed class in this action, and Abelman and Nutter are members of the proposed class in Caufield.  Both actions challenge the same calculation of lump sum benefits under the Plan.  In addition, the issues in the two actions are identical. In both Ableman and this case, the plaintiffs challenge the calculation of lump sum pension benefits under ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  In addition, the same limitations issues are presented in both cases.

---

[3]    On October 9, 2007, Plaintiffs filed a Motion For A 60 Day Stay of all proceedings in Abelman pending a ruling by this Court on the Motion to Dismiss in Caufield.  (Abelman Docket No. 17). Defendants intend to oppose that Motion because a stay of proceedings in Abelman would not lead to judicial efficiency but would run contrary to it.

Here, sound administration warrants a stay of the Motion to Dismiss pending a ruling on the Motion to Transfer in <u>Abelman</u>. Allowing two separate courts in this district to adjudicate the same legal issues is inefficient and impractical. The two courts might reach inconsistent results, and in addition, the parties could not settle one class action while the other case remains pending. Of course, judicial resources would be wasted in litigating the same case in two separate courts and in having two different judges rule on the same issues – including the pending motions to dismiss on statute of limitations grounds.

Finally, Plaintiff will not suffer any prejudice should the Court stay ruling on its Motion to Dismiss pending a resolution of the Motion to Transfer in <u>Abelman</u>. Under these circumstances, the interest in judicial economy would not be served by requiring this Court to expend resources on proceedings that can be easily stayed for a limited period of time by this Court's Order.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein and in its Motion For Stay Of Consideration Of Its Motion To Dismiss Pending Disposition Of The Motion To Transfer, Defendant respectfully requests that the Court issue an order staying consideration on the Motion to Dismiss until such time as the <u>Abelman</u> Court rules on the Motion to Transfer.

Respectfully submitted,

Dated:  October 11, 2007    MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ Theresa J. Chung
Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung*
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5295/5258/5584

Fax:  (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

Baker & Daniels LLP
Ellen E. Boshkoff (#16365-49)
Philip J. Gutwein II (#22986-53)
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Attorneys for Defendant
Colgate-Palmolive Company Employees'
Retirement Income Plan

*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2007, a copy of the foregoing Memorandum Of Law In Support Of Defendant's Motion For Stay Of Consideration Of Its Motion To Dismiss Pending Disposition Of The Motion To Transfer, and papers in support thereof, was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street, Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

I hereby certify that on October 11, 2007, a copy of the foregoing Memorandum Of Law In Support Of Defendant's Motion For Stay Of Consideration Of Its Motion To Dismiss Pending Disposition Of The Motion To Transfer, and papers in support thereof, was mailed, by first class U.S. mail, postage prepaid, and properly addressed to the following:

Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

/s/Theresa J. Chung
Theresa J. Chung*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5584
Fax:  (215) 963-5001
tchung@morganlewis.com

*Admitted Pro Hac Vice

-8-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| **PAUL ABELMAN, and** | : |
| **VALERIE R. NUTTER** | : |
| **Plaintiffs,** | : **Case No. 2:07-cv-793** |
| **v.** | : **Judge Michael H. Watson** |
| **COLGATE-PALMOLIVE COMPANY, and** | : **Magistrate Judge Norah McCann King** |
| **COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN** | : |
| **Defendants.** | : |

## <u>MOTION FOR A 60 DAY STAY</u>

### Introduction

Plaintiffs Paul Abelman and Valerie Nutter, through undersigned counsel,

respectfully move the Court for a temporary, 60 day stay of these proceedings. In

particular, Plaintiffs seek a stay of further briefing and consideration of defendants'

motion to dismiss (Docs. 14-15) and motion to transfer this case to the United States

District Court for Southern District of Indiana (Doc. 12). The reason for Plaintiffs'

request is that Defendants seek to transfer this case to Indiana because there is now

pending there an earlier filed, related action, *Caufield v. Colgate-Palmolive Company*

*Employees' Retirement Income Plan,* No. 4:07-CV-0016SEB-WGH (S.D. Ind.), but one

of the two defendants in this action (Defendant Colgate-Palmolive Company Employees'



Retirement Income Plan (the "Plan")) has moved to have *Caufield* dismissed on statute of limitations grounds. The Plan's motion to dismiss *Caufield* is fully briefed and the District Court in Indiana is expected to rule by the end of October. *See Caufield* Doc. 46, Magistrate Judge's Order on Telephonic Status Conference at 2. A stay for 60 days until the *Caufield* court has rendered its decision should further "the just, speedy and inexpensive determination of [this] action," Fed. R. Civ. P. 1, for the reasons explained more fully below.

## Background

In its motion to dismiss in *Caufield*, the Plan argues that the claim of the sole plaintiff in that action, Paul Caufield, an Indiana resident, is time-barred based on the fact that Mr. Caufield received his distribution from the Plan in 1999, more than four or six years before filing suit. *See Caufield* Docs. 24-25, 42 (Plan's motion to dismiss and reply brief in support of motion to dismiss, arguing for application of a four or six year limitations period instead of the analogous Indiana 10-year limitations period applicable to contract actions). As noted, that motion is fully briefed and a decision on the motion is expected as early as the end of October. *See Caufield* Doc. 46 at 2.

In this case, the Plan (and its sponsor, Colgate-Palmolive Company, a defendant here but not in *Caufield*), have also filed a motion to dismiss. Docs. 14-15. But the Plan does not seriously raise a limitations defense as to one of the two plaintiffs in this action, Paul Abelman of New Albany, who received a distribution in 2006.[1] Instead, the Plan

---

[1] In a footnote at the very end of its brief, the Plan argues that Mr. Abelman's claim **could** be deemed time-barred "[t]o the extent that Abelman's claims accrued as early as 1994, when he was informed that he would receive a lump sum equal to his account balance." Def. Mem. (Doc. 15) at 21 n.22. This contention is not pursued for good reason, as will be explained at the appropriate time.

argues that Mr. Abelman's claim is barred because he signed a release agreement in 2005 (before his allegedly illegally calculated lump sum was actually calculated), Def. Mem (Doc. 15) at 3-4, 5-8, 21-23 – a release which, the Plan fails to point out, does not even run in favor of the Plan (which is just one of several defects with this defense, as will also be addressed more fully at the appropriate time).[2]

As to the second plaintiff here, Valerie Nutter of Zaneville who received a distribution in 2000, Defendants argue that her claim is time-barred for much same reasons that the Plan says that Mr. Caufield's claim is time-barred. Def. Mem. at 4-5, 9-21.

Defendants, through counsel, have declined to consent to the brief stay sought by this motion. Hence, the need for this filing.

### Discussion

A court has inherent power to stay proceedings in the exercise of sound discretion in the interests of justice, economy and efficiency. *Landis v. North American Co.,* 299 U.S. 248, 254-255 (1936). Here, it should conserve this Court's resources and the resources of the parties, without prejudicing any of them, were the Court to grant a 60 day stay of briefing and consideration of the Plan's motion to dismiss and motion to transfer until a ruling on the Plan's motion to dismiss *Caufield* can be rendered.

The sole premise of the Plan's motion to transfer this action to the Southern District of Indiana is that there is a case there with which this case "can be consolidated."

---

[2] It should be noted now, however, that in breach of its promise to keep the terms of its release agreement with Mr. Abelman strictly confidential "[e]xcept to the extent necessary to enforce [it]," Doc. 15-2, p. 5 of 12, ¶ 10, Colgate uploaded into the public record pages of strictly confidential and personal information concerning Mr. Abelman and his family, having nothing to do with Defendants' claim that the agreement waived Mr. Abelman's right to receive a lawfully calculated pension benefit. *Id.,* pp. 10-12. This material breach of the agreement should bar Colgate, without more, from interposing the agreement as a defense to Mr. Abelman's claim.

Def. Mem. (Doc. 12) at 2; *see also id.* at 8 (arguing that "sound judicial administration warrants a transfer so that the two cases can be consolidated"). Yet at any moment that premise might evaporate precisely because, at the Plan's request, the District Court in Indiana is currently weighing whether to dismiss *Caufield* and might do exactly as the Plan asks. (The Plan's motion to transfer, in 12 pages of exposition, avoids directly acknowledging this key point even in the one footnote that references the possibility. *See* Doc. 12 at 3 n.1.[3])

It would be one thing if the Plan had asked the District Court in Indiana to stay its consideration of the Plan's motion to dismiss until this action can be transferred there, consolidated with it, and the motion to dismiss against Mr. Abelman and Ms. Nutter fully briefed and considered along with the fully briefed motion requesting dismissal of Mr. Caufield's action. But the Plan has not done so.

The brief stay Plaintiffs request is necessary for the parties and the Court to avoid needless expenditure of effort and resources and the risk of even longer delays. Defendants cannot credibly claim that they would be prejudiced by a brief stay whereas this Court would be prejudiced if no stay were entered and it is forced to consider one or more motions which may soon be moot. So too Plaintiffs should not have to spend the time and effort involved in responding to motions that in fact may never need be answered.

Take the motion to transfer first. The "fact" that this case can be consolidated with *Caufield* is the sole basis for the request that this action be transferred to Indiana.

---

[3] *See also id.* at 4 n.2 (Defendants assert that "disagree[ments]" "as to the applicable statute of limitations" "should not impact the Court's analysis on this Motion to Transfer" but this admittedly assumes that the Plan's motion to dismiss *Caufield* will be **denied**; Defendants never address the possibility that the Plan's motion will be granted).

Neither the Plan nor its sponsor are headquartered in Indiana. If *Caufield* is dismissed as the Plan requests, the time this Court will have spent considering the Plan's motion to transfer, and the time Plaintiffs will have spent responding to it, will have been wasted. The same is true of the motion to dismiss. The Plan wants the case adjudicated in Indiana, not Ohio. If it succeeds in getting the case transferred, the time the Court spends considering the motion to dismiss and the time Plaintiffs will have spent responding to it based on prevailing Sixth Circuit precedent will also have been wasted.

By contrast, the Plan and its sponsor are not cognizably prejudiced if further briefing and consideration of their motions are temporarily delayed. Defendants themselves requested and obtained an extension of time within which to file their motion to dismiss, *see* Doc. 7, and did not file their motion to transfer until some five (5) weeks after being served with the Complaint. There was no urgency then and there is no urgency now to have one or both of Defendants' motions here decided.

On the other hand, in the absence of the requested stay, Plaintiffs, both long-time Ohioans (in the case of Ms. Nutter, a life-time Ohioan), could be unfairly deprived of their choice of forum or at least put through considerable unnecessary burden and expense if, for example, just after this Court grants the motion to transfer, it turns out that the District Court in Indiana does indeed grant the Plan's motion to dismiss *Caufield*. In that case, Defendants may then still try to have the case decided in Indiana or perhaps transferred to New York, where the Plan is chiefly administered and Colgate-Palmolive is headquartered instead of returned here. Even if ultimately returned here, the initial transfer to Indiana alone would likely require Plaintiffs to immediately look for Indiana local counsel and for counsel to get up to speed on local practice, procedure and

precedent. There also may be weeks of delay and expense involved just in getting the

case returned here. Before the parties and the Court get any closer to risking such an

unnecessary round-trip or similar inefficiencies, further proceedings in this case should

be stayed until the District Court in Indiana issues its ruling on the Plan's motion to

dismiss.

Dated:  October 9, 2007                          Respectfully submitted,


                                                 /s/William H. Blessing
                                                 William H. Blessing (#0006848)
                                                 The Blessing Law Firm
                                                 119 East Court Street, Suite 500
                                                 Cincinnati, Ohio 45202
                                                 Telephone:  (513) 621-9191
                                                 Telecopier:  (513) 621-7086

                                                 Eli Gottesdiener (admitted *pro hac vice*)
                                                 Gottesdiener Law Firm, PLLC
                                                 498 7th Street
                                                 Brooklyn, New York 11215
                                                 (718) 788-1500

                                                 *Counsel for Plaintiffs and the proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2007, I caused the foregoing motion to be

electronically filed with the Clerk of the Court using the CM/ECF system, and served via

U.S. First Class mail upon Defendants via their counsel as follows:

> Felix Wade
> Eve Ellinger
> Schottenstein, Zox & Dunn Co., LPA
> 250 West Street
> Columbus, Ohio 43215
>
> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA  19103

> /s/Eli Gottesdiener
> Eli Gottesdiener

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAUL ABELMAN, *et al.*,

       Plaintiffs,

    vs.                    Civil Action 2:07-CV-793
                           Judge Watson
                           Magistrate Judge King

COLGATE-PALMOLIVE CO.,
*et al.*,

       Defendants.

<u>ORDER</u>

Plaintiffs' motion to stay briefing, Doc. No. 17, is **DENIED.**
Plaintiffs' memoranda *contra* the motions to change venue and to dismiss
are due November 2, 2007.

<u>October 29, 2007</u>                    *s/Norah McCann King*
                              Norah M$^c$Cann King
                  United States Magistrate Judge

# EXHIBIT B

William H. Blessing (#0006848)
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| **PAUL ABELMAN,** *et al.,* | : | **Case No. 2:07-cv-793** |
| | : | **Judge Michael H. Watson** |
| **Plaintiffs,** | : | **Magistrate Judge Norah McCann King** |
| | : | |
| **v.** | : | |
| | : | **OPPOSITION TO DEFENDANTS'** |
| | : | **MOTION TO TRANSFER** |
| | : | |
| **COLGATE-PALMOLIVE CO.** *et al,* | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

Plaintiffs do not necessarily oppose transfer of this action to the Southern District of Indiana for consolidation with an earlier filed, related action, *Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan,* No. 4:07-CV-0016SEB-WGH (S.D. Ind.).  Specifically, Plaintiffs do not oppose a transfer in the event either that the Indiana District Court denies the Defendant Plan's long-pending, fully-briefed motion to dismiss *Caufield* on statute of limitations grounds or grants Defendant's belated motion to stay a ruling on its motion to dismiss (which the plaintiff has opposed, *see* Ex. 1 (*Caufield* Doc. 50).

But unless and until either of those things happen, Plaintiffs do oppose transfer and ask that their choice of forum be respected at least temporarily by denial of Defendants' motion to transfer without prejudice, until such time as the Court can determine whether the predicate that forms the basis for Defendants' motion is real, *i.e.,* whether there will indeed be a related case with which this case can or will be

consolidated if it is transferred to the Southern District of Indiana.

To do as Defendants ask, *i.e.,* transfer this case to Indiana now, without awaiting word from the Indiana court on how it intends to rule on either of Defendants' motions, makes no sense.  If the Court were to transfer this action now, there is a reasonable chance that while this case were still en route to Indiana or before even being scheduled for a status hearing that *Caufield* will be dismissed.  In that case, the parties will be sent back here.  There is nothing to be gained by risking such a wasteful roundtrip. Defendants do not dispute that if this case were in fact transferred now, nothing would actually get accomplished in the case pending a ruling on at least one of the Defendant Plan's two pending motions in *Caufield*.

Despite the Defendant Plan's request that the Indiana court not rule on its pending motion to dismiss, there is a real chance that the *Caufield* court will nevertheless do so, for one or more of the reasons set forth in Mr. Caufield's opposition to the Plan's motion to stay.  Ex. 1.  There is thus still every reason at this point to think that the Defendant Plan's motion to dismiss will be granted and *Caufield* dismissed, as the Defendant Plan argues it *should* be.

Under the circumstances, and especially given that Plaintiffs will not oppose transfer if, after the *Caufield* court rules, there is still a case with which this case can indeed be consolidated, the motion to transfer should be denied without prejudice at this time.

Dated:  November 2, 2007                    Respectfully submitted,


                                            /s/William H. Blessing
                                            William H. Blessing (#0006848)
                                            The Blessing Law Firm
                                            119 East Court Street, Suite 500
                                            Cincinnati, Ohio 45202
                                            Telephone:  (513) 621-9191
                                            Telecopier:  (513) 621-7086


                                            Eli Gottesdiener (admitted *pro hac vice*)
                                            Gottesdiener Law Firm, PLLC
                                            498 7th Street
                                            Brooklyn, New York 11215
                                            (718) 788-1500

                                            *Counsel for Plaintiffs and the proposed Class*

### CERTIFICATE OF SERVICE

        I hereby certify that on November 2, 2007, I caused the foregoing opposition to be

electronically filed with the Clerk of the Court using the CM/ECF system, and served via

U.S. First Class mail upon Defendants via their counsel as follows:

        Felix Wade
        Eve Ellinger
        Schottenstein, Zox & Dunn Co., LPA
        250 West Street
        Columbus, Ohio 43215

        Joseph J. Costello
        Jeremy P. Blumenfeld
        Theresa J. Chung
        Morgan, Lewis & Bockius LLP
        1701 Market Street
        Philadelphia, PA  19103


                                    /s/Eli Gottesdiener
                                        Eli Gottesdiener

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| PAUL CAUFIELD, and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 4:07-cv-16-SEB-WGH |
| COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, | ) ) ) ) | |
| Defendant. | ) ) | |

## MAGISTRATE JUDGE'S ORDER ON TELEPHONIC STATUS CONFERENCE

This matter came before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, by telephone, at 9:15 a.m., on October 31, 2007, for a conference under Rule 16, Federal Rules of Civil Procedure.  The parties were represented by counsel.

Thereupon the following **ORDER** is entered:

The parties reported that the court in *Abelman and Nutter v. Colgate-Palmolive Co., et al.,* has denied the Motion to Stay in that case and has required further briefing on the Motion to Transfer.  In light of that development, this conference is **CONTINUED** to **WEDNESDAY, DECEMBER 5, 2007,** at 10:00 a.m., New Albany time (EST), before the Magistrate Judge.  Each counsel wishing to

participate in this conference shall individually place a call to (812) 434-6403 at the time of the conference.[1]

This order has been formulated after a conference at which the respective parties have appeared. Any party shall file any corrections or additions within ten (10) days after receipt of this order.

**SO ORDERED.**

**Dated:** November 6, 2007

WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Jeremy P. Blumenfeld
MORGAN LEWIS & BOCKIUS LLP
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

William K. Carr
LAW OFFICE OF WILLIAM K. CARR
bill@pension-law.com

Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
tchung@morganlewis.com

Joseph J. Costello
MORGAN LEWIS & BOCKIUS LLP
jcostello@morganlewis.com

Philip John Gutwein II
BAKER & DANIELS
philip.gutwein@bakerd.com

Diane Moore Heitman
KOREIN TILLERY LLC
dheitman@koreintillery.com

Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
btjohnson@morganlewis.com

T. J. Smith
tjsmith@smithhelman.com

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com

---

[1]This is the court's bridge line. The first person to call the number will hear a tone and then dead air. As each additional person calls the number, they will hear a tone and then will be able to talk to all other persons who have previously connected to the conference call.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07CV-196-H

ROBERT H. FALLIN, et al.                                    PLAINTIFFS

V.

COMMONWEALTH INDUSTRIES, INC.
CASH BALANCE PLAN, et al.                                   DEFENDANTS

**MEMORANDUM OPINION**

Plaintiffs are a group of former employees of Commonwealth Industries, Inc.

("Commonwealth") who allege that various changes to Commonwealth's employee retirement

benefit plan (the "Plan") adopted both in 1994 and 1998 violate ERISA.  Defendants have

moved to dismiss on the grounds that the applicable statute of limitations bars all claims.  This

requires the Court to determine (1) the applicable state law limitations period, (2) the time when

any claim accrues and the statute begins to run under federal law, and (3) whether the running of

the applicable statute of limitations would be tolled under any circumstances.

I.

Plaintiffs' complaint alleges that the 1994 and 1998 amendments to the Plan, as well as

the Plan's refusal to provide them with the amounts to which they claim entitlement under the

plan as amended, violate § 502 of the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1132.  Plaintiffs received their benefits in a lump sum upon their retirement between

1998 and 2002, but now seek injunctive and "other equitable" relief, arguing that the

amendments improperly reduced the amounts to which they believe they were entitled under the unamended plan, and that even under the amended plan, they were not provided with certain amounts to which they were entitled.  Plaintiffs seek remedies under ERISA's enforcement provisions, 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

## II.

Because ERISA contains no independent statute of limitations for claims of this sort,[1] federal courts must seek out "the most clearly analogous state statute of limitations." *Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001).  Plaintiffs argue that the fifteen (15) year limitation contained in Ky. Rev. Stat. § 413.090 applies; Defendants prefer the five (5) year limitation contained in Ky. Rev. Stat. § 413.120.

Here, Plaintiffs' complaint expressly alleges that Defendants' plan amendments violate various ERISA provisions.  Thus, Plaintiffs' complaint arises more specifically from ERISA's statutory protections rather than from an independent promise or contract.  *Cf. Salyers v. Allied Corp.*, 642 F.Supp. 442, 443–44 (E.D. Ky. 1986) (finding that "the most analogous statute [of limitations]" for an ERISA claim was not necessarily the fifteen (15) year limitation contained in Ky. Rev. Stat. § 413.090, even though "[s]everal circuits" have applied such statutes of limitations to ERISA actions, and even though "a strong argument can be made for characterizing an action brought under [ERISA] as one for breach of a written contract.").  It is true that an ERISA claim can itself involve contractual elements because an ERISA plan contains a set of promises, often unilateral ones.  Nevertheless, ERISA is a statutory edifice.

---

[1]ERISA imposes a statute of limitations (the earliest of six years from the last action constituting part of the breach or three years after the plaintiff acquired actual knowledge of breach; in cases of fraud or concealment, no more than six years after discovery of the breach) on actions alleging a breach of the fiduciary duties required by ERISA, 29 U.S.C. § 1113, but such allegations are not before the Court in this action.

2

Federal law applies to its enforcement.  Indeed, Plaintiffs' case arises almost entirely from that statutorily created enforcement scheme, thus making Ky. Rev. Stat. § 413.120(2), which places a five-year limitation period on "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability," the clearly appropriate limitations period.

The same result obtains as to Plaintiffs' so-called "Level Income Option" claim, which alleges that the Plan's terms promised payment of certain benefits which have not been paid (as opposed to the other claims, which solely allege that the amended terms of the plan violate ERISA).  Just as in Plaintiffs' other claims, this claim expressly invokes ERISA as providing its cause of action, explicitly stating that Plaintiffs seek relief "pursuant to ERISA § 502(a)(3)." This leads the Court to conclude that this claim is also most appropriately subjected to Ky. Rev. Stat. § 413.120(2)'s five-year statute of limitations.[2]

The Sixth Circuit's application of Michigan's, *Santino*, 276 F.3d at 776, and Ohio's, *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194–95 (6th Cir. 1992), fifteen-year contract statutes of limitations to ERISA cases does not change this Court's view.  In neither case did the court face the question presented here: whether a statute covering liabilities created

---

[2] Other provisions of the Plan provide other, though less convincing reasons for a five-year limitation period.  For example, the funds used to pay benefits are held in trust for the beneficiaries.  Though "benefits under the Plan [may be provided] by means of an insurance contract or policy, such as a group annuity contract," the ultimate payor of benefits to beneficiaries is the trustee of the funds, a point Plaintiffs have not disputed.  Thus this claim could also be characterized, as in *Salyers*, as "an action for damages for withholding personal property or...an action for detaining personal property," *Salyers*, 642 F. Supp. at 444, either of which would be subject to a five-year statute of limitations under Ky. Rev. Stat. §§ 413.120(5) and 413.120(6), respectively.  Therefore even if the applicable statute of limitations for Plaintiffs' so-called "Level Income Option" claim is not that of Ky. Rev. Stat. § 413.120(2), it would certainly be that applicable to "[a]n action for the profits of or damages for withholding real or personal property," as articulated in Ky. Rev. Stat. § 413.120(5), or "[a]n action for an injury by a trustee to the rights of a beneficiary of a trust," as articulated in Ky. Rev. Stat. § 413.120(6), and so under any analysis the Court concludes that the five-year limitations period in Ky. Rev. Stat. § 413.120 is the "most clearly analogous state statute of limitations" for all of Plaintiffs' claims.

by statute or one covering contracts is most analogous.[3] Thus, the *Santino* and *Meade* logic is not particularly persuasive on this issue. Moreover, the limitations which ERISA does establish (for breaches of fiduciary duties) are more closely analogous to the five-year limit than is the fifteen-year contractual limit. For all these reasons, the Court believes that its choice of the five-year limit is well grounded.

III.

Determining the applicable statute of limitations is only the beginning of the analysis to determine whether Plaintiffs' claims are time-barred; the Court still must consider when Plaintiffs' claims accrued and whether the running of the statute can be tolled.

A.

Federal law determines the time that any cause of action would accrue, *Wallace v. Kato*, __ U.S. __, 127 S. Ct. 1091, 1095 (2007), and these claims will accrue when Plaintiffs "can file suit and obtain relief." *Cooey v. Strickland*, 479 F.3d 412, 419 (6th Cir. 2007). Here, there appear to be three general possibilities for the dates of accrual: (1) the date on which the most recent amendments to the Plan were adopted, (2) the dates on which Plaintiffs received their Plan benefits, the latest of which was March 18, 2002,[4] or (3) the dates in 2007 when Plaintiffs' administrative appeals were denied by the Plan administrator.

It is important to note that within the Sixth Circuit, an ERISA plaintiff generally must

---

[3]In *Meade*, Ohio had no statute equivalent to Ky. Rev. Stat. § 413.120(2). The Court's choices were whether to apply Ohio's statute of limitations regarding written contracts or to find instead that no analogous statute of limitations existed and to apply Ohio's statute of limitations regarding non-contractually-based injuries. *Meade*, 966 F.2d at 197. In *Santino*, the court similarly did not have before it the possibility of choosing to apply a statute such as Ky. Rev. Stat. § 413.120(2). *Santino*, 276 F.3d at 776.

[4]All Plaintiffs reportedly received their benefits in a lump sum, rather than spread over a number of years.

4

exhaust his administrative remedies prior to bringing a claim in federal court.  *See, e.g.,*

*Ravencraft v. UNUM Life Ins. Co. of America*, 212 F.3d 341 (6th Cir. 2000)*; Fallick v.*

*Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998); *Baxter v. C.A. Muer Corp.*, 941

F.2d 451, 453 (6th Cir. 1991).[5]  This so-called "exhaustion requirement" is more typically an

issue where a defendant benefit plan invokes failure to exhaust as dictating dismissal of a

plaintiff's ERISA suit.  *See, e.g.*, *Fallick*, 162 F.3d at 417–18.  Here, by contrast, it is Plaintiffs

who invoke the exhaustion requirement and argue that no claim could have accrued until

exhaustion had occurred.

  One approach this Court might take is that urged upon it by Plaintiffs, who argue that

because ERISA plan beneficiaries must exhaust their administrative remedies before seeking

federal relief, their causes of action cannot (and in theory might never [6]) accrue until their

administrative appeals are formally denied by the Plan administrator, and that such formal denial

did not occur until March 2007.  That is, the statute of limitations would never begin to run until

after the exhaustion of administrative remedies, no matter how late such exhaustion occurred.

  The Sixth Circuit disagrees with this approach to accrual, however.  It has said that "[t]he

rule governing when a cause of action accrues is the 'clear repudiation' rule.  This rule provides

that when a fiduciary gives a claimant clear and unequivocal repudiation of benefits[,] that alone

---

[5] Though exhaustion is generally a prerequisite to bringing suit in federal court, it is not <u>always</u> required. *See, e.g., Costantino v. TRW*, Inc., 13 F.3d 969, 974 (6th Cir. 1994) (acknowledging exceptions to "[t]raditional exhaustion principles, such as "when resort to the administrative route is futile or the remedy inadequate.") (internal citations omitted).  Yet regardless of when or whether exhaustion is required, *Costantino* certainly does not stand for the proposition that the prospective plaintiff has the entire burden of determining whether and when the exhaustion requirement applies.  Nor does it imply that it is appropriate to use the exhaustion requirement against a plaintiff in the manner urged by Defendant, i.e. by punishing a plaintiff for guessing incorrectly as to whether exhaustion is required.

[6]It is noteworthy that under the terms of the Plan, there appears to be no limitation period within which benefit claims must be brought before the Plan's administrator.  *See* Plaintiffs' Response, Exhibit K, at 61.

is adequate to commence accrual, regardless of whether the repudiation is formal or not."

*Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 302 (6th Cir. 2006) (holding that a

claim first brought in any form outside the relevant limitations period was time-barred).  Most

noteworthy about this language is the distinction it makes between a "clear and unequivocal

repudiation of benefits" and a "formal" repudiation, which indicates that (A) the former is

something different, and likely broader, than the latter, and (B) the former is the relevant point in

time for purposes of accrual.[7]

 Here, there can be no question that Plaintiffs received "clear and unequivocal" notice of

the amount of benefits they would be receiving no later than when they received their lump-sum

distributions.  Any expectation of a sum greater than what was received was "repudiated" at that

time, and could not reasonably have been maintained beyond that point.  Plaintiffs received no

further payments or indication that further payments would be forthcoming during the years

between the lump-sum payments and the filing of this action.  This Court finds it difficult to

imagine how such a set of facts could constitute anything other than a "clear and unequivocal

repudiation" of the "benefits" Plaintiffs now claim.  Therefore, the Court finds that Plaintiffs'

claims accrued at the time when each Plaintiff received his or her lump-sum payment.

B.

---

[7]In arriving at this conclusion, the Sixth Circuit cited to *Bennett v. Federated Mutual Ins. Co.*, 141 F.3d 837, 839 (8th Cir. 1998) ("an ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed when there has been a clear repudiation by the fiduciary which is clear and made known to the beneficiary") (internal quotations and citations omitted), and *Wilkins v. Hartford Life*, 299 F.3d 945, 949 (8th Cir. 2002) ("When an ERISA claim is governed by a state statute of limitations the cause of action accrues, for limitations purposes, when the plan administrator formally denies the claim for benefits, unless there was a repudiation by the fiduciary which is clear and made known to the beneficiary").

The Court must next resolve the seemingly inherent tension between the exhaustion requirement, which, as noted above, is also a well-settled principle within the Sixth Circuit, and the limitations period, which began running at the date of accrual just determined.  To do so involves the issue of tolling, which is determined under state law.

The most reasonable reconciliation of these two equally important legal principles is as follows: where the administrative appeals process was commenced (but not yet exhausted) within the limitations period, the running of the limitations period should be tolled until that process is exhausted.  *Cf. Hoffman v. Central States Se. & Sw. Areas Pension Fund*, 1992 WL 336376 (N.D. Ill. May 8, 1992) ("a policy favoring exhaustion of remedies is undermined unless the statute of limitations is tolled during the period of exhaustion").  Under this approach, any federal action that (A) follows an administrative action brought within the period of limitations, exclusive of any tolling period, <u>and</u> (B) is brought within the aggregate of the period of limitations plus any applicable toll, would be timely.[8]  The Court emphasizes that a claim brought in federal court following an administrative appeal initially brought outside the relevant limitations period would not be able to seek protection from this rule, which should alleviate the Defendants' concerns regarding unending liability as to each potential plaintiff.  *See, e.g., Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) (noting that tolling "is an extraordinary remedy [which] if applied too liberally...threatens to undermine the purpose of

---

[8] Defendant argues that tolling the statute of limitations during the time period within which administrative appeals brought within the limitations period are exhausted (or otherwise extending the limitations period) "would mean that an administrative application for benefits first filed 20 years after Plaintiffs' [sic] admittedly received their lump sum pension distributions would render any subsequent ERISA court challenge as timely....[and] would also mean that [Plaintiffs] are in sole control of the commencement of the running of [the] limitations period, since they alone are in control when, and even if, they will file an administrative claim for benefits."  Defendant's Reply at 10.  The Court rejects this characterization, which ignores the Court's critical point that tolling is only justified where a plaintiff has taken action to commence his administrative appeal within the relevant limitations period.

statutes of limitations of allowing potential defendants predictability and ultimate repose").

Kentucky courts have never directly considered such a question. However, this Court's resolution creates the most equitable conciliation of the exhaustion and accrual concepts. It prevents the exhaustion requirement from eviscerating statutes of limitations; it is consistent with traditional ERISA principles, which seek to provide a federal forum for claims against employee benefit plans. It assures all of this without exposing employers and benefit plans to potentially limitless liability as to each and every beneficiary. Additionally, it parallels the approach taken in *Farrell v. Auto. Club of Mich.*, 870 F.2d 1129 (6th Cir. 1989), where the Sixth Circuit refused to hold that an ERISA claim filed in federal court was time-barred given that the same claim had been timely filed in state court under an apparent good faith (though inaccurate) belief that state court was the proper forum. *See also Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424 (1964) (holding that a Federal Employers' Liability Act action filed outside the relevant limitations period was not time-barred where the same action had been timely filed in state court before being dismissed based on improper venue); *Fox v. Eaton Corp.*, 615 F.2d 716 (6th Cir. 1980) (holding that a Title VII action filed outside the relevant limitations period was not time-barred where the same action had been timely filed in state court before being dismissed for lack of jurisdiction).[9] *Farrell's* logic, which might be characterized as giving credit to those who in

---

[9]Contrary to Defendant's assertions at oral argument, *Wallace* certainly does not foreclose the approach that this Court adopts. While *Wallace* does indeed note that state law is generally looked to for tolling rules, *Wallace*, __ U.S. at __, 127 S. Ct. at 1098, the Supreme Court seemed primarily troubled by the lack of authority, at the state level or elsewhere, for the idea of tolling "in even remotely comparable circumstances" to those before it in *Wallace*, and based on this lack of authority, the Supreme Court was unwilling to craft a tolling provision where doing so would create significant uncertainty. *Id.* at 1099.

Here, in contrast, the Sixth Circuit has evinced a willingness to toll statutes of limitations in analogous circumstances, and the clarity of the rule (which simply asks whether administrative appeals were commenced within the relevant statutory period), should minimize any concern that tolling will create the sort of confusion feared by the Supreme Court in *Wallace*. Therefore, the fact that Kentucky courts have not considered this issue should not prevent this Court from finding that a narrow allowance for tolling is appropriate.

8

good faith attempt to begin the process of challenging their benefit determinations within the relevant limitations period, reinforces this Court's view that tolling the limitations period for the duration of an administrative appeal filed within the relevant limitation period is appropriate. The Court is convinced that Kentucky courts would adopt such a fair and equitable tolling rule.

Defendant argues that it is unfair to allow a claimant to effectively extend the limitations period by filing a "last-minute" administrative appeal. *See, e.g., Farrell*, 870 F.2d at 1134 ("the primary purpose of statutes of limitations is to promote fairness to defendants by preventing prosecution of stale claims and the loss of relevant evidence and by encouraging diligence by plaintiffs") (internal citations omitted). Without tolling, however, plan officials could easily "run out the clock" on claimants by delaying an administrative review. Moreover, an administrative appeal filed late need not delay final resolution for an overly lengthy time, as experience shows that administrative appeals can be handled in a timely manner. An ERISA plan could address this particular concern by setting a reasonable time period within which a claimant must file an administrative appeal.[10]   Finally, allowing some flexibility in the statute of limitations for seemingly good-faith efforts to comply is more likely to further "the broad remedial purpose of ERISA – protection of participants in private pension plans," *id,* than to result in significantly increased liability for Plan administrators and sponsors.

IV.

This analysis leads the Court to conclude that any Plaintiff who failed at least to begin the process of appealing the determination of his or her benefit payment within five years of the date on which his or her claim accrued is barred from bringing this action. By this Court's reckoning,

---

[10]As noted above, this particular plan contains no such internal limitation. *Cf. Morrison*, 439 F.3d at 302 (upholding a limitations period articulated in an ERISA plan where it was reasonable) (internal citations omitted).

all Plaintiffs began their administrative appeals in late January of 2007, which means that with

the exception of the claims of Plaintiff Donald Corley, all claims of Plaintiffs are time-barred,

having begun more than five years from the date of their payments, which were issued between

April 1998 and December 2001.

V.

Plaintiffs also argue that their claim for equitable relief under 29 U.S.C. § 1132(a)(3) is

not barred on the substantive grounds asserted by Defendants.  This Court concludes, however,

that a recent Sixth Circuit decision bars all Plaintiffs' claims under this section.  *See West v. A.K.*

*Steel Corp.*, 484 F.3d 395 (6th Cir. 2007).  These Plaintiffs have already received their benefits

and are not in a position to claim injunctive relief, a remedy available only to others who have

not "'cashed out' of their participation in the Plan."  *Id.* at 403.

The parties have spent only a few pages arguing the merits of Plaintiffs' anti-cutback

claims, and as a result the Court concludes that it is not well enough informed on this issue to

rule at this time.  The pending motions as to that issue are remanded for reconsideration at a later

date.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record

# EXHIBIT 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-20-H

DORIS A. REDMON                                                                    PLAINTIFF

V.

SUD-CHEMIE INC. RETIREMENT
PLAN FOR UNION EMPLOYEES,

RETIREMENT PLAN COMMITTEE
FOR THE SUD-CHEMIE INC. RETIREMENT
PLAN FOR UNION EMPLOYEES,
and
SUD-CHEMIE INC.                                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This is a case brought under ERISA in which Plaintiff, Doris Redmon ("Redmon"),

claims that Defendants ("Sud-Chemie Inc. Retirement Plan") failed to provide her with survivor

benefits and has also failed to provide her with requested plan information.

Plaintiff's primary claim for benefits arose from a decision Plaintiff and her husband

executed a document called "Designated Form of Benefit Payment." The parties argue about the

validity of this document as well as its effect. However, the Court must first address whether

Plaintiff has filed her claim within the applicable statute of limitations.

The facts relevant to the statute of limitations issue are relatively straightforward and

undisputed. Thomas Redmon, Plaintiff's husband, was a long time employee of Sud-Chemie

Inc. Sometime in 1997 Mr. Redmon began speaking with the benefits manager regarding his

retirement options. As a general matter Mr. Redmon had several options. He could select either a qualified joint and survivor annuity ("QJSA") or a straight life annuity. Under the former, Mr. Redmon would receive lower monthly benefits during his lifetime, but Plaintiff would receive survivor benefits for her lifetime. Under the latter, Mr. Redmon would receive larger payments during his lifetime, but Plaintiff would receive no survivor benefits. It is fair to say that Plaintiff and her husband had many discussions, with Defendants about this choice. The more substantive contentions in this lawsuit concern those discussions whether Plaintiff was misled in those discussions, and whether the choice which Plaintiff and her husband ultimately made was valid and informed under ERISA.

On or about January 26, 1998, Plaintiff signed the QJSA, which if valid, would waive her rights to receive annuity benefits if Mr. Redmon predeceased her. Mr. Redmon officially retired from Sud-Chemie on February 1, 1998, and, according to the evidence, may have affixed his signature to the QJSA on February 26, 1998. In any event, Mr. Redmon began to immediately receive his retirement benefit in the form of straight life annuity in the amount of $550 per month. Had Plaintiff and Mr. Redmon not executed the QJSA, Mr. Redmon would have received approximately $490 per month. Mr. Redmon continued to receive this amount for approximately twenty (20) months until October 5, 1999, when he passed away. From that point forward, Plaintiff did not receive any further benefit or annuity payments from Sud-Chemie.

On April 18, 2006, Plaintiff made her first claim to Sud-Chemie for joint and survivor benefits. Sud-Chemie requested additional information and Plaintiff responded with all the information she thought necessary to substantiate her claim. On September 13, 2006, Defendants denied Plaintiff's claim for joint and survivor benefits based on her execution of the QJSA.

2

Shortly thereafter, Plaintiff appealed that decision and Defendants issued a final decision denying

her claim on December 23, 2006. This federal lawsuit followed on January 17, 2007. The

parties vigorously dispute whether Plaintiff's claims are governed by the fifteen-year statute of

limitations contained in KRS 413.090 or a five-year statute of limitations applicable under KRS

413.120. Two questions arise in connection with this debate: what limitations period does apply

to this complaint and when did Plaintiff's claim accrue for purposes of that statute.

During this same time period, the Court has given these questions rather thorough

consideration and is issuing an opinion in *Fallin v. Commonwealth Industries, Inc., et al.*, (a copy

of which is included as Exhibit A to this opinion). In that opinion, the Court concluded that KRS

413.120 provided the applicable state statute of limitations for all claims arising under ERISA.

The Court also considered the more difficult questions of accrual and tolling which often

accompany limitations dispute. The Court concluded that a claim accrues whenever the benefits

provider has "clearly and unequivocally repudiated" the benefits sought. This can occur by either

a formal denial or by more an informal method. Here, nothing could be more clear and

unequivocal than the failure to continue paying expected benefits. That Plaintiff never thought to

make a claim for over five years does not lessen the finality of that fact; indeed, the finality only

gained certitude with every passing day.

Immediately after February 1, 1998, Plaintiff was on notice that her benefits were not

being paid. At the very least, she was alerted that Defendants had mistakenly neglected to

continue her benefits. She could have easily made inquiries as to the reason for the absence of

payments. More probably, she was alerted that Defendants differed in their view of the

interpretation and effect of the QJSA, which she does not dispute signing. At any time during the

3

next five years, Plaintiff could have filed an administrative claim, which in the Court's view, would have tolled the running of the statute. *Id.* Instead, Plaintiff waited over five and half years to make her first claim. By that time the statute had already run. Consequently, the applicable statute of limitations bars Plaintiff's subsequent federal claim.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss the first two counts of Plaintiff's ERISA complaint is SUSTAINED and Counts 1 and 2 of Plaintiff's complaint are DISMISSED WITH PREJUDICE.

This is not a final order and the Court will consider the remainder of Plaintiff's complaint in the near future.

This __9th__ day of November, 2007.


JOHN G. HEYBURN II
CHIEF JUDGE, U.S. DISTRICT COURT

cc:    Counsel of Record

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07CV-196-H

ROBERT H. FALLIN, et al.                                    PLAINTIFFS


V.


COMMONWEALTH INDUSTRIES, INC.
CASH BALANCE PLAN, et al.                                   DEFENDANTS

### MEMORANDUM OPINION

Plaintiffs are a group of former employees of Commonwealth Industries, Inc.

("Commonwealth") who allege that various changes to Commonwealth's employee retirement

benefit plan (the "Plan") adopted both in 1994 and 1998 violate ERISA.  Defendants have

moved to dismiss on the grounds that the applicable statute of limitations bars all claims.  This

requires the Court to determine (1) the applicable state law limitations period, (2) the time when

any claim accrues and the statute begins to run under federal law, and (3) whether the running of

the applicable statute of limitations would be tolled under any circumstances.

I.

Plaintiffs' complaint alleges that the 1994 and 1998 amendments to the Plan, as well as

the Plan's refusal to provide them with the amounts to which they claim entitlement under the

plan as amended, violate § 502 of the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1132.  Plaintiffs received their benefits in a lump sum upon their retirement between

1998 and 2002, but now seek injunctive and "other equitable" relief, arguing that the

### EXHIBIT A

amendments improperly reduced the amounts to which they believe they were entitled under the unamended plan, and that even under the amended plan, they were not provided with certain amounts to which they were entitled. Plaintiffs seek remedies under ERISA's enforcement provisions, 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

II.

Because ERISA contains no independent statute of limitations for claims of this sort,[1] federal courts must seek out "the most clearly analogous state statute of limitations." *Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001). Plaintiffs argue that the fifteen (15) year limitation contained in Ky. Rev. Stat. § 413.090 applies; Defendants prefer the five (5) year limitation contained in Ky. Rev. Stat. § 413.120.

Here, Plaintiffs' complaint expressly alleges that Defendants' plan amendments violate various ERISA provisions. Thus, Plaintiffs' complaint arises more specifically from ERISA's statutory protections rather than from an independent promise or contract. *Cf. Salyers v. Allied Corp.*, 642 F.Supp. 442, 443–44 (E.D. Ky. 1986) (finding that "the most analogous statute [of limitations]" for an ERISA claim was not necessarily the fifteen (15) year limitation contained in Ky. Rev. Stat. § 413.090, even though "[s]everal circuits" have applied such statutes of limitations to ERISA actions, and even though "a strong argument can be made for characterizing an action brought under [ERISA] as one for breach of a written contract."). It is true that an ERISA claim can itself involve contractual elements because an ERISA plan contains a set of promises, often unilateral ones. Nevertheless, ERISA is a statutory edifice.

---

[1] ERISA imposes a statute of limitations (the earliest of six years from the last action constituting part of the breach or three years after the plaintiff acquired actual knowledge of breach; in cases of fraud or concealment, no more than six years after discovery of the breach) on actions alleging a breach of the fiduciary duties required by ERISA, 29 U.S.C. § 1113, but such allegations are not before the Court in this action.

2

Federal law applies to its enforcement. Indeed, Plaintiffs' case arises almost entirely from that statutorily created enforcement scheme, thus making Ky. Rev. Stat. § 413.120(2), which places a five-year limitation period on "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability," the clearly appropriate limitations period.

The same result obtains as to Plaintiffs' so-called "Level Income Option" claim, which alleges that the Plan's terms promised payment of certain benefits which have not been paid (as opposed to the other claims, which solely allege that the amended terms of the plan violate ERISA). Just as in Plaintiffs' other claims, this claim expressly invokes ERISA as providing its cause of action, explicitly stating that Plaintiffs seek relief "pursuant to ERISA § 502(a)(3)." This leads the Court to conclude that this claim is also most appropriately subjected to Ky. Rev. Stat. § 413.120(2)'s five-year statute of limitations.[2]

The Sixth Circuit's application of Michigan's, *Santino*, 276 F.3d at 776, and Ohio's, *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194–95 (6th Cir. 1992), fifteen-year contract statutes of limitations to ERISA cases does not change this Court's view. In neither case did the court face the question presented here: whether a statute covering liabilities created

---

[2] Other provisions of the Plan provide other, though less convincing reasons for a five-year limitation period. For example, the funds used to pay benefits are held in trust for the beneficiaries. Though "benefits under the Plan [may be provided] by means of an insurance contract or policy, such as a group annuity contract," the ultimate payor of benefits to beneficiaries is the trustee of the funds, a point Plaintiffs have not disputed. Thus this claim could also be characterized, as in *Salyers*, as "an action for damages for withholding personal property or...an action for detaining personal property," *Salyers*, 642 F. Supp. at 444, either of which would be subject to a five-year statute of limitations under Ky. Rev. Stat. §§ 413.120(5) and 413.120(6), respectively. Therefore even if the applicable statute of limitations for Plaintiffs' so-called "Level Income Option" claim is not that of Ky. Rev. Stat. § 413.120(2), it would certainly be that applicable to "[a]n action for the profits of or damages for withholding real or personal property," as articulated in Ky. Rev. Stat. § 413.120(5), or "[a]n action for an injury by a trustee to the rights of a beneficiary of a trust," as articulated in Ky. Rev. Stat. § 413.120(6), and so under any analysis the Court concludes that the five-year limitations period in Ky. Rev. Stat. § 413.120 is the "most clearly analogous state statute of limitations" for all of Plaintiffs' claims.

3

by statute or one covering contracts is most analogous.[3] Thus, the *Santino* and *Meade* logic is not particularly persuasive on this issue. Moreover, the limitations which ERISA does establish (for breaches of fiduciary duties) are more closely analogous to the five-year limit than is the fifteen-year contractual limit. For all these reasons, the Court believes that its choice of the five-year limit is well grounded.

III.

Determining the applicable statute of limitations is only the beginning of the analysis to determine whether Plaintiffs' claims are time-barred; the Court still must consider when Plaintiffs' claims accrued and whether the running of the statute can be tolled.

A.

Federal law determines the time that any cause of action would accrue, *Wallace v. Kato*, __ U.S. __, 127 S. Ct. 1091, 1095 (2007), and these claims will accrue when Plaintiffs "can file suit and obtain relief." *Cooey v. Strickland*, 479 F.3d 412, 419 (6th Cir. 2007). Here, there appear to be three general possibilities for the dates of accrual: (1) the date on which the most recent amendments to the Plan were adopted, (2) the dates on which Plaintiffs received their Plan benefits, the latest of which was March 18, 2002,[4] or (3) the dates in 2007 when Plaintiffs' administrative appeals were denied by the Plan administrator.

It is important to note that within the Sixth Circuit, an ERISA plaintiff generally must

---

[3]In *Meade*, Ohio had no statute equivalent to Ky. Rev. Stat. § 413.120(2). The Court's choices were whether to apply Ohio's statute of limitations regarding written contracts or to find instead that no analogous statute of limitations existed and to apply Ohio's statute of limitations regarding non-contractually-based injuries. *Meade*, 966 F.2d at 197. In *Santino*, the court similarly did not have before it the possibility of choosing to apply a statute such as Ky. Rev. Stat. § 413.120(2). *Santino*, 276 F.3d at 776.

[4]All Plaintiffs reportedly received their benefits in a lump sum, rather than spread over a number of years.

4

exhaust his administrative remedies prior to bringing a claim in federal court. *See, e.g., Ravencraft v. UNUM Life Ins. Co. of America*, 212 F.3d 341 (6th Cir. 2000); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir. 1991).[5]  This so-called "exhaustion requirement" is more typically an issue where a defendant benefit plan invokes failure to exhaust as dictating dismissal of a plaintiff's ERISA suit. *See, e.g., Fallick*, 162 F.3d at 417–18.  Here, by contrast, it is Plaintiffs who invoke the exhaustion requirement and argue that no claim could have accrued until exhaustion had occurred.

One approach this Court might take is that urged upon it by Plaintiffs, who argue that because ERISA plan beneficiaries must exhaust their administrative remedies before seeking federal relief, their causes of action cannot (and in theory might never [6]) accrue until their administrative appeals are formally denied by the Plan administrator, and that such formal denial did not occur until March 2007.  That is, the statute of limitations would never begin to run until after the exhaustion of administrative remedies, no matter how late such exhaustion occurred.

The Sixth Circuit disagrees with this approach to accrual, however.  It has said that "[t]he rule governing when a cause of action accrues is the 'clear repudiation' rule.  This rule provides that when a fiduciary gives a claimant clear and unequivocal repudiation of benefits[,] that alone

---

[5] Though exhaustion is generally a prerequisite to bringing suit in federal court, it is not <u>always</u> required. *See, e.g., Costantino v. TRW*, Inc., 13 F.3d 969, 974 (6th Cir. 1994) (acknowledging exceptions to "[t]raditional exhaustion principles, such as "when resort to the administrative route is futile or the remedy inadequate.") (internal citations omitted).  Yet regardless of when or whether exhaustion is required, *Costantino* certainly does not stand for the proposition that the prospective plaintiff has the entire burden of determining whether and when the exhaustion requirement applies.  Nor does it imply that it is appropriate to use the exhaustion requirement against a plaintiff in the manner urged by Defendant, i.e. by punishing a plaintiff for guessing incorrectly as to whether exhaustion is required.

[6] It is noteworthy that under the terms of the Plan, there appears to be no limitation period within which benefit claims must be brought before the Plan's administrator. *See* Plaintiffs' Response, Exhibit K, at 61.

is adequate to commence accrual, regardless of whether the repudiation is formal or not."

*Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 302 (6th Cir. 2006) (holding that a

claim first brought in any form outside the relevant limitations period was time-barred). Most

noteworthy about this language is the distinction it makes between a "clear and unequivocal

repudiation of benefits" and a "formal" repudiation, which indicates that (A) the former is

something different, and likely broader, than the latter, and (B) the former is the relevant point in

time for purposes of accrual.[7]

Here, there can be no question that Plaintiffs received "clear and unequivocal" notice of

the amount of benefits they would be receiving no later than when they received their lump-sum

distributions. Any expectation of a sum greater than what was received was "repudiated" at that

time, and could not reasonably have been maintained beyond that point. Plaintiffs received no

further payments or indication that further payments would be forthcoming during the years

between the lump-sum payments and the filing of this action. This Court finds it difficult to

imagine how such a set of facts could constitute anything other than a "clear and unequivocal

repudiation" of the "benefits" Plaintiffs now claim. Therefore, the Court finds that Plaintiffs'

claims accrued at the time when each Plaintiff received his or her lump-sum payment.

B.

---

[7]In arriving at this conclusion, the Sixth Circuit cited to *Bennett v. Federated Mutual Ins. Co.*, 141 F.3d 837, 839 (8th Cir. 1998) ("an ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed when there has been a clear repudiation by the fiduciary which is clear and made known to the beneficiary") (internal quotations and citations omitted), and *Wilkins v. Hartford Life*, 299 F.3d 945, 949 (8th Cir. 2002) ("When an ERISA claim is governed by a state statute of limitations the cause of action accrues, for limitations purposes, when the plan administrator formally denies the claim for benefits, unless there was a repudiation by the fiduciary which is clear and made known to the beneficiary").

The Court must next resolve the seemingly inherent tension between the exhaustion requirement, which, as noted above, is also a well-settled principle within the Sixth Circuit, and the limitations period, which began running at the date of accrual just determined.  To do so involves the issue of tolling, which is determined under state law.

The most reasonable reconciliation of these two equally important legal principles is as follows: where the administrative appeals process was commenced (but not yet exhausted) within the limitations period, the running of the limitations period should be tolled until that process is exhausted.  *Cf. Hoffman v. Central States Se. & Sw. Areas Pension Fund*, 1992 WL 336376 (N.D. Ill. May 8, 1992) ("a policy favoring exhaustion of remedies is undermined unless the statute of limitations is tolled during the period of exhaustion").  Under this approach, any federal action that (A) follows an administrative action brought within the period of limitations, exclusive of any tolling period, <u>and</u> (B) is brought within the aggregate of the period of limitations plus any applicable toll, would be timely.[8]  The Court emphasizes that a claim brought in federal court following an administrative appeal initially brought outside the relevant limitations period would not be able to seek protection from this rule, which should alleviate the Defendants' concerns regarding unending liability as to each potential plaintiff.  *See, e.g., Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) (noting that tolling "is an extraordinary remedy [which] if applied too liberally...threatens to undermine the purpose of

---

[8] Defendant argues that tolling the statute of limitations during the time period within which administrative appeals brought within the limitations period are exhausted (or otherwise extending the limitations period) "would mean that an administrative application for benefits first filed 20 years after Plaintiffs' [sic] admittedly received their lump sum pension distributions would render any subsequent ERISA court challenge as timely....[and] would also mean that [Plaintiffs] are in sole control of the commencement of the running of [the] limitations period, since they alone are in control when, and even if, they will file an administrative claim for benefits." Defendant's Reply at 10. The Court rejects this characterization, which ignores the Court's critical point that tolling is only justified where a plaintiff has taken action to commence his administrative appeal within the relevant limitations period.

statutes of limitations of allowing potential defendants predictability and ultimate repose").

Kentucky courts have never directly considered such a question. However, this Court's resolution creates the most equitable conciliation of the exhaustion and accrual concepts. It prevents the exhaustion requirement from eviscerating statutes of limitations; it is consistent with traditional ERISA principles, which seek to provide a federal forum for claims against employee benefit plans. It assures all of this without exposing employers and benefit plans to potentially limitless liability as to each and every beneficiary. Additionally, it parallels the approach taken in *Farrell v. Auto. Club of Mich.*, 870 F.2d 1129 (6th Cir. 1989), where the Sixth Circuit refused to hold that an ERISA claim filed in federal court was time-barred given that the same claim had been timely filed in state court under an apparent good faith (though inaccurate) belief that state court was the proper forum. *See also Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424 (1964) (holding that a Federal Employers' Liability Act action filed outside the relevant limitations period was not time-barred where the same action had been timely filed in state court before being dismissed based on improper venue); *Fox v. Eaton Corp.*, 615 F.2d 716 (6th Cir. 1980) (holding that a Title VII action filed outside the relevant limitations period was not time-barred where the same action had been timely filed in state court before being dismissed for lack of jurisdiction).[9] *Farrell's* logic, which might be characterized as giving credit to those who in

_____

[9]Contrary to Defendant's assertions at oral argument, *Wallace* certainly does not foreclose the approach that this Court adopts. While *Wallace* does indeed note that state law is generally looked to for tolling rules, *Wallace*, __ U.S. at __, 127 S. Ct. at 1098, the Supreme Court seemed primarily troubled by the lack of authority, at the state level or elsewhere, for the idea of tolling "in even remotely comparable circumstances" to those before it in *Wallace*, and based on this lack of authority, the Supreme Court was unwilling to craft a tolling provision where doing so would create significant uncertainty. *Id.* at 1099.

Here, in contrast, the Sixth Circuit has evinced a willingness to toll statutes of limitations in analogous circumstances, and the clarity of the rule (which simply asks whether administrative appeals were commenced within the relevant statutory period), should minimize any concern that tolling will create the sort of confusion feared by the Supreme Court in *Wallace*. Therefore, the fact that Kentucky courts have not considered this issue should not prevent this Court from finding that a narrow allowance for tolling is appropriate.

8

good faith attempt to begin the process of challenging their benefit determinations within the relevant limitations period, reinforces this Court's view that tolling the limitations period for the duration of an administrative appeal filed within the relevant limitation period is appropriate. The Court is convinced that Kentucky courts would adopt such a fair and equitable tolling rule.

