**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL CAUFIELD,<br>                      Plaintiff,<br>vs.<br>COLGATE-PALMOLIVE COMPANY EMPLOYEES' RETIREMENT INCOME PLAN,<br>                      Defendant. | Case No. 1:08-cv-03316-BSJ<br><br>Judge Barbara S. Jones<br>Magistrate Judge Kevin N. Fox |

**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan" or "Defendant"), by and through its counsel, respectfully gives notice to the Court of a recent decision by the United States Court of Appeals for the Second Circuit that bears on the timeliness of Plaintiff Paul Caufield's ("Plaintiff" or "Caufield") claims.

In <u>Hirt v. Equitable Ret. Plan for Employees, Managers and Agents</u>, Nos. 06-4757-cv (L), 06-5190-cv (XAP), 2008 WL 2675828, at *2 (2d Cir. July 9, 2008) (attached hereto as Exhibit 1), the Second Circuit held that the plaintiffs' ERISA claims were time-barred. Most directly relevant to this case, the Court held that the distribution of the summary plan document ("SPD") that disclosed the benefits that would be paid constituted a "clear repudiation" of any claim for benefits that plaintiffs could raise, such that the plaintiffs' claims accrued when the SPD was distributed. <u>Id.</u> at *2. In reaching its conclusion, the Second Circuit emphasized the "central role that the SPD plays in communicating the terms of a plan to its members." <u>Id.</u> at *2 (citation and internal quotations omitted). The Court noted:

> **To the extent that a plan participant had received insufficient notice of a plan amendment <u>or otherwise considered himself entitled to benefits other than those disclosed in the SPD, the SPD "unequivocally repudiated" that understanding.</u>** Accordingly, any claim that participants received insufficient

> notice of the 1988-1992 amendments accrued upon the distribution of the 1992 SPD in December 1992, and plaintiffs' 2001 claims were therefore untimely.

Id. at *2 (citations omitted) (emphasis added).

The same is true here. Plaintiff received his lump sum benefit in 1999. (Compl., ¶ 9). The Summary Plan Description for the Plan in effect in 1999 informed Caufield that if he elected a lump sum benefit, he would receive a lump sum equal to his account balance, and nothing more. (See 1994 Summary Plan Description, attached hereto as Exhibit 2, p. 9.12) ("***Lump-Sum Option*** -- An option available to both married and unmarried employees is a lump-sum payment of the total value of your PRA [Personal Retirement Account] balance.") (emphasis in original). [1]

As in Hirt, "the SPD 'unequivocally repudiated'" any claim or entitlement to benefits beyond the account balance. 2008 WL 2675828, at *2 (citation and internal quotations omitted). Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint, filed on April 16, 2007, should be granted.

                              Respectfully submitted,

Dated: August 4, 2008            MORGAN, LEWIS & BOCKIUS LLP

                              By:   /s/ Theresa J. Chung
                              Joseph J. Costello*
                              Jeremy P. Blumenfeld*
                              Theresa J. Chung (TC3200)
                              1701 Market Street
                              Philadelphia, PA 19103
                              Telephone: (215) 963-5295/5258
                              Fax: (215) 963-5001
                              jcostello@morganlewis.com
                              jblumenfeld@morganlewis.com
                              tchung@morganlewis.com
                              *Pro Hac Admission pending*
                              Attorneys for Defendant

---

[1] The relevant page of the 1994 SPD is an exhibit to the Reply Memorandum In Further Support Of Defendant's Motion to Dismiss, filed on June 5, 2007. This page is attached hereto as Exhibit 2 for the convenience of the Court.

**CERTIFICATE OF SERVICE**

     I hereby certify that on August 4, 2008, a copy of the foregoing Defendant's Notice of Supplemental Authority In Support Of Defendant's Motion to Dismiss Plaintiff's Complaint, and papers in support thereof, was mailed, by first class U.S. mail, postage prepaid, and properly addressed to the following:

Douglas R. Sprong
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101
dsprong@koreintillery.com

T. J. Smith
Law Offices of T. J. Smith
600 W. Main Street, Suite 200
Louisville, KY 40202
tjsmith@smithhelman.com

Diane Moore Heitman
KOREIN TILLERY LLC
505 N. Seventh Street, Suite 3600
St. Louis, MO 63101

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209

                           /s/Theresa J. Chung
                           THERESA J. CHUNG (TC3200)

# EXHIBIT 1



Slip Copy
Slip Copy, 2008 WL 2675828 (C.A.2 (N.Y.)), 44 Employee Benefits Cas. 1295
**(Not Selected for publication in the Federal Reporter)**
**2008 WL 2675828 (C.A.2 (N.Y.))**

Page 1

**H**Hirt v. Equitable Retirement Plan for Employees, Managers and Agents
C.A.2 (N.Y.),2008.
Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.
United States Court of Appeals,Second Circuit.
Stefanie HIRT, Barbara Seay, Ann Nussbaum, Susan Chwast, and Loretta Ronzca, Plaintiffs-Appellants-Cross-Appellees,
v.
The EQUITABLE RETIREMENT PLAN FOR EMPLOYEES, MANAGERS AND AGENTS and The Officers Committee On Benefit Plans, as Plan Administrator, Defendants-Appellees-Cross-Appellants.
**Nos. 06-4757-cv (L), 06-5190-cv (XAP).**

July 9, 2008.