Defendant argues that it is unfair to allow a claimant to effectively extend the limitations period by filing a "last-minute" administrative appeal. *See, e.g., Farrell*, 870 F.2d at 1134 ("the primary purpose of statutes of limitations is to promote fairness to defendants by preventing prosecution of stale claims and the loss of relevant evidence and by encouraging diligence by plaintiffs") (internal citations omitted). Without tolling, however, plan officials could easily "run out the clock" on claimants by delaying an administrative review. Moreover, an administrative appeal filed late need not delay final resolution for an overly lengthy time, as experience shows that administrative appeals can be handled in a timely manner. An ERISA plan could address this particular concern by setting a reasonable time period within which a claimant must file an administrative appeal.[10]    Finally, allowing some flexibility in the statute of limitations for seemingly good-faith efforts to comply is more likely to further "the broad remedial purpose of ERISA – protection of participants in private pension plans," *id*, than to result in significantly increased liability for Plan administrators and sponsors.

IV.

This analysis leads the Court to conclude that any Plaintiff who failed at least to begin the process of appealing the determination of his or her benefit payment within five years of the date on which his or her claim accrued is barred from bringing this action. By this Court's reckoning,

---

[10]As noted above, this particular plan contains no such internal limitation. *Cf. Morrison*, 439 F.3d at 302 (upholding a limitations period articulated in an ERISA plan where it was reasonable) (internal citations omitted).

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07CV-196-H

ROBERT H. FALLIN, et al.                                           PLAINTIFFS

V.

COMMONWEALTH INDUSTRIES, INC.
CASH BALANCE PLAN, et al.                               DEFENDANTS

## ORDER

Defendants have moved to dismiss all Plaintiffs' claims in their entirety based on the

statute of limitations, and to dismiss all Plaintiffs' claims (A) arising under 29 U.S.C. §

1132(a)(3) and/or (B) alleging reduction of their accrued benefits by amendments to the Plan, for

failure to state a claim upon which relief may be granted.

Having considered all arguments in the accompanying memorandum opinion and being

otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motions for summary judgment are

SUSTAINED IN PART:

(1)    All claims of Plaintiffs Robert H. Fallin, Charles Johnson, Claudette Logsdon,

        Joseph G. Russelburg, Clarence E. Simon, Jr., William M. Gilmore, Eric Clark,

        and Steve J. Smith are DISMISSED WITH PREJUDICE.

(2)    The claims of Plaintiff Donald W. Corley arising under 29 U.S.C. § 1132(a)(3)

        are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment is

DENIED IN PART and Plaintiff Donald W. Corley's claims under 29 U.S.C. § 1132(a)(1)(B)

REMAIN.

All other motions are REMANDED at this time.  This is NOT a final order.

November 9, 2007

John G. Heyburn II
Chief Judge, U.S. District Court

cc:     Counsel of Record

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

PAUL CAUFIELD,
                                        Plaintiff,

                vs.

COLGATE-PALMOLIVE COMPANY
EMPLOYEES' RETIREMENT INCOME
PLAN,
                                        Defendant.

Cause No.  4:07-cv-00016-SEB-WGH

**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan"

or "Defendant"), by and through its counsel, hereby respectfully gives notice to the Court of the

recent decision in Fallin v. Commonwealth Industries, Inc. Cash Balance Plan, Case 3:07-cv-

00196-JGH, Slip. Op. (W.D. Ky. Nov. 9, 2007) (attached hereto as Exhibit 1).  In Fallin, former

employees challenged the amount of their lump sum pension benefits from a cash balance plan.

Slip. Op. at 1-2.  In ruling that the plaintiffs' claims were time barred, Chief Judge John G.

Heyburn II held that the plaintiffs' claims accrued when they received their lump sum

distributions:

> Here, there can be no question that Plaintiffs received "clear and unequivocal"
> notice of the amount of benefits they would be receiving no later than when they
> received their lump-sum distributions.  Any expectation of a sum greater than
> what was received was "repudiated" at that time, and could not reasonably have
> been maintained beyond that point.  Plaintiffs received no further payments or
> identification that further payments would be forthcoming during the years
> between the lump-sum payments and the filing of this action.  This Court finds it
> difficult to imagine how such a set of facts could constitute anything other than a
> "clear and unequivocal repudiation" of the "benefits" Plaintiffs now claim.
> Therefore, the Court finds that Plaintiffs' claims accrued at the time when each
> Plaintiff received his or her lump-sum payment.

Slip. Op. at 6. In so holding, the Court squarely rejected Caufield's argument in this case that "the statute of limitations would never begin to run until after the exhaustion of administrative remedies, no matter how late such exhaustion occurred." Slip. Op. at 5; see also Redmon v. Sud-Chemie Inc. Retirement Plan for Union Employees, 3:07-cv-0020-JGH, Slip. Op. at 3 (W.D. Ky. Nov. 9, 2007) (attached hereto as Exhibit 2) ("Here, nothing could be more clear and unequivocal than the failure to continue paying expected benefits. That Plaintiff never thought to make a claim for over five years does not lessen the finality of that fact; indeed, the finality only gained certitude with every passing day.").

Defendant respectfully submits that Fallin and Redmon both confirm that Plaintiff's claims in this case accrued when he received his lump sum in 1999 and consequently are time-barred.

Respectfully submitted,

Dated: November 16, 2007

MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ Theresa J. Chung
Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung*
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5295/5258/5584
Fax: (215) 963-5001
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com
*Admitted Pro Hac Vice

Baker & Daniels LLP
Ellen E. Boshkoff (#16365-49)
Philip J. Gutwein II (#22986-53)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300

Facsimile:  (317) 237-1000
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Attorneys for Defendant
Colgate-Palmolive Company Employees'
Retirement Income Plan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2007, a copy of the foregoing Defendant's Notice of Supplemental Authority In Support Of Defendant's Motion to Dismiss Plaintiff's Complaint, and papers in support thereof, was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street, Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

I hereby certify that on November 16, 2007, a copy of the foregoing Defendant's Notice of Supplemental Authority In Support Of Defendant's Motion to Dismiss Plaintiff's Complaint, and papers in support thereof, was mailed, by first class U.S. mail, postage prepaid, and properly addressed to the following:

Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

/s/Theresa J. Chung
Theresa J. Chung*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5584
Fax:  (215) 963-5001
tchung@morganlewis.com

*Admitted Pro Hac Vice

-4-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No.  4:07-cv-00016-SEB-WGH |
| vs. | ) | |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>WITHDRAWAL OF OPPOSITION TO DEFENDANT'S MOTION FOR STAY</u>**

COMES NOW Plaintiff and hereby withdraws his prior opposition (Doc. No. 50) to

Defendant's Motion for Stay (Doc. No. 48) filed in this case on October 11, 2007.  Plaintiff

consents to a stay of this matter pending resolution of the Abelman case referenced in

Defendant's Motion.

Respectfully submitted,

/s/ Douglas R. Sprong_____
Douglas R. Sprong
Diane Moore Heitman
Korein Tillery, LLC
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile
dsprong@koreintillery.com
dheitman@koreintillery.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

A copy of the foregoing was e-mailed on November 19, 2007 per the Court's electronic filing system, to:

Theresa J. Chung
Joseph J. Costello
Jeremy P. Blumenfeld
Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5295/5258/5584 - Telephone
(215) 963-5001 - Facsimile
tchung@morganlewis.com
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
btjohnson@morganlewis.com

2

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

/s/ Douglas R. Sprong

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| PAUL CAUFIELD,<br><br>Plaintiff,<br><br>vs.<br><br>COLGATE-PALMOLIVE COMPANY<br>EMPLOYEES' RETIREMENT INCOME<br>PLAN,<br><br>Defendant. | Cause No.  4:07-cv-00016-SEB-WGH |

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR STAY OF PROCEEDINGS**
**PENDING DISPOSITION OF ITS MOTION TO DISMISS**

This Court, having considered Defendant Colgate-Palmolive Company

Employees' Retirement Income Plan's Motion For Stay Of Consideration Of Its Motion To

Dismiss Pending Disposition Of The Motion To Transfer, and being duly advised of its premises,

now finds that the motion should be and is hereby **GRANTED**.

IT IS HEREBY ORDERED that consideration of the Defendant's Motion To

Dismiss Plaintiff's Complaint will be stayed pending a ruling on the Motion to Transfer in Paul

Abelman and Valerie R. Nutter v. Colgate-Palmolive Company and Colgate-Palmolive Company

Employees' Retirement Income Plan, Case No. 2:07-cv-793, in the United States District Court

for the Southern District of Ohio.

Dated: 11/21/2007

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Ellen E. Boshkoff
Philip J. Gutwein II

BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN  46204
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
tchung@morganlewis.com

Douglas R. Sprong
Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street
Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street
Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY  DIVISION

| | | |
|---|---|---|
| PAUL CAUFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 4:07-cv-16- SEB-WGH |
| vs. | ) | |
| | ) | |
| COLGAGE-PALMOLIVE COMPANY | ) | |
| EMPLOYEES' RETIREMENT INCOME | ) | |
| PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER TO SHOW CAUSE WHY STAY SHOULD NOT BE LIFTED

We stayed consideration of Defendant's Motion to Dismiss (Docket No. 24) pending a decision by the United States District Court for the Southern District of Ohio whether to transfer a case on its docket to this District.  The Ohio court has ruled and the Ohio case has, in fact, been transferred to this District.  (See Paul Abelman, et. al v. Colgate-Palmolive Company, et. al, Cause No. 1:07-cv-1554-DFH-JMS).  Accordingly, Defendant is ordered to show cause why the stay should not now be lifted.

Defendant shall have through and including December 14, 2007, to comply with this order. Plaintiff's response, if any, shall be filed on or before December 21, 2007.

IT IS SO ORDERED.

Date:  ___12/05/2007___

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

1

Copies to:

Jeremy P. Blumenfeld
MORGAN LEWIS & BOCKIUS LLP
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

William K. Carr
LAW OFFICE OF WILLIAM K. CARR
bill@pension-law.com

Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
tchung@morganlewis.com

Joseph J. Costello
MORGAN LEWIS & BOCKIUS LLP
jcostello@morganlewis.com

Philip John Gutwein II
BAKER & DANIELS
philip.gutwein@bakerd.com

Diane Moore Heitman
KOREIN TILLERY LLC
dheitman@koreintillery.com

Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
btjohnson@morganlewis.com

T. J. Smith
tjsmith@smithhelman.com

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| PAUL CAUFIELD,<br><br>                Plaintiff,<br><br>      vs.<br><br>COLGATE-PALMOLIVE COMPANY<br>EMPLOYEES' RETIREMENT INCOME<br>PLAN,<br><br>                Defendant. | Cause No.  4:07-cv-00016-SEB-WGH |

**DEFENDANT'S RESPONSE TO ORDER TO**
**SHOW CAUSE WHY STAY SHOULD NOT BE LIFTED**

Defendant Colgate-Palmolive Company Employees' Retirement Income Plan

("Plan") respectfully submits this response to the Court's Order to Show Cause Why Stay Should

Not Be Lifted.  Specifically, on November 21, 2007, this Court stayed consideration of the Plan's

Motion to Dismiss pending a decision by the United States District Court for the Southern

District of Ohio on whether to transfer the matter of Paul Abelman, et al. v. Colgate-Palmolive

Company, et al. to this District.  (See Docket No. 55).  On November 28, 2007, the Abelman

matter was transferred to this District.  The case was docketed on November 30, 2007, and has

been assigned to Judge David Frank Hamilton.  (See Abelman, Cause No. 1:07-cv-DFH-JMS,

Docket Nos. 1 and 2).  Accordingly, the stay imposed on November 21, 2007 should be lifted,

and this Court may proceed to dispose of the Plan's Motion to Dismiss, which was filed on

April 16, 2007 and is ripe for disposition.  (See Caufield Docket Nos. 24, 25, 34, and 42).  On

this same date, the defendants in Abelman are filing a Notice of Related Action, which includes a

request to transfer Abelman to Your Honor pursuant to S.D. Ind. L.R. 40.1(f).

Respectfully submitted,

Dated:  December 6, 2007

BAKER & DANIELS LLP


By: /s/ Philip J. Gutwein II
     Ellen E. Boshkoff (#16365-49)
     Philip J. Gutwein II (#22986-53)
     300 N. Meridian Street
     Suite 2700
     Indianapolis, IN  46204
     Telephone:  (317) 237-0300
     Facsimile:  (317) 237-1000
     Email:  ellen.boshkoff@bakerd.com
     Email:  philip.gutwein@bakerd.com

     Joseph J. Costello*
     Jeremy P. Blumenfeld*
     Theresa J. Chung*
     MORGAN, LEWIS & BOCKIUS LLP
     1701 Market Street
     Philadelphia, PA 19103
     Telephone:  (215) 963-5295/5258/5584
     Fax:  (215) 963-5001
     Email: jcostello@morganlewis.com
     Email:  jblumenfeld@morganlewis.com
     Email:  tchung@morganlewis.com

     Attorneys for Defendant
     Colgate-Palmolive Company Employees'
     Retirement Income Plan

     *Admitted Pro Hac Vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2007, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101
Email:  dsprong@koreintillery.com

T. J. Smith
LAW OFFICES OF T. J. SMITH
600 W. Main Street, Suite 200
Louisville, KY 40202
Email:  tjsmith@smithhelman.com

I hereby certify that on December 6, 2007, a copy of the foregoing was mailed, by first class U.S. mail, postage prepaid, and properly addressed to the following:

Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101

William K. Carr
LAW OFFICES OF WILLIAM K. CARR
2222 E. Tennessee Avenue
Denver, CO 80209

/s/ Philip J. Gutwein II

# COLGATE-PALMOLIVE COMPANY

# EMPLOYEES' RETIREMENT INCOME PLAN

**(Totally Restated through December 31, 1994)**

EXHIBIT

# ARTICLE 4

## Benefits Upon Retirement or Termination

4.1    Retirement

The Accrued Benefit of a Member who is an Employee on the date he attains Normal Retirement Age shall be fully vested and nonforfeitable as of such date.  Subject to the provisions of Section 4.5 (Supplemental Severance Program), Appendix A (Special Definitions Applicable for Purposes of Appendices B Through D), Appendix C (Provisions With Respect to Grandfathered Employees) and Appendix D (Special Transition Provisions for Older Employees as of June 30, 1989), a Member who either ceases to be an Employee (for any reason other than death) on or after attainment of Normal Retirement Age or who has attained age 55 shall be entitled to receive a benefit under this Section 4.1 upon application therefor.  Such benefit shall be payable at the time and in the form and in the amount determined under Article 6 (Payment of Benefits).

4.2    Termination

(a)    Subject to the provisions of Section 4.5 (Supplemental Severance Program), if a Member ceases to be an Employee (for any reason other than death) before attainment of age 55 or before completion of three years of Vesting Service, such Member shall not be entitled to any benefit under the Plan except a refund of Employee Contributions and Interest on Contributions.

(b)    Subject to the provisions of Section 4.5 (Supplemental Severance Program), Appendix A (Special Definitions Applicable for Purposes of Appendices B Through D), Appendix C (Provisions With Respect to Grandfathered Employees) and Appendix D (Special Transition Provisions for Older Employees as of June 30, 1989), if a Member ceases to be an Employee (for any reason other than death) before attainment of age 55 but after completion of three or more years of Vesting Service, such Member shall be entitled to a benefit under this Section 4.2(b) equal to the vested percentage of his Accrued Benefit, determined in accordance with the following table:

| Full Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 3 years | 0% |
| 3 years but less than 4 | 50% |
| 4 years but less than 5 | 75% |
| 5 years or more | 100% |

22

8.6    Claims Procedure

For purposes of the Plan, a claim for benefit is a written application for benefit filed with the Employee Relations Committee. In the event that any Member or other payee claims to be entitled to a benefit under the Plan, and the Employee Relations Committee determines that such claim should be denied in whole or in part, the Employee Relations Committee shall, in writing, notify such claimant within 90 days of receipt of such claim that his claim has been denied, setting forth the specific reasons for such denial. Such notification shall be written in a manner reasonably expected to be understood by such Member or other payee and shall set forth the pertinent sections of the Plan relied on, and where appropriate, an explanation of how the claimant can obtain review of such denial. Within 60 days after the mailing or delivery by the Employee Relations Committee of such notice, such claimant may request, by mailing or delivery of written notice to the Employee Relations Committee, a review and/or hearing by the Employee Relations Committee of the decision denying the claim. If the claimant fails to request such a review and/or hearing within such 60 day period, it shall be conclusively determined for all purposes of this Plan that the denial of such claim by the Employee Relations Committee is correct. If such claimant requests a hearing within such 60 day period, the Employee Relations Committee shall designate a time (which time shall be not less than 7 nor more than 60 days from the date of such claimant's notice to the Employee Relations Committee) and a place for such hearing, and shall promptly notify such claimant of such time and place. If only a review is requested, the Member or other payee shall have 30 days after filing a request for review to submit additional written material in support of the claim. After such review and/or hearing, the Employee Relations Committee shall determine whether such denial of the claim was correct and shall notify such claimant in writing of its determination. If such determination is favorable to the claimant, it shall be binding and conclusive. If such determination is adverse to such claimant, it shall be binding and conclusive unless the claimant notifies the Employee Relations Committee within 90 days after the mailing or delivery to him by the Employee Relations Committee of its determination that he intends to institute legal proceedings challenging the determination of the Employee Relations Committee, and actually institutes such legal proceeding within 180 days after such mailing or delivery.

8.7    Records and Reports

The Employee Relations Committee and the Pension Fund Committee shall exercise such authority and responsibility as it deems appropriate in order to comply with ERISA and governmental regulations issued thereunder relating to records of Members' service, accrued benefits and the percentage of such benefits which are nonforfeitable under the Plan; notifications to Members; annual registration with the IRS; annual reports to the Internal Revenue Service and reports to the Pension Benefit Guaranty Corporation.

8.8    Authorization of Benefit Payments

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GARY WILLIAMS, Individually and on )
behalf of all others similarly situated, )
       Plaintiffs, )
 )
    vs. )          4:04-CV-0078-SEB-WGH
 )
ROHM AND HAAS PENSION PLAN, )
     Defendant. )

## ENTRY DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

      Gary Williams ("Williams") filed suit, on behalf of himself and a class of similarly

situated individuals (the "Class" or "Plaintiffs"), contending that the Rohm and Haas

Pension Plan[1] (the "Plan" or "Defendant") violated the Employee Retirement Income

Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq., by failing to

include the value of a cost-of-living adjustment ("COLA") in his lump sum distribution

from the Plan.[2]

---

    [1] As a result of the merger of the Morton International, Inc. Pension Plan with and into
the Rohm and Haas Pension Plan and the addition of a new benefit formula, the Rohm and Haas
Pension Plan was amended and renamed effective April 1, 2001, as the Rohm and Haas
Company Retirement Plan. Def. Mem. for Summ. J. at 4. The governing Plan document in
effect at the time of Williams's distribution from the Plan in 1997, was referred to in Patricia
Coyle's deposition as the "Legacy Plan," which was the Rohm and Haas Pension Plan, as
amended and restated effective December 31, 1994. (AR00022-00110).

    [2] On October 22, 2004, the Court certified a class of plaintiffs in these terms:

    "All former participants in the Rohm & Haas Pension Plan (the "Plan") who
(continued...)


EXHIBIT
tabbies
2

This matter comes before the Court on the Plan's and Williams's cross motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.[3]  For the reasons outlined below, we <u>DENY</u> Defendant's Motion for Summary Judgment and <u>GRANT</u> Plaintiffs' Motion for Summary Judgment.

<u>Introduction</u>

A.    *Summary of Defendant's Motion for Summary Judgment*

Defendant contends that both of the ERISA remedial provisions under which Williams's one-count complaint arises—Sections 502(a)(1)(B) and 502(a)(3)—suffer from procedural and substantive flaws, which bar Plaintiffs from securing relief under either of them.  Def. Memo for S.J. at 1.  First, Defendant claims that Williams's ERISA Section 502(a)(1)(B) claim must be reviewed under the deferential arbitrary and capricious standard.  Under this standard, Defendant argues that the Rohm and Haas Benefits Administrative Committee's (the "BAC") decision to deny Williams's benefit claim must be upheld because it was reasonable based on the Plan's unambiguous terms.  Second, Defendant contends that Williams's claim for equitable relief under Section 502(a)(3) should be dismissed for at least two reasons:  (1) Williams cannot recover under

---

[2](...continued)
received a lump sum distribution from the Plan which did not take into account a cost of living adjustment in calculating the lump sum distribution."

Gary Williams was appointed Class Representative and his attorneys as class counsel.

[3] Williams filed his memo in support of summary judgment on behalf of the class on June 15, 2005; Defendant filed its motion for summary judgment also on June 15, 2005.

Section 502(a)(3) because he has pled a claim for relief under Section 502(a)(1)(B)

through which he seeks the same relief; and (2) Williams does not seek "other appropriate

equitable relief" under ERISA because the benefits he seeks in his complaint constitutes

an award of monetary damages.

B.   *Summary of Plaintiffs' Motion for Summary Judgment*

Williams seeks summary judgment in favor of himself and the Class because: (1)

the Plan included an automatic cost-of-living-adjustment ("COLA") as part of each

participant's normal retirement benefit; (2) the COLA is an "accrued benefit," as defined

by ERISA § 3(23), 29 U.S.C.§ 1002(23), and Internal Revenue Code § 411(a)(7),  26

U.S.C. § 411(a)(7); (3) the Plan failed to specify the value of the COLA in the Class

members' lump-sum distributions; and (4) as a result, the Class members unintentionally

forfeited a portion of their accrued benefit and received less than the full present value of

their benefit, in violation of ERISA and the implementing Treasury Regulations.

FACTUAL BACKGROUND

A.   Rohm and Haas Pension Plan

The Plan is a defined benefit pension plan within the meaning of Section 3(35) of

ERISA, 29 U.S.C. §1002(35).  The Plan is sponsored by Rohm and Haas and was

originally adopted to provide pension benefits for eligible employees of Rohm and Haas

and its Affiliates in order to supplement retirement income benefits provided under the

Social Security Act. (Complaint ¶ 2; AR 00159).[4] The Plan has at all times maintained its tax qualified status under the Internal Revenue Code. (AR00160).

Under the Plan, the Benefits Administrative Committee ("BAC") is the Plan Administrator as that term is defined under ERISA. See 29 U.S.C. §1002(16)(A). The BAC has full responsibility to represent Participating Employers and Participants in all things it may deem necessary for the Plan's proper administration, and, subject to the Plan's terms, the BAC's interpretation and administration of the Plan is conclusive. (AR00204). Under Section 15.3 of the Plan, the BAC's responsibilities include (but are not limited to): (i) verifying all procedures by which payments to Participants and Beneficiaries are authorized; (ii) interpreting Plan provisions in all particulars; and (iii) reviewing and answering any denied claim for benefits that has been appealed to the BAC under the Plan's claims procedures. (AR00204-205).

Under the Plan's claims procedures, in the case of an adverse benefit determination, the claimant or his representative has the opportunity to appeal a denied benefit claim to the BAC for review by requesting such review in writing within sixty days of receipt of notification of the denial. In reviewing a claim appeal, the BAC considers all comments, documents, records, and other information submitted by the claimant or his representative relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

---

[4] References to "AR[No.]" are to the Administrative Record utilized to evaluate Williams's claim appeal for benefits under the Plan, Bates-stamped Nos. AR001-0337. The Administrative Record was authenticated by Patricia Coyle in her January 26, 2005 deposition.

(AR00206-207, 228-229).  The BAC reviews the claim appeal, the claim appeal

summary, and other documents and information relevant to the claim, and votes to

approve or deny the claim.  The BAC members' votes are then sent to the BAC's

Secretary to be tallied, and a formal claim appeal response is prepared by the BAC's

Secretary for transmittal to the claimant.  (Coyle Dep. at 16-17).

B.    Plan's Definition of "Accrued Benefit" and "Normal Retirement Pension"

Section 3.1 of the Plan defines "Accrued Benefit" to mean "that portion of a

Participant's Basic Amount of Normal Retirement Pension, expressed in terms of a

monthly single life annuity beginning at or after his Normal Retirement Date, that has

accrued as of any determination date in accordance with Article VII."  (AR00033).

Under Article VII, a Participant's "Normal Retirement Pension" is calculated

pursuant to a set formula, which multiplies a specific dollar amount (either a percentage

of the Participant's compensation or a set dollar amount) by the Participant's years of

Benefit Service accumulated at the time of retirement, subject to certain limitations.  The

Participant's Accrued Benefit is then expressed to the Participant in terms of a monthly

single life annuity as of the Participant's retirement date under Article VII.

(AR00052-57).

The Plan provides that a Participant may have his or her Normal Retirement

Pension distributed in a variety of payment forms, from monthly annuity payments to a

one-time lump sum payment at the time of retirement.  (AR00063-70).  Article X of the

Plan requires the BAC to furnish each Participant or terminated Participant with a general

5

description of all payment options available, including a general explanation of the relative financial effect on a Participant's benefits of any of the available distribution forms. This description typically includes the amounts available under each option, which would be actuarially equivalent to the Participant's Accrued Benefit determined at the time of his retirement. (AR00063-64). Under Section 12.1.4 of the Plan, a Participant may elect to receive a one-time lump sum distribution of the Actuarial Equivalent present value of his Accrued Benefit, as determined under Appendix D to the Plan. (AR00068).

The Plan defines "Actuarial Equivalent" to mean "a benefit of equivalent actuarial value to the benefit that would otherwise have been provided to the Employee, determined on the basis of appropriate actuarial assumptions and methods set forth in Appendices A through D attached hereto." (AR00033). For purposes of determining the Actuarial Equivalent lump sum present value of a Participant's Normal Retirement Pension, Appendix D to the Plan sets forth the actuarial assumptions, which are limited to applicable interest rates and mortality tables to be used to determine the present value of a Participant's Normal Retirement Pension under the Plan, which are set by the Internal Revenue Code. COLA adjustments are not mentioned or specifically provided for in Appendix D to the Plan. (AR00105-107).

C.    Plan's Provisions Do Not Allow for COLAs on Lump Sum Distributions

Article XV of the Plan sets forth the rules governing the payment of a COLA enhancement to a Participant. Specifically, Section 15.1 of the Plan states that a COLA enhancement may be paid only to Participants receiving monthly benefit payments—not

6

to Participants who elect to receive a lump sum payout: "Except as provided in Sections

15.3 and 15.4, beginning with pension payments in March, 1974 . . . any Participant or

Beneficiary of an eligible Participant (or a Participant who would have been eligible

except for age), who is receiving monthly payments, shall be entitled to an annual

Cost-of-Living Adjustment as described below: . . . ."  (AR00078; emphasis supplied).

Section 12.5 of the Plan also references the application of COLA enhancements,

providing that "the Cost-of-Living Adjustment to pensions described in Article XV, shall

apply only to the monthly payments to" a contingent annuitant or Beneficiary who

survives a retired Participant.  (AR00070).

The Plan's summary plan description ("SPD") states:

*What is a "COLA" and am I eligible to receive it?*
The cost of living adjustment or "COLA" is an annual adjustment to
monthly payments from the Plan intended to keep pace with inflation.  The
amount of the annual increase is based on the increase in the Consumer
Price Index for Urban Wage Earners and Clerical Workers for the previous
year but is limited to no more than 3% of your annual benefit in any year.
(AR00290).

The COLA only applies to monthly payments; it does NOT apply if you
receive your benefit in the form of a cash lump sum.  The COLA is a
benefit enhancement which is not part of your Accrued Benefit under the
Plan and is not required by law.  The Plan may, at its discretion, eliminate
the COLA at any time, regardless of whether it has made COLA payments
in the past.  (AR00290, emphasis added).

D.   The BAC Denied Williams's Claim Appeal for Benefits Under the Plan

Williams was employed by Rohm and Haas from December 1, 1969 through

March 31, 1997, when his employment was terminated for violating Rohm and Haas'

7

Harassment Prevention and Correction Policy. (AR00004, 49). On March 31, 1997,

Williams elected to receive his Normal Retirement Pension under the Plan in the form of

a one-time lump sum payment under Plan Section 12.1.4. Williams received as a lump

sum payment—$47,850.71—his Accrued Benefit under the Plan on May, 30, 1997.

(AR00001). Six years thereafter, or about March 2003, Williams filed this class action

complaint alleging that he was wrongfully denied benefits under the Plan because his

lump sum payment did not include the value of the COLA he would have received had he

elected to receive his benefits monthly under an annuity distribution option. (AR00018).