Appeal from the United States District Court for the Southern District of New York (Hellerstein, J.).

Edgar Pauk, New York, NY, for Plaintiffs-Appellants.
Kenneth S. Geller (Craig W. Canetti, on the brief), Mayer, Brown, Rowe & Maw LLP, Washington, DC, Mark D. Wincek, Kilpatrick Stockton LLP, Washington, DC, Wilber H. Boies, Nancy G. Ross, McDermott, Will & Emery LLP, Chicago, IL, for Defendants-Appellees.
Kent A. Mason and Jason K. Bortz, Davis & Harman LLP, Washington, DC, for Amici Curiae American Benefits Council, AT & T Corp., Business Roundtable, BP America Inc., El Paso Corporation, Honeywell International Inc., Mercer Human Resource Consulting, Inc., Watson Wyatt Worldwide, and Xerox Corporation.
Carol Connor Flowe and Gretchen Dixon, Arent Fox LLP, Washington, DC, and Robin S. Conrad and Shane Brennan, National Chamber Litigation Center, Washington, DC for Amicus Curiae Chamber of Commerce of the United States of America.
Jeffrey Lewis and Vincent Cheng, Lewis, Feinberg, Lee, Renaker & Jackson, P.C., Oakland, CA, Stephen R. Bruce and Allison C. Caalim, Stephen R. Bruce Law Offices, Washington, DC, Lynn Lincoln Sarko, Derek Loeser, Amy Williams-Derry, and Karin Swope, Keller Rohrback, LLP, Seattle WA, and Marissa M. Tirona, National Employment Lawyers Association, San Francisco, CA, for Amicus Curiae National Employment Lawyers Association.
Eli Gottesdiener, Gottesdiener Law Firm, PLLC, Brooklyn, N.Y. for Amicus Curiae Pension Rights Center.
Jeffrey P. Englander, Morrison Cohen LLP, New York, N.Y. for Amicus Curiae Young Women's Christian Association Retirement Fund, Inc.

Present DENNIS JACOBS, Chief Judge, AMALYA L. KEARSE, and ROBERT A. KATZMANN, Circuit Judges.

**SUMMARY ORDER**

*1 **ON CONSIDERATION WHEREOF,** it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court entered on October 10, 2006, be and hereby is **AFFIRMED.**

Plaintiffs, all long-term employees, managers, and agents of The Equitable Life Assurance Society of America ("Equitable"), filed suit in the Southern District of New York challenging various aspects of Equitable's defined benefit pension plans under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* We write a separate opinion today addressing plaintiffs' claim that, in providing benefits under a "cash balance" system, defendants violated ERISA's rule against age-based reductions in the rate of benefit accrual, as that rule applied prior to the amendment that took effect as of June 29, 2005. *See* ERISA § 204(b)(1)(h), 29 U.S.C. § 1054(b)(1)(H). We address here plaintiffs' claims that defendants failed to sufficiently notify them of amendments to the defined benefit plans, as required by ERISA § 204(h), 29 U.S.C. § 1054(h). We assume familiarity with the facts and procedural history on appeal.

Very generally, through a series of three amendments from 1988 until 1992, Equitable modified the pension plans it offered to employees, managers, and agents, converting them from traditional defined benefit plans, which based benefits on a function of final

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 2
Slip Copy, 2008 WL 2675828 (C.A.2 (N.Y.)), 44 Employee Benefits Cas. 1295
**(Not Selected for publication in the Federal Reporter)**
**2008 WL 2675828 (C.A.2 (N.Y.))**

salary and years of service, to a single cash balance plan, measuring benefits by accruing credit annually in a hypothetical account and converting the fictional "balance" into an annuity or the actuarial equivalent thereof. Plaintiffs filed suit on August 23, 2001, claiming, *inter alia,* that the amendments did not satisfy the requirements of ERISA § 204(h) as it was then in effect, which stated that a defined benefit plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to ... each participant in the plan." 29 U.S.C. § 1054(h)(1)(A) (1997). Addressing cross-motions for summary judgment, the district court determined that Equitable provided sufficient notice under ERISA § 204(h) as a matter of law for all but one of the amendments at issue, and that Equitable provided insufficient notice as a matter of law for the amendment that was implemented on January 1, 1991. In a subsequent ruling, the district court found all of plaintiffs' notice-based claims time-barred under the six-year limitations period applicable to claims under ERISA § 204(h) in New York,[FN1] which the district court found had been triggered by the distribution of the 1992 summary plan document ("SPD").