On September 26, 2003, we granted the Plan's motion to dismiss Williams's class action

complaint because Williams had failed to exhaust his available administrative remedies

under the Plan. (Williams v. Rohm and Haas Pension Plan, No. NA-02-C-123, 2003 U.S.

Dist. LEXIS 17313 (S.D. Ind. Sept. 26, 2003)).

    On October 21, 2003, Williams, through his counsel, sent his administrative claim

for benefits not to the BAC directly, but to the Plan's litigation counsel, arguing that the

COLA enhancement added to monthly payments under the Plan is an accrued benefit and

therefore part of his normal retirement benefit under the Plan. Williams claimed that if

his lump sum distribution had included the value of the COLA, his distribution amount

would have been larger than what he had received, prompting this request that he be paid

the additional benefits equal to the value of the COLA. (AR00009-16).

    On February 2, 2004, Williams, again through his counsel, submitted a claim

appeal in which he incorporated all of the arguments raised and documents submitted in

8

his initial benefits claim. (AR00008). The BAC, through its Secretary Patricia Coyle

("Coyle"), received and processed the claim appeal in the standard fashion, which

included her review and research as well as that of others on Rohm and Haas' benefits

staff. (Coyle Dep. at 17, 131-133).

On April 1, 2004, Coyle, on the BAC's behalf, sent Williams's counsel a letter,

notifying him that Williams's claim appeal had been denied by the BAC. In this letter,

Coyle set forth the applicable Plan provisions on which the denial was based and

explained the bases for the BAC's decision. (AR000001-2). Williams filed the instant

lawsuit on April 2, 2004. (Compl. at 1).

LEGAL ANALYSIS

I.      Standard of Review

Benefit determinations in ERISA cases, pursuant to 29 U.S.C. § 1132(a)(1)(B), are

reviewed by the court *de novo*, unless the plan administrator has "discretionary authority

to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire &

Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan vests discretionary authority

in the plan administrator, the standard of judicial review is based on an "arbitrary and

capricious" analysis.[5] Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1147 (7th Cir.

--------------------

[5] The Seventh Circuit has held that the arbitrary and capricious standard is highly deferential to a plan administrator. Under the arbitrary and capricious standard, the BAC's decision to deny Williams's benefits claim appeal should be overturned only if it is "downright unreasonable" and not merely incorrect. Tegtmeier v. Midwest Operating Engineers Pension Trust Fund, 390 F.3d 1040, 1045 (7th Cir. 2004). It is not the Court's function to decide whether it would reach the same conclusion as the Plan or even rely on
(continued...)

9

1998); see also Morgan v. Cigna Group Ins., 2003 WL 722804, *6 (S.D. Ind. 2003)

(Barker, J.).  However, the courts do not defer to the plan administrator's interpretation of

a federal statute.  See, e.g., McDaniel v. Chevron Corp., 203 F.3d 1099, 1108 (9th Cir.

2000).  In a case where the claim against the plan is not that the terms of the plan were

wrongly decided or construed, but that the plan itself is contrary to ERISA, then the

decisions of a plan administrator will be reviewed *de novo*, as those decisions involve

pure questions of law and the interpretation of the plan is not in dispute.  See Williams v.

Midwest Operating Engineers Welfare Fund, 125 F.3d 1138, 1140 (7th Cir. 1997).

   In this case, the Plaintiffs' claim against the plan is not that the terms of the plan

were wrongly decided or construed, but that the plan itself is contrary to ERISA.  In his

claim appeal, Williams admitted that he was ineligible to receive a COLA under the

Plan's terms.  See AR00009.  Instead, he argues that the Plan's terms violate ERISA and

the Internal Revenue Code.  See AR00009-15.  We review *de novo* the issue of ERISA's

legal requirements.[6]

---

   [5](...continued)
the same authority.  Id.  If the Court determines that the BAC made an informed judgment
and articulated an explanation for its decision that is satisfactory in light of the relevant
plan's terms, the BAC's decision is deemed final and should not be disturbed.  See
Exbom v. Cen. States, S.E. & S.W. Areas Health &Welfare Fund, 900 F.2d 1138, 1143
(7th Cir. 1990).  The Court does not ask whether it, a jury or a different plan administrator
would have granted the benefits; questions of judgment or choices between competing
reasonable outcomes are left to the plan administrator.  Patterson v. Caterpillar, Inc., 70
F.3d 503, 505 n.3 (7th Cir. 1995).

   [6] If the issue were simply whether the Plan's definition of "Accrued Benefit"
includes a COLA enhancement then Defendant would be correct that the appropriate
                                                              (continued...)

III.    Does ERISA Provide a Remedy through which Plaintiffs May Seek
to Recover for the Violation Alleged in the Complaint?

Williams has identified two, separate remedial provisions under which his ERISA

claim purportedly arises; (1) under ERISA Section 502(a)(1)(B)–he seeks to recover

benefits allegedly wrongfully denied him under the terms of the Plan; and (2) under

ERISA, Section 502(a)(3)–he and the Class seek recovery of their Plan benefits through a

declaration from the Court that BAC's decision to deny this claim appeal for benefits was

wrongfully decided under applicable law.  Defendant asserts that Williams's claim suffers

from both procedural and substantive flaws, which bar relief under either remedial

provision.  Def. Memo for S.J. at 1.

A.    **Williams's Wrongful Denial of Benefits Claim under ERISA
Section 502(a)(1)(B)**

Section 502(a)(1)(B) permits participants or beneficiaries to bring a civil action:

(1) to recover benefits due under the terms of his plan; (2) to enforce rights under the

terms of the plan; or (3) to clarify rights to future benefits under the terms of the plan.

See 29 U.S.C. §1132(a)(1)(B).  In May Dept. Stores v. Federal Ins. Co., 305 F.3d 597

(7th Cir. 2002) (Posner, J.), the pension plan was sued under ERISA § 502(a)(3) for

calculating lump sum distributions as amounts less than the present value of the normal

annuity (albeit in accordance with the plan terms).  On appeal of a subsequent coverage

───────────────────────

[6](...continued)
standard of review would involve the deferential arbitrary and capricious standard in our
considering whether the BAC's interpretation of the Plan's terms was reasonable.  See
Def. Response at 7.  It is undisputed that the BAC is granted sufficient discretionary
authority to determine eligibility for benefits and to construe the terms of the plan.

11

case between the plan and plan sponsor, and the E&O carrier, the plaintiffs (May and the

plan) argued that because the employees' claims against their employers were not based

on the language of the plan but provisions of ERISA, the claims were not for "benefits."

305 F.3d at 601.  The Seventh Circuit disagreed.  Judge Posner explained:

> The benefits sought were plan benefits; the question was how to compute
> them.  The answer was given by ERISA, but that is just to say that, like
> many other contracts, pension plans governed by ERISA contain provisions
> implied by law.

Id.

Defendant states that Williams cannot recover under Section 502(a)(1)(B) because:

(1) it is undisputed that Williams's claim for increased benefits through inclusion of the

COLA enhancement's future value in his lump sum payment is not permitted under the

Plan's unambiguous terms; (2) that Williams does not seek to enforce any rights under the

Plan's terms—rather, he seeks to recover additional benefits; and (3) that Williams cannot

argue that he seeks to clarify his rights to future benefits under the Plan, as he received a

lump sum payment of all of his Accrued Benefits under the Plan in 1997.  Therefore,

Defendant argues, Williams is not entitled to any relief under Section 502(a)(1)(B) by the

express terms of that ERISA remedial provision.

The reasoning in May Dept. Stores v. Federal Ins. Co., 305 F.3d 597 (7th Cir.

2002), provides guidance and leads to a conclusion different from that asserted by the

Defendant.  Following May, it can fairly be said that Williams seeks to recover benefits

wrongfully denied by the Plan.  Here, as in May, when determining how the Plan's

benefits are to be computed, the answer arises from the terms and provisions of ERISA.

The Plan, which is governed by ERISA, incorporates provisions implied by law. So, even

if the Plan's unambiguous (and allegedly unlawful) terms prohibit the inclusion of a

COLA in a lump sum payment, that requirement may nonetheless be implied by ERISA

and entitle Williams to such a benefit. Thus, Williams's effort is to recover "benefits due

to him under the terms of his plan," even though those benefits are implied by ERISA,

which law governs the Plan and is legally permissible.

### B.    Williams's Equitable Relief Claim under ERISA Section 502(a)(3)

Williams also brings his claims under Section 502(a)(3) seeking a "declaration"

that the Plan violated ERISA. Defendant contends that Williams's claim for equitable

relief under Section 502(a)(3) should be dismissed for at least two reasons: (1) Williams

cannot recover under Section 502(a)(3) because he has plead a separate claim for relief

under Section 502(a)(1)(B) through which he seeks the same relief; and (2) Williams does

not seek "other appropriate equitable relief" under ERISA because the benefits he seeks

in his complaint in fact constitute a request for monetary damages. Section 502(a)(3) of

ERISA provides that:

> a civil action may be brought—by a participant, beneficiary, or fiduciary
> (A) to enjoin any act or practice which violates any provision of this title or
> the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to
> redress such violations or (ii) to enforce any provisions of this title or the
> terms of the plan.

See 29 U.S.C. §1132(a)(3).

In <u>Varity Corp. v. Howe,</u> 516 U.S. 489 (1996) the Supreme Court of the United

13

States, addressing proper claims under Section 502(a)(3), held that "where Congress

elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need

for further equitable relief, in which case such relief would normally not be

'appropriate.'" 516 U.S. at 515. "In short, Varity does not force a plaintiff to elect his

remedy before filing a complaint, but rather prohibits a plaintiff from receiving equitable

relief under ERISA § 502(a)(3) in addition to some other form of relief. Varity, 516 U.S.

at 515." Laurenzano, 134 F. Supp. 2d at 194 -195.  Thus, Williams is not foreclosed from

seeking equitable relief under ERISA Section 502(a)(3), simply because he has also pled

a claim for relief under Section 502(a)(1)(B).

A year after May was decided, the Seventh Circuit had occasion to examine the

interplay between ERISA §§ 502(a)(l)(B) and 502(a)(3) in Berger v. Xerox Corp. Ret.

Income Guar. Plan, 338 F.3d 755, 763 (7th Cir. 2003) (Posner, J.).  There, citing

Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), the Plan argued

that the case could not be certified under Federal Rule of Civil Procedure 23(b)(2),

because plaintiffs were not seeking injunctive or declaratory relief, "but really just

damages equal to the difference between the lump sums to which ERISA entitled the

members of the class and the smaller lump sums they actually received." 338 F.3d at 763.

Although plaintiffs cast their case in terms of Section 502(a)(3), Judge Posner cited

502(a)(l)(B) and stated that the suit "is by plan participants suing 'to recover benefits.'"

Berger, 338 F.3d at 763. The Court wrote:

What is sought is a declaration that [Defendant's] method of computing

14

lump sums to which withdrawing employees are entitled is unlawful. That is a ground common to all the members of the class. True, the declaration sought and obtained was merely a prelude to a request for damages (incorrectly described by the plaintiffs as a request for restitutionary relief equitable in nature - the monetary relief sought is not restitutionary, and if it were it would not be equitable, <u>Great West Life & Annuity Ins. Co. v. Knudson</u>, supra, 534 U.S. at 213-14; [citation omitted]). But a declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary; so there is nothing suspicious about the characterization of the suit as one for declaratory relief. The hope that motivates casting a request for relief in declaratory terms is that if the declaration is granted, the parties will be able to negotiate the concrete relief necessary to make the plaintiffs whole without further judicial proceedings. No one wants an empty declaration.

<u>Id.</u> at 763-64 (emphasis in original). Therefore, a "declaration" that the Plan violates ERISA may constitute "other appropriate equitable relief," and is a permissible cause of action.

We agree with Plaintiffs, that in the wake of <u>May</u> and <u>Berger</u>, it appears that the appropriate method to address a pension plan whose terms violate ERISA is for the plaintiff to seek a declaration, pursuant to ERISA § 502(a)(3), that the plan's terms are indeed illegal (for example, because the plan's lump sum distribution provisions result in lump sums smaller than the present value of the normal retirement benefit). At that point, the law implies that the Plan's provisions include such a requirement and benefits are payable pursuant to ERISA § 502(a)(1)(B). Accordingly, we <u>DENY</u> Defendant's Motion for Summary Judgment on Williams's ERISA claim.

IV.     <u>Does the Plan comply with ERISA and, if not, were Williams and the Class injured in not receiving the full value of their Accrued Benefit with their lump sum distribution?</u>

15

Williams alleges that the Plan violated certain sections of ERISA and the Internal Revenue Code by failing to calculate in his and the class's lump sum distributions the value of the COLA enhancement available under the Plan only to those receiving monthly payments of their Accrued Benefit. Specifically, Williams argues that the Plan's definition of "Accrued Benefits" does not satisfy ERISA's definition of that term because the COLA enhancement was not included when calculating the value of his lump sum distribution. The central issue in this litigation is whether the Plan's COLA enhancement, available to those Participants electing a monthly payment option, is an Accrued Benefit under ERISA and thus also available to Participants who elected the lump sum payment.

ERISA and the Internal Revenue Code mandate that if a defined benefit pension plan provides for a form of payment other than a life annuity beginning at normal retirement age (the"normal retirement benefit"), then this optional form must be the actuarial equivalent of the annuity. Treasury Regulation 1-417(e)-d, 26 C.F.R. §1.417(e)-1d;[7] 29 U.S.C. 1054(c)(3); 26 U.S.C. 411(c)(3). The Seventh Circuit in Berger v. Xerox Corp. Ret. Income Guar. Plan, 338 F.3d 755, 759 (7th Cir. 2003) (Posner, J.),

---

[7] Treasury Regulation 1.417(e)- 1(d) states:

A defined benefit plan must provide that the present value of any accrued benefit and the amount (subject to sections 411(c)(3) and415) of any distribution, including a single sum, must not be less than the amount calculated using the applicable interest rate described in paragraph (d)(3) of this section (determined for the month described in paragraph (d)(4) of this section) and the applicable mortality table described in paragraph (d)(2) of this section. The present value of any optional form of benefit cannot be less than the present value of the normal retirement benefit determined in accordance with the preceding sentence.26 C.F.R. § 1.417(e)-1(d)(1) (emphasis added).

16

recently confirmed that the ERISA statutory requirements (as implemented by the Treasury regulations) must be used for valuing a lump sum payment, stating, "ERISA requires that any lump-sum substitute for an accrued pension benefit be the actuarial equivalent of that benefit." citing 29 U.S.C. § 1054(c)(3); May Dep't Stores Co. v. Federal Ins. Co., 305 F.3d 597, 600 (7th Cir. 2002); Esden v. Bank of Boston, 229 F.3d 154, 164, 173 (2d Cir. 2000).

### ERISA: "Accrued Benefit" and the "Normal Retirement Benefit"

ERISA Section 2(23) defines the term "accrued benefit," in the case of a defined benefit plan, as "the individual's accrued benefit determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. §1002(23)(A). "It should be apparent that this definition does not purport to describe what counts as an 'accrued benefit' for all participants in all qualifying plans. Rather, the statutory definition is a signpost directing [courts] to look at the terms of the plan at issue." Board of Trustees of the Sheet Metal Workers' Nat'l Pension Fund v. Comm. of Internal Rev., 318 F.3d 599, 602-03 (4th Cir. 2003). The Supreme Court has held that "private parties, not the Government, control the level of benefits" provided in ERISA pension plans. Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 511 (1981). The Seventh Circuit evaluated a similar issue involving an "accrued benefit" in Hickey v. Chicago Truck Drivers, Helpers and Warehouse Workers Union, 980 F.2d 465, 468 (7th Cir. 1992); in that case, the Seventh Circuit stated:

The term "accrued benefit" has a statutory meaning, and the parties cannot

17

change that meaning by simply labeling certain benefits as "accrued
benefits" and others, such as the COLA, as "supplementary benefits." An
accrued benefit is, "in the case of a defined benefit plan, ... an annual
benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)
(1984). We first determine what Congress meant by this definition, and
then examine the Plan, as a whole, to determine which benefits created by
the Plan fall within that definition.

"Accrued" benefits refers to those normal retirement benefits that an employee has

earned at any given time during the course of employment. Vallone v. CNA Fin. Corp.,

375 F.3d 623, 635 (7th Cir. 2004). Put another way, "[a]n employee's accrued benefit at

any particular point in time is what a fully vested employee would be entitled to receive

under the terms of the plan if employment ceased at that particular point in time."

Ashenbaugh v. Crucible Inc., 854 F.2d 1516, 1524 (3d Cir. 1988)).

In conducting this analysis, it is also appropriate to consider the views of the

agencies responsible for enforcing ERISA; to do otherwise would be to "embark upon a

voyage without a compass." Kohl v. Assoc. of Trial Lawyers of America, 183 F.R.D.

475, 482 (D. Md. 1998) (quoting Mead Corp. v. B.E. Tilley, 490 U.S. 714, 726 (1989)

(citing Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568 (1980)). The Internal

Revenue Code and its supporting regulations expressly exclude from the definition of

"accrued benefit" the value of an early retirement subsidy or any subsidized value in a

joint and survivor annuity. See 29 U.S.C. §411(a)(7); 29 C.F.R. §1.411(a)-7(a)(ii).

While to date no definition of "retirement-type subsidy" is contained in ERISA, the

regulations and the legislative history of ERISA § 204(g)(2) define a benefit subsidy as

"the excess of the value of a benefit over the actuarial equivalent of the normal retirement

18

benefit." S. Rep. No. 575, 98th Cong., 2d Sess. 28, <u>reprinted in</u> 1984 U.S.C.C.A.N. 2547,

2574. The legislative history further provides that a retirement-type subsidy is a subsidy

that continues after retirement. S. Rep. No. 575, 98th Cong., 2d Sess. 30, <u>reprinted in</u>

1984 U.S.C.C.A.N. 2547, 2576.

Question 39 from the "Gray Book"[8] of the March 1994 Enrolled Actuaries

Meeting asks:

> A plan provides for lump sum distributions based on actuarial equivalent
> interest rates equal to the PBGC interest rates on lump sums in plan
> terminations (i.e., the 417(e) rates). The plan also provides for annual
> post-retirement cost-of-living increases based on the National
> Cost-of-Living index, but not to exceed 3% in any year. The plan states that
> for lump sum determination, it is assumed that there would be no increase
> in the COL index.
>
> RESPONSE
>
> Subject to section 415 (discussed below), an automatic cost-of-living
> provision is an integral part of the participant's accrued benefit and,
> therefore, must be taken into account when determining amounts payable
> under optional forms of benefit. The assumption that there will be no
> increase in the COL index in determining the lump sum would not be
> reasonable and, therefore, would result in the impermissible - forfeiture of
> accrued benefits under section 411.

AROOO 13.

Our research discloses that two courts have considered issues similar to the one

presented here, in each case holding that employees were entitled to larger lump-sums

---

[8] The Enrolled Actuaries Report published by the American Academy of Actuaries in the
summer of 2004 states that "[t]he Gray Book is a compilation of IRS responses to questions
from pension practitioners regarding unusual situations or areas in which the Internal Revenue
Code and regulations are unclear, insufficiently specific, contradictory, or silent." Vol. 29, No. 2
at p. 5.

because the plans excluded the value of the COLAs. See Laurenzano v. Blue Cross &

Blue Shield of Mass., Inc. Ret. Income Trust, 134 F. Supp. 2d 189, 199-204 (D. Mass.

2001) (Young, C.J.); and Kohl v. ATLA Pension Plan, 183 F.R.D. 475 (D. Md.1998)

(Williams, J.). The courts in both Laurenzano and Kohl, discussed below, primarily and

specifically relied on the Seventh Circuit holding in Hickey v. Chicago Truck Drivers,

Helpers and Warehouse Workers Union, 980 F.2d 465 (7th Cir. 1992); See, Laurenzano,

134 F. Supp. 2d at 199, and Kohl, 183 F.R.D. at 479.

In Hickey, the Seventh Circuit affirmed the trial court's ruling which granted

partial summary judgment in favor of the plaintiff employees ruling that the COLA

prescribed by the employer's Plan was an accrued benefit and, therefore, its elimination

was a decrease of the accrued benefit in violation of ERISA. The Seventh Circuit opinion

concluded:

> A participant's right to have his basic benefit adjusted for changes in the
> cost-of-living accrued each year along with the right to the basic benefit. A
> participant's entitlement to his or her normal retirement benefit included, as
> one component, the right to have the benefits adjusted pursuant to the
> COLA provision.

980 F.2d at 469. See also Treasury Regulation 1.417(a)-7 (defining accrued benefit as an

annual benefit commencing at normal retirement age). In Hickey, the Plan had been

amended to add a COLA to all retirement benefits. The court noticed that the COLA

adjusted the computed benefit rather than providing a separate optional benefit. "A

participant's right to have his basic benefit adjusted for changes in the cost-of-living

accrued each year along with the right to the basic benefit. A participant's entitlement to

20

his or her normal retirement benefit included, as one component, the right to have the

benefits adjusted pursuant to the COLA provision." Id. at 469.

In reaching its conclusion in Hickey, the Seventh Circuit examined the legislative

history which informed the term, "accrued benefit," concluding:

> The 'primary function' of accrued benefits is to 'provide retirement
> income.' As such, accrued benefits do not encompass such items as the
> value of the right to receive benefits commencing at an age before normal
> retirement age, or so-called social security supplements which are
> commonly paid in the case of early retirement but then cease when the
> retiree attains the age when he is entitled to receive current social security
> benefits....

Hickey, 980 F.3d at 467 (quoting H.R. Rep. N. 93-807, 93rd Cong. 2d Sess. 60 (1974),

reprinted in II Legislative History at 3180). "The COLA is an accrued benefit: its

primary purpose is to provide retirement income, it commences only at retirement, and it

is not a benefit generally transferable to succeeding employers." Id.

Laurenzano v. Blue Cross and Blue Shield of Massachusetts, Inc. Retirement

Income Trust, 134 F. Supp. 2d 189 (D. Mass., 2001) is a case very similar to the one

presently before us. In Laurenzano, upon separation of his employment, rather than

receive a life annuity, Laurenzano elected to receive a lump sum distribution, which did

not include the present value of projected COLA payments. The district court held, "If a

defined benefit pension plan normally provides retirement benefits in the form of a life

annuity that includes a cost-of-living adjustment ("COLA")," a lump sum distribution in

lieu of the annuity must include the present value of the projected COLA payments.

Laurenzano, 134 F. Supp. 2d at 191 (noting that Section 5.7 of the plan at issue adds a

COLA to certain Accrued Benefits while excluding the COLA from lump sum

distributions.  Id. at 192).  In Laurenzano, the district court held that the plan provided

only one definition of accrued benefit, but it was not consonant with the legal definition

of "accrued benefit."  Under the plan, the "annual benefit commencing at normal

retirement age" was an annuity with COLA payments.  Given the reality of the plan, as

opposed to its legally-meaningless terminology, the "accrued benefit" under the plan

included COLA payments.  Laurenzano, F. Supp. 2d at 200-201.  Initially, the plan terms

in Laurenzano did not clearly exclude the COLA from the plan's accrued benefit

definition:

> A Participant's "Pre-1995 Accrued Benefit" shall be subject to an annual
> [COLA] as of each January 1, beginning the January 1 next following the
> date benefit payments commence. . . . For purposes of this Section 5.7, a
> Participant's "Pre-1995 Accrued Benefit" is any portion of the benefit
> payable to the Participant under the Plan (other than a lump sum benefit)
> that is attributable to such Participant's Accrued Benefit determined as of
> December 31, 1994 on the basis of the Participant's Final Average
> Compensation and Credited Service determined as of December 31, 1994.

134 F. Supp. 2d at 192.  In Laurenzano, the plan's exclusion of the COLA for lump sum

distributions was placed in a parenthetical at the end of the plan provision adding the

COLA enhancement.  In addition, the COLA was discussed in the same plan provision

that defined the accrued benefit under the plan.

In Kohl v. Association of Trial Lawyers of America, 183 F.R.D. 475 (D. Md.

1998), a pension plan participant brought a class action alleging that the plan

administrator violated ERISA by failing to include a COLA when making a lump-sum

payment.  On cross-motions for summary judgment, the district court held that

participants receiving retirement benefits in lump-sum payment were entitled to COLA.

In Kohl, the court treated the issue as a matter of contract interpretation, determining

whether, under the Plan's language, a COLA applied to a lump sum payment or not.  The

Court noted that under Section 1054 a participant's accrued benefits must be the actuarial

equivalent of what her normal retirement benefits would have been when computed under

the plan.  However, by its own terms, the Plan required the lump sum cash option to be

equal to the Value of the 10-year annuity option.  Id. at 482.

    While we have found no case directly on point, our review of circuit court

opinions reveals that most courts have construed a COLA as an accrued benefit.  Hickey,

supra; Shaw v. International Ass'n of Machinists and Aerospace Workers Pension Plans,

750 F.2d 1458, 1463 (9th Cir. 1995) ("living pension" which increased age 65 benefit

every year is an "accrued benefit"), cert. denied, 471 U.S. 1137 (1985); and Schaefer v.

Arkansas Medical Soc., 853 F.2d 1487, 1488 (8th Cir. 1988) (affirming unpublished

district court decision holding that COLA is an "accrued pension benefit"); see also,

Board of Trustees of Sheet Metal Workers' Natl. Pension Fund v. C.I.R., 318 F.3d 599,

605 n.2 (4th Cir. 2003) (COLA granted after employment terminated is not an accrued

benefit, distinguishing Hickey and Shaw because COLA benefits there were earned

during period of employment).[9]

_____

    [9]  Defendants argue that other federal courts have held that a COLA enhancement
does not qualify as an accrued benefit under the relevant plan documents.  Defendants
(continued...)

23

The Defendant Plan cannot contest that some courts have previously found a promised COLA to be an accrued benefit under the plans at issue in those cases. However, Defendant argues that no such COLA benefits were promised under this Plan. Under the Plan's unambiguous terms, Defendant contends, the COLA enhancement available to Participants receiving a monthly payments of their retirement benefits does not qualify as an Accrued Benefit, and the BAC's decision to deny Williams's benefit claim does not violate ERISA. Therefore, the Court should grant the Plan judgment as a matter of law on Williams's class action complaint. Def. Memo in Supp. Of S.J. at 32 - 33.

Defendant seeks to distinguish each of the cases that hold that a COLA is an accrued benefit. In Hickey, the Plan at issue specifically provided that the COLA, which

--------

[9](...continued)
cite Bd. of Trustees of the Sheet Metal Workers ' Nat 'l Pens. Fund v. Comm. of Internal Rev., 318 F.3d 599, 604 (4th Cir. 2003) and San Diego AFL-CIO Bus Drivers Local Div. 1309 of the Amalgamated Transit Union, No. 93-55108, 1994 U.S. App. LEXIS 13167, * 13-14 (9th Cir. May 19, 1994). In both cases, COLA enhancements were not part of a participant's accrued benefit because the COLAS were not earned as a result of service, but instead were discretionarily granted after a participant's service had concluded and were expressly limited in duration as opposed to for the duration of the participant's post-retirement life. LaBrosse v. Trustees of the Asbestos Workers Local 47 Ret. Trust Plan, 186 F. Supp. 2d 791, 796 (W.D. Mich. 200 I), deals with increases to dollar amounts used in calculating monthly retirement benefits (from $3 in 1956 to $45 in 1998). Id. at 793. The plan document did not guarantee any future increases, and the decisions to provide increases were discretionary. Thus, the Court held that because no obligation ever existed to provide further increases, and (unlike future COLA increases) the retirees had not accrued the right to those increases prior to retirement, the retirees' accrued benefits were not cut-back by a post- retirement decision to no longer grant the retirees' additional increases. Id. at 796.

was added by amendment, was applicable to all retirement benefits. 980 F.2d at 466-67.

In Kohl, the Court held that the terms of the plan document at issue control whether a

COLA enhancement qualifies as an accrued benefit and determined that the plan

document at issue was "unclear as to whether a COLA applie[d] to a lump sum payment

or not." 183 F.R.D. at 480. Regarding Laurenzano, the Defendant argues that it is

inapplicable because it incorrectly applies the definition of accrued benefit under ERISA.

Def. Mem. for Summ. J. at 21.