> FN1. The parties do not dispute the application of the six-year statute of limitations period. *See Miles v. New York State Teamsters Conference Pension and Ret. Fund Employee Pension Ben. Plan,* 698 F.2d 593, 598 (2d Cir.1983) (applying a six-year statute of limitations to ERISA civil enforcement actions under 29 U.S.C. § 1132).

We review the district court's grant of summary judgment *de novo,* construing the evidence in the light most favorable to plaintiffs and drawing all reasonable inferences in their favor. *See, e.g., Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan,* 201 F.3d 44, 47 (2d Cir.1999). As the district court correctly explained, "[a] plaintiff's ERISA cause of action accrues, and the six-year limitations period begins to run, when there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiaries." *Miles v. New York State Teamsters Conference Pension and Ret. Fund Employee Pension Ben. Plan,* 698 F.2d 593, 598 (2d Cir.1983) (internal quotation marks omitted) (emphasis in original). Although the limitations period generally begins to run when a participant's application for benefits is denied, we have held that "a cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff-regardless of whether the plaintiff has filed a formal application for benefits." *Carey,* 201 F.3d at 47-48.

**\*2** We agree with the district court that the distribution of the 1992 SPD constituted a clear repudiation of any pre-amendment benefits that plaintiffs could possibly claim. We have emphasized "the central role that the SPD plays in communicating the terms of a plan to its members." *Frommert v. Conkright,* 433 F.3d 254, 265 (2d Cir.2006). In this case, the SPD plainly and accurately described the pension plan as it then applied to employees, managers, and agents with various terms of service. It distinguished between pre-1989 and post-1989 benefits for employees and managers and between pre-1993 and post-1993 benefits for agents. To the extent that a plan participant had received insufficient notice of a plan amendment or otherwise considered himself entitled to benefits other than those disclosed in the SPD, the SPD "unequivocally repudiated" that understanding, *Carey,* 201 F.3d at 49. Accordingly, any claim that participants received insufficient notice of the 1988-1992 amendments accrued upon the distribution of the 1992 SPD in December 1992, and plaintiffs' 2001 claims were therefore untimely.

Having determined that the ERISA § 204(h) claims were time-barred, we need not reach the district court's disposition of the claims on the merits, and we dismiss the cross-appeal as moot.

For the foregoing reasons, the judgment of the district court finding plaintiffs' notice-based claims barred by the statute of limitations is hereby **AFFIRMED.**

C.A.2 (N.Y.),2008.
Hirt v. Equitable Retirement Plan for Employees, Managers and Agents
Slip Copy, 2008 WL 2675828 (C.A.2 (N.Y.)), 44 Employee Benefits Cas. 1295

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                          Page 3
Slip Copy, 2008 WL 2675828 (C.A.2 (N.Y.)), 44 Employee Benefits Cas. 1295
**(Not Selected for publication in the Federal Reporter)**
**2008 WL 2675828 (C.A.2 (N.Y.))**

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Monthly pension payments are determined by the value of your account balance, interest rates and life expectancy assumptions.

## Payment Options

You can elect an optional payment method instead of the automatic form by notifying your local Human Resources representative prior to your retirement date. If you are married and elect an option that does not provide continuing pension payments to your spouse after your death, the law requires that your spouse provide written consent that is notarized or witnessed by a Plan representative. Written consent must be provided to your local Human Resources representative no earlier than 90 days before payment from the Plan and no later than the benefit commencement date.

***Lump-sum Option*** — An option available to both married and unmarried employees is a lump-sum payment of the total value of your PRA balance. Keep in mind, if you are married, your spouse must consent in writing to this form of payment.

***Joint Annuitant Option*** — Both married and unmarried employees can have their benefits paid according to a joint annuitant option. This option is similar to the qualified joint and survivor annuity for married employees, except that you can choose the percentage (for example, 25%) of your benefit you want to continue to your spouse or other beneficiary after your death. It is important to note that, if you are married and want to name someone other than your spouse as joint annuitant, you must have your spouse's written consent.

Remember, this written consent must be notarized or witnessed by a Plan representative.

The following rules apply to electing the joint annuitant option:

- If you or your beneficiary die before you retire, the option is canceled.
- If this option would provide a monthly benefit of less than $50, the Company must consent to your election.
- You must be scheduled to receive at least 50% of your earned benefit if you select this option.
- Your beneficiary cannot receive more than 100% of your normal retirement benefit.

If you select this option, you must furnish proof of your joint annuitant's age. The amount by which your pension is reduced is determined by the percentage of your benefit you continue to your joint annuitant, and the difference in age between you and your joint annuitant.

***Life Annuity Option*** — An option available to both married and unmarried employees is a life annuity option. Under this benefit you will receive monthly pension payments for life. After your death, all payments stop. Again, if you are married, your spouse must consent in writing to this form of payment.

In addition, other payment options are available under this Plan. For more information about these options, contact your local Human Resources representative.

## Changing Your Election

In general, you have the right to change the method of payment you elect up until the time your benefit begins, although you may be