Defendant also focuses on a few words in the definition of "accrued benefit" to

argue that an "accrued benefit" must be determined by the plan. Defendant asserts that at

the time of his termination and retirement on March 31, 1997, Williams stopped accruing

benefits under the Plan's terms. Therefore, because a COLA enhancement is available

only when the Accrued Benefit is already being paid monthly to eligible Participants, the

COLA enhancement could not be considered to be a part of Williams's Accrued Benefit

under the Plan. Put another way, an enhancement (the COLA or any other) that becomes

payable to a Participant after his retirement date and after he has begun receiving benefits

from the Plan cannot qualify as an Accrued Benefit because the enhancement was not

earned during the course of employment. Def. Memo in Supp. Of S.J. at 25. In sum, the

COLA only becomes a factor after the Accrued Benefit is locked in and the Participant

elects a payment method. This analysis dictates that the Plan's SPD correctly states that

"the COLA is a benefit enhancement which is not part of your Accrued Benefit under the

Plan and is not required by law," and the BAC's decision to deny Williams's benefit

claim was proper and reasonable.   See Facts ¶22; Def. Memo in Supp. Of S.J. at 25.

Defendant further argues that the Plan at issue here unambiguously states that a Participant is only eligible to receive a COLA enhancement after he voluntarily elects to receive his Accrued Benefit in a monthly payment and after he has begun receiving his distribution in monthly payments—which, by the Plan's terms and application, is after the Participant's Accrued Benefit has been calculated.  In response to Williams's argument that the COLA "accrued" over the period of his participation in the Plan, Defendant invokes the Plan's express terms, wherein a Participant does not become eligible to receive a COLA enhancement until (1) he has elected a monthly payment option; (2) he has begun receiving his Accrued Benefit; and (3) his Accrued Benefit is paid through a monthly payment optional form.

We repeat ERISA's definition of "accrued benefit" for emphasis: "Accrued benefit" means "the individual's accrued benefit determined under the plan and, except as provided in [ERISA § 204(c)(3) ], *expressed in the form of an annual benefit commencing at normal retirement age*." ERISA § 3(23) (emphasis added).  Thus, as mentioned above, ERISA requires that any Plan definition of "accrued benefit" depends on the "annual benefit commencing at normal retirement age." See Laurenzano, 134 F. Supp. 2d at 200.

It is undisputed that the COLA at issue in the case at bar provides retirement income in the form of an annual benefit at retirement age. See Coyle Deposition, p. 31; 1994 Plan, Article XV, AR 00078-79; 2001 Plan, Article X, AR 001 93-94.  "The COLA is an accrued benefit: its primary purpose is to provide retirement income, it commences

26

only at retirement, and it is not a benefit generally transferable to succeeding employers."
See Hickey.

The automatic COLA provided by the Plan is part of the annual benefit payable to a participant for the rest of his or her life. Pl. Memo. in Supp. of Summ. J. at 7; see, e.g., ERISA § 3(23), IRC § 411(a)(7) and Treasury Regulation 1.417(a)-7 (defining accrued benefit as an annual benefit commencing at normal retirement age). Under the Plan (and the law), this increasing annuity stream continues for the rest of the participant's life. See, 1994 Plan, Article XV, AR 00078-79; 2001 Plan, Article X, AR 00193-94.

Defendant contends that the word "express" found in ERISA's definition of the term "accrued benefit" means only that the Accrued Benefit must be set, as a base, using the monthly single life annuity—not that the benefits will be paid as a monthly single life annuity or that each Participant receives all of the rights and enhancements available under that benefit payment option. Stated otherwise, the COLA enhancement is only provided under the Plan when a Participant elects a monthly distribution payment option—at that time, the Participant's Accrued Benefit will be enhanced as required by the Plan. Because the COLA "accrues," if at all, after a Participant elects to receive payment of his or her benefits through a monthly payment option, the COLA cannot be considered an Accrued Benefit for Participants, like Williams, who voluntarily elected to receive their Accrued Benefit in a lump sum before a COLA could attach. Def. Memo in Supp. of S.J. at 28.

As we have previously noted, "The term 'accrued benefit' has a statutory meaning,

and the parties cannot change that meaning by simply labeling certain benefits as 'accrued benefits' and others, such as the COLA, as 'supplementary benefits.'" <u>Hickey</u>, 980 F.2d at 468. We know of no court decision to hold that a COLA earned during a period of employment is not an accrued benefit under ERISA. Defendant appears to claim that the COLA exists outside ERISA's protections during the participant's employment, but instantly attaches to his accrued benefit if he chooses the monthly payment option. However, if the COLA is part of the annuity (and it is), then ERISA requires it to be included in the Class's lump sum distributions.

Finally, Defendant argues that Plaintiffs would be unjustly enriched if the Plan were required to add a COLA enhancement to its lump sum distribution. More specifically, Defendant contends that if Williams's lump sum calculation were to include the COLA, he and others receiving a lump sum distribution would be unjustly enriched vis-à-vis other Plan participants because they would effectively receive the value of the COLA twice: once through the monetary growth of their lump sum distribution received through investment since retirement and a second through the valuing of the COLA as monetary damages in this case. Def. Mem. for Summ. J. at 16. Such a result, in itself, would violate ERISA, the Plan contends, because it would grant Williams and the class members benefits greater than those received by other Participants who opted to receive monthly payments.

We believe the Defendant's suggestion that the Class would receive a windfall by receiving the COLA as well as any earned investment income to be factually incorrect.

28

See, e.g., Poulin Report, pp. 2-3. ERISA § 205(g)(3) includes, as part of determining

present value, a discount for all years that the participant's age predates his normal

retirement age. This discount is computed using market interest rates--currently the 30-

year Treasury Bond rate--to reflect the fact that the participant can invest the lump sum.

Poulin Report, pp. 2-3. To claim that the Class would somehow receive more under the

Plan than participants electing an annuity ignores the fact that the lump sum calculations

were already reduced to offset the time value of money.

After careful consideration of the meaning of "accrued benefit" and the terms of

the Plan, we hold that this Plan violated ERISA, 29 U.S.C. 1054(c)(3),[10] by failing to

include in Williams's and the class members' lump sum distributions the value of the

COLA enhancement expressly available to those receiving monthly payments of their

Accrued Benefit under the Plan. Specifically, the Plan's definition of "Accrued Benefits"

does not satisfy ERISA's definition of that term because the COLA enhancement was not

included when calculating the value of his lump sum distribution.[11]

In reaching this conclusion, that a COLA must be deemed an accrued benefit under the

_____

[10] This section mandates that if a defined benefit pension plan provides for a form
of payment other than a life annuity beginning at normal retirement age (the "normal
retirement benefit"), then this optional form must be the actuarial equivalent of the
annuity.

[11] Because we grant Plaintiffs' motion for summary judgment for the reasons
discussed herein, we decline to discuss the three, additional arguments raised by
Plaintiffs: that the failing to include the COLA in calculating the lump sum distribution
violates the present value requirements of section 205(g), the back-loading rules of
section 204(b) and the forfeiture rules of section 203(a).

circumstances of this Plan when construed in light of ERISA and controlling Seventh Circuit

precedent, we acknowledge that substantial complications in administering such a provision may

result.  COLAs are typically both speculative and contingent, turning on future

economic tides which are unknowable at the time a lump sum payment is made, but the fact of such

complications in terms of drafting and administering the plans can not alter the results of our

analysis.

CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment is <u>DENIED</u>

and Plaintiffs' Motion for Summary Judgment is <u>GRANTED</u>.


·IT IS SO ORDERED.


Date:   12/22/2005

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Copy to:

William Kieffer Carr
firm@pension-law.com

Linda Marie Doyle
MCDERMOTT WILL & EMERY LLP
ldoyle@mwe.com

Michael T. Graham
MCDERMOTT WILL & EMERY LLP
mgraham@mwe.com

Steven A. Katz
KOREIN TILLERY

skatz@koreintillery.com

T. J. Smith
tjsmith@smithhelman.com

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EUGENE RICHARDSON,
Individually, and on behalf of all those
similarly situated,

        **Plaintiff,**

        v.

THE RETIREMENT PLAN FOR
EMPLOYEES OF FAIRCHILD
SPACE AND DEFENSE
CORPORATION,

        **Defendant.**

CIVIL ACTION NO. 1:CV-99-1867

**FILED**
HARRISBURG, PA

OCT 25 2000

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## M E M O R A N D U M

Before the court is Defendant's motion to dismiss, pursuant to Federal
Rule of Civil Procedure 12(b)(6), or in the alternative, to transfer, pursuant to 28
U.S.C. § 1404(a). The parties have briefed the issues, and the matter is ripe for
disposition.

I.        **Background**

Plaintiff, Eugene Richardson, is a former employee of Fairchild Space
and Defense Corporation ("Fairchild"), which was acquired by Orbital Science
Corporation ("Orbital") in 1994. During his employment with Fairchild, Plaintiff
was a participant in The Retirement Plan for Employees of Fairchild Space and
Defense Corporation ("the Plan"), a defined benefit pension plan within the meaning
of the Employee Retirement Income Security Act ("ERISA"). The following facts
are alleged in Plaintiff's complaint:

**EXHIBIT**

3

In February 1992, some time after Plaintiff's retirement, Plaintiff elected and received retirement benefits from the Plan in the form of a lump sum distribution. Plaintiff contends that a portion of the lump sum was calculated using 120% of the Pension Benefit Guaranty Corporation ("PBGC") interest rates rather than 100% of the PBGC rates. Use of the 120% rate, Plaintiff alleges, resulted in a decreased lump sum payment to him. Plaintiff alleges that at the time his lump sum was distributed, he did not know or have reason to know how it was calculated, or that an error had been made in the calculation.

On February 16, 1999, Plaintiff sent a letter to Defendant seeking "additional benefits" from the Plan alleging that his lump sum distribution had been miscalculated. (Def.'s Ex. C, Sprong letter I.) The Plan did not respond to this letter, and Plaintiff sent an additional letter on June 17, 1999, allegedly appealing the Plan's "silent denial of [Plaintiff's February 16, 1999] claim." (Def.'s Ex. C, Sprong letter II.) On August 16, 1999, Defendant wrote a letter to Plaintiff in response to the earlier correspondences.

Plaintiff filed the instant action on October 22, 1999, individually, and on behalf of all those similarly situated, pursuant to 29 U.S.C. § 1132(a)(1)(b) to recover the additional benefits he asserts are due to him under the terms of the Plan. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff also seeks to enjoin the Plan from calculating the lump sum distributions of future applicants using the same wrongful calculation.

Defendant filed a motion to dismiss, or in the alternative, to transfer on January 3, 2000. On January 20, 2000, Plaintiff filed a motion to certify this case as a class action. On February 7, 2000, the court issued an order directing Defendant

not fo file a response to Plaintiff's motion for class certification until further order of the court.  The parties have fully briefed the motion to dismiss which is decided in the instant memorandum and order.

## II.          Legal Standard: Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn from the face of the complaint.  See Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).  "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action."  Nami, 82 F.3d at 65.  The court will not dismiss a complaint for failure to state a claim  "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

"In determining whether a claim should be dismissed under [Federal] Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record."  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, the court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]."  Pension Ben. Guar. Corp. v. White Consol. Ind, 998 F.2d 1192, 1196 (3d Cir. 1993).

3

III.        <u>Discussion</u>

Defendant's motion seeks to dismiss Plaintiff's action, or in the alternative, transfer it from this district. Defendant contends that Plaintiff's claim should be dismissed because: (1) Plaintiff has failed to timely exhaust the necessary administrative remedies under the Plan; and (2) Plaintiff's cause of action is barred by the statute of limitations. Alternatively, Defendant seeks to transfer this action to the United States District Court for the District of Maryland. For the reasons that follow, the court will deny Defendant's motion.

A. <u>Exhaustion of Administrative Remedies</u>

Defendant contends that Plaintiff failed to pursue his administrative remedies within the time frame mandated by the Plan. It further contends that judicial review is therefore precluded, and thus the instant action should be dismissed. Plaintiff, however, argues that his letters of February 16, 1999 and June 17, 1999 constitute a claim for benefits and an appeal of a "silent denial" which satisfy the necessary administrative procedures and were timely filed. Resolution of this question requires the court to consider the terms of the Plan and their proper interpretation.

Paragraph 8.12 of the Plan describes the claims procedure that an applicant undertakes to acquire benefits under the Plan. Concerning denials of benefits, the Plan states:

> In the event the Claims Coordinator denies a claim for benefits in whole or in part, the Claims Coordinator shall notify the Applicant in writing of the denial of the claim and notify such Applicant of his right to a review of the Claims Coordinator's decision by the Committee. Such notice by the Claims Coordinator shall also set forth, in a manner calculated to be understood by the Applicant, the specific reason for such denial, the specific Plan provisions

> on which the denial is based, a description of any
> additional material or information necessary to perfect the
> claim with an explanation of why such material or
> information is necessary, and an explanation of the Plan's
> claim review procedure as set forth in this Section.

> If no action is taken by the Claims Coordinator on an
> Applicant's claim within 90 days after receipt by the
> Claims Coordinator, such application will be deemed to be
> denied for purposes of the following appeals procedure.

(Complaint, Ex. A, the Plan ¶ 8.12(a).)  The Plan also describes the appeals

procedure:

> Any Applicant whose claim for benefits is denied in whole
> or in part . . . may appeal from such denial to the
> Committee for a review of the decision by the entire
> Committee.  Such appeal must be made within three
> months after the denial provided above.

(Id., ¶ 8.13(b).)

Defendant contends that Plaintiff made a "claim for benefits" in 1992

which precipitated his lump sum distribution in February 1992.  However,

Defendant does not clearly explain its position concerning whether that lump sum

distribution was a grant or denial of Plaintiff's claim.  From Defendant's briefing it

appears that Defendant would describe the February 1992 lump sum distribution as

a "denial in part."  This is why Defendant can argue that, pursuant to paragraph

8.12(b), Plaintiff should have appealed this denial within three months of the lump

sum distribution.  Defendant further argues that Plaintiff's failure to appeal is the

failure to exhaust his administrative remedies which requires dismissal.  Defendant

considers Plaintiff's letters of February 16, 1999, and June 17, 1999, to be untimely

appeals from the original February 1992 claim.  (Def.'s Ex. C, Welding letter.)

Plaintiff interprets the events that transpired quite differently.

Plaintiff's complaint alleges that Plaintiff "has exhausted his administrative

5

remedies in that the Plan has denied both his June 17, 1999, claim and his February 16, 1999, appeal." (Complaint ¶ 13.) "The July 17, 1999,[1] claim was the first and only claim for benefits [Plaintiff] made to the Plan and/or the Plan fiduciary under the Plan's statutorily mandated claims procedures." (Complaint ¶ 14.) Thus, Plaintiff argues that the February 1992 lump sum distribution was not a "denial in part" as Defendant suggests. Accordingly, he argues that he was not required to take an appeal from that action. Furthermore, Plaintiff asserts that he did exhaust his administrative remedies by: first, filing a letter on February 16, 1999, requesting the Plan to recalculate his lump sum distribution which he asserts is a "claim for benefits;" and second, sending a letter on June 17, 1999, appealing the "silent denial" of his February 16, 1999 claim.

For the following reasons, the court disagrees with Defendant's interpretation. The court cannot find as a matter of law that the Plan's lump sum distribution to Plaintiff in February 1992 was a "denial in part." Therefore, without a denial, Plaintiff did not need to appeal his lump sum distribution, and thus the court cannot find that Plaintiff failed to exhaust his administrative remedies. First, as quoted more fully supra, pursuant to the Plan's requirements, if a claim is denied in whole or in part, "the Claims Coordinator [must] notify the Applicant in writing of the denial of the claim and notify such Applicant of his right to a review of the Claims Coordinator's decision by the Committee," setting forth "in a manner calculated to be understood by the Applicant, the specific reason for such denial, the

---

[1] Plaintiff appears to have erred in stating the date of the claim to be July 17, 1999. Plaintiff likely meant to reference the June 17, 1999 letter, but should have referenced February 16, 1999, as the first date of a "claim for benefits." In any event, at a motion to dismiss stage, the court considers only the allegations in a plaintiff's complaint. Therefore, the court is satisfied that Plaintiff's allegation is that he did not submit a claim for benefits in 1992, but only in 1999.

specific Plan provisions on which the denial is based . . . and an explanation of the Plan's claim review procedure. . ." (Complaint, Ex. A, the Plan ¶ 8.12(a).) It is undisputed that at the time of the lump sum distribution, Defendant did not notify Plaintiff that it was a denial in part, or provide any of the necessary information.[2] Furthermore, Defendant has not asserted that Plaintiff was even given any information concerning how the lump sum was calculated at the time it was distributed. Therefore, Plaintiff could have had no reason to think the lump sum distribution was a denial.[3]

The court also declines to follow Defendant's interpretation and find that the lump sum distribution was a denial in part such that Plaintiff was required to exhaust his administrative remedies, because of the policy implications of such a finding. If a lump sum distribution, without more, were interpreted to be a denial, then every applicant would need to hire a lawyer or accountant at the time of his distribution and have the calculation checked within the 90 day period when he must file an appeal. This would be required every time someone received such a benefit, without any reason to believe there is a cause of action. The court finds that this is too burdensome to be required of every applicant.

Some courts have found that ERISA actions based on alleged miscalculations of benefits are not subject to a plan's exhaustion requirements. The court in <u>Cavallo v. Utica-Watertown Health Ins. Co.</u>, 985 F. Supp. 72, 75-76

---

[2] ERISA itself also requires that every benefit plan provide notice in writing of any denial of a claim and the reasons for such denial. <u>See</u> 29 U.S.C. § 1133.

[3] Moreover, the distribution could not have been a "silent denial" as described in the final paragraph of ¶ 8.12(a) of the Plan, quoted <u>supra</u>, because such denials occur when no action is taken on the applicant's claim; this is clearly not the case when Plaintiff received a lump sum distribution in response to his claim.

(N.D.N.Y. 1997), judgment vacated on other grounds, 181 F.3d 82 (2d Cir. 1999),

held that an employee could maintain an action in federal court alleging that his

health insurer breached the contract under which the insurer provided health care

benefits to an employee and breached its fiduciary duty as administrator of the plan

by calculating its coinsurance liability by applying its percentage to one amount,

while calculating the employee's coinsurance liability by applying his percentage to

a different amount, resulting in the insurer's co-insurance liability being less than

the percentage for which the parties contracted.  The case was permitted to proceed

although the employee had not filed an appeal of the denial of his claim, as there

had, in fact, been no formal written denial by the defendant of the employee's claim.

   Another court, In re Blue Cross of Western Pennsylvania Litigation,

942 F. Supp. 1061 (W.D. Pa. 1996), held that employees challenging a health

insurer's method of computing copayments based on average and customary charges

instead of the lower rates that the insurer actually paid to health providers were not

required to exhaust their administrative remedies.  The court stated that the action

for enforcement of the terms of the respective plans and recovery of benefits due

was not an appeal of a denial of benefits because the plaintiffs did not claim that

their benefits were wrongly denied; rather, the plaintiffs claimed that they

unknowingly paid excessive amounts for medical treatment due to the defendant's

undisclosed conduct.  Because the claim was not an appeal from a denial of benefits,

the court said the employees were not required to exhaust administrative remedies.

The court further held that "[e]ven if [that count] were characterized as an appeal of

a denial of benefits, plaintiffs would not be obligated to exhaust the internal appeals

process because defendant's failure to notify plaintiffs of any denial of benefits

released plaintiffs from the duty to adhere to the internal procedure." Id. at 1064 (citing Berger v. Edgewater Steel, 911 F.2d 911, 916 n.4 (3d Cir. 1990)).

Based on the foregoing, and taking all the facts in Plaintiff's complaint as true, the court cannot hold that the lump sum distribution Plaintiff received in February 1992 was a denial of Plaintiff's claim. Therefore, Plaintiff was not required to exhaust administrative remedies at that time. Accordingly, Defendant's motion to dismiss Plaintiff's complaint on this ground is denied.

## B. **Statute of Limitations**

Defendant also argues that Plaintiff's complaint should be dismissed because the action was filed after the statute of limitations had run. The parties do not dispute the duration of the statute of limitations,[4] but only when Plaintiff's cause of action accrued for the purpose of deciding when the limitations period began. Defendant asserts that Plaintiff's cause of action accrued when he received his lump sum distribution in February 1992. Plaintiff, however, contends that his cause of action did not accrue until he received Defendant's "denial" on August 16, 1999, of his June 17, 1999, "appeal" of his February 16, 1999, "claim" for additional benefits based on Defendant's miscalculation. There is case law to support each parties' position. For the reasons that follow, however, the court finds that neither approach

---

[4]    ERISA provides no explicit limitations period for bringing a private cause of action under § 1132(a)(1)(B). Therefore, the Third Circuit has instructed courts to look to the law of the forum state for the most closely analogous limitation provision. See Vernau v. Vic's Market, Inc., 896 F.2d 43, 45 (3d Cir. 1990). However, Defendant notes that the federal courts within Pennsylvania are somewhat split on whether a three year or four year statute of limitations period applies to a claim for wrongful denial of benefits pursuant to § 1132(a)(1)(B). See Gluck v. Unisys Corp., 960 F.2d 1168, 1181 (3d Cir. 1992); Walker v. SmithKline Beecham & Chemco, No. 96-5273, 1997 WL 137331, at *5 (E.D. Pa. March 24, 1997) ( applying three year statute of limitations); Blahuta-Glover v. Cyanamid Long Term Disability Plan, No. 95-7069, 1996 WL 220977, at *5 n.4 (applying four year statute of limitations). Nevertheless, as applied to the facts of the instant action, as discussed infra, whether the limitations period is three years or four years does not affect the court's decision.

is the most equitable outcome.  Instead, the court finds that Plaintiff's cause of action accrued when he knew or should have known that he had a cause of action based on Defendant's alleged miscalculation.  At this motion to dismiss stage, the court cannot decide when Plaintiff's cause of action accrued.  Instead, taking the facts in Plaintiff's complaint as true, at the time Plaintiff received his lump sum distribution he did not know that he had a potential cause of action against Defendant.  (Complaint ¶ 15.)  Plaintiff's complaint does not indicate when he knew or should have known that Defendant may have miscalculated his benefits. Therefore, the court cannot hold as a matter of law that Plaintiff's cause of action accrued more than three years[5] before he filed this suit.  Accordingly, the court cannot find that Plaintiff's claim is barred by the statute of limitations.

Defendant argues that when Plaintiff received his lump sum distribution, he could have discovered whether he had a cause of action by reviewing Defendant's calculations and could have challenged the method of computation at that time.  Defendant further asserts that Plaintiff has failed to allege that at any time since February 1992 has he received any additional information that could have put him on notice that he had a cause of action against Defendant that Plaintiff did not already possess.

Defendant presents certain policy rationales that lend some support to its proposal.  First, Defendant asserts that if applicants do not challenge their distributions at the time they are received, then plan administrators would be unable to accurately determine adequate funding levels until many years after lump sum distributions were accepted.  Second, Defendant asserts that if an applicant's cause

---

[5] See supra note 4.

of action does not accrue until he files a benefit claim asserting a miscalculation of benefits, then an applicant can essentially sit on his cause of action indefinitely, and thus nullify the statute of limitations.

While Defendant admits that "the Third Circuit has not squarely addressed the accrual issue in a miscalculation of benefits case under ERISA § 1132(a)(1)(B)," (Def.'s Mem. of Law. at 12,) Defendant does present cases supporting its accrual position.   Defendant cites two courts in the District of Maryland that have held the statute of limitations to accrue when the allegedly miscalculated lump sum distribution was made.   The court in Ladzinksi v. Meba Pension Trust, 951 F. Supp. 570, 574 n.1 (D. Md. 1997), stated that "the purpose of the statute of limitations would be defeated if [the plaintiff] were able to preserve his ERISA action indefinitely."   In the other case, Kline v. Orbital Sciences Corp., No. 97-3120, slip op. (D. Md. Dec. 31, 1997), the plaintiff had an almost identical cause of action against the same Defendant Plan at issue in the instant litigation.   That court dismissed the case as beyond the statute of limitations, which it held accrued when the lump sum distribution was made, because the "alleged error should have been evident immediately upon inspection of the check received."   Id., No. 97-3120, slip op. at 3.   In McElwaine v. US West, Inc., 176 F.3d 1167, 1170 (9th Cir. 1999), the Ninth Circuit Court of Appeals also appears to have found that the statute of limitations in an ERISA lump sum miscalculation case accrued when the plaintiff received the lump sum.   However, the appeals court did not explain why the limitations period accrued on that date.

Plaintiff argues that a lump sum distribution is not tantamount to a denial of a claim, and relies on cases that have held that the limitations period does

11

not accrue at the time of the distribution. Plaintiff argues that the limitations period should accrue when an applicant exhausts his administrative remedies, after a denial of benefits. Plaintiff argues that to hold otherwise, and follow Defendant's approach, would be unfair to the lay applicant who would have "to be constantly alert for 'errors and abuses that might give rise to a claim and start the statute of limitations running.' " Rodriguez v. Meba Pension Trust, 872 F.2d 69, 72 (4th Cir. 1989) (quoting Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1501 (9th Cir. 1984)). Plaintiff relies on a different court from the District of Maryland, Kohl v. Assoc. of Trial Lawyers of America, No. 97-3264, slip op. (D. Md. Feb. 11, 1998), which held that the limitations period accrued when the plaintiff's formal claim for benefits was denied by Defendant, rather than when the plaintiff received her lump sum distribution two years earlier, even though the plaintiff's lump sum was 12,000 dollars less than she had been told by the defendant that she would receive. Other courts holding similarly are Kiefer v. Ceridian Corp., 976 F. Supp. 829 (D. Minn. 1997); Esden v. Retirement Plan of the First National Bank of Boston, 182 F.R.D. 432 (D. Vt. 1998), reversed on other grounds, No. 99-7210, 2000 WL 143449 (2d Cir. Sept. 12, 2000); and Miele v. Pension Plan of New York State Teamsters Conference Pension & Retirement Fund, 72 F. Supp.2d 88 (E.D.N.Y. 1999).

        As discussed in Section III(B), supra, this court believes that requiring all applicants who receive a lump sum benefit distribution to determine whether they have a cause of action immediately, arguably requiring the services of a lawyer or accountant, is too burdensome without any indication that the calculation is incorrect. The court finds that a lump sum distribution is more akin to a grant of

benefits than a denial in part, and more likely than not, fails to put an applicant on notice that he has a cause of action. However, the court also believes that allowing an applicant to unilaterally prevent his limitation period from accruing, after he learns of his cause of action, by delaying filing a benefit claim with a plan is also unacceptable. This court believes that the most judicious accrual date is when an applicant knows or should know that he has a cause of action against the plan based on a miscalculation. See Cotter v. Eastern Conference of Teamsters Retirement Plan, 898 F.2d 424, 429 (4th Cir. 1990) ("applying the alternative approach of determining the time at which some event other than a denial of a claim should have alerted [the plaintiff] to his entitlement to the benefits he did not receive during his employment"); cf. Wise v. Dallas & Mavis Forwarding Co., 753 F. Supp. 601, 607 (W.D.N.C. 1991) (applying the alternative approach of determining the time when some event should have alerted the employee of his cause of action).

　　　　The cause of action in an ERISA case normally does not accrue until a claim for benefits has been made and formally denied. See Cotter, 898 F.2d at 428-29 (citing Rodriguez v. MEBA Pension Trust, 872 F.2d 69, 72 (4th Cir.1989)); see also, Tanzillo v. Local Union 617, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 769 F.2d 140, 144 (3d Cir. 1985) (holding that the accrual date in ERISA cases is when pension benefits have been granted or denied by fund trustees). However, this traditional accrual date determination is more difficult in cases where a lump sum distribution is awarded but allegedly miscalculated.

　　　　The court believes that the policy of determining when an applicant knew or should have known of his cause of action would often fit within the

13

traditional statute of limitations accrual practice.  An applicant may learn at the time of his lump sum distribution that he has a cause of action, e.g., when the distribution includes a comprehensive calculation.  Similar to a traditional denial, the explanation could set forth in a manner designed to be understood by the applicant, the calculation from which an applicant could ascertain that he has a cause of action.  Alternatively, as in the cases supporting Plaintiff, see supra, an applicant may not have known or be found to should have known that he had a cause of action until he receives a denial from the plan of a claim for additional benefits as a result of an alleged miscalculation.  See, e.g., Kiefer, 976 F. Supp. at 842-43.

Considering the posture of the case sub judice, the court cannot hold as a matter of law when Plaintiff knew or should have known that he had a cause of action.  According to Plaintiff's complaint and briefing, at the time Plaintiff received his lump sum distribution he did not know that he had a potential cause of action against Defendant, nor could he have known.  (Complaint ¶ 15; Pl.'s Mem. in Opp. at 14.)  Accordingly, the court will deny Defendant's motion to dismiss.

### C. Motion to Transfer

Alternatively, Defendant seeks to have the instant action transferred to the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1404(a), which provides in pertinent part: "(a)  For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In addition to the three factors enumerated in the statute, the court should " 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different

14

forum.' " <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995) (quoting 15 Charles A. Wright <u>et al.</u>, <u>Federal Practice and Procedure</u> § 3847).  While the court has broad discretion in deciding a motion to transfer, the movant has the burden of establishing its propriety.  <u>See id.</u>

   Defendant contends that the instant action would be litigated more conveniently in Maryland.  It correctly indicates that most of the witnesses who administered the Plan, as well as most of the putative class members, are located in Maryland or the metropolitan Washington, D.C., area.  However, convenience to the witnesses is only a factor to the extent that the witnesses may actually be unavailable for trial in one of the fora.  <u>See BABN Technologies Corp. v. Bruno</u>, 25 F. Supp.2d 593, 598 (E.D. Pa. 1998).  Defendant has not produced any evidence that certain witnesses may not be available because the action is pursued in this district.

   Defendant also argues that this action is better transferred to Maryland where a district court has already dismissed a case where a different plaintiff brought an action under ERISA against the identical Plan.  <u>See Kline v. Orbital Sciences Corp.</u>, No. 97-3120, slip op. (D. Md. Dec. 31, 1997)  However, while judicial economy would have been served by consolidation of this suit with <u>Kline</u> if they were proceeding at the same time, the case <u>sub judice</u> was not filed until <u>Kline</u> had already been decided.  Therefore, this interest does not support Defendant's motion.  Defendant also argues that "[a]llowing this action to proceed not only would require this Court to duplicate work already done by Judge Smalkin [in <u>Kline</u>,] but also would needlessly risk inconsistent decisions."  (Def.'s Mem. of Law at 16.)  However, Judge Smalkin's decision in <u>Kline</u> dismissed the plaintiff's case against the Plan at the motion to dismiss stage for failure to timely file his action.  In

the case <u>sub judice</u>, Defendant's instant motion is to dismiss, or alternatively to transfer. This court has already been required to address the statute of limitations question, <u>supra</u>, the only issue that Judge Smalkin decided. Therefore, from this point forward, this court no longer risks duplicate work or inconsistent decision.

Plaintiff correctly indicates that a plaintiff's choice of forum is entitled to considerable deference, particularly when a plaintiff resides in the district where he brings the action. See <u>Duman v. Crown Zellerbach Corp.</u>, 107 F.R.D. 761, 765 (N.D. Ill. 1995). However, that factor is considerably less important when the plaintiff represents a class. See <u>Boton v. Tesoro Petroleum Corp.</u>, 549 F. Supp. 1312-14 (E.D. Pa. 1982) (citing <u>Koster v. Lumbermens Mutual Casualty Co.</u>, 330 U.S. 518, 524 (1947)).

While a close decision, the court finds that Defendant has failed to carry its burden of demonstrating that convenience significantly favors transferring this action. This is especially true when the jurisdictions in question, Pennsylvania and Maryland, are bordering states. In <u>Blumenthal v. Management Assistance, Inc.</u>, 480 F. Supp. 470, 474 (N.D. Ill.1979), a class action against a corporation, the court concluded, "[a]t best the factors considered by the court only slightly favor a transfer . . . transfer will be denied where, after balancing all the factors, the equities lean but slightly in favor of the movant." See also <u>Duman</u>, 107 F.R.D. at 766 (same). Accordingly, the court will deny Defendant's motion to transfer.

**IV**        <u>Conclusion</u>

In accordance with the foregoing discussion, the court finds that Defendant's motion to dismiss, or in the alternative, to transfer should be denied. An appropriate order will issue.

SYLVIA H. RAMBO
United States District Judge

Dated:  October  *25*, 2000.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| PAUL CAUFIELD, and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 4:07-cv-16-SEB-WGH |
| COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, | ) ) ) ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S ORDER ON
TELEPHONIC STATUS CONFERENCE**

This matter came before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, by telephone, at 10:00 a.m., on December 5, 2007, for a conference under Rule 16, Federal Rules of Civil Procedure.  The parties were represented by counsel.

Thereupon the following **ORDERS** are entered:

1.  The parties advised the Magistrate Judge that the Abelman Complaint, now filed as Cause No. 1:07-cv-1554-DFH-JMS, is pending.  Judge Barker's order staying this matter until that decision is made has now expired (Docket Nos. 56, 57), and the parties should proceed to complete briefing on the currently pending Motion to Dismiss.  Any response to the supplemental briefing provided by the Defendant shall be concluded by the Plaintiff on or before

December 14, 2007.  Any final reply to the Plaintiffs' response shall be filed on or before December 21, 2007.

2. This matter is set for a **TELEPHONIC STATUS CONFERENCE** to establish a schedule for the completion of this matter on **WEDNESDAY, FEBRUARY 27, 2008,** at 9:15 a.m., New Albany time (EST), before the Magistrate Judge.  **By copy of this entry, Plaintiff's counsel in Cause No. 1:07-cv-1554-DFH-JMS is directed to participate in this conference call by calling the court's bridge line.**  Each counsel wishing to participate in this conference shall individually place a call to the court at the time of the conference.[1]

This order has been formulated after a conference at which the respective parties have appeared.  Any party shall file any corrections or additions within ten (10) days after receipt of this order.

**SO ORDERED.**

**Dated:**  December 19, 2007

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

---

[1]This is the court's bridge line.  Since there will probably be more than six participants for this conference call, you should first try to call (812) 434-6403 at the time of the conference.  If you are not immediately connected to the conference call, you should hang up and call (812) 434-6402.  The first person to call one of the above numbers will hear a tone and then dead air.  As each additional person calls one of the two numbers listed above, they will hear a tone and then will be able to talk to all other persons who have previously connected to the conference call.  In the event you are unable to connect to the conference by using either of the two numbers listed above, you should immediately place a call to (812) 434-6430.

**Electronic copies to:**

Jeremy P. Blumenfeld
MORGAN LEWIS & BOCKIUS LLP
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

William K. Carr
LAW OFFICE OF WILLIAM K. CARR
bill@pension-law.com

Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
tchung@morganlewis.com

Joseph J. Costello
MORGAN LEWIS & BOCKIUS LLP
jcostello@morganlewis.com

Philip John Gutwein II
BAKER & DANIELS
philip.gutwein@bakerd.com

Diane Moore Heitman
KOREIN TILLERY LLC
dheitman@koreintillery.com

Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
btjohnson@morganlewis.com

T. J. Smith
tjsmith@smithhelman.com

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com

**Copies to Plaintiff's counsel in
Cause No. 1:07-cv-1554-DFH-JMS:**

William Henry Blessing
119 East Court Street
Suite 500
Cincinnati, OH  45202

Eli  Gottesdiener
GOTTESDIENER LAW FIRM PLLC
498 7th Street
Brooklyn, NY  11215

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

PAUL CAUFIELD,       )
            )
    Plaintiff,      )
            )   Cause No.  4:07-cv-00016-SEB-WGH
   vs.        )
            )
COLGATE-PALMOLIVE COMPANY   )
EMPLOYEES' RETIREMENT INCOME   )
PLAN,           )
            )
    Defendant.     )

**PLAINTIFF'S RESPONSE TO**
**ORDER TO SHOW CAUSE WHY STAY SHOULD NOT BE LIFTED**

On December 5, 2007, this Court issued an Order to Show Cause Why Stay Should Not be Lifted.  In it, the Court observed that it had stayed consideration of Defendant's Motion to Dismiss pending a decision by the U.S. District Court for the Southern District of Ohio whether to transfer Abelman v. Colgate Palmolive Co. ("Abelman") to this Court, and that Abelman had since been transferred.  The Court therefore asked the parties why the stay should not be lifted.  Defendant responded to the Order stating that the stay should be lifted and that this Court "may proceed to dispose of the Plan's Motion to Dismiss."  Plaintiff disagrees.

First, Defendant sought a stay of consideration of its Motion to Dismiss on the ground that it made no sense to decide the Motion when this case and Abelman are virtually identical, and it had filed a motion to transfer Abelman to be consolidated with this case.  Although Abelman has been transferred, it has been assigned to Judge David F. Hamilton and has not yet been consolidated with this case.  Defendant has filed a Notice of Related Action (Abelman Doc. 6), but as of yet, the case remains on Judge Hamilton's docket.  Until the cases are consolidated and the presiding judge decides how the two cases will be handled, the reason the Court granted

the stay in the first instance still exists.  The cases are related and involve many of the same issues, including the statute of limitations questions at issue in the pending Motion to Dismiss.  If Abelman is consolidated with this case, the Court must give the Abelman plaintiffs an opportunity to make their own arguments with respect to the statute of limitations.  If the two cases are not going to be handled together, Plaintiff does not understand why the stay was entered in the first place and the entire basis for transferring Abelman was incorrect.

Second, in a telephone status conference on December 5, 2007, Magistrate Judge Hussmann informed the parties that Judge John D. Tinder has been nominated for appointment to the Seventh Circuit Court of Appeals and that when Judge Tinder takes his seat on the Seventh Circuit, this Court intends to redistribute its caseload amongst the remaining judges.  Judge Hussmann indicated that this redistribution of cases would involve not only reassigning Judge Tinder's cases, but possibly reassigning cases between other judges to ensure that the Court's docket is equitably distributed amongst its members.

Again, since being transferred, Abelman has been assigned to Judge Hamilton.  In light of the Court's apparent intent to reorganize its docket after Judge Tinder's departure, it is unclear whether this case will remain with your Honor or whether Judge Hamilton (or even another Judge) will end up handling this case and Abelman, assuming they are consolidated.  It is premature to proceed with deciding the Motion to Dismiss when at this point it is unknown who will ultimately be handling the cases.

Thus, Plaintiff respectfully suggests that the previously-entered stay remain effective until 1) it is determined whether Abelman will be consolidated with this case and, if so, after the Court

and parties determine how the two cases will be handled; and 2) the Court completes its

reassignment of cases following Judge Tinder's departure for the Seventh Circuit.

Respectfully submitted,

/s/ Douglas R. Sprong
Douglas R. Sprong
Diane Moore Heitman
Korein Tillery, LLC
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile
dsprong@koreintillery.com
dheitman@koreintillery.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*

3

## CERTIFICATE OF SERVICE

A copy of the foregoing was e-mailed on December 21, 2007, per the Court's electronic filing system, to:

Theresa J. Chung
Joseph J. Costello
Jeremy P. Blumenfeld
Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5295/5258/5584 - Telephone
(215) 963-5001 - Facsimile
tchung@morganlewis.com
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
btjohnson@morganlewis.com

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

/s/ Douglas R. Sprong

4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| PAUL CAUFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Cause No.  4:07-cv-00016-SEB-WGH |
| vs. | ) |
| | ) |
| COLGATE-PALMOLIVE COMPANY | ) |
| EMPLOYEES' RETIREMENT INCOME | ) |
| PLAN, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO**
**ORDER TO SHOW CAUSE WHY STAY SHOULD NOT BE LIFTED**

Plaintiff files this supplemental response to inform the Court of proceedings in related

case Abelman v. Colgate-Palmolive Co., et al., Case No. 1:07-cv-01554-DFH-JMS ("Abelman")

and a *third* related action pending in the Southern District of New York of which the Court may

not be aware – Proesel v. Colgate-Palmolive Co. Employees' Ret. Income Plan, et al., Case No.

1:07-cv-09515-BSJ ("Proesel").

Defendant successfully sought to have Abelman transferred from the Southern District of

Ohio to this District to be consolidated with this case.  Abelman is currently assigned to Judge

Hamilton, but defendant asked that Abelman be transferred to your Honor under S.D. Ind. L.R.

40.1(f) in its Notice of Related Action (Abelman Doc. 6).

On January 15, 2008, the Abelman plaintiffs moved to transfer Abelman to the Southern

District of New York to be consolidated with Proesel.  *See* "Plaintiffs' Motion to Transfer Venue

and to Stay Proceedings Pending a Ruling on this Motion," attached as Exhibit 1.  Although

Proesel was filed in October 2007, Defendant has inexplicably failed to make this Court or Judge

Hamilton aware of Proesel.  Further, the defendant in Proesel recently moved to transfer Proesel

to this district to be consolidated with this case and <u>Abelman</u>.  *See* "Memorandum of Law in

Support of Motion for Transfer of Venue to the Southern District of Indiana," attached as Exhibit

2.

In an attempt to help the Court resolve the convoluted situation created by the competing

transfer motions filed regarding the three lawsuits, Plaintiff hereby advises the Court that he does

not object to his case being consolidated with <u>Abelman</u> or to both cases being transferred to the

Southern District of New York under 28 U.S.C. § 1404(a) to be consolidated with <u>Proesel</u>, if the

Court determines that to be the appropriate course of action.  Indeed, while Plaintiff is content

litigating before this Court, the addition of the <u>Proesel</u> case suggests that New York may be the

most convenient forum for all parties.

Venue is clearly proper in the Southern District of New York under ERISA § 502(e)(2),

29 U.S.C. § 1132(e)(2), in that it is the district "where the plan is administered," and "where a

defendant resides or may be found."  Defendant can have no objection to this case being

transferred to the Southern District of New York along with <u>Abelman</u>.  In its Motion to Dismiss,

Defendant averred that New York is where Colgate-Palmolive's headquarters are located, where

the Plan administrator is located and where the Plan is administered.  *See* "Memorandum of Law

in Support of Defendant's Motion to Dismiss Plaintiff's Complaint" (Doc. 25) at page 18.  In its

motion to transfer <u>Abelman</u> to this District, defendant also asserted:

> Virtually all of the documents that are potentially relevant to this action, including
> Plan documents and Plan records, are maintained in New York.  The only
> documents that may not be in New York are documents in the possession of each
> class member, which documents likely are located throughout the country where
> each participant lives.  Thus, relevant documents and other evidence will have to
> be transferred regardless of which court hears the case.  Moreover, any potential
> witnesses in this matter are similarly located in New York.  Those individuals

2

with intimate knowledge of the Plan's administration work at Colgate's headquarters in New York.

*See* "Memorandum of Law in Support of Defendants' Motion to Transfer Venue to the Southern District of Indiana" at p.11, n.8 (internal citations omitted), attached as Exhibit 3.  Further, this case has been stayed at Defendant's request for most of its life, so a transfer to New York would not appear to result in wasted judicial time or resources.

/s/ Douglas R. Sprong
Douglas R. Sprong
Diane Moore Heitman
Korein Tillery, LLC
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844 - Telephone
(314) 241-3525 - Facsimile
dsprong@koreintillery.com
dheitman@koreintillery.com

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383 - Telephone
(303) 296-6652 - Facsimile
Firm@pension-law.com

T.J. Smith
T.J. Smith, LLC
600 West Main Street, Suite 200
Louisville, KY 40202
(502) 589-2560 - Telephone
(502) 568-3600 - Facsimile
Tjsmith@smithhelman.com

*Attorneys for Plaintiff*

3

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was e-mailed on February 13, 2008, per the Court's electronic filing system, to:

Theresa J. Chung
Joseph J. Costello
Jeremy P. Blumenfeld
Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5295/5258/5584 - Telephone
(215) 963-5001 - Facsimile
tchung@morganlewis.com
jcostello@morganlewis.com
jblumenfeld@morganlewis.com
btjohnson@morganlewis.com

Ellen E. Boshkoff
Philip J. Gutwein II
BAKER & DANIELS LLP
300 N. Meridian Street
Suite 2700
Indianapolis, IN 46204
(317) 237-0300 - Telephone
(317) 237-1000 - Facsimile
ellen.boshkoff@bakerd.com
philip.gutwein@bakerd.com

*Attorneys for Defendant*

/s/ Douglas R. Sprong

4

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL ABELMAN, *et al.* )<br><br>On behalf of themselves and )<br>All others similarly situated )<br><br>Plaintiffs, )<br><br>v. )<br><br>COLGATE-PALMOLIVE CO., *et al.* )<br><br>Defendants. )<br>—————————————————— ) | Cause No. 1:07-cv-01554-DFH-JMS |

**PLAINTIFFS' MOTION TO TRANSFER VENUE AND TO STAY
PROCEEDINGS PENDING A RULING ON THIS MOTION**

On November 28, 2007, this putative ERISA class action (*Abelman*), originally

filed in the Southern District of Ohio in August 2007, was transferred here on

Defendants' motion brought under 28 U.S.C. § 1404(a) and the first-to-file rule.  *See*

Docs. 8, 35, *Abelman, et al.  v. Colgate-Palmolive Co., et. al.,* 2:07-cv-00793-MHW-

NMK (S.D. Ohio).  The ostensible reason for the transfer was so this case could be

consolidated with an earlier-filed, related case, *Caufield v. Colgate-Palmolive Company*

*Employees' Retirement Income Plan,* No. 4:07-CV-0016SEB-WGH (S.D. Ind) where a

fully-briefed motion to dismiss on statute of limitations grounds was (and is currently)

pending before Judge Barker, *see* Docs. 24-25, *Caufield.*  To the Ohio District Court,

Defendant Colgate-Palmolive Company ("Colgate") and Defendant Colgate-Palmolive

Company Employees' Retirement Income Plan (the "Plan") argued that *Abelman's*

transfer here was required "[t]o promote judicial efficiency, and to avoid duplication,



EXHIBIT
tabbies®

wasted resources, the risk of inconsistent decisions and unnecessary expense." Doc. 12 at

1-2, *Abelman* S.D. Ohio.

Yet once this case arrived in this District, the Plan (one of the two defendants here

but the sole defendant in *Caufield*) seemed to forget all about that, telling Judge Barker in

December that she should go ahead and rule on the Plan's limitations arguments, *see*

*Caufield* Doc. 57 at 1, without awaiting the consolidation of this case with *Caufield,* even

though Defendants have repeated in their motion to partially dismiss *Abelman* (Docs. 9-

10) the exact limitations arguments asserted in *Caufield.*[1]

Proceeding in this fashion runs directly contrary to the purposes Defendants said

they sought to promote by dislodging *Abelman* from Ohio in the first place.  Defendants

specifically argued that "allowing [*Abelman*] case to proceed in two different forums will

undermine the interests of justice, waste the resources of the parties and the courts, and

potentially result in inconsistent ad.judication of the same issues. **Allowing transfer to**

**the Southern District of Indiana will avoid these problems** and permit this case to be

litigated in the most efficient manner." Doc. 12 at 1-2, *Abelman* S.D. Ohio (emphasis

added).  But in urging a separate ruling by a separate judge on a separate motion to

dismiss, Defendants risk re-creating the identical problems they said required *Abelman*'s

transfer.  Indeed, should Judge Barker happen to endorse one or more of the Plan's

asserted grounds for having Mr. Caufield's case dismissed as time-barred, some of the

*Abelman* Plaintiffs may find themselves time-barred, practically speaking, without ever

being given the opportunity to be heard, something which Defendants promised the Ohio

court would *not* happen if *Abelman* were transferred here. Doc. 21, *Abelman* S.D. Ohio

---

[1] In this case, Defendants have not moved to dismiss an anti-backloading claim raised by the
*Abelman* plaintiffs that is not contained in the *Caufield* complaint.  *See* Docs. 9-10, and Doc. 8
(Answer).

2

at 6 ("The only efficient use of the Court's and the parties' resources in this case is to transfer this case to Indiana without delay so that the court in the first-filed action can decide the merits of this case, with the benefit of briefing from **all** parties") (emphasis added).[2]

Plaintiffs were about to send this Court a Local Rule 16.2 statement of the action which they considered appropriate that this Court take in light of all this, when, because of a mailing Defendants misdirected to undersigned counsel, they learned that there is in fact a *third* related case, the existence of which the Plan failed to disclose to this Court in its Notice of Related Action (Doc. 6, referencing only *Caufield*) and failed to disclose to Judge Barker in re-urging her to issue dispositive rulings in *Caufield* alone. This third related case *Proesel v. Colgate-Palmolive Company Employees' Retirement Income Plan, et al.,* 1:07-cv-09515-BSJ (S.D.N.Y.), was filed in the Southern District of New York and served on Defendants in late October 2007, and counsel for Defendants here and the Plan in *Caufield* entered their appearances in that case in **early November**. *See* Ex. 1, *Proesel* Docket entries. Rather than alert Judge Barker to the existence of the New York action and file a simple transfer motion modeled on the one they had filed in *Abelman*, Defendants sought and obtained an extension of time until **late January** to respond to the *Proesel* complaint. *See* Doc. 7, *Proesel*. Confronted last week with their failure to disclose the existence of the New York action to, in particular, Judge Barker, Defendants said they intend to move to transfer the New York case to Indiana but would not and/or could not explain why as of last week, two months after they entered their appearance in

---

[2] Filing a Notice of Related Action in this case (Doc. 6) and noting that for Judge Barker (Doc. 57, *Caufield*) does not change the fact that Defendants are currently seeking separate rulings by separate judges on identical issues in putative class actions with overlapping classes.

3

that action, they had not done so.[3]

"For the convenience of the parties and witnesses, and in the interest of justice," 28 U.S.C. § 1404(a), this case, and *Caufield,* should be consolidated with the New York action in New York. Colgate-Palmolive Co. is a New York corporation, headquartered in New York. Doc. 10 at 18, *Abelman* S.D. Ind. The Colgate Plan is administered in New York and the Plan Administrator located in New York. *Id.* The *Abelman* Plaintiffs did not want to be transferred from Ohio but now that they have been and it turns out there is a third case in New York, they submit New York is clearly the most convenient for consolidation of the three actions. As Defendants themselves pointed out:

> Virtually all of the documents that are potentially relevant to this action, including Plan documents and Plan records, are maintained in New York. The only documents that may not be in New York are documents in the possession of each class member, which documents likely are located throughout the country where each participant lives. Thus, relevant documents and other evidence will have to be transferred regardless of which court hears the case. Moreover, any potential witnesses in this matter are similarly located in New York. Those individuals with intimate knowledge of the Plan's administration work at Colgate's headquarters in New York.

Doc. at 11 n.8 (citations to supporting declaration omitted).[4]

In addition, Defendants are arguing in both *Caufield* and *Abelman* that New York law should be applied in determining whether many of the claims asserted should even be permitted to go forward in light of statute of limitations concerns because "New York has

---

[3] Defendants filed their transfer motion in *Abelman* in Ohio within a month of service of the complaint. An hour or two's word processing work, in essence, is all it would have taken to have transformed the *Abelman* motion to transfer into a *Proesel* motion to transfer which still has not been filed.

[4] Venue is clearly proper in the Southern District of New York, indeed for each of the four alternative bases for venue provided by ERISA. ERISA § 502(e), 29 U.S.C. 1132(e) ("may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found").

the 'most significant relationship' to the claims alleged." Doc. 25 at 13, *Caufield*

(citation omitted); *see also id.* ("New York is the only jurisdiction with which (for

purposes of this litigation) all the putative class members have any meaningful contact");

Doc. 10 at 19, *Abelman*, S.D. Ind. According to what Defendants themselves find

relevant, it is a mystery that Defendants themselves have not initiated transfer of *Abelman*

and *Caufield* to New York.[5]

Be that as it may, Defendants, through counsel, were unable and/or unwilling to

explain why, for well over 2 months, they failed to disclose the existence of the New

York action to this Court (Defendants omitted mention of this fact in their Notice of

Related Action, Doc. 6, a full month after filing their appearance in *Proesel*), and to

Judge Barker (in urging her to reach the merits of *Caufield* knowing there were two

overlapping cases then pending before two different judges and that Judge Barker would

otherwise have no way of knowing that). The only thing Defendants could or would say

by way of explanation was that they did not disclose the existence of the New York

action is that they did not believe they had an affirmative ethical obligation to do so and

that they believe consolidation in Indiana is appropriate forum under the first-to-file rule.

Defendants' first-to-file contention lacks merit. The fact that *Caufield* was filed

here first is irrelevant at this point or at least cannot overcome all of the compelling

§ 1404(a) reasons Defendants themselves placed into the record indicating consolidation

the three cases in New York is the best solution. Indeed, many of the concerns reflected

in the first-filed rule center on the first-filing **plaintiff**, not defendants, and in this case,

Mr. Caufield, through counsel, has informed undersigned counsel that he would not

---

[5] Plaintiffs, who last week invited Defendants to file a transfer motion, are only filing the instant
motion because it appears that Defendants will not do so.

oppose consolidation of the three cases in New York.[6] Nor would a transfer of *Caufield* to New York risk any meaningful loss of judicial economy or efficiency because nothing of substance has yet happened in *Caufield.* The parties may have briefed the limitations issue but there is no indication that Judge Barker has set to work on resolving it. The parties certainly have not appeared before her for oral argument (or otherwise) and the backloading claims raised in *Abelman* which Defendants have not moved to dismiss are not even presented in *Caufield* though they are in the New York action.

### Conclusion

This action should be transferred to the Southern District of New York. Pending a ruling on this instant motion, the consolidation of all three cases and the filing of one consolidated and amended complaint, further proceedings on Defendants' motion for partial dismissal the *Abelman* complaint be stayed.[7]

---

[6] The same is true, not surprisingly, in the case of the plaintiff in *Proesel:* her counsel have informed undersigned counsel that they are not opposed to *Abelman* and *Caufield* being consolidated with their case in New York.

[7] Since Wednesday, January 9, 2008, when Plaintiffs first apprised Defendants of Plaintiffs' discovery of the existence of *Proesel,* Plaintiffs have been trying to ascertain Defendants' position as to whether they would oppose a brief stay of proceedings until the venue question is sorted out. Despite a reiterated request during a second lengthy telephone conversation on Friday, January 11, 2009, Plaintiffs have received no answer as of noon today, Tuesday, January 15, 2009. *Compare* Doc. 21 at 7, *Abelman* S.D. Ohio (Defendants arguing that "[a]llowing two separate courts to adjudicate the same legal issues on behalf of the same putative class is inefficient, impractical, and, in this case, wholly avoidable and unnecessary").

Dated:  January 15, 2008                    Respectfully submitted,


                    ____/s Eli Gottesdiener_
                    Eli Gottesdiener
                    Gottesdiener Law Firm, PLLC
                    498 7th Street
                    Brooklyn, New York 11215
                    Phone:  (718) 788-1500
                    Fax:     (718) 788-1650
                    Email:   eli@gottesdienerlaw.com

                    *Counsel for Plaintiffs and the proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2008, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to Defendants, through below listed counsel, by operation of the Court's electronic filing system.

> Joseph J. Costello
> Jeremy P. Blumenfeld
> Theresa J. Chung
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA  19103
>
> Ellen E. Boshkoff
> Philip J. Gutwein II
> Baker & Daniels LLP
> 300 North Meridian Street, Suite 2700
> Indianapolis, Indiana  46204

/s/Eli Gottesdiener
Eli Gottesdiener

EXHIBIT 2

# IN THE UNITED STATES DISTRICT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARI PROESEL AND PAMELA HOSIE, et al. | |
| Plaintiffs, | |
| vs. | Case No.  07-CIV-9515-BSJ-KNF |
| COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, COLGATE-PALMOLIVE COMPANY, as Plan Administrator, | Judge Barbara S. Jones |
| | Magistrate Judge Kevin N. Fox |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR TRANSFER OF VENUE TO THE SOUTHERN DISTRICT OF INDIANA

Joseph J. Costello*
Jeremy P. Blumenfeld*
Theresa J. Chung (TC3200)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Attorneys for Defendants Colgate-Palmolive Company Employees' Retirement Income Plan and Colgate-Palmolive Company

*Admitted *pro hac vice*



EXHIBIT
2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT FACTUAL BACKGROUND.......................................................... 2

      A.      On February 12, 2007, Caufield Filed Suit Against The Plan In The
Southern District Of Indiana, Seeking To Represent A Nationwide Class
Of Plan Participants In ERISA Claims. ................................................................ 2

      B.      On August 13, 2007, Plaintiffs Paul Abelman And Valerie R. Nutter Filed
A Nearly Identical Case to *Caufield*, And That Case Is Now Pending in
the Southern District of Indiana. .......................................................................... 3

      C.      On October 24, 2007, Plaintiffs Shari Proesel And Pamela Hosie Filed
This Action Against Colgate And The Plan. .......................................................... 4

III.    PURSUANT TO THE "FIRST-TO-FILE" RULE, THIS CASE SHOULD BE
TRANSFERRED TO THE SOUTHERN DISTRICT OF INDIANA, WHERE
THE *CAUFIELD* AND *ABELMAN* CASES ARE PENDING........................................ 5

      A.      Courts In The Second Circuit Consistently Apply The "First-To-File"
Rule In Similar Circumstances. ............................................................................. 5

      B.      The "First-to-File" Factors Weigh In Favor Of Transfer Of This Case To
The Southern District Of Indiana.......................................................................... 7

            1.      *Caufield* And *Abelman* Were Filed Before This Action............................ 7

            2.      The Parties In The Three Actions Are Substantially The Same ................ 8

            3.      The Issues And The Claims In The Two Actions Are Nearly
Identical.......................................................................................................... 8

            4.      In Addition, Applying The "First-to-File" Rule To Transfer And
Eventually Consolidate This Case Will Promote Judicial Economy ....... 10

IV.     CONCLUSION.................................................................................................... 11

# TABLE OF AUTHORITIES
## CASES

Alden Corp. v. Eazypower Corp.,
294 F. Supp. 2d 233 (D. Conn. 2003) ........................................................................11

Allen v. Rohm and Haas Co. Ret. Plan,
Civ. A. No. 3:06-CV-25-S, 2006 WL 1980174 (W.D. Ky. July 10, 2006) ...........7, 9, 10

Cali v. East Coast Aviation Servs., Ltd.,
178 F. Supp. 2d 276 (E.D.N.Y. 2001) ..........................................................................8

City of Columbus v. Hotels.com,
No.2:06-cv-677, 2007 WL 2029036 (S.D. Ohio July 10, 2007) .............................7, 11

Fuller v. Abercrombie & Fitch Stores, Inc.,
370 F. Supp. 2d 686 (E.D. Tenn. 2005) .................................................................7, 11

GMT Corp. v. Quiksilver,
No. 02 Civ. 2229 (GBD), 2002 WL 1788016 (S.D.N.Y. Aug. 1, 2002) .........................7

MasterCard Int'l Inc. v. Lexcel Solutions, Inc.,
No. 03-cv-7157, 2004 WL 1368299 (S.D.N.Y. June 16, 2004) ....................................7

McCain v. Rahal Letterman Racing, LLC,
No. 07-cv-5729 (JSR),  2007 WL 2435170 (S.D.N.Y. Aug. 27, 2007) ...........5, 7, 8, 10

Mfgs. Hanover Trust Co. v. Palmer Corp.,
798 F. Supp. 161 (S.D.N.Y. 1992)................................................................................6

Shenker v. Murasky,
No. 95-CV-4739 (NG), 1996 WL 650974 (E.D.N.Y. Nov. 6, 1996) ..........................6, 8

Spotless Enters. Inc. v. The Accessory Corp.,
415 F. Supp. 2d 203 (E.D.N.Y. 2006) ...............................................................6, 7, 8, 10

Vangarelli v. Witco Corp.,
No. 90-cv-6794, 1991 WL 19992 (S.D.N.Y. Feb. 13, 1991) ....................................6, 7

## STATUTES

28 U.S.C. § 1404(a) .......................................................................................................1

29 U.S.C. § 1024(b)(4) ...................................................................................................3

29 U.S.C. § 1054(b)(1)(B) ....................................................................................1, 3, 4, 9

29 U.S.C. § 1054(b)(1)(H) ................................................................................................1, 5, 9

29 U.S.C. §§ 1053(e) ........................................................................................................2, 3, 9

## I.    **INTRODUCTION**

Pursuant to the first-to-file rule and 28 U.S.C. § 1404(a), Defendants Colgate-Palmolive

Company Employees' Retirement Income Plan ("the Plan") and Colgate-Palmolive Company

("Colgate") (collectively "Defendants") respectfully request that the Court transfer this case to

the United States District Court for the Southern District of Indiana ("the Southern District of

Indiana"), where two putative class actions involving virtually the same claims and class

members, captioned Caufield v. Colgate-Palmolive Company Employees' Retirement Income

Plan, No. 4:07-CV-0016-SEB-WGH, and Paul Abelman, et al. v. Colgate-Palmolive Co., et al.;

No. 07:cv-01554-DFH-JMS, are already pending.  (Copies of the Caufield Complaint and the

Abelman Amended Complaint are attached as Exhibits A and B, respectively).

This lawsuit, the Caufield lawsuit, and the Abelman lawsuit all challenge the same Plan

provisions as violating various ERISA sections, on behalf of effectively the same putative class.

All three cases allege that the Plan improperly calculated lump sum benefits under a "whipsaw"

theory.  (Compl. ¶ 36; Caufield Compl. ¶¶ 9-11, 22-23; Abelman Am. Compl. ¶ 36(1)).  This

lawsuit and the Abelman lawsuit also allege that the Plan was impermissibly "backloaded" in

violation of ERISA's 133 1/3% rule, 29 U.S.C. § 1054(b)(1)(B).[1]  (Compl. ¶¶ 26-30, 48-51;

Abelman Am. Compl. ¶ 36(2)).  Indeed, the Plaintiff in this case, Pamela Hosie[2] ("Hosie" or

"Plaintiff"), is a member of the putative class in Caufield and Abelman, and Mr. Caufield and the

named Plaintiffs in Abelman are members of the putative class in this case.

To promote judicial efficiency, and to avoid duplicative litigation, wasted resources, the

risk of inconsistent decisions and unnecessary expense, this case should be transferred to the

---

[1]  In this case, Plaintiff also alleges the Plan violates ERISA's age discrimination provisions, 29 U.S.C. §
1054(b)(1)(H).  (Compl., ¶¶ 57-59).

[2]  On January 3, 2008, the claims of Plaintiff Shari Proesel were dismissed.  (See Docket No. 8).
Accordingly, Hosie is the only named Plaintiff in this case.

Southern District of Indiana where, ultimately, these three cases can be consolidated. Indeed, the Abelman case was transferred from the Southern District of Ohio to the Southern District of Indiana. Accordingly, Defendants respectfully request that the Court transfer this case to the Southern District of Indiana, where two related actions are pending.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    On February 12, 2007, Caufield Filed Suit Against The Plan In The Southern District Of Indiana, Seeking To Represent A Nationwide Class Of Plan Participants In ERISA Claims.

On February 12, 2007, Plaintiff Paul Caufield ("Caufield") filed a Complaint against the Plan, alleging that the manner in which his lump sum pension benefit was calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). (Caufield Compl. ¶¶ 22-23). Specifically, Caufield alleges that when he retired in February 1999, the Plan paid him a lump sum benefit equal to his cash balance account balance. (Id., ¶¶ 9-11). He claims, however, that the Plan was required to pay him a higher amount, based on the value of his normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g). (Id., ¶¶ 9-11, 22-23). This claim is sometimes referred to as a "whipsaw" claim. Caufield purports to bring this action on behalf of a class of former Plan participants who received lump sum distributions from the Plan, all allegedly calculated in the same manner. (Id., ¶¶ 13, 17). Hosie, the Plaintiff in this case, is a member of the putative class in Caufield. Caufield alleges that class certification is appropriate "because the Plan computed the lump-sum distributions of the Class members in the same contested manner" and *there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the administrator of the Plan.*" (Id., ¶¶ 14, 15) (emphasis

added).[3]

**B.     On August 13, 2007, Plaintiffs Paul Abelman And Valerie R. Nutter Filed A Nearly Identical Case to *Caufield*, And That Case Is Now Pending in the Southern District of Indiana.**

On August 13, 2007, six months after *Caufield* was first filed in the Southern District of Indiana, Plaintiffs Paul Abelman ("Abelman") and Valerie R. Nutter ("Nutter") filed suit in the United States District Court of the Southern District of Ohio, alleging the same whipsaw claim alleged in *Caufield*, i.e., that the manner in which their lump sum pension benefits were calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). (Abelman Compl. ¶¶ 30-31).

On November 2, 2007, Plaintiffs filed an Amended Complaint adding four additional named Plaintiffs[4] and two additional claims: (1) violations of ERISA's "anti-backloading" 133 1/3% rule, 29 U.S.C. § 1054 (b)(1)(B); and (2) an individual claim by Plaintiff Warren Jemmott for failure to provide Plan documents under 29 U.S.C. §§ 1024(b)(4) and 1025(a). (Id., ¶¶ 36(2), 73-76).

The Plaintiffs in Abelman purport to bring their whipsaw and backloading claims on behalf of a class of all Plan participants.[5] Four of the named Plaintiffs in Abelman are members

---

[3]     On April 16, 2007, the Plan moved to dismiss Caufield's entire Complaint for failure to state a claim because Caufield's claims are time barred under the relevant statutes of limitations. (Caufield Docket Nos. 24-25). That motion is fully briefed and ripe for consideration. (Caufield Docket Nos. 24-25, 34, 42, 47, 53, 58).

[4]     The additional named Plaintiffs are Adriana Vasquez, Cora Nelson-Manley, Susan Byrd, and Warren Jemmott. (Id., ¶¶ 13-16).

[5]     The Amended Complaint includes one proposed Class and seven proposed Subclasses, which together potentially encompass all participants in the Plan since the Plan's inception in 1989. (See Abelman Am. Compl. ¶ 55). The proposed Class is defined as: "All persons who have accrued or are accruing benefits under the Colgate-Palmolive Company Employees' Retirement Income Plan (the 'Plan') and as to whom an Account was or has been established and maintained as defined in Plan, Art. 1 § 1.1, and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order." (Id., ¶ 55; see also Proposed Subclasses A through G, defined therein).

of the putative class in <u>Caufield</u>.[6] (<u>Id.</u>, ¶¶ 32-34). Likewise, the Plaintiff in <u>Caufield</u> is a member of the putative class in <u>Abelman</u>. (<u>Caufield</u> Compl. ¶¶ 6-9).

The <u>Abelman</u> Plaintiffs allege that certification is appropriate because there are "numerous common questions of fact and law" and the "prosecution of separate actions ... *would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants ....*" (<u>Id.</u>, ¶¶ 57, 61) (emphasis added). They further allege that "computation of a participant's lump sum distribution and/or ... account balance ... is standardized ... [and] was calculated in the same manner...." (<u>Id.</u>, ¶ 58).

Defendants moved to transfer the <u>Abelman</u> case to the Southern District of Indiana in order to promote judicial efficiency and avoid duplicative litigation. (<u>See</u> <u>Abelman</u> Motion to Transfer and supporting Memorandum of Law,[7] attached hereto as Exhibit C). On November 28, 2007, Defendants' motion was granted and <u>Abelman</u> was transferred to the Southern District of Indiana. (<u>Abelman</u> Docket No. 1).

### C.    On October 24, 2007, Plaintiffs Shari Proesel And Pamela Hosie Filed This Action Against Colgate And The Plan.

On October 24, 2007, eight months after <u>Caufield</u> was filed, Proesel and Hosie filed this action against Colgate and the Plan.[8] As in <u>Caufield</u> and <u>Abelman</u>, Hosie alleges a whipsaw claim because the Plan paid her a lump sum that was equal to her account balance but was required to pay her a higher amount. (Compl., ¶¶ 21-25, 35-36, 40, 53-55). In addition to the "whipsaw" claim, Hosie's Complaint, similar to the <u>Abelman</u> Amended Complaint, alleges that the Plan violates the anti-backloading provisions of ERISA's 133 1/3% rule, 29 U.S.C. §

---

[6]    Plaintiff Byrd is not a member of the putative class in Caufield because she received her lump sum benefit in 1996. (<u>Abelman</u> Am. Compl. ¶ 34). Plaintiff Jemmott has not yet elected his lump sum, and is not currently a member of the putative class in <u>Caufield</u>. (<u>Id.</u>, ¶ 35).

[7]    Defendants can provide the Court with copies of the Exhibits to the Memorandum of Law if needed.

[8]    As stated above, on January 3, 2008, the claims of Shari Proesel were dismissed. (<u>See</u> Docket No. 8).

1054(b)(1)(B). (Id., ¶¶ 26-30, 48-51). Hosie also alleges that the Plan violates ERISA's age

discrimination provisions, 29 U.S.C. § 1054(b)(1)(H). (Id., ¶¶ 57-59). Hosie alleges that she

resides in Pennsylvania. (Id., ¶ 9).

      Hosie purports to bring this action on behalf of:

> All individuals, their beneficiaries and estates, who have
> participated in the Colgate-Palmolive Employees' Retirement
> Income Plan at any time on or after July 1, 1989 whose accrued or
> pension benefits have been based, in whole or in part, on the Plan's
> Cash Balance Formula (the "Class")[.]

(Id., ¶ 40). Hosie claims that class-wide treatment is appropriate because "separate actions by

individual members of the classes would create the risk of *inconsistent or varying adjudications*

*establishing incompatible standards of conduct for Defendants* and a risk of adjudications which

as a practical matter would be dispositive of the interests of other members of the classes who

were not parties." (Id., ¶ 46) (emphasis added). Hosie further alleges that Defendants "have

acted and/or refused to act … on grounds generally applicable to the classes." (Id., ¶ 47). Hosie

is a member of the putative class in Caufield and Abelman. (Id., ¶¶ 9, 36). Caufield and the

named Plaintiffs in Abelman are members of the purported class described in this action. (Id., ¶

40).

## III.    PURSUANT TO THE "FIRST-TO-FILE" RULE, THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF INDIANA, WHERE THE *CAUFIELD* AND *ABELMAN* CASES ARE PENDING.

### A.    Courts In The Second Circuit Consistently Apply The "First-To-File" Rule In Similar Circumstances.

      The first-to-file rule is a well-settled principle in the Second Circuit, and provides that

"when two district courts concurrently have before them actions involving substantially or

effectively the same parties and issues, there is a strong presumption in favor of transfer to the

forum of the first-filed suit." McCain v. Rahal Letterman Racing, LLC, No. 07-cv-5729 (JSR),

2007 WL 2435170, at *2 (S.D.N.Y. Aug. 27, 2007) (granting motion to transfer); Spotless

Enters. Inc. v. The Accessory Corp., 415 F. Supp. 2d 203, 205 (E.D.N.Y. 2006) ("where there

are two competing lawsuits, the first suit should have priority, absent the showing of balance of

convenience of special circumstances giving priority to the second.") (citations and quotations

omitted); Mfgs. Hanover Trust Co. v. Palmer Corp., 798 F. Supp. 161, 166 (S.D.N.Y. 1992)

("While it may be clear that one forum is better than two, which of the two fora is better follows

from another principle: the 'first-filed rule.'").  The rule "avoids duplicative litigation by

adhering to the inherently fair concept that the party who commenced the first suit should

generally be the party to attain its choice of venue."  Spotless Enters. Inc., 415 F. Supp. 2d at 205

(quotations and citations omitted).  "Under the first-to-file rule, a second-filed action should be

transferred "to the forum of the first-filed suit unless either the balance of convenience or any

other 'special circumstances' clearly favor the latter-filed action."  McCain, 2007 WL 2435170

at *2.  The underlying policy of the first-to-file rule is to promote "interests of efficiency and

judicial economy," BBC Int'l Ltd. v. Lumino Designs, Inc., 441 F. Supp. 2d 438, 442 (E.D.N.Y.

2006), and to further "judicial administration and the conservation of resources."  GT Plus, Ltd.

v. Ja-Ru, Inc., 41 F. Supp. 2d 421, 424 (S.D.N.Y. 1998) (quotations and citations omitted).

     In the class action context, district courts within the Second Circuit routinely transfer

purported class actions to other districts where related claims already have been filed.  See

Shenker v. Murasky, No. 95-CV-4739 (NG)(RML), 1996 WL 650974, at *2 (E.D.N.Y. Nov. 6,

1996) (transferring a class action under the Securities and Exchange Act of 1934 to district

where four similar actions were pending); Vangarelli v. Witco Corp., No. 90-cv-6794, 1991 WL

19992, at *1, *3 (S.D.N.Y. Feb. 13, 1991) (transferring Sherman Act class action to district

where two related cases involving the same documents).[9]

## B. The "First-to-File" Factors Weigh In Favor Of Transfer Of This Case To The Southern District Of Indiana.

In determining if the "first-to-file" rule applies, a court must consider whether the suits are duplicative. Spotless Enters. Inc., 415 F. Supp. 2d at 205 (quotations and citations omitted). In general, courts examine: (1) the chronology of concurrently pending actions; (2) the similarity of the parties in each action; and (3) the similarity of the issues presented in each action. See, e.g., McCain, 2007 WL 2435170, at *2 (examining the similarity of the parties and issues); see also GMT Corp. v. Quiksilver, No. 02 Civ. 2229 (GBD), 2002 WL 1788016, at *1 (S.D.N.Y. Aug. 1, 2002) ("The 'first to file' rule generally applies where the two actions involve the same parties and embrace the same issues, but one was filed first.") (citations omitted). Under these factors, this action should be transferred to the Southern District of Indiana.

### 1. *Caufield* And *Abelman* Were Filed Before This Action.

The Caufield case was filed on February 12, 2007, eight months before this case was filed on October 24, 2007. The original complaint in Abelman was filed on August 13, 2007. Thus, Caufield and Abelman were filed before this matter. See, e.g., Vangarelli, 1991 WL 19992, at **2, 3 (granting motion to transfer to the District of New Jersey where a related complaint was previously filed); MasterCard Int'l Inc. v. Lexcel Solutions, Inc., No. 03-cv-7157, 2004 WL 1368299, at *8 (S.D.N.Y. June 16, 2004) (same).

---

[9] Other courts also routinely transfer class actions to districts where related actions are pending. See, e.g., Allen v. Rohm and Haas Co. Ret. Plan, Civ. A. No. 3:06-CV-25-S, 2006 WL 1980174, at *2 (W.D. Ky. July 10, 2006) (transferring ERISA class action challenging calculation of lump sum benefits to Southern District of Indiana, where similar ERISA class action was filed first); City of Columbus v. Hotels.com, No.2:06-cv-677, 2007 WL 2029036, at *3-5 (S.D. Ohio July 10, 2007) (applying first-to-file rule and approving transfer of class action suit to Northern District of Ohio, where nearly identical class action was pending); and Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 689-90 (E.D. Tenn. 2005) (transferring FLSA collective action to Ohio under first-to-file rule).

**2.     The Parties In The Three Actions Are Substantially The Same.**

A court can transfer a case pursuant to the first-to-file rule where the parties involved are

substantially the same; a precise identity of parties is not required. See Shenker, 1996 WL

650974, at \*3 (transferring class action where parties were "substantially the same"); Cali v. East

Coast Aviation Servs., Ltd., 178 F. Supp. 2d 276, 293 (E.D.N.Y. 2001) (holding that the

presence of the same plaintiffs in related cases is not a prerequisite for the application of the

first-to-file rule); Spotless Enters. Inc. v. The Accessory Corp., 415 F. Supp. 2d 203, 206

(E.D.N.Y. 2006) (holding that the first-to-file rule does not require identical parties, but only

requires that there be "substantial overlap" among the parties) (citations and internal references

omitted).

The parties in this action "substantially overlap" with the parties in Caufield and

Abelman. Although the named Plaintiffs are different individuals, all three class actions seek

certification of essentially the same class of participants who participated in the Plan and a

subclass of participants who received lump sum benefits from the Plan. Hosie is a member of

the proposed classes in Caufield and Abelman, and Caufield and the named Plaintiffs in

Abelman are members of the proposed class in this action. Likewise, the same Colgate Plan is a

defendant in all three cases.[10] Accordingly, the parties "substantially overlap" for purposes of

the first-to-file rule.

**3.     The Issues And The Claims In The Two Actions Are Nearly Identical.**

The issues in the three actions not only "substantially overlap," but they are nearly

---

[10]   The fact that Colgate is a named defendant in this action (but not in Caufield) and the fact that the
Committee is a defendant in Abelman do not defeat the requirement that the parties be substantially
similar. See McCain, 2007 WL 2435170 at \*2 (holding that actions may be duplicative where the
parties, although not identical, represent the same interests) (citations and internal references omitted);
Spotless Enters. Inc., 415 F. Supp. at 206 (granting motion to transfer where there was sufficient
similarity between defendant and its "grandparent" company, although the subsidiary was not a named
party in one action).

identical.  In all three cases, the plaintiffs challenge the calculation of lump sum pension benefits

under ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (Compl. ¶¶ 36, 53-

55; Caufield Compl. ¶¶ 9-11, 22-23; Abelman Am. Compl. ¶¶ 36(1), 42-43, 55).  All three cases

involve claims that the Plan's conduct resulted in an impermissible forfeiture of benefits

prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a).  (Compl., ¶ 54; Caufield

Compl. ¶ 26; Abelman Am. Compl. ¶ 44).  In addition, both this action and Abelman involve

"backloading" claims under ERISA Section 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B).  (Compl.,

¶¶ 26-30, 48-51; Abelman Am. Compl. ¶¶ 36(2), 45-53).  In this action, Plaintiff also alleges that

the Plan reduces the rate of benefit accrual because of age, in violation 29 U.S.C. §

1054(b)(1)(H).  (Compl., ¶¶ 57-59).

Allowing both courts to adjudicate the same legal issues in two different forums is

inefficient and impractical.  First, the two courts might reach inconsistent results.  Second, the

parties could not settle one case while the other two remain pending.  Of course, judicial

resources would be wasted in litigating the same case in multiple forums.

Confronted with such a possibility of inconsistent results, the court in Allen v. Rohm and

Haas Co. Ret. Plan, Civil Action No. 03:06CV-25-S, 2006 WL 1980174 (W.D. Ky. July 10,

2006) applied the first-to-file rule and granted the motion to transfer.  The named plaintiff in

Allen filed a class action complaint on behalf of himself and other plan participants, who had

received lump sum pension benefits that did not include the value of a cost-of-living adjustment.

Id. at *1.  However, a different named plaintiff previously had filed a similar class action

complaint in the Southern District of Indiana, also alleging that Rohm and Haas had failed to

include an annual cost of living adjustment in lump sum pension benefits.  Id.  Noting the

interest in comity among federal courts, the court granted the motion to transfer, stating:

> There is no question that the Indiana action is the first-filed action and that comity requires this court to respect the substantial development of the issues which has already taken place in the former case. Allen does not dispute that that he is a member of the class certified by the Indiana court. The issue as to the entitlement of retirees to the value of yearly COLAs is identical in both lawsuits. The action must therefore be transferred to the Southern District of Indiana for all further proceedings.

Id. at *2 (footnote omitted). As in <u>Allen</u>, this Court should grant the Motion to Transfer, and

transfer this action to the Southern District of Indiana. <u>See also</u> <u>McCain v. Rahal Letterman</u>

<u>Racing, LLC</u>, 2007 WL 2435170 at *3 (transferring case under the first-to-file rule where each

action involved the "same key issues"); <u>Spotless Enterprises Inc.</u>, 415 F. Supp. 2d at 206

(transferring case to district of previously filed action where both actions involved the same legal

issues).

> **4.     In Addition, Applying The "First-to-File" Rule To Transfer And Eventually Consolidate This Case Will Promote Judicial Economy.**

Here, sound judicial administration and principles of judicial economy warrant a transfer.

These three cases involve ERISA claims on behalf of essentially the same group of individuals

challenging the calculation of lump sum distributions from Colgate's cash balance plan. Indeed,

all three cases seek to certify a nationwide class action because there is a risk that the

"prosecution of separate actions" would establish "incompatible standards of conduct" related to

the administration of the Plan. (Compl. ¶ 46; <u>Caufield</u> Compl. ¶ 14; <u>Abelman</u> Am. Compl. ¶ 61).

These same arguments require transfer of this case so that the three cases can be consolidated. It

would be a waste of judicial and the parties' resources to maintain these three cases in separate

district courts where the cases involve the same claims and virtually the same classes.[11] <u>Spotless</u>

<u>Enterprises Inc.</u>, 415 F. Supp. 2d at 205 (the first-filed rule furthers "wise judicial administration,

---

[11]   For example, it does not make sense to require the Plan Administrator and actuaries to testify separately in this case regarding the calculation of lump sum benefits and the rates of benefit accrual under the Plan.

giving regard to conservation of judicial resources and comprehensive disposition of litigation"

and "avoids duplicative litigation") (citations and quotations omitted); City of Columbus, 2007

WL 2029036, at *5 (stating that "it is a waste of judicial resources to litigate the same dispute in

two different forums"). Moreover, allowing the case to proceed separately may result in

inconsistent results involving the same exact parties, class members, and the same legal issues.

See Fuller, 370 F. Supp. 2d at 690 ("Permitting both [collective] actions to proceed to judgment

risks the possibility of inconsistent results."); Alden Corp. v. Eazypower Corp., 294 F. Supp. 2d

233, 238 (D. Conn. 2003) ("Transfer of an action to a district where a related case is pending

enables more efficient conduct of pretrial discovery, saves witnesses times and money … and

avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to

the parties while at the same time serving the public interest.") (citations and quotations omitted).

There is no need for such a waste of resources and the risk of inconsistent rulings, and no reason

to depart from applying the "first-to-file" rule. Respectfully, this case should be transferred.

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court transfer this matter

to the United States District Court for the Southern District of Indiana.

Dated:  January 15, 2008                          Respectfully submitted,

                                                  /s/Theresa J. Chung_____
                                                  Joseph J. Costello*
                                                  Jeremy P. Blumenfeld*
                                                  Theresa J. Chung (TC3200)
                                                  MORGAN, LEWIS & BOCKIUS LLP
                                                  101 Park Avenue
                                                  New York, New York 10178-0060
                                                  (212) 309-6000 (phone)/(212) 309-6001 (fax)

                                                  Attorneys for Defendants Colgate-Palmolive
                                                  Company Employees' Retirement Income Plan and
                                                  Colgate-Palmolive Company
                                                       * Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2008, I caused the foregoing document to be

electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S.

First Class mail to the following counsel and parties:

Edgar Pauk (EP 1039)
144 East 44th Street, Suite 600
New York, New York 10017

Joseph H. Meltzer
Edward W. Ciolko
Joseph A. Weeden
SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

*Attorneys for Plaintiff Pamela Hosie*

/s/Theresa J. Chung
Theresa J. Chung (TC3200)

EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAUL ABELMAN, and VALERIE R. NUTTER, | |
| Plaintiffs, | |
| vs. | Case No. 2:07-cv-793 |
| | Judge Michael H. Watson |
| COLGATE-PALMOLIVE COMPANY, and COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, | Magistrate Judge Norah McCann King |
| Defendants. | |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO TRANSFER VENUE
TO THE SOUTHERN DISTRICT OF INDIANA

I.    INTRODUCTION

Pursuant to the "first-to-file" rule and 28 U.S.C. § 1404(a), Defendants Colgate-Palmolive Company ("Colgate") and Colgate-Palmolive Company Employees' Retirement Income Plan ("the Plan") (collectively "Defendants") respectfully request that the Court transfer this case to the United States District Court for the Southern District of Indiana ("the Southern District of Indiana"), where a virtually identical case captioned Caufield v. Colgate-Palmolive Company Employees' Retirement Income Plan, No. 4:07-CV-0016SEB-WGH, is already pending. (A copy of the Caufield Complaint is attached as Exhibit A).

Both this lawsuit and the Caufield lawsuit allege that the Plan improperly calculated lump sum benefits under a "whipsaw" theory. (Compl. ¶¶ 22, 30-31; Caufield Compl. ¶¶ 9-11, 22-23). Likewise, both lawsuits purport to bring such claims on behalf of a putative nation-wide class of individuals who received lump sum distributions from the Plan. Indeed, the plaintiffs in this case are members of the putative class in the Caufield case, and Mr. Caufield is a member of the putative class in this case. To promote judicial efficiency, and to avoid duplication, wasted

{H0188341}

EXHIBIT
3

resources, the risk of inconsistent decisions and unnecessary expense, and pursuant to the "first-to-file" rule, this case should be transferred to the Southern District of Indiana where, ultimately, the two cases can be consolidated.  In addition, the Court should transfer this case to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a) because such a transfer would promote the interests of justice and judicial economy, and would eliminate the problems associated with simultaneously adjudicating two identical class actions.

Accordingly, Defendants respectfully request that the Court transfer this case to the Southern District of Indiana.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    On February 12, 2007, Caufield Filed Suit Against The Plan In The Southern District Of Indiana, Seeking To Represent A Nationwide Class Of Plan Participants In ERISA Claims.

On February 12, 2007, Plaintiff Paul Caufield ("Caufield") filed a Complaint against the Plan, alleging that the manner in which his lump sum pension benefit was calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g).  (Caufield Compl. ¶¶ 22-23).  Specifically, Caufield alleges that when he retired in February 1999, the Plan paid him a lump sum benefit equal to his cash balance account balance.  (Caufield Compl. ¶¶ 9-11).  He claims, however, that the Plan was required to pay him a higher amount, based on the value of his normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g).  (Caufield Compl. ¶¶ 9-11, 22-23).  Caufield purports to bring this action on behalf of a class of former Plan participants who received lump sum distributions from the Plan, all allegedly calculated in the same manner.  (Caufield Compl. ¶¶ 13, 17).  Specifically, he seeks to bring a class action on behalf of:

> All participants in the Colgate-Palmolive Company Employees' Retirement Income Plan who received a lump-sum distribution of their pension benefits from the Plan at any time after February 12, 1997.

(Caufield Compl. ¶ 13). Both of the plaintiffs in this case – Abelman and Nutter – are members of the putative class in Caufield.

Caufield alleges that class certification is appropriate "because the Plan computed the lump-sum distributions of the Class members in the same contested manner" and "*there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the administrator of the Plan.*" (Caufield Compl. ¶¶ 14, 15) (emphasis added).[1]

**B.    On August 13, 2007, Plaintiffs Paul Abelman And Valerie R. Nutter Filed This Nearly Identical Case Against Colgate And The Plan.**

On August 13, 2007, six months after Caufield was first filed in the Southern District of Indiana, Plaintiffs Paul Abelman ("Abelman") and Valerie R. Nutter ("Nutter") filed suit in the United States District Court of the Southern District of Ohio, alleging that the manner in which their lump sum pension benefits were calculated violated ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g). (Compl. ¶¶ 30-31). Specifically, as in Caufield, Abelman and Nutter allege that upon termination of their employment, the Plan paid them lump sum distributions equal to their account balances. (Compl. ¶¶ 15-16, 20-22). Also as in Caufield, Plaintiffs here claim that the Plan was required to pay them a higher amount, based on the value of their normal retirement benefit discounted to present value using the statutory interest rate and mortality table established by Congress in 29 U.S.C. §§ 1053(e) and 1055(g). (Compl. ¶¶ 22, 30-31, 34). Abelman and Nutter purport to bring their action on behalf of a class of former Plan

---

[1]    On April 16, 2007, the Plan moved to dismiss Caufield's entire Complaint for failure to state a claim because Plaintiff's claims are time barred under the relevant statutes of limitations. (Caufield, Docket No. 24). On May 15, 2007, Caufield filed a Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, in which he asserted various legal arguments in response to Defendant's Motion to Dismiss. (Caufield, Docket No. 34). That motion is now ripe for the Court's consideration.

participants who received lump sum distributions from the Plan. (Compl. ¶ 34). Mr. Caufield is a putative class member in this case.

Abelman and Nutter allege that certification is appropriate because there are "numerous common questions of fact and law" and "the prosecution of separate actions … *would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants….*" (Compl. ¶¶ 36. 40) (emphasis added). They further allege that "[a]ll issues concerning liability are common to all Class members because such issues concern their entitlement to benefits calculated in a manner other than that calculated thus far…." (Compl.¶ 36). In addition, they allege that the "computation of a participant's lump sum distribution and the amount of lump sum distribution is standardized … [and] was calculated in the same manner…." (Compl.¶ 37). They further allege that each class member's rights "will be determined by reference to the same Plan documents and the same provisions of ERISA." (Id.).

### III.     ARGUMENT

#### A.     Under The "First-To-File" Rule, This Case Should Be Transferred To The Southern District Of Indiana, Where The *Caufield* Case Is Pending.

The "first-to-file" rule is a "well established doctrine that encourages comity among federal courts of equal rank. . . . [W]hen actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" Zide Sport Shop of Ohio v. Ed Tobergate Assocs., Inc., 16 Fed. App'x 433, 437 (6th Cir. 2001); see also Smith v. Sec. and Exchange Comm'n, 129 F.3d 356, 361 (6th Cir. 1997) ("courts often proceed … under the rule of thumb that the entire action should be decided by the court in which an action was first filed."). The first-to-file rule applies when "two suits involving substantially the same parties and purpose have been filed in a

concurrent jurisdiction." Plating Res., Inc. v. UTI Corp., 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999) (citation omitted).

In the class action context, district courts within the Sixth Circuit routinely follow the first-to-file rule in transferring purported class actions to other districts where related claims already have been filed. See Allen v. Rohm and Haas Co. Ret. Plan, Civ. A. No. 3:06-CV-25-S, 2006 WL 1980174, at *2 (W.D. Ky. July 10, 2006) (transferring ERISA class action challenging calculation of lump sum benefits to Southern District of Indiana, where similar ERISA class action was filed first); City of Columbus v. Hotels.com, No.2:06-cv-677, 2007 WL 2029036, at **3-5 (S.D. Ohio July 10, 2007) (applying "first-to-file" rule and approving transfer of class action suit to Northern District of Ohio, where nearly identical class action was pending); Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 689-90 (E.D. Tenn. 2005) (transferring FLSA collective action to Ohio under "first-to-file" rule).

### 1.     All The Relevant Factors Weigh In Favor Of Transfer Of This Case To The Southern District Of Indiana.

District courts have used three factors to determine whether the first-to-file rule warrants transfer of a case: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake. NCR Corp. v. First Fin. Computer Servs., 492 F. Supp. 2d 864 (S.D. Ohio 2007); Strategic Ambulance, Inc. v. Martinez, No. 1:05-CV-598, 2006 WL 462430, at *2 (S.D. Ohio Feb. 24, 2006); Smithers-Oasis Co. v. Clifford Sales & Mktg., 194 F. Supp. 2d 685, 687 (N.D. Ohio 2002). Here, all three factors weigh in favor of transferring this case to the Southern District of Indiana.

### a.     The *Caufield* Action Is The First-Filed Action.

The Caufield case was filed on February 12, 2007, before this case was filed on August 13, 2007. Thus, the first element, the chronology of the two actions, is met. See NCR Corp.,

492 F. Supp. 2d 864 (granting motion to transfer to Texas where similar complaint was filed in Texas several days before complaint in the Southern District of Ohio); Smithers-Oasis Co., 194 F. Supp. 2d at 686-87 (granting motion to transfer to Missouri where similar complaint was filed in Missouri approximately one week before complaint in the Southern District of Ohio).

b.    The Parties In The Two Actions Substantially Overlap.

A "precise identity of parties is simply not required" for the first-to-file rule to apply. City of Columbus, 2007 WL 2029036, at *7 (emphasis added), citing Plating Resources, 47 F. Supp. 2d at 903. As stated in Fuller, the "parties and issues need not be identical .... [r]ather, the crucial inquiry is whether the parties and issues substantially overlap." Fuller, 370 F. Supp. 2d at 688.

There is no question that the parties in this action "substantially overlap" with the parties in Caufield. Although the named plaintiffs are different individuals, both class actions seek certification of essentially the same class of participants who received lump sum benefits from the Plan. Caufield is a member of the proposed class in this action, and Abelman and Nutter are members of the proposed class in Caufield.[2] Both actions challenge the same calculation of

_____

[2] The parties in Caufield do not agree as to the applicable statute of limitations for the claims in that action, and the parties to this action also may disagree as to the applicable statute of limitations. However, this should not impact the Court's analysis on this Motion to Transfer. If both actions are permitted to proceed concurrently in different judicial districts, then the same individuals could be subject to different statute of limitations periods in each action. As the Court in Fuller stated, "[t]hat such a confusing result could occur evidences that the collective classes are substantially similar." 370 F. Supp. 2d at 690; Allen, 2006 WL 1980174, at *2, fn.1 (noting that the parties in the Indiana action disagreed as to the applicable statute of limitations and stating that the Court would defer to the Indiana court to address the viability of the claims of the named plaintiff in the Kentucky action).

lump sum benefits under the Plan.[3]  Thus, the parties "substantially overlap" for purposes of the first-to-file rule, and the rule's second element is met.  See Fuller, 370 F. Supp. 2d at 689 (finding substantial overlap between parties in two class actions where the named plaintiffs - although different individuals – were "effectively identical"; both actions sought certification of the same class; and claims were alleged against the same company); City of Columbus, 2007 WL 2029036, at *7 (finding that two class actions involved substantially the same parties where the two cases arose out of the same business practices of the defendant and the putative class in both cases was identical).

### c.    The Issues And The Claims In The Two Actions Are Identical.

Lastly, the issues in the two actions not only "substantially overlap," but they are identical.  Fuller, 370 F. Supp. 2d at 690.  In both Caufield and this case, the plaintiffs challenge the calculation of lump sum pension benefits under ERISA Sections 203(e) and 205(g), 29 U.S.C. §§ 1053 and 1055.  In addition, both cases involve claims that the Plan's conduct "resulted in an impermissible forfeiture of benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a), as implemented by Treasury Regulation § 1.411(a)-4 and 4T." (Compl., ¶ 32; Caufield Compl. ¶ 26).

Moreover, allowing both courts to adjudicate the same legal issues in two different forums is inefficient and impractical.  First, the two courts might reach inconsistent results.  Second, the parties could not settle one case while the other case remains pending.  Of course, judicial resources would be wasted in litigating the same case in multiple forums.

---

[3]    The addition of Colgate as a named defendant in this action does not defeat the requirement that parties be substantially similar.  See Plating Res., 47 F. Supp. 2d at 904 (the addition of one defendant does not defeat the "similarity of the parties" requirement because "precise identity of the parties is not required"); see also Silver Knight Sales & Mktg., Ltd. v. Globex Int'l, Inc., No. 2:06-cv-123, 2006 WL 3230770, at *5 (S.D. Ohio Nov. 6, 2006) (parties were substantially similar, even though the defendant corporation was a separate defendant in one case but not the other case; "the first-to-file rule does not require exact identity of the parties").

Confronted with such a possibility of inconsistent results, the Court in <u>Allen v. Rohm and Haas Co. Ret. Plan</u>, Civil Action No. 03:06CV-25-S, 2006 WL 1980174 (W.D. Ky. July 10, 2006) applied the first-to-file rule and granted the motion to transfer. The named plaintiff in <u>Allen</u> filed a class action complaint on behalf of himself and other Plan participants, who had received lump sum pension benefits that did not include the value of a cost-of-living adjustment. <u>Id.</u> at *1. However, a different named plaintiff previously had filed a similar class action complaint in the Southern District of Indiana, also alleging that Rohm and Haas had failed to include an annual cost of living adjustment in lump sum pension benefits. <u>Id.</u> Noting the interest in comity among federal courts, the Court granted the motion to transfer, stating:

> There is no question that the Indiana action is the first-filed action and that comity requires this court to respect the substantial development of the issues which has already taken place in the former case. Allen does not dispute that that he is a member of the class certified by the Indiana court. The issue as to the entitlement of retirees to the value of yearly COLAs is identical in both lawsuits. The action must therefore be transferred to the Southern District of Indiana for all further proceedings.

<u>Id.</u> at *2 (footnote omitted). As in <u>Allen</u>, this Court should grant the Motion to Transfer, and transfer this action to the Southern District of Indiana.

### 2. Applying The "First-to-File" Rule To Transfer And Eventually Consolidate This Case Will Promote Judicial Economy.

The first-to-file rule "has evolved into a mechanism used to promote judicial efficiency," <u>Plating Resources</u>, 47 F. Supp. 2d at 903, and "the rule's importance should not be disregarded lightly." <u>Smithers-Oasis</u>, 194 F. Supp. 2d at 687 (citations and internal quotations omitted).

Here, sound judicial administration warrants a transfer so that the two cases can be consolidated. Both cases involve ERISA claims on behalf of the same group of individuals challenging the calculation of lump sum distributions from Colgate's cash balance plan. Indeed, both cases seek to certify a nationwide class action because "there is a risk that the prosecution

of separate actions would establish incompatible standards of conduct for the administrator of the Plan." (Caufield Compl. ¶ 14; see also Compl. ¶ 40 ("the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications …")). These same arguments require transfer of this case so that the two cases can be consolidated. It would be a waste of judicial and the parties' resources to maintain these two cases in separate district courts when the cases involve overlapping parties, claims, evidence, damages, and classes.[4] See Fuller, 370 F. Supp. 2d at 690 ("Permitting both [collective] actions to proceed to judgment risks the possibility of inconsistent results."); City of Columbus, 2007 WL 2029036, at *5 (stating that "it is a waste of judicial resources to litigate the same dispute in two different forums").[5]

### B.    Transfer To The Southern District Of Indiana Is Also Appropriate Under 28 U.S.C. § 1404(a).

Consistent with the first-to-file rule, district courts may transfer cases to districts where related actions are pending under 28 U.S.C. § 1404(a).[6] This action should be transferred to the Southern District of Indiana, where similar claims will be determined by a Court in that district.

---

[4]    Indeed, it does not make sense to require the Plan Administrator and actuaries to testify in both cases regarding the calculation of lump sum benefits under the Plan.

[5]    Fed. R. Civ. P. 42(a) gives district courts broad discretion to consolidate related cases to promote judicial efficiency, eliminate redundancy, and to conserve the parties' and the courts' resources. See Cantrell v. GAF Corp., 999 F.2d 1007, 1010-11 (6th Cir. 1993); BD v. DeBuono, 193 F.R.D. 117, 141 (S.D.N.Y. 2000) (citation omitted). Transferring this action to the Southern District of Indiana would be the first step toward consolidating the two cases for coordinated pre-trial proceedings.

[6]    This section provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

and where this action could have been brought.[7]

The ultimate goal of a court in analyzing a motion to transfer venue is to serve both the convenience of the parties and witnesses, as well as the interests of justice. Kay v. Nat'l City Mortgage Co., 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007) (citations omitted). The private interests include ease of access to source of proof; availability of compulsory process for attendance of witnesses; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. at 850 (citations omitted). The public interests include docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, and the court's familiarity with the applicable law. Id. (citations omitted). Courts in the Sixth Circuit have summarized these factors, including: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interests of justice, including such concerns as systemic integrity and fairness. See, e.g., Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991), cert. denied, 502 U.S. 821 (1991); Buckeye Check Cashing of Arizona, Inc., No. 2:06-cv-792, 2007 WL 641824, at *12 (S.D. Ohio Feb. 23, 2007).

---

[7] An ERISA action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). For ERISA venue purposes, a defendant "resides or may be found" in any district in which its "minimum contacts" would support the exercise of personal jurisdiction. Moore v. Rohm & Haas Co., 446 F.3d 643, 646 (6th Cir. 2006). The minimum contacts standard is satisfied when the "defendant's contacts with the forum state are substantial and continuous and systematic, so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state." Id. (citations and internal quotations omitted). Here, it is undisputed that, by operation of its facilities in the Southern District of Indiana, and by virtue of the Plan's contacts with that district, Defendants have minimum contacts with the Southern District of Indiana. (Caufield Compl. ¶ 4; Declaration of Matthew Faranda ("Faranda Decl."), attached as Exhibit B, at 6).

While most of these factors are inapplicable to the case at hand,[8] several key factors weigh heavily in favor of transfer.  Specifically, for all of the reasons previously discussed, allowing this case to proceed in two different forums will undermine the interests of justice, waste the resources of the parties and the courts, and potentially result in inconsistent adjudication of the same issues.  Allowing transfer to the Southern District of Indiana will avoid these problems and permit this case to be litigated in the most efficient manner.

The existence of an independently-filed putative class action in the Southern District of Indiana makes transfer appropriate.  A "strong public policy" favors consolidation of similar class actions in a single district.  Firmani v. Clarke, 325 F. Supp. 689, 693 (D. Del. 1971). Where, as here, transfer "will avoid the possibility of overlapping and competing class actions involving the same claims," transfer is favored under the "interests of justice" prong of Section 1404(a).  Hall v. Kittay, 396 F. Supp. 261, 264 (D. Del. 1975) (citations omitted); see also U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd., 357 F. Supp. 2d 924, 937-38 (E.D. Va. 2005) ("The interest of justice weighs heavily in favor of transfer when related actions are pending in the transferee forum.  This is particularly so when the two cases are intimately related and hinge upon the same factual nucleus.") (internal quotations omitted).  Here, transfer will facilitate the consolidation of the pending class actions while obviating the peril of inconsistent rulings and judgments.  See, e.g., Kay v. Nat'l City Mortgage Co., 494 F. Supp. 2d at 854    (stating that under § 1404(a), avoidance of a multiplicity of litigation is an important factor in determining

---

[8]    Virtually all of the documents that are potentially relevant to this action, including Plan documents and Plan records, are maintained in New York. (Faranda Decl., at 5).  The only documents that may not be in New York are documents in the possession of each class member, which documents likely are located throughout the country where each participant lives.  Thus, relevant documents and other evidence will have to be transferred regardless of which court hears the case.  Moreover, any potential witnesses in this matter are similarly located in New York.  Those individuals with intimate knowledge of the Plan's administration work at Colgate's headquarters in New York. (Faranda Decl. at 4).

what "the interests of justice" require) (citations omitted); <u>Blake v. Family Dollar Stores, Inc.</u>, Civ.A. 2:07-CV-361, 2007 WL 1795936, at **3-4 (S.D. Ohio June 19, 2007) (granting motion to transfer to North Carolina under § 1404(a), where similar class actions against defendants also had been transferred to North Carolina); <u>DeMoss v. First Artists Prod. Co., Ltd.</u>, 571 F. Supp. 409, 414 (N.D. Ohio 1983) (granting motion to transfer to California, where California court had venue over certain claims, stating "[i]t would make no sense to litigate the claims separately … the most appropriate action is to consolidate all the claims in one action").

Furthermore, litigating both cases before the same tribunal will result in "more efficient conduct of pretrial discovery, saves witness time and money in both trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest." <u>River Road Int'l v. Josephthal Lyon & Ross Inc.</u>, 871 F. Supp. 210, 214 (S.D.N.Y. 1995) (citations and internal quotation marks omitted); <u>see also</u> <u>Talent Tree Crystal, Inc. v. DRG, Inc.</u>, No. 1:04-CV-875, 2005 WL 3312554, at *5 (W.D. Mich. Dec. 7, 2005) ("Even if the cases are not consolidated, judicial economy is served by placing related claims before the same court."). Accordingly, this case should be transferred to the Southern District of Indiana under 28 U.S.C. § 1404(a).

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully requests this Court transfer this matter to the United States District Court for the Southern District of Indiana.

Dated:  September 18, 2007                    Respectfully submitted,

                                              /s/ Felix C. Wade
                                              Felix C. Wade (0024462)
                                              Schottenstein, Zox & Dunn Co., LPA
                                              250 West Street
                                              Columbus, Ohio 43215
                                              Tel:  (614) 462-2700
                                              Fax:  (614) 462-5135
                                              Email:  fwade@szd.com
                                              Trial Attorney for Defendants Colgate-
                                              Palmolive Company and Colgate-Palmolive
                                              Company Employees' Retirement Income
                                              Plan

OF COUNSEL:

Eve M. Ellinger    (0073742)
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215
Tel:  (614) 462-2700
Fax:  (614) 462-5135
Email: eellinger@szd.com

Joseph J. Costello* (Pennsylvania Bar No. 44327)
Jeremy P. Blumenfeld (Ohio Supreme Court No. 0068858)
Theresa J. Chung* (Pennsylvania Bar No. 94681)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Tel.:   215-963-5295/5258/5584
Fax:    877-432-9652
Email: jcostello@morganlewis.com
        jblumenfeld@morganlewis.com
        tchung@morganlewis.com
*Pending *Pro Hac Vice Admission*

Attorneys for Defendants Colgate-Palmolive Company and
Colgate-Palmolive Company Employees' Retirement Income Plan

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail to the following counsel and parties:

William Henry Blessing, Esq.
119 East Court Street, Suite 500
Cincinnati, OH 45202

Eli Gottesdiener, Esq.
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY 11215

Attorneys for Plaintiffs

/s/ Eve M. Ellinger
EVE M. ELLINGER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| PAUL CAUFIELD, and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | 4:07-cv-16-SEB-WGH |
| | ) | |
| COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN, | ) ) ) | |
| Defendant. | ) ) | |

**MAGISTRATE JUDGE'S ORDER ON
TELEPHONIC STATUS CONFERENCE**

This matter came before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, by telephone, at 9:15 a.m., on February 27, 2008, for a conference under Rule 16, Federal Rules of Civil Procedure.  The parties were represented by counsel.  The record should reflect that counsel for the plaintiffs in Cause No. 1:07-cv-1554-DFH-JMS, *Abelman, et al. v. Colgate-Palmolive Company, et al.,* was also present on the call.

The court discussed several currently pending issues, but no formal orders were entered.

This matter is set for a **TELEPHONIC STATUS CONFERENCE** on **TUESDAY, APRIL 29, 2008,** at 9:15 a.m., New Albany time (EDT), before the

Magistrate Judge.  Each counsel wishing to participate in this conference shall individually place a call to the court at the time of the conference.[1]

This order has been formulated after a conference at which the respective parties have appeared.  Any party shall file any corrections or additions within ten (10) days after receipt of this order.

**SO ORDERED.**

**Dated:**  February 28, 2008

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Jeremy P. Blumenfeld
MORGAN LEWIS & BOCKIUS LLP
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

William K. Carr
LAW OFFICE OF WILLIAM K. CARR
bill@pension-law.com

_____

[1]This is the court's bridge line.  Since there will probably be more than six participants for this conference call, you should first try to call (812) 434-6403 at the time of the conference.  If you are not immediately connected to the conference call, you should hang up and call (812) 434-6402.  The first person to call one of the above numbers will hear a tone and then dead air.  As each additional person calls one of the two numbers listed above, they will hear a tone and then will be able to talk to all other persons who have previously connected to the conference call.  In the event you are unable to connect to the conference by using either of the two numbers listed above, you should immediately place a call to (812) 434-6430.

Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
tchung@morganlewis.com

Joseph J. Costello
MORGAN LEWIS & BOCKIUS LLP
jcostello@morganlewis.com

Philip John Gutwein II
BAKER & DANIELS
philip.gutwein@bakerd.com

Diane Moore Heitman
KOREIN TILLERY LLC
dheitman@koreintillery.com

Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
btjohnson@morganlewis.com

T. J. Smith
tjsmith@smithhelman.com

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

PAUL CAUFIELD, on behalf of himself and all )
others similarly situated,                    )
                                              )
        Plaintiffs,                           )
                                              )        4:07-cv-16-SEB-WGH
    vs.                                       )
                                              )
COLGATE-PALMOLIVE COMPANY                     )
EMPLOYEES' RETIREMENT INCOME                  )
PLAN,                                         )
                                              )
        Defendant.                            )
_____ )
                                              )
PAUL ABELMAN, on behalf of himself and all )
others similarly situated, VALERIE R.         )
NUTTER, WARREN JEMMOTT, SUSAN                 )
BYRD, ADRIANA VASQUEZA, and CORA              )
NELSON-MANLEY,                                )
                                              )
        Plaintiffs,.                          )
                                              )
    vs.                                       )        1:07-cv-1554-SEB-JMS
                                              )
COLGATE-PALMOLIVE COMPANY,                    )
COLGATE-PALMOLIVE COMPANY                     )
EMPLOYEES' RETIREMENT INCOME                  )
PLAN, and ERC,                                )
                                              )
        Defendants.                           )

## ORDER ON RELATED CASE ISSUES AND TRANSFERRING CASES TO THE SOUTHERN DISTRICT OF NEW YORK

Plaintiffs Paul Caufield et. al filed an action against the Colgate-Palmolive Company

Employees' Retirement Income Plan in our New Albany Division on February 12, 2007. Caufield

v. Colgate Palmolive Company Employees' Retirement Plan, Cause No. 4:07-cv-16-SEB-WGH.

1

An action raising virtually identical issues brought by Plaintiffs Paul Ableman et. al was filed originally in the Southern District of Ohio and thereafter transferred to our Indianapolis Division on November 30, 2007. <u>Paul Ableman, et. al, v. Colgate-Palmolive Company, et. al</u>, Cause Number 1:07-cv-1554-DFH-JMS.

On December 6, 2007, the defendants in <u>Ableman</u> filed a Notice of Related Action, pursuant to Ind. S.D. Local Rule 40.1(d) and (f), requesting that <u>Ableman</u> be transferred from the docket of the Honorable David F. Hamilton to the docket of the undersigned judge before whom <u>Caufield</u> was pending. (<u>Ableman</u>, Docket No. 6.) Thereafter, counsel in both <u>Ableman</u> and <u>Caufield</u> discussed with Magistrate Judge Hussmann the possibility and desirability of consolidating the two cases into a single action. And, on February 29, 2008, Judge Hamilton issued an Order to Resolve Consolidation and Related Case Issues in <u>Ableman</u>, observing that the undersigned judge could take judicial notice of the filings in <u>Ableman</u>. (<u>Ableman</u>, Docket No. 28). In response to Judge Hamilton's Order, the <u>Ableman</u> Plaintiffs acceded to Defendants' request that <u>Ableman</u> be related to the <u>Caufield</u> case for venue purposes. (<u>Ableman</u>, Docket No. 29).

Having taken judicial notice of the filings in <u>Ableman</u>, the undersigned judge now finds, pursuant to Ind. S.D. Local Rule 40.1(d), that <u>Caufield</u> and <u>Ableman</u> should be related such that <u>Ableman</u> shall be transferred to the undersigned's docket pursuant to Ind. S.D. Local Rule 40.1(f). Accordingly, the Clerk is directed to reassign <u>Ableman</u> to the docket of the Honorable Sarah Evans Barker with the amended cause number reflected above.

In addition, the Court takes judicial notice of the March 19, 2008, ruling in <u>Proesel and Rosie et. al v. Colgate-Palmolive Company Employee Retirement Income Plan, et. al</u>, Cause Number 07 Civ. 9515 (BSJ)(KNF), another litigation related to <u>Ableman</u> and <u>Caufield</u> currently pending in the

Southern District of New York, in which Defendants' motion to transfer <u>Proesel</u> to the Southern District of Indiana was denied.  In that ruling, the Honorable Barbara Jones found in relevant part that:  "[M]ost relevant evidence and witnesses [reside] in New York, [making] it . . . clearly . . . more efficient to conduct a trial in New York." (<u>Proesel</u> Order, page 6.)  Judge Jones also ruled: "[T]here is no reason why all three actions cannot ultimately be consolidated in this district." (<u>Proesel</u> Order, page 7.)

This undersigned judge accepts and adopts the findings and conclusions entered by the Court in <u>Proesel</u> with regard to the choice of venue, and includes them in this order as if fully set out, on the basis of which Plaintiffs' motion to transfer venue (<u>Ableman</u> Docket No. 23) is GRANTED.  As Plaintiffs' motion (<u>Ableman</u>, Docket No. 23) has pointed out, Defendants' headquarters are in New York and virtually all of the documents that are potentially relevant to this action, including Plan documents and Plan records, are maintained in New York.  Additionally, those individuals with intimate knowledge of the Plan's administration work at Colgate-Palmolive's headquarters in New York.  Under 29 U.S.C. § 1132(e)(2), an action under ERISA "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found . . . ."  Judge Jones's thorough and well-reasoned opinion in <u>Proesel</u> concludes that an evaluation of the appropriate factors concerning venue favors resolution in the Southern District of New York. This Court concurs with Judge Jones's opinion.

Therefore, based on the convenience of the parties and witnesses, the interest of justice, and the parties' requests and/or consent, the <u>Ableman</u> and <u>Caufield</u> causes of action shall each be transferred, pursuant to 28 U.S.C. §1404(a), to the Southern District of New York as related matters to the <u>Proesel</u> cause of action.

IT IS SO ORDERED.


Date: ____03/26/2008____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Jeremy P. Blumenfeld
MORGAN LEWIS & BOCKIUS LLP
jblumenfeld@morganlewis.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

William K. Carr
LAW OFFICE OF WILLIAM K. CARR
bill@pension-law.com

Theresa J. Chung
MORGAN, LEWIS & BOCKIUS LLP
tchung@morganlewis.com

Joseph J. Costello
MORGAN LEWIS & BOCKIUS LLP
jcostello@morganlewis.com

Philip John Gutwein II
BAKER & DANIELS
philip.gutwein@bakerd.com

Diane Moore Heitman
KOREIN TILLERY LLC
dheitman@koreintillery.com

Brandi T. Johnson
MORGAN, LEWIS & BOCKIUS LLP
btjohnson@morganlewis.com

T. J. Smith
tjsmith@smithhelman.com

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com

William Henry Blessing
119 East Court Street
Suite 500
Cincinnati, OH 45202

Eli  Gottesdiener
GOTTESDIENER LAW FIRM PLLC
eli@gottesdienerlaw.com

4